# 26-1225

## United States Court of Appeals
## for the Second Circuit



RONALD KRICK, Individually and on Behalf of the Estate of Oliver Krick, MARGARETA KRICK, CHRISTOPHER KRICK, DOUGLAS KEVORKIAN, Individually and on Behalf of the Estate of Ralph Kevorkian, CHRISTINE GROGAN, EILEEN ZAHARIOUDAKIS, Individually and Behalf of the Estate of Donald Gough, MICHAEL DETERESA, CHARLES HENRY GRAY IV, CHADWICK GRAHAM GRAY, CRAIG GAETKE, WANDA KEMP, Individually and on Behalf of the Estates of O. Lamar Allen and Ashton Allen,

*Plaintiffs-Appellants,*

LISA MICHELSON, Individually and on Behalf of the Estate of Yonatan Rojany, ERIC ROJANY, JODELLE GEARON, Individually and on Behalf of the Estate of Daniel Gaetke, TODD GAETKE,

*Plaintiffs,*

v.

RAYTHEON COMPANY, RAYTHEON TEC HNOLOGIES CORPORATION, LOCKHEED MARTIN CORPORATION, UNITED STATES MISSILE DEFENSE AGENCY, UNITED STATES DEPARTMENT OF DEFENSE, UNITED STATES NAVY, UNITED STATES OF AMERICA,

*Defendants-Appellees,*

DOES 1 THROUGH 20,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## SPECIAL APPENDIX

T.M. GUYER AND
AYERS & FRIENDS, PC
*Attorneys for Plaintiffs-Appellants*
P.O. Box 1061
Medford, Oregon 97501
(202) 227-3590
*thad@guyerayers.com*

**DICK BAILEY**
EST. 1966
www.dickbailey.com

# TABLE OF CONTENTS

*Page(s)*

Memorandum Decision and Order Granting Motions to
Dismiss, dated March 2, 2026.................................................................... SPA1-SPA25

Judgment, dated March 3, 2026 .........................................................................SPA26

Order Denying Plaintiffs' Appeal of Withdrawal Order,
dated November 20, 2024 ....................................................................... SPA27-SPA36

Notice of Appeal, dated April 30, 2026 ................................................. SPA37-SPA38

i

# SPA1

**Memorandum Decision and Order Granting Motions to Dismiss, dated March 2, 2026**
**[SPA1-SPA25]**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

:

**RONALD KRICK, Individually and on Behalf of the Estate of Oliver Krick; MARGARETA KRICK; CHRISTOPHER KRICK; DOUGLAS KEVORKIAN, Individually and on Behalf of the Estate of Ralph Kevorkian; LISA MICHELSON, Individually and on Behalf of the Estate of Yonatan Rojany; ERIC ROJANY; JODELLE GEARON, Individually and on Behalf of the Estate of Daniel Gaetke; TODD GAETKE; CRAIG GAETKE; WANDA KEMP, Individually and on Behalf of the Estates of O. Lamar Allen and Ashton Allen; CHRISTINE GROGAN; EILEEN ZAHARIOUDAKIS, Individually and Behalf of the Estate of Donald Gough; and MICHAEL DETERESA**,

Plaintiffs,

– against –

**RAYTHEON COMPANY; LOCKHEED MARTIN CORPORATION; UNITED STATES; and DOES 1 through 20, inclusive**,

Defendants.

---------------------------------------------------------------- X

: **MEMORANDUM DECISION AND ORDER**
:
: 23-CV-8093 (AMD) (JAM)
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**ANN M. DONNELLY**, United States District Judge:

The plaintiffs bring this action individually and on behalf of various estates against the United States, Raytheon Company, Lockheed Martin Corporation, and 20 John Does for negligence, gross negligence, wrongful death and survivorship.[1] They also bring a claim for failure to warn and manufacturing defect against Raytheon, Lockheed, and the John Does. Before the Court are the defendants' motions to dismiss the complaint pursuant to Federal Rules

---

[1] The plaintiffs bring their claims against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*

**SPA2**

of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants the motions.

## BACKGROUND

### I.       Factual Background[2]

This action arises from the crash of Trans World Airlines Flight 800 ("TWA 800"). On July 17, 1996 at approximately 8:20 p.m., a Boeing 747 operated as TWA 800 took off from John F. Kennedy International Airport in New York. (ECF No. 33 ¶¶ 2, 34.) Twelve minutes after the plane took off, it exploded and crashed into the Atlantic Ocean off the coast of Long Island. (*Id.* ¶¶ 2, 36.) All 230 passengers and crew members aboard the flight died. (*Id.* ¶¶ 2, 37.)

After the crash, the National Transportation Safety Board ("NTSB") and Federal Bureau of Investigation ("FBI") launched an investigation into the cause of the explosion. (*Id.* ¶¶ 38– 39.) The FBI "took charge," and "enlisted the assistance of the Central Intelligence Agency ('CIA')." (*Id.* ¶ 39.) The FBI "essentially froze the NTSB out of the investigation;" they "plac[ed] [Navy radar tapes] out of the NTSB's reach," and did not allow the NTSB to interview eyewitnesses or review the FBI's records about "the true cause of the TWA 800 crash." (*Id.* ¶ 40.) Eyewitnesses maintained that they "saw something arcing toward TWA 800 before the plane erupted into flames and fell from the sky," which led some to theorize that a missile struck TWA 800. (*Id.* ¶¶ 42–46.) According to the plaintiffs, eyewitnesses who were interviewed by the FBI "recall being threatened by the organization." (*Id.* ¶ 41.)

---

[2] The facts are based on the allegations in the complaint, which the Court is required to accept as true on a motion to dismiss. *See Williams v. Richardson*, 425 F. Supp. 3d 190, 200 (S.D.N.Y. 2019) ("In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint.").

# SPA3

At the conclusion of the investigation, the CIA prepared a video entitled "What Did The Eyewitnesses See?" (*Id.* ¶¶ 47–48.) In the video, which "was displayed during a nationally televised FBI press conference," the CIA explained its conclusions and "attempted to reconcile" eyewitness testimony — that a projectile struck the plane — with the government's "official position" — that a defect in the plane's center fuel tank caused the crash. (*Id.* ¶ 47.) The video included the words "NOT A MISSLE" in large, capitalized, and underlined font. (*Id.* ¶ 48.)

After the FBI press conference, the NTSB released a report stating that the crash was likely caused by an explosion of flammable vapors in the plane's center fuel tank. (*Id.* ¶ 50.) The report "ignored crucial evidence that ran counter to its conclusion." (*Id.* ¶ 51.) Moreover, the NTSB was "ordered not to draft analysis reports, which ran contrary to the usual procedure for NTSB aviation crash reports." (*Id.*) The government's explanation "became the publicly accepted view of what happened," and the plaintiffs "relied upon this misinformation." (*Id.* ¶ 50.) The NTSB also formed an Office of Families, which advanced the government's theory that the fuel tank caused the crash, and dismissed the idea that a missile caused the crash as a "conspiracy theory." (*Id.* ¶ 52.) Thus, according to the plaintiffs, for over twenty-five years, they and the public "were led to believe . . . that the victims of the TWA 800 crash were killed by a one-of-a-kind exploding fuel tank." (*Id.* ¶ 54.)[3]

## II. FOIA Litigation

In March 2010, Dr. Thomas Stalcup submitted Freedom of Information Act (FOIA) requests to the CIA and the Department of Defense for information on the investigation into the

---

[3] The complaint alleges background information related to the "missile program that resulted in the crash of TWA 800." (ECF No. 33 ¶ 55.) According to the plaintiffs, the Unites States government "fast-tracked implementation of the system, and put it on an accelerated and unrealistic timetable" because of increased threats from other countries. (*Id.* ¶¶ 56–57, 67.) The government tested the missiles in and around New Jersey, in highly populated areas, and witnesses observed missiles flying in those areas. (*Id.* ¶¶ 69–81.)

3

**SPA4**

TWA 800 crash and the government's missile activity around that time. (*Id.* ¶ 4.) *See Stalcup v. C.I.A.*, No. 11-CV-11250, 2013 WL 4784249, at *2 (D. Mass. Sept. 5, 2013), *aff'd*, 768 F.3d 65 (1st Cir. 2014); *Stalcup v. Dep't of Def.*, No. 13-CV-11967, 2015 WL 5545059, at *1 (D. Mass. Sept. 18, 2015). In the subsequent litigation, Stalcup alleged, as the plaintiffs do in this case, that the government covered up the true cause of the crash. (ECF No. 33 ¶¶ 1, 4.) *See Stalcup v. C.I.A.*, 2013 WL 4784249, at *3. The plaintiffs assert that Stalcup "obtained crucial new evidence regarding what caused TWA 800 to explode." (ECF No. 33 ¶ 83.) For example, he received FBI records "showing an object 'heading straight for TWA 800,'" records that were "never made part of the NTSB investigation" or released to the public or to the families of those who died in the crash. (*Id.* ¶¶ 84–85.) He also consulted with a former FBI official who told him that the drones used in the missile tests were near TWA 800 when the plane went down. (*Id.* ¶ 86.) Stalcup also deposed government witnesses, one of whom said that minutes after the crash, he was ordered to allow the FBI to remove from his facility all Navy radar tapes that might have recorded the incident. (*Id.* ¶¶ 88–89.) According to records from the FOIA litigation, the tapes "show an object 'impact' TWA 800, which directly contradicts the FBI's, CIAs, and NTSB's public conclusions that what caused the incident was 'NOT A MISSILE.'" (*Id.* ¶ 92.) According to the plaintiffs, the evidence reveals that a missile hit TWA 800, and that "the government hid this truth from Plaintiffs and the public at large for over twenty-five years." (*Id.* ¶ 93.)

### III. This Action

On June 28, 2022, thirteen plaintiffs brought this action individually, and some on behalf of the estates of relatives who died in the crash, in the United States District Court for the

**SPA5**

District of Massachusetts. (ECF No. 1.)[4] The plaintiffs amended their complaint on September 19, 2022, and filed a second amended complaint on November 17, 2022. (ECF Nos. 6, 33.)[5] The plaintiffs brought claims for negligence, gross negligence, and wrongful death and survivorship against all the defendants, and against Raytheon and Lockheed for product liability for failure to warn and manufacturing defect. (ECF No. 33 ¶¶ 105–48.) They seek compensatory and punitive damages, interest, costs, expenses, and attorney's fees. (*Id.* at 35–36.)

On September 29, 2023, United States District Judge Angel Kelley ordered that the case be transferred out of the District of Massachusetts. (ECF No. 95.) The case was transferred to the Eastern District of New York on October 13, 2023. (ECF No. 100.) On January 29, 2024, the defendants asked the Court for permission to issue subpoenas to The Boeing Company for production of the settlement agreements and releases relating to the plaintiffs or their deceased

---

[4] Ronald Krick, Oliver Krick's father, brought this action individually and as personal representative on behalf of the Estate of Oliver Krick. (*Id.* ¶ 15.) Margareta Krick, Oliver's mother, and Christopher Krick, Oliver's brother, brought this action individually. (*Id.* ¶ 16–17.) Douglas Kevorkian, Ralph G. Kevorkian's son, brought this action individually and as personal representative on behalf of the Estate of Ralph G. Kevorkian. (*Id.* ¶ 18.) Lisa Michelson, Yonatan Rojany's mother, brought this action individually and as personal representative on behalf of the Estate of Yonatan Rojany. (*Id.* ¶ 19.) Eric Rojany, Yonatan's brother, brought this action individually. (*Id.* ¶ 20.) Jodelle Gearon, Daniel Gaetke's sister, brought this action individually and as personal representative on behalf of the Estate of Daniel Gaetke. (*Id.* ¶ 21.) Todd Gaetke and Craig Gaetke, Daniel Gaetke's brothers, brought this action individually. (*Id.* ¶ 22–23.) Wanda Kemp, O. Lamar Allen's sister and Ashton Allen's aunt, brought this action individually and as personal representative on behalf of the Estates of O. Lamar Allen and Ashton Allen. (*Id.* ¶ 24.) Christine Grogan, O. Lamar Allen's daughter, brought this action individually. (*Id.* ¶ 25.) Eileen Zaharioudakis, Donald E. Gough's sister, brought this action individually and as personal representative on behalf of the Estate of Donald E. Gough. (*Id.* ¶ 26.) Michael Deteresa, Donald E. Gough's nephew, brought this action individually. (*Id.* ¶ 27.)

[5] The amended complaint added Charles Henry Gray, IV and Chadwick Graham Gray as plaintiffs. Charles Henry Gray, IV is Charles Henry Gray, III's son, and he brought this action individually and as personal representative on behalf of the Estate of Charles Henry Gray, III. (ECF No. 6 ¶ 28.) Chadwick Graham Gray is also Charles Henry Gray, III's son, and he brought this action individually. (*Id.* ¶ 29.) However, the Grays were not included as plaintiffs in the second amended complaint. (*See* ECF No. 33.)

The Court refers to the second amended complaint as the "complaint."

relatives. (ECF No. 131.) According to defendants, the plaintiffs, or the estates of their deceased relatives, brought litigation in the TWA 800 Multi-District Litigation in the Southern District of New York in the 1990s, and those cases were settled, releases were obtained, and the cases were dismissed with prejudice. (*Id.*) The plaintiffs did not oppose the defendants' request (ECF No. 132), and Magistrate Judge Joseph A. Marutollo granted the motion on February 2, 2024 (*ECF Order dated Feb. 2, 2024*). The parties received the settlement agreements and releases in March 2024. (*See* ECF No. 166 at 1.) On May 14, 2024, the plaintiffs Jodelle Gearon, Todd Gaetke, and Eric Rojany voluntarily dismissed their claims, and on August 29, 2024, Lisa Michelson voluntarily dismissed her claims. (ECF Nos. 137, 138, 139, 148.)

On April 1, 2025, the defendants filed motions to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). (ECF Nos. 178, 181, 185.)[6] The plaintiffs opposed the motions on July 28, 2025. (ECF No. 196.) Before filing their reply briefs, the defendants requested a status conference before Judge Marutollo for answers to the following questions: 1) who were the parties to the litigation; 2) which parties did the plaintiffs' counsel represent; and 3) what authority did certain plaintiffs have to act on behalf of their relatives' estates. (ECF No. 198.) Judge Marutollo held a status conference on September 10, 2025 and ordered supplemental briefing on these issues. (*ECF Minute Entry dated Sep. 10, 2025.*) The parties briefed the supplemental issues, and the defendants then filed their reply briefs in support of their motions to dismiss. (ECF Nos. 215, 220, 222, 223, 224.)

---

[6] After the parties received the settlement releases, the plaintiff's former counsel moved to withdraw, because the primary attorney switched law firms, and the attorneys at the former firm "reached an impasse as to the strategy of the case." (ECF No. 140.) Judge Marutollo granted the motion, and ordered the representative plaintiffs to show cause as to why they should be allowed to proceed *pro se* on behalf of the estates. (ECF No. 152.) Current counsel then filed a limited notice of appearance to appeal Judge Marutollo's decision on the prior counsel's motion to withdraw. (ECF No. 154.) The Court denied the appeal. (ECF No. 159.) Current counsel then filed a notice of appearance in full representative capacity. (*See ECF Minute Entry dated Dec. 16, 2024*; ECF No. 165.)

**SPA7**

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. "Where a motion to dismiss asserts a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) as well as other grounds for dismissal, 'the court should consider the Rule 12(b)(1) challenge first.'" *Burlington Ins. Co. v. MC&O Masonry, Inc.*, No. 17-CV-2892, 2018 WL 3321427, at *1 (E.D.N.Y. July 5, 2018) (quoting *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)). "[I]n resolving a Rule 12(b)(1) motion, 'a district court . . . may refer to evidence outside the pleadings.'" *Molokotos-Liederman v. Molokotos*, No. 23-CV-1654, 2023 WL 5977655, at *5 (S.D.N.Y. Sept. 14, 2023) (quoting *Makarova*, 201 F.3d at 113).

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings are construed in the light most favorable to the plaintiff. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

7

**SPA8**

## DISCUSSION

The defendants make multiple arguments for dismissal of the complaint. All the defendants argue that the plaintiffs do not have standing to bring this case because (1) those who purport to represent estates are not court-appointed personal representatives, (2) some of the estates are closed, and (3) the complaint does not allege damages specific to the plaintiffs who brought this action in their individual capacities. (ECF No. 179 at 28–31; ECF No. 182 at 14–21; ECF No. 186 at 26–29.) They also argue that the releases the estates signed in the prior multi-district litigation bar the plaintiffs' claims here. (ECF No. 179 at 25–28; ECF No. 182 at 22–29; ECF No. 186 at 29–39.) They argue that in any event, the statute of limitations has run, and the doctrine of fraudulent concealment does not toll the statute of limitations. (ECF No. 179 at 32–45; ECF No. 182 at 29–32; ECF No. 186 at 39–47.) The United States also argues that the plaintiffs plead an admiralty cause of action, not an FTCA action, and the FTCA does not provide a waiver of sovereign immunity for admiralty cases. (ECF No. 179 at 46–49.) Lockheed and Raytheon also argue that this action presents nonjusticiable political questions. (ECF No. 182 at 32–36; ECF No. 186 at 47–56.)

## I. Standing

To have Article III standing, "the plaintiff must have alleged such a personal stake in the outcome of the controversy as to warrant its invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on its behalf." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (citation modified). "Others may benefit collaterally from a resolution favorable to the plaintiff or suffer from an unfavorable one, but the plaintiff's genuinely personal stake ensures the presence of that concrete adverseness which sharpens the presentation of issues upon which a court so largely depends." *Id.* (citation

# SPA9

modified). Standing is a "jurisdictional issue" that "must be resolved before the merits." *Id.* (quoting *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006)). The plaintiffs "bear[] the burden of establishing standing." *Tzumi Innovations LLC v. Regan*, 557 F. Supp. 3d 499, 505 (S.D.N.Y. 2021).

The defendants raise three issues related to the plaintiffs' standing to bring this action. First, they argue that the plaintiffs who are purportedly acting on behalf of their deceased relatives' estates — Ronald Krick, Douglas Kevorkian, Wanda Kemp, and Eileen Zaharioudakis[7] — have not been appointed as representatives of those estates, and are therefore not authorized to act on their behalf. Second, they argue that several of the estates were closed when the plaintiffs brought this action. Third, they argue that the plaintiffs suing in their individual capacities do not have standing based on the claims and injuries alleged in the complaint.

The plaintiffs do not dispute that the representative plaintiffs are not authorized representatives or that most of the estates were closed when they initiated this action. Rather, they assert that some of the estates have been reopened or are in the process of being reopened, and the Court must allow a reasonable time for the correct parties "to ratify, join, or be substituted" pursuant to Federal Rule of Civil Procedure 17(a)(3). (ECF No. 196 at 38.)

The Court begins by addressing the law that applies. The United States argues that the complaint pleads an admiralty cause of action (ECF No. 179 at 46–49), but asserts that New York law applies to the plaintiff's FTCA claims because in "an FTCA case, courts apply the law of the place where the alleged act or omission occurred," and the plaintiffs "allege negligent missile testing off the coast of New York" (*id.* at 29). Lockheed analyzes this issue primarily under New York law, but says that the result would be the same if the Court applied substantive

---

[7] As noted earlier, Jodelle Gearon and Lisa Michelson — who also brought claims on behalf of their deceased relatives' estates — voluntarily dismissed their claims. (ECF Nos. 137, 148.)

maritime law — specifically the Death on High Seas Act ("DOHSA"). (ECF No. 182 at 14–17.) Raytheon asserts only that admiralty law applies, because the "location of the crash was approximately eight nautical miles south of the shore of Long Island, which is within the territorial waters of the United States." (ECF No. 186 at 22–26.) This distinction is ultimately "academic," because "the New York statute has the same effect as DOHSA." *Cruz v. Korean Air Lines Co.*, 838 F. Supp. 843, 847 (S.D.N.Y. 1993).[8]

The plaintiffs do not have standing to bring this action regardless of the applicable standard. Under New York law, "[o]nly a duly appointed personal representative may bring suit on behalf of a decedent." *Palladino v. Metro. Life Ins. Co.*, 188 A.D.2d 708 (3rd Dep't 1992). "Inasmuch as letters of administration have not been issued to plaintiff, he has no standing to sue." *Id.*; *see also Hernandez v. N.Y.C. Health & Hosps. Corp.*, 78 N.Y.2d 687, 692 (1991) ("'Personal representative' is defined as 'a person who has received letters to administer the estate of a decedent.'" (quoting N.Y. Est. Powers & Trusts § 1–2.13)). Similarly, DOHSA provides that "the personal representative of the decedent may bring a civil action" when "the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas." 46 U.S.C. § 30302. "Courts have consistently interpreted the language in [DOHSA] providing that the personal representative 'may maintain a suit for damages . . . for the exclusive benefit' of other claimants to mean that *only* the personal representative may bring the claims of the other claimants." *Cruz*, 838 F. Supp. at 846–47 (emphasis in original).

---

[8] Raytheon asserts that the admiralty law analysis is governed by *Moragne v. State Marine Lines*, 398 U.S. 375, 395 (1970) ("*Moragne*"), but that the "same result occurs under New York's wrongful death statute and the Death on the High Seas Act (DOHSA)." (ECF No. 186 at 28 n.6.) *See also Complaint of Cosmopolitan Shipping Co., S. A.*, 453 F. Supp. 265, 266-67 (S.D.N.Y. 1978) (stating that the "federal causes of action upon which [the plaintiff's] seek recovery . . . all vest in the 'personal representative' of the deceased seaman," where the plaintiffs brought claims pursuant to DOHSA, the Jones Act, and "the wrongful death action recognized under" *Moragne*).

**SPA11**

The complaint alleges that Ronald Krick is the personal representative of the Estate of Oliver Krick, Douglas Kevorkian is the personal representative of the Estate of Ralph G. Kevorkian, Wanda Kemp is the personal representative of the Estates of O. Lamar Allen and Ashton Allen, and Eileen Zaharioudakis is the personal representative of the Estate of Donald E. Gough. (ECF No. 33 ¶¶ 15, 18, 24, 26, 130.) The complaint does not allege that a court appointed these plaintiffs as personal representatives or that they were issued letters of administration. *See e.g., Sonenberg v. Princess Cruise Lines, Ltd.*, No. 14-CV-8971, 2015 WL 13915634, at *9 (C.D. Cal. Apr. 22, 2015) ("Absent such facts" "indicating that [the plaintiff] was appointed by a court as the executrix or administratrix of [the] estate," "the bare allegation that plaintiff is the personal representative of [the] estate does not give rise to a plausible inference that she is the estate's personal representative as that term is defined in DOHSA." (citation modified)).

The defendants also submitted documents from the courts in which the estates were probated, which show that except for Ronald Krick, the other representative plaintiffs are not court-appointed personal representatives. (*See e.g.*, ECF Nos. 180-5, 180-6, 180-7, 180-8.)[9] Thus, these plaintiffs do not have standing to bring claims on behalf of their relatives' estates. *See Cruz*, 838 F. Supp. at 846–47 (decedent's widow "as the legal representative of the decedent's estate, had the sole authority to bring claims for the children and had full authority to settle those claims," and the children "had no authority either to bring or to settle such claims" even though the "claims existed for their benefit"); *Hartke v. Bonhams & Butterfields Auctioneers Corp.*, No. 22-CV-3571, 2024 WL 246139, at *6 (S.D.N.Y. Jan. 23, 2024) (the

---

[9] The plaintiffs "object to any consideration of the [defendants'] exhibits" (ECF No. 196 at 16), but do not deny their authenticity. The Court "may refer to evidence outside the pleadings" to resolve a Rule 12(b)(1) motion. *Molokotos*, 2023 WL 5977655, at *5 (citation omitted).

plaintiff lacked standing because she "does not plead that the Probate Court appointed [her] to serve as the executor, administrator, or personal representative of [the] estate, or that she received any letters of administration"), *aff'd sub nom. Hartke on behalf of Est. of Hartke v. Bonhams & Butterfields Auctioneers Corp.*, No. 24-258, 2024 WL 4380315 (2d Cir. Oct. 3, 2024).  The documents also reveal that almost all of the estates were closed by the early 2000s (*see* ECF Nos. 180-5, 180-6, 180-7), and the complaint does not allege that the estates were reopened and that a court appointed new personal representatives.[10]

The plaintiffs do not dispute that the complaint lacks sufficient allegations about their appointment as personal representatives of their relatives' estates.  Instead, the plaintiffs assert that O. Lamar Allen's estate has been open since the 1990s and was never closed, Oliver Krick's estate was reopened,[11] and the remaining estate plaintiffs have filed petitions to reopen the estates and are awaiting court dates.  (ECF No. 196 at 21.)  The plaintiffs also argue that these defects are "readily curable under FRCP 17(a)(3)," which provides that "technical defects in capacity are procedural, not jurisdictional, and can be cured during the litigation."  (*Id.* at 22.)  In other words, the plaintiffs maintain that the Court should wait to see if they can establish standing.

Even assuming that the plaintiffs could cure these deficiencies, the complaint would still have to be dismissed, because, as explained below, the settlement releases from the multi-district litigation bar the plaintiffs' claims in this action.

---

[10] The defendants assert that all of the estates were closed, but the documents they submitted for the Estates of O. Lamar Allen and Ashton Allen do not show that those estates were closed.  (*See* ECF No. 180-8.)  However, those documents show that Betty Anne Allen, not Wanda Kemp, was appointed administrator of the estates.  (*Id.* at 7.)

[11] The order reopening Oliver Krick's estate was signed July 15, 2025, well after the plaintiffs initiated this action.  (ECF No. 194-2 at 36.)  *See Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) ("A plaintiff's standing is considered at the time the action was commenced.").

**SPA13**

In addition to the four plaintiffs who brought this action both as representatives and in their individual capacities, five plaintiffs brought this action only in their individual capacities — Margareta Krick, Christopher Krick, Craig Gaetke, Christine Grogan, Michael Deteresa[12] — and brought claims for negligence, wrongful death and survivorship, and failure to warn and manufacturing defect. But these plaintiffs also lack standing. Only administrators of an estate have "standing to pursue [] cause[s] of action for wrongful death" or "claim[s] based on pain and suffering under survivorship." *Frometa v. Mar-Can Transp. Co., Inc.*, 72 Misc. 3d 316, 327 (N.Y. Sup. Ct. 2021). These plaintiffs are not administrators of the estates, and do not have standing to pursue their wrongful death and survivorship claims. In their opposition to the defendants' motions, the plaintiffs say they are bringing claims "in their individual capacities for their own injuries, including loss of companionship and emotional distress" (ECF No. 196 at 38), but other than a single list of various "damages and losses" they suffered (ECF No. 33 ¶ 119), the complaint does not allege any facts to support their negligence or product liability claims. These allegations are insufficient to show how the plaintiffs were personally injured.

## II.    Settlement Releases

Shortly after the TWA 800 crash, various plaintiffs brought lawsuits related to the crash against Boeing, TWA, and Hydro-Aire, Inc. In February 1997, the Judicial Panel on Multidistrict Litigation transferred all wrongful death cases arising from the TWA 800 crash to the Southern District of New York for consolidated pretrial proceedings. *See In re Air Crash Off Long Island, New York, on July 17, 1996*, 209 F.3d 200, 201 (2d Cir. 2000). As of 1998, 145 cases had been consolidated. *Id.* The claims were ultimately dismissed pursuant to settlement agreements. (*See* ECF No. 196 at 11; ECF No. 179 at 22.) The defendants assert that six of the

---

[12] As noted earlier, Eric Rojany and Todd Gaetke voluntarily dismissed their claims. (ECF Nos. 138, 139.)

13

nine individual plaintiffs in this case personally signed general releases, and other individuals signed releases for the decedents on whose behalf the other three plaintiffs bring this action. (*See e.g.*, ECF No. 179 at 22.) The defendants argue that the plaintiffs cannot bring this action because those releases cover the claims brought here. (*See* ECF No. 179 at 25–28; ECF No. 182 at 22–29; ECF No. 186 at 29–39.)

### a. Consideration of the Releases

First, the Court must determine whether it can consider the releases at this stage of the case. The United States frames this issue in the context of sovereign immunity; it argues that the United States has waived its sovereign immunity under the FTCA "only to the extent that a similarly-situated private person could be liable under local law," and that the plaintiffs fail to allege "that a private person would be liable to them" because of the releases. (ECF No. 179 at 24–26.) Because sovereign immunity is "jurisdictional in nature," and a case is dismissed under Rule 12(b)(1) where there is no waiver of sovereign immunity, *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007), the Court can consider the releases in resolving the United States' motion. *See Figueroa v. Ministry for Foreign Affs. of Sweden*, 222 F. Supp. 3d 304, 307 (S.D.N.Y. 2016) ("[W]here jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.").

Lockheed notes that some courts have considered releases under Rule 12(b)(1) and others have done so under Rule 12(b)(6), and asserts that the Court can consider the releases under either standard. (ECF No. 182 at 26–29.) Raytheon argues only that the Court can consider the releases under Rule 12(b)(6). (ECF No. 186 at 30.) The plaintiffs do not challenge the Court's

authority to consider the releases at this stage of the litigation; they argue that the releases do not bar the plaintiffs' claims in this case.  (*See* ECF No. 196 at 24–27.)

Courts adjudicating Rule 12(b)(6) motions generally "do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'"  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.,* 817 F.3d 46, 51 n.2 (2d Cir. 2016)).  The Second Circuit has "recognized, however, that in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss."  *Id.*  "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'"  *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)).

In addition, courts can take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 247 (S.D.N.Y. 2025) (quoting Fed. R. Evid. 201).  "Courts have . . . taken judicial notice of materials in the public record, such as federal copyright registrations, newspaper articles, and regulatory filings."  *Id.* (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020)).  "Settlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement."  *Deylii v. Novartis Pharms. Corp.*, No. 13-CV-06669, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014).  "Moreover, if taking judicial notice of a previous agreement would aid a court in resolving

whether to 'dispose of [the] matter . . . it makes no sense to deny dismissal simply because [the agreement] was not referenced in the [c]omplaint.'" *Johnson v. City of New York*, No. 21-CV-10535, 2023 WL 5629232, at *3 (S.D.N.Y. Aug. 31, 2023) (quoting *Deylii*, 2014 WL 2757470, at *4) (alterations in original). Courts also "retain[] discretion to consider even at this early stage an affirmative defense" — for example, "that a plaintiff's claim is barred by agreement" — "that presents a straightforward issue of law." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 400–01 (S.D.N.Y. 2023).

The plaintiffs do not dispute the authenticity of the releases. To the contrary, in opposing the defendants' motion to seal the releases, the plaintiffs acknowledged that the "releases at issue here emerged from [the] settlements" of the multi-district litigation, and opposed sealing because "the fact of settlement releases has been judicially reported." (ECF No. 174 at 2, 8 (citing *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 208 (D. Mass. 2023)).) When the defendants asked the Court for permission to subpoena Boeing for the releases (ECF No. 131), the plaintiffs responded that they would "not oppose a narrowly-tailored subpoena issued to the MDL defendant(s) who drafted the settlement agreements and releases;" the plaintiffs suggested in the alternative that the plaintiffs could disclose the releases "if the MDL defendant(s) agree in writing to waive the confidentiality provisions of the settlement agreements and releases" (ECF No 132). The defendants subsequently subpoenaed and received the releases from Boeing.

Because there is no question that the Court can consider the releases in resolving the United States' motion pursuant to Rule 12(b)(1), it would be inefficient to consider them for that motion, but not the other defendants' motions. Accordingly, the Court takes judicial notice of the releases and considers them in resolving all of the defendants' motions. *See Doe 1*, 671 F. Supp. 3d at 401 ("The authenticity of the Settlement Agreement is not disputed, and neither party

**SPA17**

has suggested that extrinsic evidence would inform the Court's interpretation of it. Thus, [the defendant's] argument presents an unfettered question of law that can be resolved on a motion to dismiss and should not be deferred."); *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 438 (S.D.N.Y. 2022) (considering settlement agreement, even though it "neither appears in nor is referred to in the complaint," because it is "concededly is authentic," its "wording (as distinguished from its legal effect) is undisputed, and the Court consequently has taken judicial notice of it"); *Bensky v. Indyke*, 743 F. Supp. 3d 586, 593 (S.D.N.Y. 2024) ("[The plaintiff] doesn't dispute the release's authenticity or that she signed it. Nor does she argue that extrinsic evidence is needed to interpret the release's terms. She just says that the release, by its terms, shouldn't apply to the claims here. So, consistent with *Doe I* and *Giuffre*, the Court may consider the release on a motion to dismiss.")

  b. *Scope of Releases*

   Next, the Court must determine whether the releases cover the parties and claims in this case. The defendants attached to their papers releases related to the remaining nine plaintiffs: Ronald Krick (ECF No. 187-3), Margareta Krick (ECF No. 187-3), Christopher Krick (ECF No. 187-3), Christine Grogan (ECF No. 187-6), Eileen Zaharioudakis (ECF No. 187-8), Douglas Kevorkian (ECF No. 187-9), Craig Gaetke (ECF No. 187-7), Wanda Kemp (ECF No 187-4), and

## SPA18

Michael Deteresa (ECF No. 187-8).[13] All of the releases are governed by New York law, except for the Kevorkian release, which is governed by California law. (*See* ECF No. 187-9 ¶ 16.)[14]

"It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Tromp v. City of New York*, 465 F. App'x 50, 51 (2d Cir. 2012) (quoting *Collins v. Harrison–Bode,* 303 F.3d 429, 433 (2d Cir. 2002)). "'Where the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed.'" *Id.* (quoting *Wang v. Paterson,* No. 07-CV-2032, 2008 WL 5272736, at *4 (S.D.N.Y. Dec.18, 2008)) (alteration in *Tromp*). "[U]nder New York law, '[e]xtrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous.'" *Solis v. 666 Fifth Asociates LLC*, No. 20-CV-5105, 2021 WL 5998416, at *3 (S.D.N.Y. Dec. 20, 2021) (quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002)). "Under New York law, a contract is unambiguous 'if the contract language has a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of

---

[13] In supplemental briefing the parties addressed an issue related to two additional purported plaintiffs, Charles Henry Gray, IV and Chadwick Graham Gray. (*See* ECF Nos. 215, 220.) The defendants assert that they did not address these plaintiffs in their motions to dismiss because those plaintiffs were previously dismissed; they were not named in the original complaint (ECF No. 1), were added in the amended complaint (ECF No. 6 ¶¶ 28–29), and then omitted from the second amended complaint (ECF No. 33). In addition, filings by both the former and current plaintiffs' attorneys suggested that the Grays were not plaintiffs. For example, the plaintiffs' former attorney filed a letter in September 2024 with contact information for the remaining plaintiffs and did not list the Grays. (ECF No. 151.) The plaintiffs' current attorney filed a status report in October 2024 in which she identified nine remaining plaintiffs; she did not include the Grays. (ECF No. 157 ¶ 3.) The defendants assert that the Grays "re-emerged as active participants only after [the defendants] filed their Motions to Dismiss, and without any notice." (ECF No. 215 at 6.) The plaintiffs seek leave to amend the complaint to add the Grays back to the complaint, on the theory that without "a court order explicitly dismissing [the Grays] with prejudice, their status is not conclusively adjudicated by their mere omission from the amended complaint." (ECF No. 220 at 10.) Whatever the merits of that argument, amendment would be futile because the Grays, like the other plaintiffs, are barred from bringing this action by the releases they signed in the multi-district litigation. (*See* ECF No. 215-4 (Chadwick Graham Gray release); ECF No. 215-5 (Charles Henry Gray, IV release).)

[14] The releases are materially the same, so the Court uses the Krick release to refer to all of them. (*See* ECF No. 187-3)

18

opinion.'" *Burrell v. Sowers*, No. 22-CV-2687, 2023 WL 7320867, at *1 (2d Cir. Nov. 7, 2023) (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016)). Similarly, under California law "[t]he interpretation of a release is governed by the same principles applicable to any other contract." *Wave Neuroscience, Inc. v. Peaklogic, Inc.*, No. 21-CV-1330, 2024 WL 4048862, at *1 (S.D. Cal. Sept. 3, 2024). "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Id.* "To ascertain the parties' intent the Court must start with the language of the contract itself and if that language is clear and explicit, it governs." *Id.*

Six of the nine plaintiffs remaining in this case personally signed releases: Ronald Krick, Margareta Krick, Christopher Krick (ECF No. 187-3), Christine Grogan (ECF No. 187-6), Eileen Zaharioudakis (ECF No. 187-8), and Douglas Kevorkian (ECF No. 187-9). As for the other plaintiffs, the releases for their relatives provide that the signatories are authorized "to execute this release on behalf of Decedent's Estate and all heirs thereto." (*See* ECF No. 187-7 (Craig Gaetke); ECF No 187-4 (Wanda Kemp); ECF No. 187-8 (Michael Deteresa).) The releases unambiguously bind not only the personal representatives who signed the releases, but all beneficiaries, regardless of whether the beneficiaries signed the releases themselves.

> This Release is intended to, and Releasors represent and warrant that it will, dispose of all liability of Releasees to Releasors and all heirs and dependents of Decedent not otherwise identified, and their successors and assigns, that might now or in the future assert a claim, demand, action or bring suit arising out of injury to or the death of Decedent.

(*See, e.g.,* ECF No. 187-3 ¶ 6.) *See Cruz*, 838 F. Supp. at 846–47 (decedent's widow "as the legal representative of the decedent's estate, had the sole authority to bring claims for the

19

children and had full authority to settle those claims," even though the "claims existed for [the children's] benefit").

The releases also cover unnamed entities.

> Releasors state that they intend to release fully all individuals, entities or corporations, whether specifically named or not, that might be liable for damages arising out of the injury to or death of Decedent. Releasors agree that they will not, directly or indirectly, make or cause to be made any further action against any person (including any individual, corporation or other entity) for losses, damages or injuries arising out of the injury to or death of Decedent.

(*See, e.g.,* ECF No. 187-3 ¶ 5.)  The releases also define the "Releasees:"

> all other persons and entities not specifically identified who are or may be liable to Releasors in whole or in part for any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800.

(*See, e.g.,* ECF No. 187-3 at 1.)  The plaintiffs allege that the defendants here are liable for damages "arising out of or in any way related to or resulting from the loss of TWA Flight 800." (*Id.*; *see generally* ECF No. 33.)  Thus, the releases apply to the defendants in this action, even though they were not parties in the multi-district litigation.[15]

Finally, the Court must determine whether the releases bar the claims the plaintiffs bring here.  The plaintiffs argue that "newly uncovered evidence reveals systemic efforts by the Defendants to fraudulently conceal critical facts before, during, and after the settlement period, thereby invalidating the agreements."  (ECF No. 196 at 24–25.)  This argument mirrors the theory of the plaintiffs' complaint: that the defendants falsely claimed that a fuel tank explosion caused the TWA 800 crash, while covering up the true cause — a government-tested missile that

---

[15] The release that Douglas Kevorkian signed identifies the United States as a releasee.  (ECF No. 187-9 at 2.)

hit the plane. (*Id.* at 25.) The defendants argue that the general language in the releases covers claims of which the plaintiffs were unaware when they signed the releases, including fraudulent concealment claims. (*See* ECF No. 222 at 10–13; ECF No. 223 at 3–5; ECF No. 224 at 15–20.)

"Under New York law, 'a valid release constitutes a complete bar to an action on a claim which is the subject of the release.'" *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 362 (S.D.N.Y. 2022) (quoting *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011)), *amended*, No. 21-CV-1657, 2022 WL 2479110 (S.D.N.Y. July 6, 2022), and *aff'd sub nom. In re Wade Park Land Holdings, LLC*, No. 23-591, 2024 WL 3024648 (2d Cir. June 17, 2024). "[A] release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is 'fairly and knowingly made.'" *Id.* (quoting *Centro Empresarial*, 17 N.Y.3d at 276.) "A general release 'prevents plaintiffs from . . . bringing an action for fraud based on misrepresentations predating it' in the absence of allegations that the release itself 'was induced by a separate fraud.'" *Id.* (quoting *Arfa v. Zamir*, 17 N.Y.3d 737 (2011)). "In particular, 'a party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release. Were this not the case, no party could ever settle a fraud claim with any finality.'" *Id.* (quoting *Centro Empresarial*, 17 N.Y.3d at 276). "[W]hen general language is used in the releasing document, 'the release is to be construed most strongly against the releasor.'" *Consorcio Prodipe v. Vinci,* 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008) (quoting *Middle East Banking Co. v. State Street Bank Intern.*, 821 F.2d 897, 907 (2d Cir. 1987)).

Furthermore, "when a 'contract states that a contracting party disclaims the existence of or reliance upon *specified* representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations.'" *Moore v. Cohen*, 548

**SPA22**

F. Supp. 3d 330, 343 (S.D.N.Y. 2021) (quoting *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 488 (S.D.N.Y. 2017)), *aff'd sub nom. Moore v. Baron Cohen*, No. 21-CV-1702, 2022 WL 2525722 (2d Cir. July 7, 2022). For example, in *Moore,* the court held that Moore's affirmations that he was "not relying upon any promises or statements made by anyone about the nature of the Program or the identity, behavior, or qualifications of any" other individuals who were participating in the Program, and that he had "no expectations or understandings concerning the conduct, offensive or otherwise, of anyone involved in this Program" constituted "an explicit disclaimer." *Id.* Moore "disclaimed reliance on the very 'promises or statements' that he now relies on to argue fraudulent inducement;" he "argued that the waivers [he] signed should not be enforced because [he] w[as] fraudulently induced by misrepresentations as to the nature of the production and identities of the defendants." *Id.* at 344.

The releases at issue here are general releases. They provide:

> Releasors release and forever discharge any and all actions, causes of action, suits . . . and demands whatsoever, in law, admiralty or equity, which against Releasees the Releasors ever had, now have or hereafter can, shall or may have, for, upon, by reason of, arising out of, or in any way related to the Event . . . This Release expressly extends to and includes, but is not limited to, any and all causes of action based on any wrongful death act, survival statute, or common law. This Release also expressly extends to and includes, but is not limited to, each and every claim or cause of action that could have been asserted for all past and future economic damages, noneconomic damages and awards recoverable or potentially recoverable from any person, including, but not limited to . . . pain and suffering, grief or emotional distress, and loss of consortium, support, pecuniary benefits, income, companionship, assistance, services, training, education or society.

(ECF No. 187-3 ¶ 3.)

> Releasors enter into this Release contemplating the possibility that facts may be subsequently discovered that could support claims as yet unasserted against Releasees for compensatory, consequential and/or punitive damages. Releasors realize that losses, injuries or damages not now known may be subsequently discovered and that

22

> their known losses, injuries or damages may prove to be greater than presently believed . . . Releasors intend to discharge Releasees from all liability for all losses, injuries or damages arising out of the injury to or death of Decedent, both those now known and those that may be subsequently discovered. This Release shall not be subject to any claim of mistake of fact or law by Releasors. Releasors also fully understand and acknowledge that facts concerning their claims may be found hereafter to be other than or different from the facts they now believe to be true. Releasors expressly accept and assume the risk of any such possible differences in facts and agree that this Release shall remain in full effect notwithstanding any such difference in facts. Releasors waive any rights or benefits conferred by any statute or common law decision with respect to unknown or unsuspected claims . . .

(*Id.* ¶ 8.) This language covers "any and all actions . . . arising out of, or in any way related to the" TWA 800 crash (*id.* ¶ 3), and contemplates the possibility that information may be subsequently discovered related to liability for the crash, and that the facts may turn out to be different than those that were known at the time the releases were signed. "Such language of 'remarkable breadth' makes clear the parties' intent to release all claims, including those of fraudulent inducement." *Consorcio Prodipe*, 544 F. Supp. 2d at 192 (citation omitted); *see also Shapiro v. NFGTV, Inc.*, No. 16-CV-9152, 2018 WL 2127806, at *7 (S.D.N.Y. Feb. 9, 2018) ("The 'clear, broad, and dispositive[ ]' language used in the release agreed to by Plaintiff bars Plaintiff from asserting any claims related to her participation in the Program, including those involving fraud."); *Kalikow*, 589 F. Supp. 3d at 364 ("The references to known and unknown claims, to foreseen or unforeseen claims, and to claims which are contingent and which Plaintiffs 'may have,' combined with the absence of any language excluding fraud claims, plainly reflects the parties' intent that fraud claims would be included in the scope of the release.")[16]

---

[16] The plaintiffs argue that there are "genuine disputes . . . regarding the parties' intent" and that discovery is needed. (ECF No. 220 at 3.) The cases they cite, however, are readily distinguishable, because the agreements did not "clearly evidence" the intent to release liability. *See Doe 1*, 671 F. Supp. 3d at 402 ("Read as a whole, therefore, the Settlement Agreement does not 'clearly evidence' an intent to benefit Deutsche Bank. Thus, the Court finds that Deutsche Bank is not a third-party beneficiary of that

23

## SPA24

The releases also contain unequivocal disclaimers.

> In entering into this Release, Releasers do not rely on any statement or representation made by any Releasee or by any attorney, agent or other person representing any Releasee concerning:
>
> . . .
>
> b. The cause or causes for the Event; or
>
> c. The legal liability of any Releasee for the losses, injuries or damages to Releasors

(*See, e.g.,* ECF No. 187-3 ¶ 9.) The releasors disclaimed reliance on statements or representations regarding the "cause of causes for the Event" and the "legal liability of any Releasee for the losses." *Id.* This disclaimer clearly forecloses the plaintiffs' claim that the defendants fraudulently concealed the true cause of the TWA 800 crash. *See Moore*, 548 F. Supp. 3d at 343. The releases — the subject of which was the TWA 800 crash — also cover the plaintiffs' claim that the defendants fraudulently misled them as to the true cause of the TWA 800 crash. *See Int'l Bus. Machines Corp. v. Simon*, 376 F. Supp. 3d 292, 302 (S.D.N.Y. 2019) (where the "subject of the release" included claims involving "any other matters related to" a software agreement, "alleged understatement of Sales Revenue" related to the agreement was not a "separate fraud"); *O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.*, No. 15-CV-7231, 2016 WL 5376208, at *5 (S.D.N.Y. Sept. 26, 2016) (where the "Credit Agreement release applies to any and all claims relating to the subject matter of the Credit Agreement," the defendant's "alleged

---

agreement, and DB Jane Doe's claims are not barred by it."); *Elias v. Gettry Marcus CPA, P.C.*, No. 17-CV-4066, 2018 WL 3117510, at *4 (S.D.N.Y. June 25, 2018) ("The most natural reading of this language is that the parties intended to release each other and those individuals acting as the *counterparties*' agents, not that the parties intended to release claims against their own agents."). The plaintiffs do not deny that releases are unambiguous, which is a prerequisite to considering extrinsic evidence. *See Solis*, 2021 WL 5998416, at *3. They also argue for the first time in the two years since the defendants brought the releases to the Court's attention that the releases were "[un]authorized or fraudulently signed" and that they need "the complete executed releases" and discovery from their prior counsel. (ECF No. 220 at 5–6.) The plaintiffs offer no factual basis for their conclusory assertions.

promise to make a post-closing purchase price adjustment is not a fraud separate from the subject of the release" (citation modified)).[17]

The plaintiffs, who were represented by counsel when they signed the releases, could have negotiated to include a specific warranty in the releases, but did not. *See Morefun Co. v. Mario Badescu Skin Care Inc.*, No. 13-CV-9036, 2014 WL 2560608, at *5 (S.D.N.Y. June 6, 2014) ("If Plaintiff was concerned about the representations Defendant made prior to the signing of the Settlement Agreement, it could have included a specific warranty in the Settlement Agreement."), *aff'd,* 588 F. App'x 54 (2d Cir. 2014). Ultimately, because the plaintiffs signed general releases that broadly apply to "any and all actions . . . arising out of, or in any way related to the" TWA 800 crash (ECF No. 187-3 ¶ 3), and the plaintiffs have not alleged any fraud separate from the subject of the releases, the plaintiffs' claims are barred.[18]

## CONCLUSION

For these reasons, the defendants' motions to dismiss are granted. The plaintiffs' claims are dismissed.

**SO ORDERED.**

s/Ann M. Donnelly

---

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      March 2, 2026

---

[17] The plaintiffs assert that the Massachusetts District Court already found that they pled "intentional deception," and that there are factual disputes that cannot be resolved at this stage. (ECF No. 196 at 27, 34.) But Judge Kelley decided only whether "interests of justice warrant transfer." (ECF No. 95 at 22.) This is distinct from the issues the Court addresses here.

[18] Because the Court finds that the releases bar this action, the Court does not consider the defendants' other arguments.

# SPA26

**Judgment, dated March 3, 2026 [SPA26]**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
RONALD KRICK, Individually and on Behalf
of the Estate of Oliver Krick; MARGARETA
KRICK; CHRISTOPHER KRICK; DOUGLAS
KEVORKIAN, Individually and on Behalf of
the Estate of Ralph Kevorkian; LISA MICHELSON,
Individually and on Behalf of the Estate of Yonatan
Rojany; ERIC ROJANY; JODELLE GEARON,
Individually and on Behalf of the Estate of Daniel
Gaetke; TODD GAETKE; CRAIG GAETKE;
WANDA KEMP, Individually and on Behalf of
the Estates of O. Lamar Allen and Ashton Allen;
CHRISTINE GROGAN; EILEEN ZAHARIOUDAKIS,
Individually and Behalf of the Estate of Donald Gough;
and MICHAEL DETERESA,

|  |  |
|---|---|
| Plaintiffs, | JUDGMENT |
| v. | 23-CV-8093 (AMD) (JAM) |

RAYTHEON COMPANY; LOCKHEED
MARTIN CORPORATION; UNITED STATES;
and DOES 1 through 20, inclusive,

Defendants.
--------------------------------------------------------X

A Memorandum, Decision, and Order of the Honorable Ann M. Donnelly, United States

District Judge, having been entered on March 2, 2026, granting the defendants' motions to

dismiss; and dismissing the plaintiffs' claims; it is

ORDERED and ADJUDGED that the defendants' motions to dismiss are granted; and the

plaintiffs' claims are dismissed.

Dated: Brooklyn, New York
      March 3, 2026

Brenna B. Mahoney
Clerk of Court

By:   */s/Jalitza Poveda*
      Deputy Clerk

**SPA27**

**Order Denying Plaintiffs' Appeal of Withdrawal Order, dated November 20, 2024 [SPA27-SPA36]**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

RONALD KRICK, individually and on behalf of
the estate of Oliver Krick; **MARGARETA KRICK**;
**CHRISTOPHER KRICK**; **DOUGLAS
KEVORKIAN**, individually and on behalf of the
estate of Ralph Kevorkian; **CRAIG GAETKE**;
**WANDA KEMP**, individually and on behalf of the
estates of O. Lamar Allen and Ashton Allen;
**CHRISTINE GROGAN**; **EILEEN
ZAHARIOUDAKIS**, individually and behalf of the
estate of Donald Gough; **MICHAEL DETERESA**;
**CHARLES HENRY GRAY, IV**; and
**CHADWICK GRAHAM GRAY**,

                              Plaintiffs,

                – against –

**RAYTHEON COMPANY**; **RAYTHEON
TECHNOLOGIES CORPORATION**;
**LOCKEED MARTIN CORPORATION**;
**UNITED STATES MISSILE DEFENSE
AGENCY**; **UNITED STATES DEPARTMENT
OF DEFENSE**; **UNITED STATES NAVY**; **DOES
1 THROUGH 20**; and **UNITED STATES**.

                              Defendants.

----------------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

23-CV-8093 (AMD) (JAM)

**ANN M. DONNELLY**, United States District Judge:

      Before the Court is the plaintiffs'[1] appeal of Magistrate Judge Joseph A. Marutollo's

October 8, 2024 order granting the plaintiffs' former counsel's motion to withdraw.  (ECF No.

155.)[2]  For the reasons discussed below, the plaintiffs' appeal is denied.

---

[1] The moving plaintiffs are Wanda Kemp, Christine Grogan, Eileen Zaharioudakis, Michael Deteresa, Ronald Krick, Margareta Krick, Douglas Kevorkian, and Craig Gaetke.  Although Christopher Krick also appeals Judge Marutollo's decision, the parties represented in an August 15, 2024 status update that Christopher Krick "notified Plaintiffs' counsel that he has terminated their legal representation and has elected to proceed *pro se*."  (ECF No. 144 at 1.)

[2] The defendants have not replied to the plaintiffs' appeal, and the time for doing so has passed.  (*See ECF Order dated Oct. 26, 2024*.)

## BACKGROUND

On June 28, 2022, the plaintiffs, represented by Bailey & Glasser LLP, brought this action against Raytheon Company ("Raytheon"), Lockheed Martin Corporation ("Lockheed Martin"), the United States, and Does 1 through 20, alleging claims for negligence, gross negligence, wrongful death, survivorship, product liability for failure to warn, and manufacturing defect. (ECF No. 33 ¶¶ 105–148.) On June 14, 2024, the plaintiffs' counsel — Todd A. Walburg, Benjamin L. Bailey, Christopher D. Smith, Eric B. Snyder, John J. Roddy, Leslie A. Brueckner, and Scott B. Baez, along with their firm Bailey & Glasser LLP — moved to withdraw because counsel and the plaintiffs had "reached an impasse as to the strategy of the case," and because the plaintiffs' lead counsel, Todd A. Walburg, moved to a new law firm which could not assume the representation. (ECF No. 140 at 2.) The plaintiffs' lawyers do not seek a retaining or charging lien. (*Id.*) Judge Marutollo discussed the motion and the case in general with the parties at conferences on June 24, 2024 and August 22, 2024. (*See Minute Entries dated June 24, 2024 and Aug. 22, 2024.*)[3]

After counsel filed their motion to withdraw, the plaintiffs consistently represented that they were "currently in discussions with potential law firms to appear on their behalf." (*Minute Entry dated June 24, 2024*). They also asked for multiple extensions of time to retain counsel, which Judge Marutollo granted. (*ECF Orders dated July 8, 2024, Aug. 22, 2024.*)

---

[3] At the June 24, 2024 conference, counsel for the government gave a preview of what the defendants planned to argue in their motions to dismiss: "While each of the defendants' motions to dismiss are probably going to be unique . . . all of them will share in common the issue that the plaintiffs released everybody from any possible suit known or unknown in the future in signing these releases in accepting payments from Boeing back in 2000 and 2001. We addressed this issue with the Court back in December. Plaintiffs' counsel is well aware of it." Counsel advised Judge Marutollo that one of the plaintiffs' attorneys "approached" Raytheon's counsel "about his clients offering to voluntarily dismiss their lawsuits in exchange for us, the defendants, not seeking indemnity under the terms of the releases."

2

**SPA29**

On September 10 and 11, 2024, six plaintiffs — Wanda Kemp, Christopher Krick, Ronald Krick, Margareta Krick, Dr. Christine Grogan, and Douglas W. Kevorkian — sent almost identical emails to Judge Marutollo's chambers. Each objected to permitting their lawyers to withdraw as counsel, said that they were "unable to find counsel," and asked Judge Marutollo to order their lawyers to file a "legal brief" written by a "pro bono" attorney. Two of the plaintiffs asked for hearings but did not explain the bases of their objections.

In a comprehensive opinion on October 8, 2024, Judge Marutollo determined that there were "insurmountable differences [] between counsel and client" (ECF No. 152 at 9), and granted the motion to withdraw (*id.* at 14.) Judge Marutollo concluded that the "withdrawal here will not adversely affect the timing of the proceedings" (*id.* at 7) because although the court had set a briefing schedule, "neither dispositive motion practice nor discovery have begun." (*Id.* at 7 (citing *Ghesani v. Trico VIII Petroleum, Inc.*, No. 03-CV-9854, 2005 WL 3117485, at *1 (S.D.N.Y. Nov. 22, 2005); *Farmer v. Hyde Your Eyes Optical*, 60 F. Supp. 3d 441, 446 (S.D.N.Y. 2014) (citations omitted)).) In addition, Judge Marutollo found that "counsel's proffered rationale for withdrawal — that the individual plaintiffs and their counsel 'have reached an impasse as to the strategy of the case' — militates in favor of withdrawal." (ECF No. 152 at 7–8 (quoting ECF No. 140 at 2).) The impasse centered on the viability of the case: whether the terms of the plaintiffs' previous settlement with Boeing, TWA, and Hydro-Aire in the Southern District of New York precluded this lawsuit. (ECF No. 152 at 4 n.3 (citing *In Re Air Crash off Long Island*, No. 96-CV-7986 (S.D.N.Y. Oct. 24, 1996)).)[4] The plaintiffs,

---

[4] Other plaintiffs had already dismissed their claims with prejudice, as Judge Marutollo also observed. (*See* ECF No. 152 at 1 n.1.) At the August 22, 2024 conference, Judge Marutollo advised the plaintiffs to consider withdrawing their claims, given the possibility that the defendants may "move for costs," "as most defendants would after . . . defeating what they consider to be a frivolous motion." (Transcript of Aug. 22, 2024 Status Conference 19:04-06, ECF No. 149.)

3

however, disagreed "as to whether certain documents executed in the course of prior litigation bars Plaintiffs' claims in this litigation." (ECF No. 152 at 9 (citing ECF No. 142 (Defendants' Motion for an Extension of Time to File Motions to Dismiss)).) The plaintiffs "staunchly disagree[d]" with counsel's positions and "voiced a preference for litigating their claims on the merits." (ECF No. 152 at 9.) Moreover, the plaintiffs were "relying on legal advice from an attorney in Oregon," who nevertheless "declined to appear on behalf of the remaining plaintiffs and assume their representation." (*Id.*) Finally, Judge Marutollo cited the plaintiffs' emails to chambers, in which they expressed their disagreement with "counsel's proposed course of action." (*Id*. at 9–10.) These circumstances, Judge Marutollo concluded, "weigh in favor of withdrawal." (*Id*. at 10.)

On October 21, 2024, Stephani Ayers appeared as the plaintiffs' new counsel "solely and strictly" for the purpose of appealing Judge Marutollo's October 8, 2024 order. (ECF No. 154 at 2.)[5] On appeal, the plaintiffs claim that Judge Marutollo did not "elaborat[e] on the nature of the impasse, the specific strategies in contention, or how this disagreement materially affects counsel's ability to effectively represent the plaintiffs," that there was "no evidence presented detailing any communication breakdown or the efforts made to resolve disagreements with the plaintiffs." (ECF No. 155 at 7.)

## DISCUSSION

Pursuant to 28 U.S.C. § 636(b), "a judge may designate a magistrate judge to hear and

---

[5] A lawyer from Ms. Ayers's firm, Guyer & Ayers, sent the plaintiff's lawyers a "lengthy document, stamped 'DRAFT ONLY,' [and] titled 'Plaintiffs' Opposition to Motion to Withdraw,'" which the plaintiffs wanted counsel submit to Judge Marutollo. (ECF No. 150 at 1.) Presumably, this is the "legal brief" to which the plaintiffs referred in their emails to Judge Marutollo. Ms. Ayers and other lawyers at her firm have emphasized that they will not represent the plaintiffs on the substantive litigation; they seek only to compel previous counsel to represent the plaintiffs. Ms. Ayers does not explain why she did not file a notice of appearance on the case while Judge Marutollo was considering the motion to withdraw.

**SPA31**

determine any pretrial matter pending before the court" with or without the consent of the parties. *See Gonzalez v. Rakkas*, 846 F. Supp. 229, 231 (E.D.N.Y. 1994) (citing *Brown v. Univ. Heights Mgmt. Co.*, No. 93-CV-4588, 1993 WL 385733, at *2 (S.D.N.Y. Sept. 28, 1993) (consent of parties not required for reference under 28 U.S.C. § 636(b))). Judge Marutollo, an eminently able jurist, has been designated to oversee the pretrial matters in this case. This designation does not require the plaintiffs' consent.

A district judge must "modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law." Fed. R. Civ. Proc. 72(a); *see* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). An order is "clearly erroneous if, based on all the evidence, a reviewing court 'is left with the definite and firm conviction that a mistake has been committed,'" *Storms v. United States*, No. 13-CV-811, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)), and "is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure," *Weiner v. McKeefery*, No. 11-CV-2254, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014) (citation omitted). Rule 72(a) provides "a highly deferential standard of review" and "imposes a heavy burden on the objecting party." *Regan v. Daimler Chrysler Corp.*, No. 07-CV-1112, 2008 WL 2795470, at *1 (E.D.N.Y. July 18, 2008) (citation omitted).

As an initial matter, there is no merit to the plaintiffs' claim that the motion to withdraw "under circumstances where the plaintiffs oppose the withdrawal and would be left without representation[] is a dispositive matter requiring de novo review." (ECF No. 155 at 3.) In fact, the decision to permit an attorney to withdraw is non-dispositive and discretionary. *See, e.g.*,

5

*Wagner Farm Props., LLC v. Tri-State Solarcrete, LLC*, No. 09-CV-485, 2010 WL 11541929, at *1 (N.D.N.Y. Dec. 6, 2010) (recognizing that an order on a motion to withdraw as attorney is a non-dispositive order "to be modified or set aside by the district judge assigned to the case only where 'the magistrate judge's order [is] found to be clearly erroneous or contrary to law.'" (citing Fed. R. Civ. P. 72(a))); *Nielsen v. N.Y.C. Dep't of Educ.*, No. 04-CV-2182, 2007 WL 1987792, at *2 (E.D.N.Y. July 5, 2007) (finding that the magistrate judge's order granting a "motion to withdraw as counsel for Plaintiff was reasonable and not clearly erroneous" where the attorney could "no longer effectively communicate with [the plaintiff]" and the plaintiff threatened the attorney and hindered the attorney's ability to conduct discovery).  That analysis does not change simply because the plaintiffs have been unable to find new counsel.  As Judge Marutollo observed, "Plaintiffs' failure to locate successor counsel does not warrant a denial of counsel's motion to withdraw."  (ECF No. 152 at 10 (citing *Karimian v. Time Equities, Inc.*, No. 10-CV-3773, 2011 WL 1900092, at *3 (S.D.N.Y May 11, 2011 ("[A]lthough [the client] may face hurdles obtaining replacement counsel, this difficulty does not tip the scales in favor of denying the motion[.]" (record citation omitted))).)

Withdrawal of counsel is governed by Local Civil Rule 1.4, which provides:

> An attorney who has appeared as attorney of record for a party . . . may not withdraw from a case without leave of the court granted by order.  Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar, and whether or not the attorney is asserting a retaining or charging lien.

Local Civ. R. 1.4.[6]

---

[6] As Judge Marutollo noted, the Local Civil Rules in effect as of October 15, 2021 are the applicable rules.  (ECF No. 152 at 6 n.4.)

"Hostility or irreconcilable differences between the attorney and the client are sufficient to warrant a withdrawal." *Nielsen*, 2007 WL 1987792, at *1 (citation omitted); *see also Gatsby Yacht Grp., LLC v. M/Y "EAST BOUND & DOWN*," No. 18-CV-4242, 2020 WL 13581726, at *1 (E.D.N.Y. Oct. 16, 2020) ("[C]ourts within this district have consistently held that, while Local Rule 1.4 requires a court order to withdraw, when a party agrees to terminate counsel, the order to withdraw should issue except under the most compelling circumstances." (citation omitted)).

Significantly, the plaintiffs do not deny that the attorney-client relationship had broken down, nor could they do so persuasively. Indeed, the disagreement at issue here was fundamental: the feasibility of continuing the litigation. The plaintiffs claim, however, that Judge Marutollo had no authority to grant the application because counsel did not also file an affidavit. (*See* ECF No. 155 at 9–10 ("An application for withdrawal 'must be supported by an affidavit and a showing of satisfactory reasons sufficient to constitute cause for withdrawal.'" (quoting *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 657 B.R. 382, 387–88 (Bankr. S.D.N.Y. 2024))) (internal quotation marks and citation omitted).) The plaintiffs did not make this objection to Judge Marutollo. In any event, this Court's Local Rules, in effect at the time of the motion, permit a court to grant a motion to withdraw "upon a showing by affidavit *or otherwise* of satisfactory reasons for withdrawal." Local Civ. R. 1.4 (emphasis added). The information that Judge Marutollo had — counsel's motion, the discussions at court appearances, and the plaintiffs' representations about the state of the attorney-client relationship — provided "satisfactory reasons for withdrawal," and no affidavit was necessary. *See*, *e.g.*, *Delgado v. Donald J. Trump for President, Inc.*, No. 19-CV-11764, 2023 WL 8759834, at *2 (S.D.N.Y. Dec. 19, 2023) (finding "fundamental disagreements[] including

regarding legal strategy" in attorney-client relationship based on the motion to withdraw, plaintiffs' *ex parte* email and letter objecting to withdrawal, and representations during an *ex parte* conference).

In their motion, the plaintiffs' attorneys explained that they had "reached an impasse as to the strategy of the case," and that the lead attorney, Todd A. Walburg, was "moving to a new law firm . . . that is not able to take on the representation." (ECF No. 140 at 2.) At the June 24, 2024 conference, which the plaintiffs attended, the plaintiffs' counsel reiterated "that they attempted to outline their hesitation to their clients." (ECF No. 152 at 9.) The plaintiffs did not object or claim that counsel needed to provide more detail at that point. Nor did they object on any ground when Judge Marutollo asked at the August 22, 2024 conference whether the plaintiffs had anything to say about the motion to withdraw, including the potential consequences if he were to grant the motion.[7] (*See, e.g.*, Transcript of Aug. 22, 2024 Status Conference 18:20–19:12, ECF No. 149 ("[THE COURT:] The Court . . . is inclined to grant th[e] motion[ to withdraw]. When that happens, the plaintiffs need to keep in mind that their claims may inherently be extinguished . . . So I don't know if there's any thoughts here from any of the pro se plaintiffs about what I'm discussing.").) Dr. Christine Grogan stated only that she was surprised that plaintiffs' counsel were seeking to withdraw. (*Id.* 20:13-24 ("DR. GROGAN: . . . [T]he Federal Court in Boston . . . the judge there felt . . . there was room for this to be relooked upon. And so we believed our counsel was all in based on this conversation, so it was quite a surprise for the withdrawal.").)[8]

---

[7] This portion of the record refutes the plaintiffs' assertion that Judge Marutollo did not give them a chance to object to the motion to withdraw.

[8] Judge Marutollo granted multiple extensions of time to permit the plaintiffs to retain new counsel. (*See* ECF Orders dated July 8, 2024, Aug. 22, 2024.)

**SPA35**

In fact, the plaintiffs confirmed the breakdown of the relationship. Significantly, as Judge Marutollo noted, the plaintiffs were "relying on legal advice from an attorney in Oregon" rather than their own counsel (ECF No. 152 at 9), which standing alone, is evidence that the attorney client relationship had deteriorated. It was apparently that "legal advice" that prompted the plaintiffs to email their objections to Judge Marutollo. Indeed, in those emails, the plaintiffs asked that the judge order their lawyers to do something the lawyers had already declined to do: file a brief written by other lawyers who are not admitted in this District, had not filed a notice of appearance, and have specified that they will not represent the plaintiffs on the underlying case.[9] The plaintiffs do not cite the legal basis upon which Judge Marutollo could have issued such an order, nor can the Court discern one, but the fact that the plaintiffs wanted Judge Marutollo to interfere in their relationship with their lawyers demonstrates a breakdown of the relationship.

Under these circumstances, Judge Marutollo's decision to permit counsel to withdraw was reasonable, and indeed the only rational conclusion to be drawn from this record. *See Naguib v. Pub. Health Sols.*, No. 12-CV-2561, 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014) (granting motion to withdraw as attorney where "[b]oth [the attorney's] motion and plaintiff's opposition reflect that the attorney-client relationship has broken down"). This Court will not disturb that thoughtful and well-reasoned decision on appeal.[10]

---

[9] The plaintiffs fault Judge Marutollo because he did not consider this brief, but do not cite any legal basis for him to have done so or explain why current counsel could not have filed a notice of appearance and represented the plaintiffs at that point.

[10] The plaintiffs raise numerous other objections, including that prior counsel violated the Rules of Professional Responsibility, that they had a "fiduciary duty" to continue representing the plaintiffs and that their contract with the plaintiffs did not permit withdrawal. (ECF No. 155 at 12–14.) The plaintiffs did not make these claims to Judge Marutollo, so the Court declines to address them, except to say that they do not appear to have merit.

**SPA36**

## CONCLUSION

The plaintiffs' appeal of Judge Marutollo's October 8, 2024 order granting the motion to withdraw is denied.

**SO ORDERED.**

s/Ann M. Donnelly

———————————————
ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
        November 20, 2024

# SPA37

**Notice of Appeal, dated April 30, 2026  [SPA36-SPA37]**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RONALD KRICK, et al.,

      Plaintiffs-Appellants,

v.

RAYTHEON COMPANY, et al.,

      Defendants-Appellees.

**Case No. 1:23-cv-08093-AMD-JAM**

## NOTICE OF APPEAL

Notice is hereby given that Plaintiffs Ronald Krick, Christine Grogan, Eileen Zaharioudakis, Michael Deteresa, Margareta Krick, Christopher Krick, Wanda Kemp, Douglas Kevorkian, Craig Gaetke, and all other Plaintiffs in the above-entitled action hereby appeal to the United States Court of Appeals for the Second Circuit from the following judgments and orders of the United States District Court for the Eastern District of New York:

The Judgment - Clerk (Dkt. No. 228), entered on March 3, 2026, following the Court's March 2, 2026 order on the motions to dismiss.

The ORDER as to 155 Appeal of Magistrate Judge Decision (Dkt. No. 159), entered on November 20, 2024, by the Honorable Ann M. Donnelly, denying Plaintiffs' appeal of Magistrate Judge Joseph A. Marutollo's October 8, 2024 order granting the motion to withdraw.

**SPA38**

Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(B), the appeal period is sixty

(60) days because the United States, or an officer or agency thereof, is a party to this action.

Dated: April 30, 2026                    Respectfully submitted,

T. M. Guyer and Ayers & Friends PC

/s/ Thad M. Guyer
Thad M. Guyer
T. M. Guyer and Ayers & Friends PC
thad@guyerayers.com
(206) 535-2395
Counsel for Plaintiffs

### CERTIFICATE OF SERVICE

I certify that on April 30, 2026, I electronically filed the foregoing Notice of Appeal with the

Clerk of the Court by using the CM/ECF system, and that all participants in the case are

registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Thad M. Guyer
Thad M. Guyer