# 26-1225

## United States Court of Appeals
## for the Second Circuit



RONALD KRICK, Individually and on Behalf of the Estate of Oliver Krick, MARGARETA KRICK, CHRISTOPHER KRICK, DOUGLAS KEVORKIAN, Individually and on Behalf of the Estate of Ralph Kevorkian, CHRISTINE GROGAN, EILEEN ZAHARIOUDAKIS, Individually and Behalf of the Estate of Donald Gough, MICHAEL DETERESA, CHARLES HENRY GRAY IV, CHADWICK GRAHAM GRAY, CRAIG GAETKE, WANDA KEMP, Individually and on Behalf of the Estates of O. Lamar Allen and Ashton Allen,

*Plaintiffs-Appellants,*

LISA MICHELSON, Individually and on Behalf of the Estate of Yonatan Rojany, ERIC ROJANY, JODELLE GEARON, Individually and on Behalf of the Estate of Daniel Gaetke, TODD GAETKE,

*Plaintiffs,*

v.

RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION, LOCKHEED MARTIN CORPORATION, UNITED STATES MISSILE DEFENSE AGENCY, UNITED STATES DEPARTMENT OF DEFENSE, UNITED STATES NAVY, UNITED STATES OF AMERICA,

*Defendants-Appellees,*

DOES 1 THROUGH 20,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## JOINT APPENDIX
## VOLUME I OF II (PAGES JA1-JA290)

T.M. GUYER AND
AYERS & FRIENDS, PC
*Attorneys for Plaintiffs-Appellants*
P.O. Box 1061
Medford, Oregon 97501
(202) 227-3590
*thad@guyerayers.com*

**DICK BAILEY**
EST. 1966
www.dickbailey.com

# TABLE OF CONTENTS

*Page(s)*

U.S. District Court Docket Sheet .................................................................. JA1-JA58

First Amended Complaint, dated September 19, 2022 .............................. JA59-JA97

Amended Complaint (operative), dated November 17,
2022 ........................................................................................................... JA98-JA135

Memorandum of Law of the United States in Support of
Motion to Dismiss (April round), dated April 1, 2025 .......................... JA136-JA185

Memorandum of Law in Support of Motion to Dismiss
(April round), dated April 1, 2025 ......................................................... JA186-JA243

Memorandum of Law in Support of Motion to Dismiss,
dated April 1, 2025 ................................................................................. JA244-JA281

Declaration in Support of Motion to Dismiss (April
round), dated April 1, 2025 .................................................................... JA282-JA284

Declaration in Support of Motion to Dismiss, dated April
1, 2025 .................................................................................................... JA285-JA289

Exhibit B to Declaration - Stipulations of Dismissal, TWA
800 MDL, dated April 1, 2025 ............................................................... JA290-JA314

Exhibit C to Declaration - Krick General Release, dated
April 1, 2025 .......................................................................................... JA315-JA323

Exhibit D to Declaration - A. Allen General Release, dated
April 1, 2025 .......................................................................................... JA324-JA332

i

*Table of Contents(cont'd)* *Page(s)*

Exhibit E to Declaration - O. Lamar Allen General
Release (1), dated April 1, 2025 ............................................................... JA333-JA341

Exhibit F to Declaration - O. Lamar Allen General
Release (2), dated April 1, 2025 ............................................................... JA342-JA348

Exhibit G to Declaration - Gaetke General Release, dated
April 1, 2025 ........................................................................................... JA349-JA357

Exhibit H to Declaration - Gough General Release, dated
April 1, 2025 ........................................................................................... JA358-JA378

Exhibit I to Declaration - Kevorkian General Release,
dated April 1, 2025 .................................................................................. JA379-JA387

Plaintiffs' Combined Opposition to Motions to Dismiss
(corrected), dated July 29, 2025 .............................................................. JA388-JA437

Letter to the Court re Opposition Filing, dated August 11,
2025 ......................................................................................................... JA438-JA439

Notice of Errata to Plaintiffs' Combined Opposition, dated
August 12, 2025 ....................................................................................... JA440-JA442

Declaration of Brasington in Support of Motion to
Dismiss, dated December 15, 2025 ......................................................... JA443-JA450

Exhibit to Motion - Probate Court Order, dated December
15, 2025 ........................................................................................................... JA451

Exhibit to Motion - Chadwick Gray General Release,
dated December 15, 2025 ......................................................................... JA452-JA459

ii

*Table of Contents(cont'd)* *Page(s)*

Exhibit to Motion - Charles Gray General Release, dated
December 15, 2025 ................................................................................ JA460-JA467

Declaration of Dronberger in Support of Motion to
Dismiss, dated December 15, 2025.......................................................... JA468-JA469

Plaintiffs' Memorandum of Law in Opposition to Motions
to Dismiss, dated January 13, 2026.......................................................... JA470-JA483

Declaration in Support of Request for Limited Discovery,
dated January 13, 2026............................................................................ JA484-JA490

iii

# JA1

## U.S. District Court Docket Sheet [JA1-JA58]

CM/ECF

- Query
- Reports
- Utilities
- Help
- Log Out

APPEAL,CASREF,DECLINED-CONSENT,MAGAPP,MJI

**U.S. District Court**
**Eastern District of New York (Brooklyn)**
**CIVIL DOCKET FOR CASE #: 1:23-cv-08093-AMD-JAM**

Krick et al v. Raytheon Company et al
Assigned to: Judge Ann M Donnelly
Referred to: Magistrate Judge Joseph A. Marutollo
Case in other court: Massachusetts, 1:22-cv-11032
Cause: 28:2671 Federal Tort Claims Act

Date Filed: 10/19/2023
Date Terminated: 03/03/2026
Jury Demand: Plaintiff
Nature of Suit: 315 Airplane Product
Liability
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Ronald Krick**
1003 Hemingway Ln.
Weldon Spring, MO 63304
314-494-7479
*Individually and on Behalf of the Estate of*
*Oliver Krick*

represented by **Benjamin L. Bailey**
Bailey & Glasser LLP
209 Capitol Street
Charleston, SC 25301
304-345-6555
Email: bbailey@baileyglasser.com
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
Bailey & Glasser LLP
209 Capitol Street
Charleston, SC 25301
304-345-6555
Fax: 304-342-1110
Email: csmith@baileyglasser.com
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
Bailey & Glasser, LLP
209 Capitol Street
25301
Charleston, WV 25301
304-345-6555

**JA2**

Fax: 304-342-1110
Email: esnyder@baileyglasser.com
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
Bailey & Glasser LLP
176 Federal Street
5th Floor
Boston, MA 02110
617-439-6730
Fax: 617-951-3954
Email: jroddy@baileyglasser.com
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
Berle Kass & Case
45 Rockfeller Plaza
New York, NY 10111
212 765-1000
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
Bailey & Glasser LLP
1999 Harrison Street
Suite 660
Oakland, CA 94612
510-272-8000
Fax: 510-463-0291
Email: sbaez@baileyglasser.com
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
T.M. Guyer and Ayers & Friends, PC
Pob 1061
Medford, OR 97501
813-382-7865
Email:
stephani@whistleblowerdefenders.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**

# JA3

McCune Law Group, APC
3281 E. Guasti Road
Suite 100
Ontario, CA 91761
909-557-1250
Fax: 909-557-1275
Email: taw@mccunewright.com
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
Cutter Law, P.C.
401 Watt Avenue
Sacramento, CA 95864
916-290-9400
Fax: 916-588-9330
Email: twalburg@cutterlaw.com
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
T.M. Guyer & Friends, PC
116 Mistletoe Street
P O Box 1061
Medford, OR 97501
206-941-2869
Email: thad@guyerayers.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Margareta Krick**
3403 Sun Bear Ct.
Wentzville, MO 63387
(636) 327-0512

represented by **Benjamin L. Bailey**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

# JA4

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Krick**
D-103
2651 Citrus Lake Drive
Naples, FL 34109
(314) 518-8210

represented by **Benjamin L. Bailey**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**

**JA5**

(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**

**JA6**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Douglas Kevorkian**
601
12 An Thuong
Da Nang 550000
Vietnam
(747) 218-8308
*Individually and on Behalf of the Estate of*
*Ralph Kevorkian*

represented by

**Benjamin L. Bailey**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*

# JA7

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lisa Michelson**                                    represented by   **Benjamin L. Bailey**
*Individually and on Behalf of the Estate of*                         (See above for address)
*Yonatan Rojany*                                                      *TERMINATED: 10/08/2024*
*TERMINATED: 09/01/2024*                                              *LEAD ATTORNEY*
                                                                     *PRO HAC VICE*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Christopher D. Smith**
                                                                     (See above for address)
                                                                     *TERMINATED: 10/08/2024*
                                                                     *LEAD ATTORNEY*
                                                                     *PRO HAC VICE*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Eric B. Snyder**
                                                                     (See above for address)
                                                                     *TERMINATED: 10/08/2024*
                                                                     *LEAD ATTORNEY*
                                                                     *PRO HAC VICE*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **John J. Roddy**
                                                                     (See above for address)
                                                                     *TERMINATED: 10/08/2024*
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Leslie A. Brueckner**
                                                                     (See above for address)
                                                                     *TERMINATED: 10/08/2024*
                                                                     *LEAD ATTORNEY*
                                                                     *PRO HAC VICE*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Scott B. Baez**
                                                                     (See above for address)
                                                                     *TERMINATED: 10/08/2024*
                                                                     *LEAD ATTORNEY*

**JA8**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eric Rojany**
*TERMINATED: 05/17/2024*

represented by **Benjamin L. Bailey**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**

**JA9**

(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jodelle Gearon**
*Individually and on Behalf of the Estate of Daniel Gaetke*
*TERMINATED: 05/17/2024*

represented by **Benjamin L. Bailey**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*

# JA10

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Todd Gaetke**                          represented by     **Benjamin L. Bailey**
*TERMINATED: 05/17/2024*                                    (See above for address)
                                                            *TERMINATED: 10/08/2024*
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Christopher D. Smith**

# JA11

(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

# JA12

**Plaintiff**

**Craig Gaetke**
236
11184 Antioch Road
Overland Park, KS 66210
913-325-5344

represented by **Benjamin L. Bailey**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

# JA13

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wanda Kemp**                                  represented by   **Benjamin L. Bailey**
913 Big Oak Circle                                              (See above for address)
Augusta, GA 30907                                              *TERMINATED: 10/08/2024*
(706) 306-1900                                                 *LEAD ATTORNEY*
*Individually and on Behalf of the Estates of*                 *PRO HAC VICE*
*O. Lamar Allen and Ashton Allen*                              *ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

# JA14

**Stephani Ayers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christine Grogan**                                   represented by    **Benjamin L. Bailey**
105 Fawn Drive                                                          (See above for address)
Shavano Park, TX 78231                                                  *TERMINATED: 10/08/2024*
(917) 617-0141                                                          *LEAD ATTORNEY*
                                                                        *PRO HAC VICE*
                                                                        *ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)

**JA15**

*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eileen Zaharioudakis**
110 Park Lane
Sonoma, CA 95476
(707) 280-3222
*Individually and Behalf of the Estate of*
*Donald Gough*

represented by **Benjamin L. Bailey**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)

*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Deteresa**                    represented by    **Benjamin L. Bailey**
7 Livingston Ave.                                         (See above for address)
Apt. 1702                                                *TERMINATED: 10/08/2024*
                                                         *LEAD ATTORNEY*

**JA17**

New Brunswick, NJ 08901
(732) 853-7933

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*

**JA18**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles Henry Gray, IV**                    represented by    **Benjamin L. Bailey**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*

# JA19

*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chadwick Graham Gray**                    represented by   **Benjamin L. Bailey**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher D. Smith**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric B. Snyder**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John J. Roddy**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott B. Baez**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*

**JA20**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd Alan Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephani Ayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thad M Guyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd A. Walburg**
(See above for address)
*TERMINATED: 10/08/2024*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Raytheon Company**                    represented by    **Jonathan I. Handler**
Day Pitney LLP
One Federal Street
29th Floor
Boston, MA 02110
617-345-4734
Email: jihandler@daypitney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael K. Lane**
Day Pitney LLP
One Federal Street
Suite 2900
Boston, MA 02110
617-345-4624
Email: mlane@daypitney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tara E. Nicola**
Fitzpatrick, Hunt & Pagano, LLP
12 E. 49th Street
Ste 31st Floor
New York, NY 10017
212-937-4000
Email: tara.nicola@fitzhunt.com
*TERMINATED: 08/27/2024*

**JA21**

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ralph Vincent Pagano**
Fitzpatrick & Hunt, Tucker, Collier
Pagano, Aubert LLP
Tower 49, Twelve East 49th St. 31st Fl.
New York, NY 10017
212-937-4000
Fax: 212-937-4050
Email: ralph.pagano@fitzhunt.com
*ATTORNEY TO BE NOTICED*

**Tara Elizabeth Nicola**
Fitzpatrick & Hunt, Tucker, Collier,
Pagano, Aubert LLP
12 East 49th Street
31st Floor
New York, NY 10017
(212)937-4026
Fax: (212)937-4050
Email: tara.nicola@fitzhunt.com
*TERMINATED: 08/27/2024*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Raytheon Technologies Corporation**          represented by   **Jonathan I. Handler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael K. Lane**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tara E. Nicola**
(See above for address)
*TERMINATED: 08/27/2024*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shane Nichols**
Fitzpatrick, Hunt & Pagano, LLP
10 South LaSalle Street
Suite 3400
Chicago, IL 60603
312-728-4902
Email: shane.nichols@fitzhunt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

# JA22

**Lockheed Martin Corporation**                    represented by  **David A. Frank II**
Wilson Elser Moskowitz Edelman &
Dicker, LLP
555 E. Wells Street
Suite 1730
Milwaukee, WI 53202
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John P. Loringer**
Wilson Elser Moskowitz Edelman &
Dicker
555 E. Wells Street
Suite 1730
Milwaukee, WI 53202
414-292-3019
Fax: 414-276-8819
Email: john.loringer@wilsonelser.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn A Grace**
Wilson, Elser
8444 Westpark Drive, Suite 510
McLean, VA 22102
703-245-9300
Email: kathryn.grace@wilsonelser.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William T. Bogaert**
Wilson, Elser, Moskowitz, Edelman &
Dicker LLP
260 Franklin Street
14th Floor
Boston, MA 02110-4737
617-422-5300
Fax: 617-423-6917
Email: William.Bogaert@WilsonElser.com
*TERMINATED: 11/14/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William J. Katt**
Wilson Elser Moskowitz Edelman &
Dicker LLP
555 East Wells St.
Suite 1730
Milwaukee, WI 53202
414-276-8816
Email: william.katt@wilsonelser.com
*(Inactive)*

**JA23**

*TERMINATED: 01/20/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A Frank , II**
Wilson Elser Moskowitz Edelman &
Dicker
555 E. Wells Street
Ste 1730
Milwaukee, WI 53202
414-276-8816
Fax: 414-276-8819
Email: david.frank@wilsonelser.com
*ATTORNEY TO BE NOTICED*

**John Kelly**
Wilson Elser Moskowitz Edelman &
Dicker LLP
150 E 42nd Street
New York, NY 10017
212-915-5848
Fax: 212-490-3038
Email: john.p.kelly@wilsonelser.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Missile Defense Agency**     represented by   **Rayford A. Farquhar**
United States Attorney's Office
John Joseph Moakley Federal Courthouse
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3100
Fax: 617-748-3971
Email: rayford.farquhar@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of Defense**     represented by   **Rayford A. Farquhar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Navy**     represented by   **Rayford A. Farquhar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1 through 20**

# JA24

**Defendant**

**United States**                                        represented by **Rayford A. Farquhar**
(See above for address)
*TERMINATED: 11/14/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Kelly , III**
DOJ-Civ
Torts Branch
P.O. Box 14271
Washington, DC 20044-4271
202-616-4031
Email: robert.kelly@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert E. Kelly**
United States Department of Justice
P.O. Box 14271
Washington, DC 20044-4271
202-616-4031
Email: robert.kelly@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Artemis Lekakis**
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820
(718) 254-6096
Fax: (718) 254-6081
Email: Artemis.Lekakis@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Emma K. Hildebrand**
DOJ-Civ
Aviation, Space & Admiralty
170 N St NE
Washington, DC 20002
202-305-9300
Email: emma.hildebrand@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Jill Rosa**
DOJ-Civ
Aviation, Space & Admiralty Litigation
PO Box 14271
Washington, DC 20044-4271
202-307-2013
Fax: 202-616-4002
Email: jill.rosa@usdoj.gov
*ATTORNEY TO BE NOTICED*

# JA25

**Thomas M Brown**
DOJ-Civ
Civil Division, T-ASA
175 N St NE
8th Floor
Washington, DC 20002
202-616-4036
Email: tmbrown@simmsshowers.com
*TERMINATED: 06/12/2026*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/28/2022 | 1 | COMPLAINT against All Defendants Filing fee: $ 402, receipt number AMADC-9388788 (Fee Status: Filing Fee paid), filed by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Civil Cover Sheet, # 2 Category Form) (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 06/28/2022) |
| 06/28/2022 | 2 | ELECTRONIC NOTICE of Case Assignment. Judge George A. OToole, Jr assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Jennifer C. Boal. (Finn, Mary) [Transferred from Massachusetts on 10/30/2023.] (Entered: 06/28/2022) |
| 06/28/2022 | 3 | Summons Issued as to All Defendants. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Geraldino-Karasek, Clarilde) [Transferred from Massachusetts on 10/30/2023.] (Entered: 06/28/2022) |
| 06/30/2022 | 4 | Judge George A. OToole, Jr: ELECTRONIC ORDER entered. Pursuant to 28 USC sec. 455(b)(4), I recuse myself from participation in this matter and direct the Clerk forthwith to reassign the case randomly to another District Judge.(Lyness, Paul) [Transferred from Massachusetts on 10/30/2023.] (Entered: 06/30/2022) |
| 06/30/2022 | 5 | ELECTRONIC NOTICE of Reassignment. District Judge Angel Kelley added. Judge George A. OToole, Jr no longer assigned to case. (Finn, Mary) [Transferred from Massachusetts on 10/30/2023.] (Entered: 06/30/2022) |
| 09/19/2022 | 6 | AMENDED COMPLAINT against All Defendants, filed by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis, Charles Henry Gray, IV, Chadwick Graham Gray. (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 09/19/2022) |
| 09/23/2022 | 7 | AFFIDAVIT OF SERVICE Executed by Christine Grogan, Jodelle Gearon, Margareta Krick, Ronald Krick, Michael Deteresa, Eric Rojany, Christopher Krick, Craig Gaetke, Eileen Zaharioudakis, Charles Henry Gray, IV, Todd Gaetke, Douglas Kevorkian, Chadwick Graham Gray, Wanda Kemp, Lisa Michelson. Lockheed Martin Corporation served on 9/20/2022, answer due 10/11/2022. Acknowledgement filed by Christine Grogan; Jodelle Gearon; Margareta Krick; Ronald Krick; Michael Deteresa; Eric Rojany; Christopher Krick; Craig Gaetke; Eileen Zaharioudakis; Charles Henry Gray, IV; Todd Gaetke; Douglas Kevorkian; Chadwick Graham Gray; Wanda Kemp; Lisa |

# JA26

| | | |
|---|---|---|
| | | Michelson. (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 09/23/2022) |
| 09/23/2022 | 8 | AFFIDAVIT OF SERVICE Executed by Christine Grogan, Jodelle Gearon, Margareta Krick, Ronald Krick, Michael Deteresa, Eric Rojany, Christopher Krick, Craig Gaetke, Eileen Zarioudakis, Charles Henry Gray, IV, Todd Gaetke, Douglas Kevorkian, Chadwick Graham Gray, Wanda Kemp, Lisa Michelson. Raytheon Technologies Corporation served on 9/20/2022, answer due 10/11/2022. Acknowledgement filed by Christine Grogan; Jodelle Gearon; Margareta Krick; Ronald Krick; Michael Deteresa; Eric Rojany; Christopher Krick; Craig Gaetke; Eileen Zarioudakis; Charles Henry Gray, IV; Todd Gaetke; Douglas Kevorkian; Chadwick Graham Gray; Wanda Kemp; Lisa Michelson. (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 09/23/2022) |
| 09/23/2022 | 9 | AFFIDAVIT OF SERVICE Executed by Christine Grogan, Jodelle Gearon, Margareta Krick, Ronald Krick, Michael Deteresa, Eric Rojany, Christopher Krick, Craig Gaetke, Eileen Zarioudakis, Charles Henry Gray, IV, Todd Gaetke, Douglas Kevorkian, Chadwick Graham Gray, Wanda Kemp, Lisa Michelson. United States Department of Defense served on 9/20/2022, answer due 10/11/2022. Acknowledgement filed by Christine Grogan; Jodelle Gearon; Margareta Krick; Ronald Krick; Michael Deteresa; Eric Rojany; Christopher Krick; Craig Gaetke; Eileen Zarioudakis; Charles Henry Gray, IV; Todd Gaetke; Douglas Kevorkian; Chadwick Graham Gray; Wanda Kemp; Lisa Michelson. (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 09/23/2022) |
| 09/23/2022 | 10 | AFFIDAVIT OF SERVICE Executed by Christine Grogan, Jodelle Gearon, Margareta Krick, Ronald Krick, Michael Deteresa, Eric Rojany, Christopher Krick, Craig Gaetke, Eileen Zarioudakis, Charles Henry Gray, IV, Todd Gaetke, Douglas Kevorkian, Chadwick Graham Gray, Wanda Kemp, Lisa Michelson. United States Missile Defense Agency served on 9/22/2022, answer due 10/13/2022. Acknowledgement filed by Christine Grogan; Jodelle Gearon; Margareta Krick; Ronald Krick; Michael Deteresa; Eric Rojany; Christopher Krick; Craig Gaetke; Eileen Zarioudakis; Charles Henry Gray, IV; Todd Gaetke; Douglas Kevorkian; Chadwick Graham Gray; Wanda Kemp; Lisa Michelson. (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 09/23/2022) |
| 09/23/2022 | 11 | AFFIDAVIT OF SERVICE Executed by Christine Grogan, Jodelle Gearon, Margareta Krick, Ronald Krick, Michael Deteresa, Eric Rojany, Christopher Krick, Craig Gaetke, Eileen Zarioudakis, Charles Henry Gray, IV, Todd Gaetke, Douglas Kevorkian, Chadwick Graham Gray, Wanda Kemp, Lisa Michelson. United States Navy served on 9/21/2022, answer due 10/12/2022. Acknowledgement filed by Christine Grogan; Jodelle Gearon; Margareta Krick; Ronald Krick; Michael Deteresa; Eric Rojany; Christopher Krick; Craig Gaetke; Eileen Zarioudakis; Charles Henry Gray, IV; Todd Gaetke; Douglas Kevorkian; Chadwick Graham Gray; Wanda Kemp; Lisa Michelson. (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 09/23/2022) |
| 09/26/2022 | 12 | AFFIDAVIT OF SERVICE Executed by Christine Grogan, Jodelle Gearon, Margareta Krick, Ronald Krick, Michael Deteresa, Eric Rojany, Christopher Krick, Craig Gaetke, Eileen Zarioudakis, Charles Henry Gray, IV, Todd Gaetke, Douglas Kevorkian, Chadwick Graham Gray, Wanda Kemp, Lisa Michelson. Raytheon Company served on 9/20/2022, answer due 10/11/2022. Acknowledgement filed by Christine Grogan; Jodelle Gearon; Margareta Krick; Ronald Krick; Michael Deteresa; Eric Rojany; Christopher Krick; Craig Gaetke; Eileen Zarioudakis; Charles Henry Gray, IV; Todd Gaetke; Douglas Kevorkian; Chadwick Graham Gray; Wanda Kemp; Lisa Michelson. (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 09/26/2022) |

# JA27

| | | |
|---|---|---|
| 10/07/2022 | 13 | Assented to MOTION for Extension of Time to November 10, 2022 to Respond to Plaintiff's Amended Complaint by Lockheed Martin Corporation.(Bogaert, William) Modified ECF event on 10/11/2022 (Pacho, Arnold). [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/07/2022) |
| 10/11/2022 | 14 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** Lockheed's 13 Assented to MOTION for Extension of Time to November 10, 2022 to Respond to 6 Plaintiff's Amended Complaint. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/11/2022) |
| 10/11/2022 | 15 | Assented to MOTION for Extension of Time to File Response/Reply as to 6 Amended Complaint, *with Local Rule 7.1(a)(2) Certificate of Compliance and Certificate of Service* by Raytheon Company, Raytheon Technologies Corporation.(Handler, Jonathan) [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/11/2022) |
| 10/11/2022 | 16 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** re 15 Assented to MOTION for Extension of Time to File Response/Reply as to 6 Amended Complaint, with Local Rule 7.1(a)(2) Certificate of Compliance and Certificate of Service.<br><br>Answer due 11/10/22 as to Raytheon Company and Raytheon Technologies Corporation ONLY. (Lara, Miguel) [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/11/2022) |
| 11/02/2022 | 17 | MOTION for Leave to Appear Pro Hac Vice for admission of William Katt, David Frank, Kathryn Grace, John Loringer Filing fee: $ 400, receipt number AMADC-9569949 by Lockheed Martin Corporation. (Bogaert, William) Modified on 11/3/2022. Motions filed as attachments docketed as separate entries, dkt # 18-20. (Pacho, Arnold). [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/02/2022) |
| 11/03/2022 | 18 | MOTION for Leave to Appear Pro Hac Vice for admission of Kathryn Grace by Lockheed Martin Corporation. Filing fee receipt number: AMADC-9569949 . (Attachments: # 1 Exhibit A - Certification)(Bogaert, William) Modified on 11/3/2022 to add receipt number for filing. (Pacho, Arnold). [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/03/2022) |
| 11/03/2022 | 19 | MOTION for Leave to Appear Pro Hac Vice for admission of John Loringer by Lockheed Martin Corporation. Filing fee receipt number: AMADC-9569949 (Attachments: # 1 Exhibit A - Certification)(Bogaert, William) Modified on 11/3/2022 to docket receipt number for filing. (Pacho, Arnold). [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/03/2022) |
| 11/03/2022 | 20 | MOTION for Leave to Appear Pro Hac Vice for admission of David Frank II by Lockheed Martin Corporation. Filing fee receipt number: AMADC-9569949 (Attachments: # 1 Exhibit A - Certification)(Bogaert, William) Modified on 11/3/2022 to docket filing fee receipt number. (Pacho, Arnold). [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/03/2022) |
| 11/03/2022 | 21 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 17 Motion for Leave to Appear Pro Hac Vice. Added William Katt.<br><br>**Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at |

| | | |
|---|---|---|
| | | https://www.mad.uscourts.gov/caseinfo/nextgen-current-pacer-accounts.htm#link-account. <br><br> (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/03/2022) |
| 11/03/2022 | 22 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 18 Motion for Leave to Appear Pro Hac Vice. Added Kathryn Grace. <br><br> **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number on your form when registering or it will be rejected.** <br><br> Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. <br><br> (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/03/2022) |
| 11/07/2022 | 23 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 19 Motion for Leave to Appear Pro Hac Vice. Added John Loringer. <br><br> **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number on your form when registering or it will be rejected.** <br><br> Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. <br><br> A Notice of Appearance must be entered on the docket by the newly admitted attorney. <br><br> (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/07/2022) |
| 11/07/2022 | 24 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 20 Motion for Leave to Appear Pro Hac Vice. Added David A. Frank II. <br><br> **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number on your form when registering or it will be rejected.** <br><br> Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. <br><br> A Notice of Appearance must be entered on the docket by the newly admitted attorney. <br><br> (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/07/2022) |
| 11/08/2022 | 25 | Second MOTION for Extension of Time to File Response/Reply *to Plaintiffs' Amended Complaint* by Lockheed Martin Corporation.(Bogaert, William) [Transferred from |

**JA29**

| | | | |
|---|---|---|---|
| | | | Massachusetts on 10/30/2023.] (Entered: 11/08/2022) |
| 11/09/2022 | 26 | | Assented to MOTION for Extension of Time to 30 days to respond *with Local Rule 7.1(a)(2) Certificate of Compliance and Certificate of Service* by Raytheon Company, Raytheon Technologies Corporation.(Handler, Jonathan) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/09/2022) |
| 11/09/2022 | 27 | | STIPULATION *of Plaintiffs and Defendant with Certificate of Service* by Raytheon Technologies Corporation. (Handler, Jonathan) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/09/2022) |
| 11/10/2022 | 28 | | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 25 Lockheed's Second MOTION for Extension of Time to File Response to Plaintiffs' Amended Complaint. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/10/2022) |
| 11/10/2022 | 29 | | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 26 Raytheon's Assented to MOTION for Extension of Time to Respond to Plaintiffs' Amended Complaint. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/10/2022) |
| 11/16/2022 | 30 | | MOTION for Leave to File *Second Amended Complaint (Unopposed)* by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Exhibit 1 - {Proposed] Second Amended Complaint)(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/16/2022) |
| 11/17/2022 | 31 | | NOTICE of Appearance by Michael K. Lane on behalf of Raytheon Company, Raytheon Technologies Corporation (Lane, Michael) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/17/2022) |
| 11/17/2022 | 32 | | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 30 Unopposed MOTION for Leave to File Second Amended Complaint.<br><br>Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order) - in the caption of the document. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/17/2022) |
| 11/17/2022 | 33 | | AMENDED COMPLAINT against Lockheed Martin Corporation, Does 1 through 20, Raytheon Company, United States, filed by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis.(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/17/2022) |
| 11/22/2022 | 34 | | SUMMONS Returned Executed by Christine Grogan, Jodelle Gearon, Margareta Krick, Ronald Krick, Michael Deteresa, Eric Rojany, Christopher Krick, Craig Gaetke, Eileen Zaharioudakis, Todd Gaetke, Douglas Kevorkian, Wanda Kemp, Lisa Michelson. (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/22/2022) |
| 11/30/2022 | 35 | | NOTICE of Appearance by Rayford A. Farquhar on behalf of United States, United States Department of Defense, United States Missile Defense Agency, United States Navy (Farquhar, Rayford) [Transferred from Massachusetts on 10/30/2023.] (Entered: 11/30/2022) |

# JA30

| 12/06/2022 | 36 | NOTICE of Appearance by Robert E. Kelly on behalf of United States (Kelly, Robert) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/06/2022) |
|---|---|---|
| 12/08/2022 | 37 | MOTION for Leave to File Excess Pages by Lockheed Martin Corporation.(Bogaert, William) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/08/2022) |
| 12/09/2022 | 38 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 37 Motion for Leave to File Excess Pages ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (Lara, Miguel) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/09/2022) |
| 12/11/2022 | 39 | Assented to MOTION for Leave to File *Brief Exceeding Page Limitation* by Raytheon Company.(Lane, Michael) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/11/2022) |
| 12/12/2022 | 40 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 39 Assented to MOTION for Leave to File Brief Exceeding Page Limitation. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/12/2022) |
| 12/16/2022 | 41 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Lockheed Martin Corporation.(Katt, William) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/16/2022) |
| 12/16/2022 | 42 | MEMORANDUM in Support re 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Lockheed Martin Corporation. (Katt, William) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/16/2022) |
| 12/16/2022 | 43 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Raytheon Company.(Lane, Michael) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/16/2022) |
| 12/16/2022 | 44 | MEMORANDUM in Support re 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Raytheon Company. (Lane, Michael) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/16/2022) |
| 12/16/2022 | 45 | DECLARATION re 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Raytheon Company. (Attachments: # 1 Exhibit A - NTSB Reprot, # 2 Exhibit B - NTSB Docket, # 3 Exhibit C - NYT Article, # 4 Exhibit D - Docket, # 5 Exhibit E - Stipulations, # 6 Exhibit F - Docket, # 7 Exhibit G - Docket)(Lane, Michael) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/16/2022) |
| 12/27/2022 | 46 | Assented to MOTION for Extension of Time to 02/10/2023 to File Response/Reply as to 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis.(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 12/27/2022) |
| 01/04/2023 | 47 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** re 46 Assented to MOTION for Extension of Time to 02/10/2023 to File Response/Reply as to 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (Lara, Miguel) [Transferred from Massachusetts on 10/30/2023.] (Entered: 01/04/2023) |

# JA31

| 01/05/2023 | 48 | Assented to MOTION for Extension of Time to 2/7/2023 to Respond to Plaintiffs' Second Amended Complaint by United States.(Kelly, Robert) Modified ECF event on 1/9/2023 (Pacho, Arnold). [Transferred from Massachusetts on 10/30/2023.] (Entered: 01/05/2023) |
|---|---|---|
| 01/09/2023 | 49 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 48 Assented to MOTION for Extension of Time to 2/7/2023 to Respond to 33 Plaintiffs' Second Amended Complaint. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 01/09/2023) |
| 01/18/2023 | 50 | MOTION for Leave to Appear Pro Hac Vice for admission of Todd A. Walburg Filing fee: $ 125, receipt number AMADC-9673417 by Michael Deteresa, Craig Gaetke, Todd Gaetke, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Exhibit 1 - Affidavit of Todd A. Walburg)(Roddy, John) Modified docket text on 1/18/2023 (Pacho, Arnold). [Transferred from Massachusetts on 10/30/2023.] (Entered: 01/18/2023) |
| 01/18/2023 | 51 | MOTION for Leave to Appear Pro Hac Vice for admission of Benjamin L. Bailey Filing fee: $ 125, receipt number AMADC-9673486 by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Exhibit 1 - Affidavit of Benjamin L. Bailey)(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 01/18/2023) |
| 01/18/2023 | 52 | MOTION for Leave to Appear Pro Hac Vice for admission of Eric B. Snyder Filing fee: $ 125, receipt number AMADC-9673494 by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Exhibit 1 - Affidavit of Eric B. Snyder)(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 01/18/2023) |
| 01/18/2023 | 53 | MOTION for Leave to Appear Pro Hac Vice for admission of Christopher D. Smith Filing fee: $ 125, receipt number AMADC-9673507 by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Exhibit 1 - Affidavit of Christopher D. Smith)(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 01/18/2023) |
| 01/18/2023 | 54 | MOTION for Leave to Appear Pro Hac Vice for admission of Scott B. Baez Filing fee: $ 125, receipt number AMADC-9673519 by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Exhibit 1 - Affidavit of Scott B. Baez)(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 01/18/2023) |
| 01/18/2023 | 55 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Tara E. Nicola Filing fee: $ 125, receipt number AMADC-9674135 by Raytheon Company. (Attachments: # 1 Certification of Attestation of Tara E. Nicola in Support of Motion for Admission Pro Hac Vice)(Lane, Michael) [Transferred from Massachusetts on 10/30/2023.] (Entered: 01/18/2023) |
| 02/01/2023 | 56 | Assented to MOTION for Leave to File *a Combined Opposition to Defendants' Motions to Dismiss* by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta |

| | | Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis.(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/01/2023) |
|---|---|---|
| 02/02/2023 | 57 | Assented to MOTION for Leave to File *an Oversized Brief* by United States.(Kelly, Robert) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/02/2023 | 58 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 57 Assented to MOTION for Leave to File an Oversized Brief.<br><br>Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order) - in the caption of the document. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/02/2023 | 59 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 50 Motion for Leave to Appear Pro Hac Vice. Added Todd A. Walburg.<br><br>**Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov/caseinfo/nextgen-current-pacer-accounts.htm#link-account.<br><br>(Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/02/2023 | 60 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 51 Motion for Leave to Appear Pro Hac Vice. Added Benjamin L. Bailey.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/02/2023 | 61 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 52 Motion for Leave to Appear Pro Hac Vice. Added Eric B. Snyder.<br><br>**Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov/caseinfo/nextgen-current-pacer-accounts.htm#link-account. |

| | | |
|---|---|---|
| | | (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/02/2023 | 62 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 53 Motion for Leave to Appear Pro Hac Vice. Added Christopher D. Smith. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number on your form when registering or it will be rejected.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. A Notice of Appearance must be entered on the docket by the newly admitted attorney. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/02/2023 | 63 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 54 Motion for Leave to Appear Pro Hac Vice. Added Scott B. Baez. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number on your form when registering or it will be rejected.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. A Notice of Appearance must be entered on the docket by the newly admitted attorney. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/02/2023 | 64 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 55 Motion for Leave to Appear Pro Hac Vice. Added Tara E. Nicola. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number on your form when registering or it will be rejected.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. A Notice of Appearance must be entered on the docket by the newly admitted attorney. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/02/2023 | 65 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 56 Assented to MOTION for Leave to File a Combined Opposition to Defendants' Motions to Dismiss. |

# JA34

| | | |
|---|---|---|
| | | Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order) - in the caption of the document. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/02/2023 | 66 | MOTION for Leave to Appear Pro Hac Vice for admission of Leslie A. Brueckner Filing fee: $ 125, receipt number AMADC-9700958 by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Exhibit 1 - Affidavit of Leslie A. Brueckner)(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/02/2023) |
| 02/03/2023 | 67 | NOTICE of Appearance by Todd Alan Walburg on behalf of Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis (Walburg, Todd) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/03/2023) |
| 02/03/2023 | 68 | NOTICE of Appearance by Benjamin L. Bailey on behalf of Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis (Bailey, Benjamin) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/03/2023) |
| 02/03/2023 | 69 | NOTICE of Appearance by Eric B. Snyder on behalf of Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis (Snyder, Eric) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/03/2023) |
| 02/03/2023 | 70 | NOTICE of Appearance by Christopher D. Smith on behalf of Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis (Smith, Christopher) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/03/2023) |
| 02/03/2023 | 71 | NOTICE of Appearance by Scott B. Baez on behalf of Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis (Baez, Scott) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/03/2023) |
| 02/07/2023 | 72 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by United States. ) (Kelly, Robert) Modified on 2/13/2023. Memorandum and exhibits filed as a separate entry per CM/ECF procedures, see Dkt. # 74 (Pacho, Arnold). [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/07/2023) |
| 02/07/2023 | 74 | MEMORANDUM in Support re 72 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by the United States. (Attachments: # 1 Exhibit 1 Lahr Fee Order, # 2 Exhibit 2 Stalcup Opp. Mot. Summ. J., # 3 Exhibit 3 Pls.' Admin. Claim, # 4 Exhibit 4 Navy Denial, # 5 Exhibit 5 Rademacher Slip Op.) [Memorandum and exhibits refiled by clerk as a separate entry per CM/ECF procedures.] (Pacho, Arnold) Modified on 2/10/2023. Deleted attachment previously labeled as exhibit 6. (Pacho, Arnold). [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/10/2023) |

# JA35

| | | |
|---|---|---|
| 02/09/2023 | 73 | NOTICE of Appearance by Tara E. Nicola on behalf of Raytheon Company (Nicola, Tara) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/09/2023) |
| 02/10/2023 | 75 | Opposition re 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Declaration of John Roddy in Support of Plaintiffs' Combined Opposition, # 2 Exhibit 1 to Roddy Decl., # 3 Exhibit 2 to Roddy Decl., # 4 Exhibit 3 to Roddy Decl., # 5 Exhibit 4 to Roddy Decl., # 6 Exhibit 5 to Roddy Decl.)(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/10/2023) |
| 02/13/2023 | 76 | Assented to MOTION for Extension of Time to File Response/Reply as to 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Raytheon Company. (Nicola, Tara) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/13/2023) |
| 02/14/2023 | 77 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** re 76 Assented to MOTION for Extension of Time to File Response/Reply as to 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. Replies due by 3/3/2023. (Lara, Miguel)[Transferred from Massachusetts on 10/30/2023.] (Entered: 02/14/2023) |
| 02/14/2023 | 78 | Assented to MOTION for Extension of Time to March 3, 2023 to File Response/Reply as to 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Lockheed Martin Corporation.(Katt, William) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/14/2023) |
| 02/14/2023 | 79 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** re 78 Assented to MOTION for Extension of Time to March 3, 2023 to File Response/Reply as to 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. Replies due by 3/3/2023. (Lara, Miguel) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/14/2023) |
| 02/14/2023 | 80 | Assented to MOTION for Extension of Time to 03/21/2023 to File Response/Reply as to 72 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , Assented to MOTION for Leave to File Excess Pages ( Responses due by 2/28/2023) by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis.(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/14/2023) |
| 02/16/2023 | 81 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** re 80 Assented to MOTION for Extension of Time to File Response/Reply and for Leave to Exceed Page Limitation as to 72 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. Responses due 3/21/2023. (Lara, Miguel) [Transferred from Massachusetts on 10/30/2023.] (Entered: 02/16/2023) |
| 03/03/2023 | 82 | REPLY to Response to 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Lockheed Martin Corporation. (Katt, William) [Transferred from Massachusetts on 10/30/2023.] (Entered: 03/03/2023) |
| 03/03/2023 | 83 | REPLY to Response to 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Raytheon Company. (Nicola, Tara) [Transferred from Massachusetts |

| | | |
|---|---|---|
| | | on 10/30/2023.] (Entered: 03/03/2023) |
| 03/09/2023 | 84 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 66 Motion for Leave to Appear Pro Hac Vice. Added Leslie A. Brueckner. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number on your form when registering or it will be rejected.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. A Notice of Appearance must be entered on the docket by the newly admitted attorney. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 03/09/2023) |
| 03/21/2023 | 85 | Opposition re 72 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 03/21/2023) |
| 03/22/2023 | 86 | Assented to MOTION for Extension of Time to File Reply Brief to File Response/Reply as to 85 Opposition to Motion, by United States.(Kelly, Robert) [Transferred from Massachusetts on 10/30/2023.] (Entered: 03/22/2023) |
| 03/27/2023 | 87 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 86 Assented to MOTION for Extension of Time to File Reply Brief to File Response/Reply as to 85 Opposition to Motion re 72 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. Replies due by 4/11/2023. (Lara, Miguel) [Transferred from Massachusetts on 10/30/2023.] (Entered: 03/27/2023) |
| 04/11/2023 | 88 | REPLY to Response to 72 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by United States. (Kelly, Robert) [Transferred from Massachusetts on 10/30/2023.] (Entered: 04/11/2023) |
| 08/02/2023 | 89 | ELECTRONIC NOTICE Setting Hearing on Motions: 72 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM : Motion Hearing set for 8/30/2023 02:30 PM in Courtroom 8 (In person only) before District Judge Angel Kelley. (Lara, Miguel) [Transferred from Massachusetts on 10/30/2023.] (Entered: 08/02/2023) |
| 08/10/2023 | 90 | District Judge Angel Kelley: ELECTRONIC ORDER entered. The Court **ORDERS** parties to file additional briefing on the issue of venue with respect to Plaintiffs' Federal Torts Claim Act claim, and address whether the instant matter is properly before the Court. Parties may attach any additional supporting documentation, as the Court may consider extraneous documents for the purpose of determining venue. SeeStars for Art Prod. FZ, LLC v. Dandana, LLC, 806 F. Supp. 2d 437, 447 (D. Mass. 2011) ("A district court may examine facts outside the complaint to determine whether venue is proper."). Briefs shall be filed by **August 21, 2023**, and |

| | | |
|---|---|---|
| | | **limited to10 pages**, excluding exhibits. The Court will disregard any pages exceeding the limit. Responses, if parties so choose, are due **August 24, 2023**, and **limited to 5 pages**.<br><br>(Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 08/10/2023) |
| 08/16/2023 | 91 | RESPONSE TO COURT ORDER by Lockheed Martin Corporation re 90 Order,,, . (Katt, William) [Transferred from Massachusetts on 10/30/2023.] (Entered: 08/16/2023) |
| 08/21/2023 | 92 | RESPONSE TO COURT ORDER by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis re 90 Order,,, . (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Roddy, John) [Transferred from Massachusetts on 10/30/2023.] (Entered: 08/21/2023) |
| 08/21/2023 | 93 | RESPONSE TO COURT ORDER by United States re 90 Order,,, . (Attachments: # 1 Exhibit 1 Tomicich Decl., # 2 Exhibit 2 FOIA Compl.)(Kelly, Robert) [Transferred from Massachusetts on 10/30/2023.] (Entered: 08/21/2023) |
| 08/30/2023 | 94 | Electronic Clerk's Notes for proceedings held before District Judge Angel Kelley: Motion Hearing held on 8/30/2023 re 72 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 43 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM :<br><br>Case called. The Court heard oral argument on the pending motions to dismiss. The matters were taken under advisement.<br><br>(Court Reporter: Linda Walsh at lwalshsteno@gmail.com.)(Attorneys present: Todd Walburg for Plaintiffs; Tara Nicola and Michael Lane for Raytheon; Kathryn Grace, William Katt, and William Bogaert for Lockheed; Robert Kelly for Gvt.) (Lara, Miguel) [Transferred from Massachusetts on 10/30/2023.] (Entered: 08/30/2023) |
| 09/29/2023 | 95 | District Judge Angel Kelley: MEMORANDUM AND ORDER entered.<br><br>For the reasons stated in the attached memorandum, the current venue is improper and the claims against all Defendants will be transferred. Accordingly, Defendants' Motions to Dismiss [Dkts. 41; 43; 72] are **DENIED WITHOUT PREJUDICE** and the matter will be **TRANSFERRED** to a proper venue to be determined. Plaintiffs have seven (7) days to state the district it wishes this court to transfer this matter to pursuant to the FTCA's venue requirements.<br><br>(Lara, Miguel) [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/02/2023) |
| 10/06/2023 | 96 | RESPONSE TO COURT ORDER by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis re 95 Memorandum & ORDER,, . (Walburg, Todd) [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/06/2023) |
| 10/12/2023 | 97 | Transcript of Motion Hearing held on August 30, 2023, before Judge Angel Kelley. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Linda Walsh at lwalshsteno@gmail.com. Redaction Request due 11/2/2023. Redacted Transcript Deadline set for 11/13/2023. Release of Transcript |

# JA38

| | | | |
|---|---|---|---|
| | | | Restriction set for 1/10/2024. (McDonagh, Christina) [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/13/2023) |
| 10/12/2023 | 98 | | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (McDonagh, Christina) [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/13/2023) |
| 10/13/2023 | 99 | | District Judge Angel Kelley: ORDER entered. Order Transferring Case. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/13/2023) |
| 10/13/2023 | 100 | | Case transferred to the United States District Court for the Eastern District of New York. Case file electronically sent to the Clerk in that District. (Pacho, Arnold) [Transferred from Massachusetts on 10/30/2023.] (Entered: 10/13/2023) |
| 10/30/2023 | 101 | | Case transferred in from District of Massachusetts; Case Number 1:22-cv-11032. Original file certified copy of transfer order and docket sheet received. (Entered: 10/30/2023) |
| 10/30/2023 | 102 | | Clerks Notice Re: Consent. A magistrate judge has been assigned as the presiding judge in this case as part of a Pilot Program, governed by EDNY Administrative Order 2023-23. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. The form is also available here: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent. Unless all parties consent to the Magistrate Judge jurisdiction by the deadline set forth in the Administrative Order 2023-23, a District Judge will be assigned to the case. The parties are directed to review the terms of Administrative Order 2023-23 and other materials related to the Pilot Program on the Courts website: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. (KD) (Entered: 10/30/2023) |
| 10/30/2023 | | | The case of **Krick et al v. Raytheon Company et al**, has been transferred from **United States District Court District of Massachusetts (Boston)** to the Eastern District of New York. The new case number is **23-cv-8093**. PLEASE NOTE: if you plan to continue representing your client(s), you must be admitted to practice before this court. You must do so by applying for Pro Hac Vice or permanent admission. To apply for Pro Hac Vice admission, you must first register for an ECF login and password. Please visit the Court's website at www.nyed.uscourts.gov/attorney-admissions for guidance. Once registered, you must electronically file a Motion to Appear Pro Hac Vice. You must pay the required pro hac vice fee online. (KD) (Entered: 10/30/2023) |
| 11/02/2023 | 103 | | SCHEDULING ORDER: A status conference will be held via video on November 17, 2023 at 11:30 a.m. before Magistrate Judge Joseph A. Marutollo. The parties will receive a video conference access link by email. The parties shall log in ten (10) minutes before the video conference. The public may access the audio of the video conference by dialing toll free number **571-353-2301** and entering meeting code **190170369**. Persons granted remote access to proceedings are reminded that photographing, recording, or rebroadcasting of any Court proceeding or communication with the Court is prohibited. The parties are reminded to review the terms of Administrative Order 2023-23 and other materials related to the Pilot Program |

|  |  | on the Court's website: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. Ordered by Magistrate Judge Joseph A. Marutollo on 11/2/2023. (EG) (Entered: 11/02/2023) |
|---|---|---|
| 11/07/2023 | 104 | NOTICE of Appearance by John Kelly on behalf of Lockheed Martin Corporation (aty to be noticed) (Kelly, John) (Entered: 11/07/2023) |
| 11/08/2023 | 105 | NOTICE by Lockheed Martin Corporation *Withdrawal of Appearance of William T. Bogaert* (Kelly, John) (Entered: 11/08/2023) |
| 11/09/2023 | 106 | NOTICE by United States *withdrawal of Rayford A. Farquhar* (Kelly, Robert) Modified on 11/14/2023 to convert to a motion. (EG). (Entered: 11/09/2023) |
| 11/13/2023 | 107 | NOTICE of Appearance by Tara Elizabeth Nicola on behalf of Raytheon Company (aty to be noticed) (Nicola, Tara) (Entered: 11/13/2023) |
| 11/13/2023 | 108 | Letter *to Clerk of Court* by Raytheon Company (Nicola, Tara) (Entered: 11/13/2023) |
| 11/14/2023 | 109 | Letter *to Court re: Motion to Dismiss* by Lockheed Martin Corporation (Kelly, John) (Entered: 11/14/2023) |
| 11/14/2023 | 110 | Letter *to Clerk of Court* by United States (Kelly, Robert) (Entered: 11/14/2023) |
| 11/14/2023 | 111 | NOTICE by Raytheon Company *Withdrawal of Appearance of Jonathan I. Handler* (Handler, Jonathan) (Entered: 11/14/2023) |
| 11/14/2023 | 112 | NOTICE by Raytheon Company *Withdrawal of Appearance of Michael K. Lane* (Handler, Jonathan) (Entered: 11/14/2023) |
| 11/14/2023 |  | ORDER granting 105 - 106 : Attorneys Williams T. Bogart and Rayford A. Farquhar terminated. So Ordered by Magistrate Judge Joseph A. Marutollo on 11/14/2023. (EG) (Entered: 11/14/2023) |
| 11/14/2023 | 113 | NOTICE of Appearance by Thomas M Brown on behalf of United States (aty to be noticed) (Brown, Thomas) (Entered: 11/14/2023) |
| 11/15/2023 | 114 | MOTION to Appear Pro Hac Vice Filing fee $ 150, receipt number ANYEDC-17287216 by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Affidavit in Support of Motion to Admit Counsel Pro Hac Vice, # 2 Certificate of Good Standing) (Walburg, Todd) (Entered: 11/15/2023) |
| 11/16/2023 | 115 | NOTICE of Appearance by Ralph Vincent Pagano on behalf of Raytheon Company (aty to be noticed) (Pagano, Ralph) (Entered: 11/16/2023) |
| 11/17/2023 |  | ORDER granting 114 Motion for Leave to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure the $150 admission fee be submitted to the Clerks Office via filing the event *Pro Hac Vice Filing Fee*. SO ORDERED by Magistrate Judge Joseph A. Marutollo on 11/17/2023. (EG) (Entered: 11/17/2023) |
| 11/17/2023 | 116 | NOTICE of Appearance by Todd A. Walburg on behalf of Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis (notification declined or already on case) (Walburg, Todd) (Entered: 11/17/2023) |

# JA40

| 11/17/2023 | 117 | NOTICE of Appearance by Artemis Lekakis on behalf of United States (aty to be noticed) (Lekakis, Artemis) (Entered: 11/17/2023) |
|---|---|---|
| 11/17/2023 | | Minute Entry for status conference held on 11/17/2023 before Magistrate Judge Joseph A. Marutollo: Counsel for all parties appeared. The Court discussed EDNY Administrative Order No. 2023-23. Plaintiff is directed to file a letter by Tuesday, November 21, 2023 indicating whether the parties consent to Magistrate Judge jurisdiction. Any party may withhold its consent without adverse substantive consequences. As set forth in 102 , in accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Docket Entry 102 provides a blank copy of the consent form that should be filled out, signed, and filed electronically if all parties wish to consent. The form is also available here: https://www.nyed.uscourts.gov/edny-direct-assignment-pilot-program. (FTR Log #11:30-11:47.) (EG) (Entered: 11/17/2023) |
| 11/21/2023 | 118 | Letter *to Clerk of Court re Magistrate Judge* by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis (Walburg, Todd) (Entered: 11/21/2023) |
| 11/22/2023 | 119 | MOTION to Appear Pro Hac Vice *of David Frank, II* Filing fee $ 150, receipt number ANYEDC-17310125 by Lockheed Martin Corporation. (Attachments: # 1 Affidavit of David A. Frank, II in Support of Motion to Admit Counsel Pro Hac) (Kelly, John) (Entered: 11/22/2023) |
| 11/22/2023 | 120 | MOTION to Appear Pro Hac Vice *John P. Loringer* Filing fee $ 150, receipt number ANYEDC-17310343 by Lockheed Martin Corporation. (Attachments: # 1 Affidavit of John P. Loringer in Support of Motion to Admit Counsel Pro Hac) (Kelly, John) (Entered: 11/22/2023) |
| 11/22/2023 | | ORDER granting 119 Motion for Leave to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that they receive electronic notification of activity in this case. Also, the attorney shall ensure the $150 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Joseph A. Marutollo on 11/22/2023. (LCPL) (Entered: 11/22/2023) |
| 11/22/2023 | | ORDER granting 120 Motion for Leave to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that they receive electronic notification of activity in this case. Also, the attorney shall ensure the $150 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Joseph A. Marutollo on 11/22/2023. (LCPL) (Entered: 11/22/2023) |
| 11/27/2023 | 121 | MOTION to Appear Pro Hac Vice *of William J. Katt* Filing fee $ 150, receipt number ANYEDC-17317188 by Lockheed Martin Corporation. (Attachments: # 1 Affidavit of William J. Katt in Support of Motion to Admit Counsel Pro Hac) (Kelly, John) (Entered: 11/27/2023) |
| 11/27/2023 | 122 | NOTICE of Appearance by Jill Rosa on behalf of United States (aty to be noticed) (Rosa, Jill) (Entered: 11/27/2023) |

# JA41

| 11/28/2023 | | ORDER granting 121 Motion for Leave to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure the $150 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Joseph A. Marutollo on 11/28/2023. (JAM) (Entered: 11/28/2023) |
|---|---|---|
| 12/07/2023 | | NOTICE to Assign District Judge: The Clerk of Court is directed to reassign this case to a district judge. (BBM) (Entered: 12/07/2023) |
| 12/07/2023 | | Case Reassigned to Judge Ann M. Donnelly. Magistrate Judge Joseph A. Marutollo remains assigned to the case for referral matters. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (BBM) (Entered: 12/07/2023) |
| 12/08/2023 | | SCHEDULING ORDER: The defendants filed letters on November 13 and 14, 2023, notifying the Court of their intent to renew the 12(b) motions filed previously in the United States District Court for the District of Massachusetts 108 109 110 . The parties are directed to appear for a conference on Wednesday, December 13, 2023 at 4:00 p.m. in Courtroom 4G North. Ordered by Judge Ann M. Donnelly on 12/8/2023. (JA) (Entered: 12/08/2023) |
| 12/11/2023 | 123 | NOTICE of Appearance by William J. Katt on behalf of Lockheed Martin Corporation (notification declined or already on case) (Katt, William) (Entered: 12/11/2023) |
| 12/11/2023 | 124 | NOTICE of Appearance by David A Frank, II on behalf of Lockheed Martin Corporation (aty to be noticed) (Frank, David) (Entered: 12/11/2023) |
| 12/11/2023 | 125 | NOTICE of Appearance by Emma Hildebrand on behalf of United States (aty to be noticed) (Hildebrand, Emma) (Entered: 12/11/2023) |
| 12/11/2023 | 126 | NOTICE of Appearance by John P. Loringer on behalf of Lockheed Martin Corporation (notification declined or already on case) (Loringer, John) (Entered: 12/11/2023) |
| 12/13/2023 | 127 | MOTION to Appear Pro Hac Vice *for Kathryn A. Grace* Filing fee $ 150, receipt number ANYEDC-17372688 by Lockheed Martin Corporation. (Attachments: # 1 Affidavit of Kathryn A. Grace in Support of Motion to Admit Counsel Pro Hac Vice) (Kelly, John) (Entered: 12/13/2023) |
| 12/13/2023 | 128 | Letter *to Court re Kathryn A. Grace* by Lockheed Martin Corporation (Kelly, John) (Entered: 12/13/2023) |
| 12/13/2023 | | ORDER: The Motion for Leave to Appear Pro Hac Vice 127 is denied without prejudice. The petition seeking admission does not comply with Local Civil Rule 1.3(c) as it fails to include a Certificate of Good Standing from each of the states in which the Applicant is a member of the bar. Loc. Civ. R. 1.3(c) states, in part, that "[t]he motion must be accompanied by a certificate of the court for each of the states in which the applicant is a member of the bar, which has been issued within thirty (30) days of filing and states that the applicant is a member in good standing of the bar of that state court..." The Applicant is also reminded that under Local Civil Rule 1.3(a), applicants are directed to file their own "application for admission in electronic form and pay the required fee through [PACER]. This one application will be utilized both to admit and then to provide the applicant to the bar of this Court with electronic filing privileges for use on the Court's [ECF] system." SO ORDERED by the Honorable Joseph A. Marutollo on 12/13/2023. (LCPL) (Entered: 12/13/2023) |

# JA42

| | | |
|---|---|---|
| 12/13/2023 | | Minute Entry for proceedings held before Judge Ann M Donnelly: Status Conference held on 12/13/2023. Appearances by Todd Wahburg for the plaintiff, and Robert Kelly, Tara Nicola, Emma Hildebrand, Thomas Brown, Kathryn Grace, Ralph Pagano, John Kelly, and Artemis Lekakis for the defendants. Case called. Discussion held. The parties are directed to submit a joint status report on or before February 1, 2024. (Court Reporter Andronikh Barna.) (JA) (Entered: 12/13/2023) |
| 01/10/2024 | 129 | Amended MOTION to Appear Pro Hac Vice *for Kathryn A. Grace* Filing fee $ 150, receipt number ANYEDC-17449357 by Lockheed Martin Corporation. (Attachments: # 1 Affidavit Affidavit in Support of Amended Motion to Admit Counsel Pro Hac Vice) (Kelly, John) (Entered: 01/10/2024) |
| 01/10/2024 | | ORDER granting 129 Amended Motion to Appear Pro Hac Vice for Kathryn A. Grace. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that they receive electronic notification of activity in this case. Also, the attorney shall ensure the $150 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. SO ORDERED by Magistrate Judge Joseph A. Marutollo on 1/10/2024. (EG) (Entered: 01/10/2024) |
| 01/11/2024 | 130 | NOTICE of Appearance by Kathryn A Grace on behalf of Lockheed Martin Corporation (notification declined or already on case) (Grace, Kathryn) (Entered: 01/11/2024) |
| 01/29/2024 | 131 | Letter MOTION to Produce by Raytheon Company. (Nicola, Tara) (Entered: 01/29/2024) |
| 01/29/2024 | | ORDER - Plaintiffs shall file a response to the arguments raised in Defendants' letter-motion, dated January 29, 2024 131 , by 5 p.m. on January 30, 2024. Ordered by Magistrate Judge Joseph A. Marutollo on 1/29/2024. (JAM) (Entered: 01/29/2024) |
| 01/30/2024 | 132 | RESPONSE to Motion re 131 Letter MOTION to Produce filed by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Walburg, Todd) (Entered: 01/30/2024) |
| 01/30/2024 | | STATUS REPORT ORDER - The parties shall file a joint status report by February 2, 2024 addressing whether Defendants are amenable to the proposals set forth in Plaintiffs' letter, dated January 30, 2024 (Dkt. No. 132), and if so, whether they will withdraw their letter-motion filed on January 29, 2024 (Dkt. No. 131). Status Report due by 2/2/2024.Ordered by Magistrate Judge Joseph A. Marutollo on 1/30/2024. (JAM) (Entered: 01/30/2024) |
| 02/01/2024 | 133 | STATUS REPORT *Joint* by United States (Kelly, Robert) (Entered: 02/01/2024) |
| 02/02/2024 | 134 | STATUS REPORT *Joint* by United States (Kelly, Robert) (Entered: 02/02/2024) |
| 02/02/2024 | | ORDER granting 131 Motion to Produce. In light of the parties' status report dated February 2, 2024 (Dkt. No. 134), the Court grants Defendants' request to issue subpoenas to The Boeing Company for production of the Settlement Agreements or Releases relating to the Plaintiffs or their decedents identified in the Amended Complaint, in connection with the TWA Flight 800 accident on July 17, 1996.<br><br>With respect to the parties' February 1, 2024 status report (Dkt. No. 133), which includes a proposed briefing schedule and requests for page enlargements, the parties shall comply with Judge Donnelly's Individual Practices and Rules and file a letter addressed to Judge Donnelly regarding motion practice. Per Judge Donnelly's rules, |

# JA43

| | | |
|---|---|---|
| | | letter motions shall be filed using the motion event via ECF.Ordered by Magistrate Judge Joseph A. Marutollo on 2/2/2024. (Marutollo, Joseph) (Entered: 02/02/2024) |
| 03/22/2024 | 135 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 12/13/2023, before Judge Ann M. Donnelly. Court Reporter/Transcriber Andronikh Barna, Telephone number 718-613-2178. Email address: ambarna.crr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 4/12/2024. Redacted Transcript Deadline set for 4/22/2024. Release of Transcript Restriction set for 6/20/2024. (Barna, Andronikh) (Entered: 03/22/2024) |
| 04/01/2024 | 136 | Letter by United States (Kelly, Robert) (Entered: 04/01/2024) |
| 04/02/2024 | | SCHEDULING ORDER: The Court has received 136 the defendants' letter. As requested, the defendants' motions to dismiss are due by July 12, 2024; the plaintiffs' oppositions are due by August 23, 2024; and the defendants' replies, if any, are due by September 27, 2024. The memoranda of law in support of or in opposition to the motions are limited to 35 pages and the reply memoranda are limited to 20 pages. Ordered by Judge Ann M. Donnelly on 4/2/2024. (CM) (Entered: 04/02/2024) |
| 05/14/2024 | 137 | STIPULATION of Dismissal *With Prejudice* by Raytheon Company (Nicola, Tara) (Entered: 05/14/2024) |
| 05/14/2024 | 138 | STIPULATION of Dismissal *With Prejudice* by Raytheon Company (Nicola, Tara) (Entered: 05/14/2024) |
| 05/14/2024 | 139 | STIPULATION of Dismissal *With Prejudice* by Raytheon Company (Nicola, Tara) (Entered: 05/14/2024) |
| 06/14/2024 | 140 | MOTION to Withdraw as Attorney *for All Plaintiffs by Bailey & Glasser, LLP* by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Walburg, Todd) (Entered: 06/14/2024) |
| 06/20/2024 | 141 | Letter *requesting status conference* by United States (Kelly, Robert) (Entered: 06/20/2024) |
| 06/20/2024 | | ORDER deferring ruling on 140 Motion to Withdraw as Attorney. A status conference will be held on **June 24, 2024** at **2:30 p.m.** via Zoom to discuss the pending 140 Motion to Withdraw and the representations made by the United States at Dkt. No. 141 . At the scheduled date and time, the parties shall dial +1 646 828 7666; Meeting ID: 161 086 4946; Passcode: 973675 to appear before Judge Marutollo. At the status conference, Plaintiffs' current counsel shall be prepared to discuss the timeline for substitution of counsel. Ordered by Magistrate Judge Joseph A. Marutollo on 6/20/2024. (LCPL) (Entered: 06/20/2024) |
| 06/24/2024 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: A status conference was held on June 24, 2024. All parties appeared. <br><br> The Court defers ruling on Plaintiffs' 140 Motion to Withdraw. As discussed in the status conference, by **June 26, 2024**, Defendants shall file a joint letter-motion addressed to Judge Donnelly seeking a revised briefing schedule in light of Plaintiffs' counsel's pending motion to withdraw. In its submissions, Defendants may also address the developments in this case since Defendants issued subpoenas to The Boeing |

| | | |
|---|---|---|
| | | Company for production of the Settlement Agreements or Releases relating to the Plaintiffs or their decedents identified in the Amended Complaint, in connection with the events of July 17, 1996.<br><br>As stated in 140 , Plaintiffs' counsel advised all Plaintiffs, in writing, on April 1, 2024 of their intent to withdraw as counsel in this case. During the conference, Plaintiffs' counsel noted that Plaintiffs are currently in discussions with potential law firms to appear on their behalf in this case. Plaintiffs are reminded that "[a] person who is not an attorney may only represent himself in a pro se action; he may not represent another entity." *Hammond-Williams on behalf of Hammond v. Fuchs*, No. 21-CV-1121 (RA), 2021 WL 1947505, at *1 (S.D.N.Y. May 13, 2021) (citation omitted). "[A]n administratrix or executrix of an estate may not proceed pro se when the estate has beneficiaries or creditors other than the litigant," *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997), because "the personal interests of the estate, other survivors, and possible creditors... will be affected by the outcome of the proceedings," *Iannaccone v. Law*, 142 F.3d 553, 559 (2d Cir. 1998). Further, only an "administrator and sole beneficiary of an estate with no creditors may appear pro se on behalf of the estate." *Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010).<br>Plaintiffs' new counsel shall file their notices of appearance by **July 12, 2024**. The parties shall file a joint status report by **July 15, 2024**; in the joint status report, the parties shall outline proposed next steps in this litigation. (ZoomGov Log #2:34-3:02.) (EG) Modified on 6/24/2024 (JAM). (Entered: 06/24/2024) |
| 06/26/2024 | 142 | MOTION for Extension of Time to File *Defendants' Motions to Dismiss* by United States. (Kelly, Robert) (Entered: 06/26/2024) |
| 06/26/2024 | | ORDER granting 142 MOTION for Extension of Time to File the Motions to Dismiss. The due dates for briefing on the motions to dismiss are adjourned sine die. The Court will hold a status conference on July 23, 2024 at 3:00 p.m., in Courtroom 4G North. Ordered by Judge Ann M. Donnelly on 6/26/2024. (MK) (Entered: 06/26/2024) |
| 07/08/2024 | 143 | MOTION to Continue *Deadlines for New Counsel's Appearance and Status Conference* by Michael Deteresa, Craig Gaetke, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eileen Zaharioudakis. (Walburg, Todd) (Entered: 07/08/2024) |
| 07/08/2024 | | ORDER granting 143 : Incoming counsel for Plaintiffs shall file a notice of appearance by August 12, 2024. The parties shall confer and file a joint status report by August 15, 2024 outlining proposed next steps in this litigation.<br><br>The status conference is reset to August 22, 2024 at 11:00 a.m., before Judge Donnelly in Courtroom 4G North. Ordered by Magistrate Judge Joseph A. Marutollo on 7/8/2024. (JAM) (Entered: 07/08/2024) |
| 08/07/2024 | | SCHEDULING ORDER: Due to a change in the Court's schedule, the status conference has been reset to September 4, 2024 at 3:00 p.m., in Courtroom 4G North. Ordered by Judge Ann M. Donnelly on 8/7/2024. (MK) (Entered: 08/07/2024) |
| 08/15/2024 | 144 | STATUS REPORT *(JOINT)* by Michael Deteresa, Craig Gaetke, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Margareta Krick, Ronald Krick, Lisa Michelson, Eileen Zaharioudakis (Walburg, Todd) (Entered: 08/15/2024) |
| 08/16/2024 | | SCHEDULING ORDER: A status conference will be held, via Zoom, on August 22, 2024 at 12:45 p.m. before Magistrate Judge Joseph A. Marutollo to discuss developments related to the pending Motion to Withdraw, Individual and Estate Plaintiffs' attempts at retaining new counsel, and the status of this litigation. At the scheduled date and time, the parties shall use following link to appear before Judge |

# JA45

| | | |
|---|---|---|
| | | Marutollo: https://nyed.zoomgov.com/j/1614875118?pwd=nJTuwoJW4wfmbzVhh4WO9HZeyWmlPP.1.<br>Counsel and **all** individual Plaintiffs shall appear at the conference. Outgoing Counsel for Plaintiffs is directed to serve a copy of this Scheduling Order on each Plaintiff and ensure that they are aware of the upcoming conference. Ordered by Magistrate Judge Joseph A. Marutollo on 8/16/2024. (EG) (Entered: 08/16/2024) |
| 08/16/2024 | | SCHEDULING ORDER: The status conference set to September 4, 2024, before Judge Ann M. Donnelly, is adjourned sine die, given the August 22, 2024 status conference before Magistrate Judge Joseph A. Marutollo and the developments outlined in the 144 joint status report. Ordered by Judge Ann M. Donnelly on 8/16/2024. (MK) (Entered: 08/16/2024) |
| 08/21/2024 | 146 | Emergency MOTION for Sanctions *submitted by plaintiff pro se* by Christopher Krick. (RG) (Entered: 08/23/2024) |
| 08/22/2024 | | Minute Entry of Proceedings before Magistrate Judge Joseph A. Marutollo: Counsel for all parties appeared. Individual Plaintiffs Lisa Michelson, Ronald Krick, Eric Rojany, Wanda Kemp, Margaret Krick, and Christine Grogan also appeared. Discussions were held on the record. Plaintiffs were advised of numerous standing and other substantive deficiencies implicated by Plaintiffs' counsel's motion to withdraw. Plaintiffs were also advised of their own withdrawal rights under the Federal Rules of Civil Procedure. Plaintiffs apprised the Court of their efforts to seek new counsel. Defendants advised the Court of their concerns regarding the status of this litigation. Outgoing counsel noted that they have no involvement in Plaintiffs' attempt to retain new counsel. At least three Plaintiffs represented that they are actively seeking counsel.<br><br>After expressing its concerns regarding Plaintiffs' likelihood of success at this juncture, the Court ordered Plaintiffs to obtain new counsel by September 13, 2024. Plaintiffs' current counsel shall file a status report by September 16, 2024. Plaintiffs' counsel shall order a copy of the transcript from the August 22, 2024 conference and serve copies of the transcript - - along with this Order - - upon each Plaintiff via email. Contact the E.S.R. Department at (718) 613-2590 to order the transcript. (ZoomGov Log #12:56-1:43.) (EG) (Entered: 08/22/2024) |
| 08/23/2024 | 145 | NOTICE by Raytheon Company *Withdrawal of Appearance of Tara E. Nicola* (Nicola, Tara) Modified on 8/23/2024 to convert to motion(EG). (Entered: 08/23/2024) |
| 08/23/2024 | | ORDER denying 145 Motion to Withdraw as Attorney. The motion to withdraw does not comply with Local Civil Rule 1.4, which, among other things, requires the attorney seeking to withdraw to indicate whether they are asserting a retaining or charging lien. Counsel is directed to consult Local Civil Rule 1.4, amend their motion to meet all of the requirements, and re-file by August 27, 2024. Ordered by Magistrate Judge Joseph A. Marutollo on 8/23/2024. (EG) (Entered: 08/23/2024) |
| 08/26/2024 | | ORDER denying 146 Motion for Sanctions. The Court is in receipt of Mr. Christopher Krick's Motion for Sanctions. This Motion is DENIED. Until relieved as counsel by further action from this Court, Mr. Krick remains represented by counsel and may not file such applications on the docket. Ordered by Magistrate Judge Joseph A. Marutollo on 8/26/2024. (JAM) (Entered: 08/26/2024) |
| 08/27/2024 | 147 | MOTION to Withdraw as Attorney *Withdrawal of Appearance of Tara E. Nicola* by Raytheon Company. (Attachments: # 1 Exhibit A - Proposed Order) (Pagano, Ralph) (Entered: 08/27/2024) |
| 08/27/2024 | | ORDER granting 147 Motion to Withdraw as Attorney. Attorney Tara E. Nicola and Tara Elizabeth Nicola terminated. Ordered by Magistrate Judge Joseph A. Marutollo on |

# JA46

| | | 8/27/2024. (JAM) (Entered: 08/27/2024) |
|---|---|---|
| 08/29/2024 | 148 | NOTICE of Voluntary Dismissal by Lisa Michelson (Walburg, Todd) (Entered: 08/29/2024) |
| 09/09/2024 | 149 | TRANSCRIPT of Proceedings held on August 22, 2024, before Judge Marutollo. Court Transcriber: Georgette K. Betts. Email address: Georgetteb25@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/30/2024. Redacted Transcript Deadline set for 10/10/2024. Release of Transcript Restriction set for 12/9/2024. (RC) (Entered: 09/09/2024) |
| 09/16/2024 | 150 | STATUS REPORT by Michael Deteresa, Craig Gaetke, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Eileen Zaharioudakis (Walburg, Todd) (Entered: 09/16/2024) |
| 09/20/2024 | | STATUS REPORT ORDER re 140 Motion to Withdraw: Following the August 22, 2024 status conference held before this Court, Plaintiffs were granted an extension until September 13, 2024 to retain new counsel in light of the pending motion to withdraw. On September 16, 2024, Plaintiffs' outgoing counsel represented that the remaining Plaintiffs "have not yet found replacement counsel willing to undertake Plaintiffs' representation." Dkt. No. 150. Counsel also represented that they received a document purporting to be a "Draft Opposition" to their motion to withdraw from an attorney based in Medford, Oregon the latter whom the Court notes has yet to appear in this action and thus has no business before this Court.<br><br>The Court intends on ruling on the pending motion to withdraw shortly. By **September 24, 2024**, outgoing counsel shall file a letter containing the contact information (name, mailing address, phone number, and email address where applicable) for each of the remaining Plaintiffs in this action. Ordered by Magistrate Judge Joseph A. Marutollo on 9/20/2024. (EG) (Entered: 09/20/2024) |
| 09/23/2024 | 151 | Letter *to Hon. Joseph A. Marutollo in Response to Status Report Order* by Michael Deteresa, Craig Gaetke, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Eileen Zaharioudakis (Walburg, Todd) (Entered: 09/23/2024) |
| 10/08/2024 | 152 | **OPINION AND ORDER** granting 140 Motion to Withdraw as Attorney. For the reasons set forth in the attached Opinion and Order, the Motion to Withdraw is **GRANTED**. Attorneys Leslie A. Brueckner; John J. Roddy; Christopher D. Smith; Eric B. Snyder; Todd A. Walburg; Todd Alan Walburg; Scott B. Baez and Benjamin L. Bailey terminated.<br><br>Plaintiffs Ronald Krick, Wanda Kemp, Eileen Zaharioudakis, and Douglas Kevorkian are hereby **ORDERED TO SHOW CAUSE** by **November 4, 2024** why they should be allowed to proceed *pro se* with this action on behalf of decedents Oliver Krick, O. Lamar Allen and Ashton Allen, Donald E. Gough, and Ralph G. Kevorkian respectively. Each of Ronald Krick, Wanda Kemp, Eileen Zaharioudakis, and Douglas Kevorkian shall file, under penalty of perjury, a letter addressed to this Court affirming that (i) they are the sole beneficiary of the decedents estate, (ii) there are no creditors, and (iii) where relevant, why the decedent's survivors do not defeat their status as beneficiaries. Where applicable and beneficial to their argument, Plaintiffs may provide supporting documentation. |

# JA47

| | | |
|---|---|---|
| | | The Court notes that failure to do so may result in a *sua sponte* Report and Recommendation to the Honorable Ann. M. Donnelly, United States District Judge, recommending that Plaintiffs Ronald Krick, Wanda Kemp, Eileen Zaharioudakis, and Douglas Kevorkian be dismissed with leave to file an amended complaint through counsel within sixty days of adoption of a dismissal order.<br><br>The Clerk of Court is respectfully directed to (i) serve a copy of this Opinion and Order via first-class mail (where possible) and email and (ii) update each remaining Plaintiffs' contact information as outlined in Section III of the Opinion and Order.<br><br>Ordered by Magistrate Judge Joseph A. Marutollo on 10/8/2024. (LCPL) (Entered: 10/08/2024) |
| 10/18/2024 | 153 | MOTION to Appear Pro Hac Vice Filing fee $ 200, receipt number ANYEDC-18403049. (Attachments: # 1 Affidavit, # 2 Certificate of Good Standing) (Ayers, Stephani) (Entered: 10/18/2024) |
| 10/18/2024 | | ORDER granting 153 Motion to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that they receive electronic notification of activity in this case. Also, the attorney shall ensure the $200 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Joseph A. Marutollo on 10/18/2024. (EG) (Entered: 10/18/2024) |
| 10/18/2024 | | ORDER - In Dkt. No. 153 , counsel Stephani L. Ayers states that she will appear for "Kemp, Grogan, Kevorkian, et al." By October 23, 2024, Ms. Ayers shall clarify whether she represents all Plaintiffs in this action.<br><br>In light of Ms. Ayers's motion for pro hac vice, the parties shall file a joint status report by October 25, 2024. Ordered by Magistrate Judge Joseph A. Marutollo on 10/18/2024. (JAM) (Entered: 10/18/2024) |
| 10/21/2024 | 154 | NOTICE of Appearance by Stephani Ayers on behalf of Wanda Kemp, Christine Grogan, Eileen Zaharioudakis, Michael Deteresa, Ronald Krick, Margareta Krick, Christopher Krick, Douglas Kevorkian, Craig Gaetke (aty to be noticed) (Ayers, Stephani) (Entered: 10/21/2024) |
| 10/22/2024 | 155 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Wanda Kemp, Christine Grogan, Eileen Zaharioudakis, Michael Deteresa, Ronald Krick, Margareta Krick, Christopher Krick, Douglas Kevorkian, Craig Gaetke re 152 Order on Motion to Withdraw as Attorney,,,,,,,, (Ayers, Stephani) (Entered: 10/22/2024) |
| 10/23/2024 | 156 | CERTIFICATE OF SERVICE by Wanda Kemp, Christine Grogan, Eileen Zaharioudakis, Michael Deteresa, Ronald Krick, Margareta Krick, Christopher Krick, Charles Henry Gray, IV, Chadwick Graham Gray, Douglas Kevorkian, Craig Gaetke re 152 Order on Motion to Withdraw as Attorney,,,,,,,, *UPON TODD WALBURG, BENJAMIN BAILEY, ERIC SNYDER, BAILEY & GLASSER LLP* (Ayers, Stephani) (Entered: 10/23/2024) |
| 10/25/2024 | 157 | STATUS REPORT by Wanda Kemp, Christine Grogan, Eileen Zaharioudakis, Michael Deteresa, Ronald Krick, Margareta Krick, Christopher Krick, Douglas Kevorkian, Craig Gaetke (Ayers, Stephani) (Entered: 10/25/2024) |
| 10/26/2024 | | SCHEDULING ORDER: The Court is in receipt of the plaintiffs' 155 objections to Magistrate Judge Joseph A. Marutollo's 152 opinion and order granting the 140 motion to withdraw as attorney. The defendants' replies, if any, are due by November 1, 2024. Ordered by Judge Ann M. Donnelly on 10/26/2024. (MK) (Entered: 10/26/2024) |

# JA48

| | | |
|---|---|---|
| 11/04/2024 | 158 | MOTION to Stay re 155 Appeal of Magistrate Judge Decision to District Court, 152 Order on Motion to Withdraw as Attorney,,,,,,, by Wanda Kemp, Christine Grogan, Eileen Zaharioudakis, Ronald Krick, Margareta Krick, Christopher Krick, Douglas Kevorkian, Todd Gaetke, Craig Gaetke. (Ayers, Stephani) (Entered: 11/04/2024) |
| 11/05/2024 | | ORDER: The Court is in receipt of Ronald Krick, Wanda Kemp, and Douglas Kevorkian's responses to the Court's 152 Order to Show Cause, which were emailed to Magistrate Judge Marutollo's chambers. Plaintiffs are reminded that they shall not email Magistrate Judge Marutollo's chambers absent a Court order saying otherwise.<br><br>The Court grants 158 . The 152 Order to Show Cause is stayed pending resolution of Plaintiffs' 155 Appeal of the Magistrate Judge's Decision. Ordered by Magistrate Judge Joseph A. Marutollo on 11/5/2024. (EG) (Entered: 11/05/2024) |
| 11/20/2024 | 159 | ORDER as to 155 Appeal of Magistrate Judge Decision. The plaintiffs' appeal of Magistrate Judge Joseph A. Marutollo's October 8, 2024 order granting the motion to withdraw is denied. Ordered by Judge Ann M. Donnelly on 11/20/2024. (DG) (Entered: 11/20/2024) |
| 11/21/2024 | 160 | Mail Returned as Undeliverable. Mail sent to Ronald Krick; copies of document sent from Judge Marutollo's chambers order dated 10/8/24. (RG) (Entered: 11/21/2024) |
| 11/22/2024 | | ORDER TO SHOW CAUSE - Plaintiffs Ronald Krick, Wanda Kemp, Eileen Zaharioudakis, and Douglas Kevorkian are therefore ORDERED TO SHOW CAUSE by December 6, 2024 why they should be allowed to proceed pro se with this action on the relevant decedent's behalf. Ronald Krick, Wanda Kemp, Eileen Zaharioudakis, and Douglas Kevorkian, respectively, may file, under penalty of perjury, a letter addressed to this Court affirming that (i) they are the sole beneficiary of the decedent's estate, (ii) there are no creditors, and (iii) where relevant, why the decedent's survivors do not defeat their status as beneficiaries. Where applicable and beneficial to their argument, Plaintiffs may provide supporting documentation.<br><br>Plaintiffs shall NOT email Magistrate Judge Marutollo's chambers with any letters; all letters must be filed on the docket. The Court notes that failure to comply with the above order may result in a sua sponte Report and Recommendation to the Honorable Ann. M. Donnelly, United States District Judge, recommending that Plaintiffs Ronald Krick, Wanda Kemp, Eileen Zaharioudakis, and Douglas Kevorkian be dismissed with leave to file an amended complaint through counsel within sixty days of adoption of a dismissal order. The Clerk of the Court is directed to send this Order to Plaintiffs via mail and email. Ordered by Magistrate Judge Joseph A. Marutollo on 11/22/2024. (EG) Modified on 11/22/2024 (EG). (Entered: 11/22/2024) |
| 12/04/2024 | 162 | Letter dated 12/4/2024 to Judge Donnelly from Wanda Allen Kemp, Pro Se re her status as a beneficiary. (TLH) (Entered: 12/06/2024) |
| 12/05/2024 | 161 | Letter undated from Ronald Krick, plaintiff pro se in response to the Court's Order to Show Cause re: beneficiary of the decedent's estate. (RG) (Entered: 12/06/2024) |
| 12/09/2024 | 163 | Letter dated 12/5/24 from Douglas Kevorkian, re: being the sole beneficiary of father's estate, Ralph G. Kevorkian. (Unsigned) (RG) (Entered: 12/09/2024) |
| 12/11/2024 | 164 | Letter *requesting a status conference* by United States (Kelly, Robert) (Entered: 12/11/2024) |
| 12/11/2024 | | ORDER granting in part 164 . A status conference will be held on December 16 at 3:00 p.m. via Zoom to discuss the status of this litigation. At the scheduled date and time, the parties shall use following link to appear before Judge Marutollo: |

| | | |
|---|---|---|
| | | https://nyed.zoomgov.com/j/1613871173?pwd=hgmuIkMqATAbkIRBlh6zYZs8bl2vif.1. Counsel and all individual Plaintiffs shall appear at the conference. Defendants are directed to serve a copy of this Scheduling Order on each Plaintiff and ensure that they are aware of the upcoming conference. Ordered by Magistrate Judge Joseph A. Marutollo on 12/11/2024. (GWM) (Entered: 12/11/2024) |
| 12/16/2024 | | Minute Entry for proceedings held before Magistrate Judge Joseph A. Marutollo: A Zoom conference was held on December 13, 2024. Counsel for all defendants appeared. Stephani Ayers appeared. Discussions were held on the record regarding the status of Plaintiffs' representation, and Ms. Ayers indicated that she intends to represent Plaintiffs in the action. The Court ordered Ms. Ayers to file a revised notice of appearance by December 16, 2024.<br><br>After discussing Defendants' intent to file a motion to dismiss, the Court ordered the parties to file a joint letter, addressed to Judge Donnelly, concerning the parties' respective positions on the proposed briefing schedule by December 18, 2024, at 5:00 p.m. (ZoomGov Log #3:00-3:26.) (EG) (Entered: 12/16/2024) |
| 12/16/2024 | 165 | NOTICE of Appearance by Stephani Ayers on behalf of All Plaintiffs (aty to be noticed) (Ayers, Stephani) (Entered: 12/16/2024) |
| 12/18/2024 | 166 | Letter *Requesting a Briefing Schedule and Status Hearing* by United States (Kelly, Robert) (Entered: 12/18/2024) |
| 12/20/2024 | | SCHEDULING ORDER. The Court has received 166 the parties' joint letter. The defendants are directed to advise the Court by December 27, 2024, how many motions to dismiss they intend to file, which defendants are joining each motion, and whether the proposed 45-page limit would apply to each motion. Ordered by Judge Ann M. Donnelly on 12/20/2024. (MK) (Entered: 12/20/2024) |
| 12/27/2024 | 167 | STATUS REPORT *by Defendants in Response to Minute Order of December 20, 2024* by United States (Rosa, Jill) (Entered: 12/27/2024) |
| 12/27/2024 | | SCHEDULING ORDER. The Court has received the parties' request for a briefing schedule. The defendants' motions to dismiss, not to exceed 45 pages each, are due by April 1, 2025. The plaintiffs must file one opposition, not to exceed 45 pages, that addresses all three motions by May 16, 2025. The defendants' replies, if any, not to exceed 25 pages each, are due by June 20, 2025. The Court stresses, however, that that the parties are not required to use all pages allotted. The defendants are encouraged to join arguments to the extent possible to avoid redundancy. Ordered by Judge Ann M. Donnelly on 12/27/2024. (MK) (Entered: 12/27/2024) |
| 12/30/2024 | | Order re: 166 - "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Salese v. JP Morgan Chase & Co.*, No. 23-CV-153 (GRB) (JMW), 2023 WL 5047890, at *1 (E.D.N.Y. Aug. 8, 2023) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "A party seeking a stay of discovery pursuant to Fed.R.Civ.P. 26(c) bears the burden of showing good cause." *Weitzner v. Sciton, Inc.*, No. 05-CV-2533 (SLT) (MDG), 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006). "The pendency of a dispositive motion is not, in itself, an automatic ground for a stay." *Id*.; *see also Jakob v. JPMorgan Chase Bank, N.A.*, No. 22-CV-03921 (HG), 2023 WL 2386395, at *1 (E.D.N.Y. Mar. 7, 2023) ("In other words, the mere filing of a motion to dismiss does not warrant a stay of discovery absent good cause."). Factors for the Court to consider include whether the motion to dismiss has substantial grounds, the type of motion and whether it is a challenge as a "matter of law" or to the "sufficiency" of the allegations, the nature and complexity of |

# JA50

| | | |
|---|---|---|
| | | the action, the posture or stage of the litigation, and the expected extent of discovery. *Weitzner*, 2006 WL 3827422 at *1 (citation omitted). The "mandate of a showing of good cause is critically important because of the Court's obligation 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Jakob*, 2023 WL 2386395, at *1 (citing, *inter alia*, Fed. R. Civ. P. 1.).<br><br>Here, for the reasons set forth in 166 , Defendants have established good cause to establish that a stay is warranted. Discovery shall therefore be stayed pending the disposition of Defendants' forthcoming motions for dismissal with prejudice. Ordered by Magistrate Judge Joseph A. Marutollo on 12/30/2024. (GWM) (Entered: 12/30/2024) |
| 01/17/2025 | 168 | MOTION for Leave to Electronically File Document under Seal by United States. (Attachments: # 1 Exhibit Ashton Allen Release, # 2 Exhibit Gaetke Release, # 3 Exhibit Gough Release, # 4 Exhibit Krick Release, # 5 Exhibit Otis Allen Release 1, # 6 Exhibit Otis Allen Release 2, # 7 Exhibit Kevorkian Release) (Kelly, Robert) (Entered: 01/17/2025) |
| 01/21/2025 | 169 | REPLY in Support *of Defendant United States' Notice of Motion and Motion to File Under Seal* filed by Lockheed Martin Corporation. (Katt, William) (Entered: 01/21/2025) |
| 01/22/2025 | | **VACATED** ORDER granting 168 Motion for Leave to Electronically File Document under Seal. Counsel for the United States is directed to file the original document under seal as a separate entry. Instructions on filing sealed documents on ECF are located at ww.nyed.uscourts.gov. Ordered by Magistrate Judge Joseph A. Marutollo on 1/22/2025. (EG) Modified on 1/31/2025 to vacate order pursuant to Judge Marutollo's order dated 01/29/2025. (EG). (Entered: 01/22/2025) |
| 01/24/2025 | 171 | MOTION to Set Aside Order on Motion for Leave to Electronically File Document under Seal, by Wanda Kemp, Christine Grogan, Eileen Zaharioudakis, Michael Deteresa, Ronald Krick, Margareta Krick, Christopher Krick, Charles Henry Gray, IV, Chadwick Graham Gray, Douglas Kevorkian, Craig Gaetke. (Ayers, Stephani) (Entered: 01/24/2025) |
| 01/24/2025 | | ORDER: Defendants shall respond to 171 by January 29, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 1/24/2025. (GWM) (Entered: 01/24/2025) |
| 01/29/2025 | 172 | RESPONSE to Motion re 171 MOTION to Set Aside Order on Motion for Leave to Electronically File Document under Seal, filed by United States. (Attachments: # 1 Exhibit 1 Email, # 2 Exhibit 2 Email, # 3 Exhibit 3 Email, # 4 Exhibit 4 Email) (Kelly, Robert) (Entered: 01/29/2025) |
| 01/29/2025 | 173 | RESPONSE to Motion re 171 MOTION to Set Aside Order on Motion for Leave to Electronically File Document under Seal, filed by Raytheon Company. (Pagano, Ralph) (Entered: 01/29/2025) |
| 01/29/2025 | | ORDER granting 171 : In light of the United States' position in Dkt. No. 172 , Plaintiffs shall file their opposition to Dkt. No. 168 by February 3, 2025 at 5:00 p.m. In light of Plaintiffs' anticipated opposition to Dkt. No. 168 , the Court vacates its January 22, 2025 order granting the United States leave to electronically file the documents at issue under seal. The Court notes that all requests to seal shall comply with the Local Civil Rules and the information set forth on the Court's website. Ordered by Magistrate Judge Joseph A. Marutollo on 1/29/2025. (GWM) (Entered: 01/29/2025) |
| 02/03/2025 | 174 | REPLY in Opposition re Order on Motion to Set Aside,, filed by All Plaintiffs. (Ayers, Stephani) (Entered: 02/03/2025) |

# JA51

| 02/03/2025 | | ORDER: Defendants shall file their response(s) to 174 , if any, by February 6, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 2/3/2025. (JAM) (Entered: 02/03/2025) |
|---|---|---|
| 02/13/2025 | 175 | TRANSCRIPT of Proceedings held on December 16, 2024, before Judge Marutollo. Court Transcriber: Superior Reporting Services LLC. Email address: transcripts@superiorreporter.com. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 3/6/2025. Redacted Transcript Deadline set for 3/17/2025. Release of Transcript Restriction set for 5/14/2025. (RC) (Entered: 02/13/2025) |
| 03/01/2025 | | ORDER - The Court denies, without prejudice, the Government and Raytheon's motion to file, under seal, certain documents in connection with their anticipated motion to dismiss 168 172 173 . As an initial matter, the Government and Raytheon fail to comply with Rule XI of Magistrate Judge Marutollo's Individual Practices and Rules, to wit: "[a]ny application to seal shall be accompanied by an affidavit or affidavits and a memorandum of law, demonstrating that the standards for sealing have been met and specifically addressing Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006) and any other controlling authority. The application shall also include a proposed redacted version of the document(s) in question for public docketing." While the Government and Raytheon loosely address Lugosch in their letters, their briefing is otherwise largely devoid of any citation to pertinent case law and does not comply with Magistrate Judge Marutollo's Individual Practices and Rules.<br><br>The Government and Raytheon shall refile their motion(s) by 5:00 p.m. on March 5, 2025. The Government and Raytheon may choose to file a single motion on behalf of their application. The Government and Raytheon shall file an unredacted copy of the renewed motion (and any exhibits) under seal, and shall also file a redacted copy of the renewed motion (with any sealed exhibits omitted) on the docket.<br><br>In their motion(s), the Government and Raytheon shall address, inter alia, (1) the weight of presumption of public access to the documents sought to be filed under seal; (2) how public filing of the sealed documents would "exacerbate harms to privacy and reputation" to any parties or non-parties, see Zou v. Han, No. 23-CV-02370 (JMA) (JMW), 2024 WL 1704704, at *3 (E.D.N.Y. Apr. 19, 2024); (3) how the sealing request is narrowly tailored to preserve higher values; and (4) why sealing of the entire documents at issue - rather than redactions - are required. The motion(s) shall include citations to case law in support of the arguments made.<br><br>Plaintiffs shall respond to the Government and Raytheon's motions by 5:00 p.m. on March 10, 2025. To the extent Plaintiffs rely on any purportedly confidential information in its response, Plaintiffs shall file such briefing under seal on the docket, with a redacted copy also filed on the docket.Ordered by Magistrate Judge Joseph A. Marutollo on 3/1/2025. (JAM) (Entered: 03/01/2025) |
| 03/04/2025 | 176 | Letter MOTION for Extension of Time to File by Raytheon Company. (Pagano, Ralph) (Entered: 03/04/2025) |
| 03/05/2025 | 177 | NOTICE by United States *in Response to Court's March 1, 2025 Order* (Kelly, Robert) (Entered: 03/05/2025) |
| 03/05/2025 | | ORDER denying 176 as moot. In light of 177 , in which Defendants state that "as the terms of the releases do not implicate any sensitive information specific to the United |

# JA52

| | | |
|---|---|---|
| | | States, Raytheon, or Lockheed Martin, the Defendants do not believe that there is any further dispute that the Court must resolve at this time," Dkt. No. 176 is denied as moot. In light of 177 , Defendants shall file the settlement releases in support of their motions to dismiss on the public docket. Ordered by Magistrate Judge Joseph A. Marutollo on 3/5/2025. (JAM) (Entered: 03/05/2025) |
| 04/01/2025 | 178 | MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss for Failure to State a Claim by United States. (Kelly, Robert) (Entered: 04/01/2025) |
| 04/01/2025 | 179 | MEMORANDUM in Support re 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim filed by United States. (Kelly, Robert) (Entered: 04/01/2025) |
| 04/01/2025 | 180 | AFFIDAVIT/DECLARATION in Support re 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim filed by United States. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13) (Kelly, Robert) (Entered: 04/01/2025) |
| 04/01/2025 | 181 | MOTION to Dismiss for Failure to State a Claim *[PRE]*, MOTION to Dismiss for Lack of Jurisdiction by Lockheed Martin Corporation. (Kelly, John) (Entered: 04/01/2025) |
| 04/01/2025 | 182 | MEMORANDUM in Support re 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction filed by Lockheed Martin Corporation. (Attachments: # 1 Exhibit A - Estate Documents, # 2 Exhibit B - Releases) (Kelly, John) (Entered: 04/01/2025) |
| 04/01/2025 | 183 | AFFIDAVIT/DECLARATION in Support re 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction filed by Lockheed Martin Corporation. (Kelly, John) (Entered: 04/01/2025) |
| 04/01/2025 | 184 | Letter *to Hon. Ann M. Donnelly Requesting Oral Argument* by Lockheed Martin Corporation (Kelly, John) (Entered: 04/01/2025) |
| 04/01/2025 | 185 | MOTION to Dismiss for Failure to State a Claim by Raytheon Company. (Pagano, Ralph) (Entered: 04/01/2025) |
| 04/01/2025 | 186 | MEMORANDUM in Support re 185 MOTION to Dismiss for Failure to State a Claim filed by Raytheon Company. (Pagano, Ralph) (Entered: 04/01/2025) |
| 04/01/2025 | 187 | AFFIDAVIT/DECLARATION in Support re 185 MOTION to Dismiss for Failure to State a Claim filed by Raytheon Company. (Attachments: # 1 Exhibit A - TWA 800 MDL Docket, # 2 Exhibit B - Stips of Dismissal TWA 800 MDL, # 3 Exhibit C - Krick Release, # 4 Exhibit D - A. Allen Release, # 5 Exhibit E - O. Lamar Allen 1 Release, # 6 Exhibit F - O. Lamar Allen 2 Release, # 7 Exhibit G - Gaetke Release, # 8 Exhibit H - Gough Release, # 9 Exhibit I - Kevorkian Release) (Pagano, Ralph) (Entered: 04/01/2025) |
| 04/04/2025 | 188 | Letter MOTION to Dismiss for Failure to State a Claim , Letter MOTION to Dismiss for Lack of Jurisdiction *Requesting Oral Argument* by Lockheed Martin Corporation. (Kelly, John) (Entered: 04/04/2025) |
| 04/04/2025 | 189 | Letter MOTION to Dismiss for Failure to State a Claim *Requesting Oral Argument* by Raytheon Company. (Pagano, Ralph) (Entered: 04/04/2025) |
| 05/05/2025 | 190 | Consent MOTION for Extension of Time to File Response/Reply as to 182 Memorandum in Support, 185 MOTION to Dismiss for Failure to State a Claim , 183 Affidavit in Support of Motion, 179 Memorandum in Support, 178 MOTION to |

# JA53

| | | |
|---|---|---|
| | | Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim , 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction , 186 Memorandum in Support by Michael Deteresa, Craig Gaetke, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Eileen Zaharioudakis. (Ayers, Stephani) (Entered: 05/05/2025) |
| 05/05/2025 | | ORDER granting 190 Motion for Extension of Time. The plaintiffs are directed to file their response to the defendants' motions to dismiss by June 16, 2025. The defendants are directed to file their replies, if any, by July 21, 2025. Ordered by Judge Ann M. Donnelly on 5/5/2025. (EHS) (Entered: 05/05/2025) |
| 06/11/2025 | 191 | Consent MOTION for Extension of Time to File *Opposition Briefs* by Michael Deteresa, Craig Gaetke, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Eileen Zaharioudakis. (Ayers, Stephani) (Entered: 06/11/2025) |
| 06/11/2025 | | ORDER granting 191 Motion for Extension of Time to File. The plaintiffs are directed to file their response to the defendants' motions to dismiss by June 26, 2025. The defendants are directed to file their replies, if any, by July 31, 2025. Ordered by Judge Ann M. Donnelly on 6/11/2025. (EHS) (Entered: 06/11/2025) |
| 06/23/2025 | 192 | Third MOTION for Extension of Time to File Response/Reply as to 182 Memorandum in Support, 185 MOTION to Dismiss for Failure to State a Claim , 189 Letter MOTION to Dismiss for Failure to State a Claim *Requesting Oral Argument*, 179 Memorandum in Support, 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim , 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction , 188 Letter MOTION to Dismiss for Failure to State a Claim Letter MOTION to Dismiss for Lack of Jurisdiction *Requesting Oral Argument*, 184 Letter, 187 Affidavit in Support of Motion,, 186 Memorandum in Support by Michael Deteresa, Craig Gaetke, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Eileen Zaharioudakis. (Attachments: # 1 Declaration of SL Ayers) (Ayers, Stephani) (Entered: 06/23/2025) |
| 06/24/2025 | | ORDER granting 192 Motion for Extension of Time to File Response/Reply. The plaintiffs' deadline to file their opposition to the defendants' motions to dismiss is extended to July 28, 2025. The defendants' replies, if any, are due by September 1, 2025. The Court will not grant any further extensions absent a showing of good cause. Ordered by Judge Ann M. Donnelly on 6/24/2025. (EHS) (Entered: 06/24/2025) |
| 07/28/2025 | 193 | Fourth MOTION for Extension of Time to File Response/Reply as to 185 MOTION to Dismiss for Failure to State a Claim , 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim , 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction *BY 1 DAY FOR TECHNICAL FAILING* by Michael Deteresa, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Eileen Zaharioudakis. (Ayers, Stephani) (Entered: 07/28/2025) |
| 07/28/2025 | 194 | AFFIDAVIT/DECLARATION in Opposition re 185 MOTION to Dismiss for Failure to State a Claim , 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim , 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction filed by All Plaintiffs. (Attachments: # 1 Exhibit Transcript of Proceedings, # 2 Exhibit B- estate docs) (Ayers, Stephani) (Entered: 07/28/2025) |

**JA54**

| 07/28/2025 | 195 | MEMORANDUM in Opposition re 185 MOTION to Dismiss for Failure to State a Claim , 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim , 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction filed by All Plaintiffs. (Ayers, Stephani) (Entered: 07/28/2025) |
|---|---|---|
| 07/29/2025 | 196 | RESPONSE in Opposition re 185 MOTION to Dismiss for Failure to State a Claim , 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim , 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction *[CORRECTED]* filed by All Plaintiffs. (Ayers, Stephani) (Entered: 07/29/2025) |
| 07/29/2025 | | ORDER finding as moot 193 Motion for Extension of Time to File Response/Reply. In light of the plaintiffs filing their opposition to the defendants' motions to dismiss, the plaintiffs' request for an extension of time to file is denied as moot. Ordered by Judge Ann M. Donnelly on 7/29/2025. (EHS) (Entered: 07/29/2025) |
| 08/12/2025 | 197 | Letter *Re Corrected Brief at 196 and Errata* by Michael Deteresa, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Eileen Zaharioudakis (Attachments: # 1 Errata) (Ayers, Stephani) (Entered: 08/12/2025) |
| 08/12/2025 | | ORDER: The Court is in receipt of the plaintiffs' 197 letter regarding their corrected brief. The Court will refer to the plaintiffs' 196 corrected opposition to the defendants' motions to dismiss. Ordered by Judge Ann M. Donnelly on 8/12/2025. (EHS) (Entered: 08/12/2025) |
| 08/21/2025 | 198 | Letter *requesting status conference* by United States (Attachments: # 1 Exhibit 1 Email, # 2 Exhibit 2 Letter, # 3 Exhibit 3 Probate Court Order, # 4 Exhibit 4 Hearing Trans., # 5 Declaration Ex 5) (Kelly, Robert) (Entered: 08/21/2025) |
| 08/21/2025 | | SCHEDULING ORDER: An in-person status conference will occur on September 10, 2025, at 11:00 a.m. in Courtroom 11A South. The parties are further ordered to meet and confer concerning the issues raised in 198 , and shall file a joint status report concerning their discussions by September 3, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 8/21/2025. (EG) (Entered: 08/21/2025) |
| 08/22/2025 | 199 | MOTION to Appear Pro Hac Vice *for Shane B. Nichols* Filing fee $ 200, receipt number BNYEDC-19374751 by Raytheon Company. (Attachments: # 1 Exhibit A - Affidavit of Shane B. Nichols in Support of Motion to Admit Counsel Pro Hac Vice, # 2 Exhibit B - Affidavit of Ralph V. Pagano in Support of Motion to Admit Counsel Pro Hac Vice, # 3 Exhibit C - Proposed Order Granting Motion for Admission Pro Hac Vice) (Pagano, Ralph) (Entered: 08/22/2025) |
| 08/22/2025 | 200 | Joint MOTION for Extension of Time to File Response/Reply as to 185 MOTION to Dismiss for Failure to State a Claim , 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim , 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction *(Unopposed)* by Raytheon Company. (Attachments: # 1 Exhibit A - Cobb County GA Probate Records, # 2 Exhibit B - Magistrate Hearing Transcript 2024.08.22, # 3 Exhibit C - Correspondence re Gray Plaintiffs) (Pagano, Ralph) (Entered: 08/22/2025) |
| 08/22/2025 | | ORDER granting 200 Motion for Extension of Time to File Response/Reply. The defendants' replies in support of their motions to dismiss are due by October 1, 2025. Ordered by Judge Ann M. Donnelly on 8/22/2025. (EHS) (Entered: 08/22/2025) |
| 08/22/2025 | | ORDER: The in-person status conference will now be held at 10:30 a.m. on September 10, 2025 in Courtroom 11A South. Ordered by Magistrate Judge Joseph A. Marutollo |

| | | on 8/22/2025. (EG) (Entered: 08/22/2025) |
|---|---|---|
| 08/22/2025 | | ORDER granting 199 Motion to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that they receive electronic notification of activity in this case. Also, the attorney shall ensure the $200 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Joseph A. Marutollo on 8/22/2025. (EG) (Entered: 08/22/2025) |
| 09/02/2025 | 201 | NOTICE of Appearance by Shane Nichols on behalf of Raytheon Technologies Corporation (aty to be noticed) (Nichols, Shane) (Entered: 09/02/2025) |
| 09/03/2025 | 202 | STATUS REPORT *(Joint)* by Lockheed Martin Corporation, Raytheon Company, United States (Nichols, Shane) (Entered: 09/03/2025) |
| 09/04/2025 | | ORDER: The Court is in receipt of 198 and 202 . It is not clear, however, as to what Plaintiffs' position is regarding the issues raised in 198 and 202 . Plaintiffs shall file a letter advising their positions on the issues raised in 198 and 202 by September 8, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 9/4/2025. (EG) Modified on 9/4/2025 (GWM). (Entered: 09/04/2025) |
| 09/05/2025 | 203 | MOTION to Appear Pro Hac Vice *by Thad M. Guyer, Esq* Filing fee $ 200, receipt number ANYEDC-19414867 by Christine Grogan. (Attachments: # 1 Affidavit, # 2 Admission Information Certificate of Good Standing) (Guyer, Thad) (Entered: 09/05/2025) |
| 09/05/2025 | 204 | RESPONSE in Opposition re 203 MOTION to Appear Pro Hac Vice *by Thad M. Guyer, Esq* Filing fee $ 200, receipt number ANYEDC-19414867 filed by United States. (Attachments: # 1 Exhibit 1 Order, # 2 Exhibit 2 Show Cause Order) (Kelly, Robert) (Entered: 09/05/2025) |
| 09/05/2025 | 205 | REPLY in Support re 204 Response in Opposition to Motion, *re Pro Hac Vice Application of Thad Guyer* filed by All Plaintiffs. (Attachments: # 1 Declaration Declaration of Thad Guyer, # 2 Exhibit EX. A, # 3 Exhibit EX. B, # 4 Exhibit EX. C, # 5 Exhibit EX. D, # 6 Exhibit EX. E, # 7 Exhibit EX. F) (Guyer, Thad) (Entered: 09/05/2025) |
| 09/08/2025 | 206 | REPLY in Support re 205 Reply in Support, 204 Response in Opposition to Motion, *SUPPLEMENT TO REPLY- EX. G RE OREGON STATE BAR* filed by All Plaintiffs. (Attachments: # 1 Exhibit EX. G Letter re Oregon State Bar) (Guyer, Thad) (Entered: 09/08/2025) |
| 09/08/2025 | 207 | REPLY in Support re 206 Reply in Support, 204 Response in Opposition to Motion, *SECOND SUPPLEMENT EXHIBIT H FROM OREGON STATE BAR* filed by All Plaintiffs. (Attachments: # 1 Exhibit Ex. H Email from Oregon State Bar) (Guyer, Thad) (Entered: 09/08/2025) |
| 09/09/2025 | 208 | Letter *re clarifying* by Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp (Ayers, Stephani) (Entered: 09/09/2025) |
| 09/10/2025 | | Minute Entry for proceedings before Magistrate Judge Joseph A. Marutollo: A status conference was held on the record on September 10, 2025. Counsel for all parties appeared. Individual Plaintiffs Charles Henry Gray, IV and Chadwick Graham Gray also appeared. The status of the case, as raised in 198 , 202 , and 208 , was discussed. Following that discussion the Court made the following rulings:<br><br>The parties shall meet and confer to discuss the existence and status of Gray parties' release with Boeing. Defendants shall make any motion for the Court concerning those |

## JA56

| | | |
|---|---|---|
| | | releases by September 17, 2025. Defendants shall promptly inform the Court if there are any delays in obtaining the releases.<br><br>Defendants shall file their joint, supplemental brief concerning the issues raised in 198 by October 30, 2025. Plaintiffs shall file their supplemental response by November 28, 2025. The parties' respective briefs shall not exceed 10 pages, exclusive of attachments.<br><br>Defendants shall file their reply in support of their motions to dismiss by December 30, 2025. The parameters of that reply must comply with those previously set forth by the Court.<br><br>The Court additionally granted Mr. Guyer's 203 motion to appear pro hac vice. By September 15, Plaintiffs' counsel shall file a letter informing the Court of the precise parties whom they represent. (FTR Log #10:35-11:27.) (EG) (Entered: 09/10/2025) |
| 09/15/2025 | 209 | TRANSCRIPT of Proceedings held on September 10, 2025, before Judge Marutollo. Court Transcriber: Superior Reporting Services LLC. Email address: transcripts@superiorreporter.com. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/6/2025. Redacted Transcript Deadline set for 10/16/2025. Release of Transcript Restriction set for 12/15/2025. (RC) (Entered: 09/15/2025) |
| 09/15/2025 | 210 | Letter by Michael Deteresa, Craig Gaetke, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Eileen Zaharioudakis (Ayers, Stephani) (Entered: 09/15/2025) |
| 09/17/2025 | 211 | Letter *re: pre-discovery subpoena* by United States (Kelly, Robert) (Entered: 09/17/2025) |
| 11/03/2025 | | ORDER: Defendants were directed to file their joint, supplemental brief concerning the issues raised in 198 by October 30, 2025. To date, no such brief was filed. Defendants are directed to file the joint, supplemental brief by November 4, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 11/3/2025. (EG) (Entered: 11/03/2025) |
| 11/03/2025 | 212 | Letter *re: 11/3/25 Magistrate Order* by Lockheed Martin Corporation, Raytheon Company (Nichols, Shane) (Entered: 11/03/2025) |
| 11/03/2025 | 213 | NOTICE by Lockheed Martin Corporation, Raytheon Company re 212 Letter *(Copy of Admin. Order 2025-15)* (Nichols, Shane) (Entered: 11/03/2025) |
| 11/03/2025 | | ORDER - In light of the lapse of federal government appropriations, the court sua sponte stays this case, pending restoration of such appropriations. See Administrative Order No. 2025-15. Once the government has been funded, Defendants shall file their joint, supplemental brief concerning the issues raised in Dkt. No. 198 , in accordance with the tolling provisions of Administrative Order No. 2025-15. Ordered by Magistrate Judge Joseph A. Marutollo on 11/3/2025. (PCM) (Entered: 11/03/2025) |
| 11/20/2025 | 214 | STATUS REPORT *Joint Status Report re: Deadlines* by United States (Kelly, Robert) (Entered: 11/20/2025) |
| 11/20/2025 | | ORDER regarding 214 - Defendants' Joint Supplemental brief shall be served (not filed) by December 15, 2024. Plaintiffs' Response to the Defendants' Joint Supplement shall be served (not filed) by January 13, 2026. Defendants' Reply brief shall be served by February 12, 2026. Defendants shall file the fully-briefed motion by February 12, |

# JA57

| | | 2026. Ordered by Magistrate Judge Joseph A. Marutollo on 11/20/2025. (EG) (Entered: 11/20/2025) |
|---|---|---|
| 11/21/2025 | | ORDER - The Court sua sponte amends its November 20, 2025 scheduling order as follows: Defendants' Joint Supplemental brief shall be filed by December 15, 2025. Plaintiffs' Response to the Defendants' Joint Supplement shall be filed by January 13, 2026. Defendants' Reply brief shall be filed by January 20, 2026. The Court is not inclined to extend these deadlines. Ordered by Magistrate Judge Joseph A. Marutollo on 11/21/2025. (PCM) (Entered: 11/21/2025) |
| 12/15/2025 | 215 | MEMORANDUM in Support re 185 MOTION to Dismiss for Failure to State a Claim , 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim , 181 MOTION to Dismiss for Failure to State a Claim *[PRE]* MOTION to Dismiss for Lack of Jurisdiction *Joint Supplement* filed by United States. (Attachments: # 1 Declaration Brasington, # 2 Exhibit Probate Court Order, # 3 Exhibit Hearing Transcript, # 4 Exhibit Chadwick Gray Release, # 5 Exhibit Charles Gray Release, # 6 Declaration Dronberger) (Kelly, Robert) (Entered: 12/15/2025) |
| 12/15/2025 | 216 | EXHIBIT *Corrected 215-3 Hearing Transcript* by United States. Related document: 215 Memorandum in Support,, filed by United States. (Kelly, Robert) (Entered: 12/15/2025) |
| 01/12/2026 | 217 | MOTION for Extension of Time to File Response/Reply as to 215 Memorandum in Support,, by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis. (Attachments: # 1 Exhibit Attachment A Status Report, # 2 Exhibit Attachment B Status Report) (Guyer, Thad) (Entered: 01/12/2026) |
| 01/12/2026 | 218 | NOTICE by Michael Deteresa, Craig Gaetke, Todd Gaetke, Jodelle Gearon, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Lisa Michelson, Eric Rojany, Eileen Zaharioudakis re 217 MOTION for Extension of Time to File Response/Reply as to 215 Memorandum in Support,, *NOTICE OF ERRATA* (Guyer, Thad) (Entered: 01/12/2026) |
| 01/12/2026 | | ORDER deferring ruling on 217 - Defendants shall respond to 217 by January 14, 2026. Ordered by Magistrate Judge Joseph A. Marutollo on 1/12/2026. (JAM) (Entered: 01/12/2026) |
| 01/12/2026 | 219 | RESPONSE in Opposition re 217 MOTION for Extension of Time to File Response/Reply as to 215 Memorandum in Support,, filed by Lockheed Martin Corporation, Raytheon Company, Raytheon Technologies Corporation, United States. (Kelly, Robert) (Entered: 01/12/2026) |
| 01/12/2026 | | ORDER denying 217 . On November 21, 2025, the Court sua sponte amended the scheduling order and indicated that it is not inclined to extend these deadlines. Accordingly, Plaintiffs' motion for an extension of time to file their response is denied. Ordered by Magistrate Judge Joseph A. Marutollo on 1/12/2026. (KY) (Entered: 01/12/2026) |
| 01/13/2026 | 220 | MEMORANDUM in Opposition re 215 Memorandum in Support,, *Joint by All Defendants* filed by All Plaintiffs. (Attachments: # 1 Declaration In Support of Limited Discovery) (Guyer, Thad) (Entered: 01/13/2026) |
| 01/20/2026 | 221 | MOTION to Withdraw as Attorney by Lockheed Martin Corporation. (Katt, William) (Entered: 01/20/2026) |

# JA58

| | | |
|---|---|---|
| 01/20/2026 | | ORDER granting 221 Motion to Withdraw as Attorney. Attorney William J. Katt terminated. Ordered by Magistrate Judge Joseph A. Marutollo on 1/20/2026. (EG) (Entered: 01/20/2026) |
| 01/20/2026 | 222 | REPLY to Response to Motion re 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim filed by United States. (Kelly, Robert) (Entered: 01/20/2026) |
| 01/20/2026 | 223 | REPLY in Support re 178 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim filed by Lockheed Martin Corporation. (Attachments: # 1 Exhibit A - Letter, dated July 31, 2025, # 2 Exhibit B - Petition for Discharge to Appoint Successor Executor and Order, # 3 Exhibit C - Final Order) (Kelly, John) (Entered: 01/20/2026) |
| 01/20/2026 | 224 | REPLY in Support re 185 MOTION to Dismiss for Failure to State a Claim , 186 Memorandum in Support filed by Raytheon Company. (Nichols, Shane) (Entered: 01/20/2026) |
| 01/20/2026 | 225 | REPLY in Support *Motion to Dismiss For Failure to State a Claim* filed by Lockheed Martin Corporation. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Kelly, John) (Entered: 01/20/2026) |
| 01/21/2026 | 226 | Letter *to Court re Oral Argument (181)* by Lockheed Martin Corporation (Kelly, John) (Entered: 01/21/2026) |
| 02/24/2026 | | ORDER denying 188 189 Motions Requesting Oral Argument. The Court denies the defendants' requests for oral argument on their pending motions to dismiss. The Court will decide the motions on the papers. Ordered by Judge Ann M. Donnelly on 2/24/2026. (EHS) (Entered: 02/24/2026) |
| 03/02/2026 | 227 | MEMORANDUM DECISION AND ORDER. The defendants' 178 181 185 motions to dismiss are granted. The plaintiffs' claims are dismissed. Ordered by Judge Ann M. Donnelly on 3/2/2026. (DG) (Entered: 03/02/2026) |
| 03/03/2026 | 228 | CLERK'S JUDGMENT: that the defendants' motions to dismiss are granted; and the plaintiffs' claims are dismissed. Signed by Deputy Clerk, Jalitza Poveda, on behalf of Clerk of Court, Brenna B. Mahoney, on 3/3/2026. (JP) (Entered: 03/03/2026) |
| 04/30/2026 | 229 | NOTICE OF APPEAL as to 227 Order on Motion to Dismiss/Lack of Jurisdiction, Order on Motion to Dismiss for Failure to State a Claim,,, 228 Clerk's Judgment, 159 Order, 152 Order on Motion to Withdraw as Attorney,,,,,,, by Michael Deteresa, Craig Gaetke, Todd Gaetke, Chadwick Graham Gray, Charles Henry Gray, IV, Christine Grogan, Wanda Kemp, Douglas Kevorkian, Christopher Krick, Margareta Krick, Ronald Krick, Eileen Zaharioudakis. Filing fee $ 605, receipt number ANYEDC-20170042. (Guyer, Thad) (Entered: 04/30/2026) |
| 04/30/2026 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 229 Notice of Appeal,, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 04/30/2026) |
| 06/12/2026 | 230 | MOTION to Withdraw as Attorney by United States. (Brown, Thomas) (Entered: 06/12/2026) |
| 06/12/2026 | | ORDER granting 230 Motion to Withdraw as Attorney. Attorney Thomas M Brown terminated. Ordered by Magistrate Judge Joseph A. Marutollo on 6/12/2026. (KY) (Entered: 06/12/2026) |

# JA59

**First Amended Complaint, dated September 19, 2022 [JA59-JA97]**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD KRICK, Individually and on Behalf of the Estate of Oliver Krick; MARGARETA KRICK; CHRISTOPHER KRICK; DOUGLAS KEVORKIAN, Individually and on Behalf of the Estate of Ralph Kevorkian; LISA MICHELSON, Individually and on Behalf of the Estate of Yonatan Rojany; ERIC ROJANY; JODELLE GEARON, Individually and on Behalf of the Estate of Daniel Gaetke; TODD GAETKE; CRAIG GAETKE; WANDA KEMP, Individually and on Behalf of the Estates of O. Lamar Allen and Ashton Allen; CHRISTINE GROGAN; EILEEN ZAHARIOUDAKIS, Individually and Behalf of the Estate of Donald Gough; MICHAEL DETERESA; CHARLES HENRY GRAY, IV, Individually and on Behalf of the Estate of Charles Henry Gray, III; and CHADWICK GRAHAM GRAY. | Judge: Hon. Angel Kelley<br><br>Case No. 1:22-cv-11032-AK<br><br>JURY TRIAL DEMANDED |
|     **Plaintiffs**<br>v.<br><br>RAYTHEON COMPANY; RAYTHEON TECHNOLOGIES CORPORATION; LOCKHEED MARTIN CORPORATION; UNITED STATES MISSILE DEFENSE AGENCY; UNITED STATES DEPARTMENT OF DEFENSE; UNITED STATES NAVY; and DOES 1 through, 20, inclusive,<br><br>    **Defendants.** | |

FIRST AMENDED COMPLAINT FOR DAMAGES

1

**JA60**

## I.     INTRODUCTION

1.     The crash of Trans World Airlines (TWA) Flight 800 ("TWA 800") was one of the deadliest aviation incidents in the history of the United States.  It also resulted in what could be considered one of the nation's biggest cover-ups.

2.     On July 17, 1996, a Boeing 747 headed for Paris took off from New York's John F. Kennedy International Airport at around 8:20 p.m.  Within twelve minutes of takeoff, the plane exploded and crashed into the Atlantic Ocean off the coast of Long Island, New York.  All 230 passengers and crew members perished.

3.     After the incident, the federal government released a false report contending that the explosion was the result of an electrical fire in the airplane's center fuel tank.

4.     Only recently, thanks to the work of physicist, Dr. Thomas Stalcup, through his Freedom of Information Act ("FOIA") litigation in Massachusetts federal court, has evidence emerged proving that TWA 800's explosion was not caused by any defect in the airplane, but instead by an errant United States missile fired at aerial target drones flying nearby.

5.     The evidence unearthed by Dr. Stalcup establishes that the United States Missile Defense Agency (formerly known as the Ballistic Missile Defense Organization), the United States Department of Defense, and the United States Navy (the "Government Defendants"), acting in concert and working side-by-side with Raytheon Company (now known as Raytheon Technologies Corporation) and Lockheed Martin Corporation (the "Contractor Defendants") and DOES 1 through 20, inclusive

2

(collectively the "Defendants') were testing the Aegis Weapons System and firing SM-2 missiles with live warheads from warship(s) at aerial missile targets off the coast of New York in close proximity to commercial airline flight paths. One such missile struck TWA flight 800, causing it to break apart and crash into the Atlantic Ocean, killing everyone aboard.

6.      Newly discovered evidence also shows that these Defendants engaged in a top-down cover-up to prevent the public from learning the truth about TWA 800. Proof of this cover-up, and of Defendants' underlying culpability for the crash, was only recently unearthed by Dr. Stalcup after more than a decade of FOIA litigation against the Government Defendants.

7.      Plaintiffs are the family members and estates of victims of the TWA 800 crash.  They bring this action to hold the Defendants liable for their reckless conduct and subsequent cover-up, and to vindicate the rights of those wrongly killed in the TWA 800 crash.

## II.      JURISDICTION AND VENUE

8.      This is a civil action for money damages against the United States Missile Defense Agency (formerly known as the Ballistic Missile Defense Organization), the United States Department of Defense, the United States Navy, Raytheon Company, Raytheon Technologies Corporation, Lockheed Martin Corporation, and DOES 1 through 20, inclusive, and their agents and employees.  It arises from reckless and grossly negligent conduct and wrongful acts and omissions resulting in the death of 230

**JA62**

individuals aboard TWA 800 over the Atlantic Ocean, including the decedents represented by Plaintiffs herein.

9. Two of the Defendants named in this complaint are headquartered within the District of Massachusetts. Specifically, Defendant Raytheon Company and Defendant Raytheon Technologies Corporation both have their headquarters and principal places of business in Waltham, Massachusetts.

10. In addition, a related case, *Thomas Stalcup v. Department of Defense*, Case No. 1:13-cv-11967-LTS, has been pending in United States District Court, District of Massachusetts, for several years.

11. Plaintiffs assert their claims against the Government Defendants, United States Missile Defense Agency (formerly known as the Ballistic Missile Defense Organization), the United States Department of Defense, and the United States Navy, under the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 2671 *et seq.*

12. Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1331, 1332 and 28 U.S.C. § 1346(b).

13. This Court may properly assert personal jurisdiction over all of the named Defendants because of their presence and activity in, and connections to, this forum.

14. Venue is proper in this forum pursuant to 28 U.S.C. § 1402.

4

### III.    THE PARTIES

a.    <u>**The Plaintiffs**</u>

15.    Plaintiff Ronald Krick resides in Missouri.  He is the father of Oliver Krick and brings this action individually and as personal representative on behalf of the Estate of Oliver Krick, who died on TWA 800.

16.    Plaintiff Margareta Krick resides in Missouri.  She is the mother of Oliver Krick and brings this action individually.

17.    Plaintiff Christopher Krick resides in Missouri.  He is the brother of Oliver Krick and brings this action individually.

18.    Plaintiff Douglas Kevorkian resides in California.  He is the son of Ralph G. Kevorkian and brings this action individually and as personal representative on behalf of the Estate of Ralph G. Kevorkian, who died on TWA 800.

19.    Plaintiff Lisa Michelson resides in California.  She is the mother of Yonatan Rojany and brings this action individually and as personal representative on behalf of the Estate of Yonatan Rojany, who died on TWA 800.

20.    Plaintiff Eric Rojany resides in California.  He is the brother of Yonatan Rojany and brings this action individually.

21.    Plaintiff Jodelle Gearon resides in Kansas.  She is the sister of Daniel Gaetke and brings this action individually and as personal representative on behalf of the Estate of Daniel Gaetke, who died on TWA 800.

22.    Plaintiff Todd Gaetke resides in California.  He is the brother of Daniel Gaetke and brings this action individually.

5

**JA64**

23.    Plaintiff Craig Gaetke resides in Georgia.  He is the brother of Daniel Gaetke and brings this action individually.

24.    Plaintiff Wanda Kemp resides in Georgia.  She is the sister of O. Lamar Allen and the aunt of Ashton Allen and brings this action individually and as personal representative on behalf of the Estates of O. Lamar Allen and Ashton Allen, both of whom died in the crash of TWA 800.

25.    Plaintiff Christine Grogan resides in California.  She is the daughter of O. Lamar Allen and brings this action individually.

26.    Plaintiff Eileen Zaharioudakis resides in California.  She is the sister of Donald E. Gough and brings this action individually and as personal representative on behalf of the Estate of Donald E. Gough, who died on TWA 800.

27.    Plaintiff Michael Deteresa resides in New Jersey.  He is the nephew of Donald E. Gough and brings this action individually.

28.    Plaintiff Charles Henry Gray, IV resides in Tennessee.  He is the son of Charles Henry Gray, III and brings this action individually and as personal representative on behalf of the Estate of Charles Henry Gray, III, who died on TWA 800.

29.    Plaintiff Chadwick Graham Gray resides in Florida.  He is the son of Charles Henry Gray, III and brings this action individually.

**b.    The Defendants**

28.    Defendant Raytheon Company is a Delaware Corporation with its headquarters and principal place of business in Waltham, Massachusetts.

6

29.    Defendant Raytheon Technologies Corporation is a Delaware Corporation with its headquarters and principal place of business in Waltham, Massachusetts.

30.    Defendant Lockheed Martin Corporation is a Maryland corporation with its principal place of business in Bethesda, Maryland.  Defendant Lockheed Martin Corporation has significant contacts with, and conducts substantial business in, the Commonwealth of Massachusetts.  For example, Defendant Lockheed Martin Corporation owns and operates several facilities in the Commonwealth of Massachusetts.

31.    The United States Defendants, including the United States Missile Defense Agency, the United States Department of Defense, and the United States Navy have significant contacts with, and conduct substantial business and operations in, the Commonwealth of Massachusetts.

32.    The Defendants identified herein as DOES 1 through 20, are the joint-venturers, agents, servants, employees, predecessor or subsequent companies or corporations, divisions, agencies, subsidiaries, and co-conspirators of the other Defendants.  They have been named using these fictious names because their true identities are currently unknown.  When their true identities become known, Plaintiffs will amend this complaint to substitute the true names for the fictitious names.

**IV.    FACTS COMMON TO ALL CAUSES OF ACTION**

a. <u>Overview: The TWA 800 Disaster</u>

33.    The Defendants tested missiles off the coast of the Eastern United States in 1996, which was a departure from prior practices.

7

34.     There are several flight paths in the vicinity of the area where the missile testing occurred, including flights taking off from, and landing at, major airports in New York and New Jersey, such as New York's John F. Kennedy International Airport, New York's LaGuardia Airport, and New Jersey's Newark International Airport.

35.     On July 17, 1996, TWA 800 took off from John F. Kennedy International Airport in New York at around 8:20 p.m.

36.     On that evening, numerous eyewitnesses described seeing a streak of light arcing from the surface of the ocean toward TWA 800 and then seeing an explosion and an object break apart and fall into the ocean.

37.     Twelve minutes after the plane took off, it broke apart and caught fire 13,800 feet over the Atlantic Ocean, precisely where the surface-originating streak observed by the eyewitnesses exploded.

38.     All two hundred and thirty passengers aboard TWA 800 died.

**b. The Government Investigation and Cover-Up**

39.     In the wake of the TWA 800 tragedy, the federal government purported to investigate its cause.

40.     However, instead of allowing the National Transportation Safety Board ("NTSB"), the agency tasked with investigating all domestic aviation incidents, to lead the investigation of the TWA 800 incident, the Federal Bureau of Investigation ("FBI") took charge.  The FBI also enlisted the assistance of the Central Intelligence Agency ("CIA").

8

41.    Indeed, the FBI essentially froze the NTSB out of the investigation. The FBI removed all copies (original and duplicates) of Navy radar tapes from the Navy, placing them out of the NTSB's reach, and refused to allow the NTSB to conduct eyewitness interviews or review the FBI's records that indicated the true cause of the TWA 800 crash.

42.    Eyewitnesses who were interviewed by the FBI recall being threatened by the organization.  For example, one eyewitness recalls being told to keep quiet about the "rocket" she saw in the sky or risk her citizenship application being denied.

43.    Despite this, eyewitnesses have consistently maintained that they saw something arcing toward TWA 800 before the plane erupted into flames and fell from the sky.

44.    For example, one eyewitness testified that she saw a "rocket go up" and explode, and then saw TWA 800's flaming wreckage fall from the sky.

45.    Two other eyewitnesses, Air National Guard pilots, Captain Christian Baur and Major Frederick "Fritz" Meyer, similarly stated that they witnessed events that indicated a missile struck TWA 800.

46.    On the day TWA 800 went down, Captain Baur and Major Meyer were flying in a Black Hawk helicopter near the area of the TWA 800 incident.  Captain Baur recalled seeing an object with a "rocket type motor . . . moving quick" toward TWA 800. After the crash, Captain Baur flew to the area and conducted a search and rescue.

9

47.     Captain Baur's co-pilot, Major Meyer, testified that he recognized a "flak" explosion at the site of the TWA 800 explosion, which is what military anti-air explosives create.

48.     Despite this evidence, the CIA concocted materials to discredit eyewitnesses who could confirm that TWA 800 had been downed by some kind of projectile.  These materials included a video and animation that was displayed during a nationally-televised FBI press conference that attempted to reconcile the eyewitness testimony that the plane was struck by a projectile with the U.S. Government's official position that the crash was caused by a defect in the plane's center fuel tank.

49.     Although overwhelming eyewitness testimony indicated that TWA 800 was struck by a missile, the video and animation, which was subtitled "What Did The Eyewitnesses See?," contained a scene with large, capitalized, and underlined words, "NOT A MISSILE."  To ensure that audiences did not miss the point, a narrator read those words aloud.

**JA69**



50.     Despite outwardly proclaiming that the cause of the TWA 800 explosion was, in the CIA's words, "NOT A MISSILE," several internal government communications (that have only come to light in the recent FOIA litigation) indicated that a missile was involved.

51.     Following the FBI's press conference stating that TWA 800 was not brought down by a missile, the NTSB released a report stating that the likely cause of the crash was an explosion of flammable vapors in the plane's center fuel tank.  This became the publicly accepted view of what happened, and Plaintiffs relied upon this misinformation.

52.     The NTSB's report did not include and/or ignored crucial evidence that ran counter to its conclusion, and NTSB team leaders were ordered not to draft analysis reports, which ran contrary to the usual procedure for NTSB aviation crash reports.

53.     The NTSB also formed a new NTSB Office of Families, headed by a public relations expert, that successfully deceived the victims' families about the true cause of the crash. Through a series of misleading official communications, the Office of Families promoted a fuel tank scenario as the only possible explanation for the crash, and told the victims' families that the idea that TWA 800 was brought down by a missile was an implausible "conspiracy theory" without any basis in fact.  In reality however, the opposite is the case.

54.     This same misinformation was provided to the press, which widely reported it to the public.

55.     In short, for over 25 years, Plaintiffs and the public were led to believe—by their own government and the Defendants—that the victims of the TWA 800 crash were killed by a one-of-a-kind exploding fuel tank.  Recently, however, overwhelming evidence uncovered by physicist Dr. Thomas Stalcup shows that TWA 800 was struck by an errant missile fired by the Defendants.

**c. Defendants' Rush to Test the Aegis Missile System with Live Warheads**

56.     The missile program that resulted in the crash of TWA 800 became a high priority for the U.S. Government in 1996, when former Secretary of Defense William Perry sought a significant increase in funding for the Navy's Aegis Missile system from the U.S. Senate's Armed Services Committee.

12

**JA71**

57.     Defendant Department of Defense proposed that this missile system proceed "as quickly as possible to production and deployment" in order to increase defense capabilities against missiles from hostile countries.

58.     Indeed, in a news briefing from the Missile Defense Agency and the Department of Defense, Secretary Perry characterized the missile threat from rogue nations as "here and now."

59.     The Senate Committee approved the funding, and the Navy accelerated testing and development of the next-generation Aegis Missile System.

60.     The key to upgrading the Aegis System for missile defense lay in its radar system. To upgrade its capabilities as a missile defense system, the radar system needed significant improvements.  For example, the radar system needed to be able to track more enemy missiles at once and do so at further distances.

61.     The Aegis System's radar also needed improvement in its ability to operate close to shore and to properly integrate into existing systems.  As it stood, Aegis was confused by land and could not adequately "interoperate" with the other services' anti-missile systems.  These serious flaws could result in a missile striking an unintended target.

62.      To address these key deficiencies, the Department of Defense directed the Contractor Defendants to integrate a new radar and computer system into all new ship designs, known as the SPY-ID(V).

63.     The new computer system, known as Hiper-D, was developed by the Defense Advanced Projects Agency (DARPA) to run the SPY-1D(V) radar.

13

64.     When testing of the SPY-ID(V) began, there were no ships in the Naval fleet with the hardware or computing power to accommodate and operate the new radar system.

65.     Although the SPY-ID(V) would later become a key component aboard the next wave of Navy destroyer ships, in 1996 the only option with the hardware and computing power sufficient to operate the SPY-ID(V) was a New Jersey land-based testing site called the Combat Systems Engineering and Development Site ("CSEDS").

66.     Instead of waiting five years for ships to be properly constructed with the SPY-ID(V) so that testing could be conducted far from congested air corridors and at established test ranges, the SPY-ID(V) was tested on an expedited basis in and around the CSEDS in New Jersey, in a highly congested area.

67.     The integration of the SPY-ID(V) into the Aegis Missile System was a major technological leap forward, and it should have been conducted deliberately and carefully.   The system included new hardware, software, computer systems, and wireless networking to share data and coordinate with other services' missile defense systems.

68.     Despite this, the Defendants fast-tracked implementation of the system, and put it on an accelerated and unrealistic timetable.

69.     Despite the obvious risk posed by testing missiles in close proximity to people and commercial aircraft, Defendants certified the CSEDS for "operational testing" to ensure the upgraded Aegis System went online as soon as possible.

14

**JA73**

70.     In 1996, the Defendants began testing the SPY-ID(V) using "simulated and actual targets" in and around New Jersey.

71.     Recently unearthed evidence confirmed that in May 1996, Defendants conducted initial operational tests of the SPY-ID(V) radar upgrade with testing that involved firing at least one missile with a live warhead.

72.     That same month, a former member of the United States Coast Guard stated that he saw a missile rising over Long Island Sound as he drove to work.  Two months later, and five days before TWA 800 went down, he saw another missile on his morning commute.

73.     An electrician on the roof of a nearby Long Island hospital was filming the sunrise and captured the second missile witnessed by the Coastguardsman on his VHS camera.

74.     Five days later, as Navy missile targets flew nearby, dozens of witnesses saw a missile rise off the ocean apparently heading toward something well behind TWA 800, but only to take a sharp turn toward the jetliner seconds before exploding into it.

75.     Despite this tragic incident, the Defendants continued to test the radar and missile system in this same, highly populated area.

76.     In August that year, just six weeks after TWA 800 went down off Long Island, a rocket with classified Department of Defense sensors flew near and "startled" an American Airlines pilot near CSEDS' sister land-based site on Virginia's eastern seaboard.

15

77.   A month later and in the same area, two missiles were launched from Navy ships at aerial target drones flying nearby.

78.   Another two months later, on November 16, 1996, almost precisely where TWA 800 went down off Long Island, a Pakistani Airlines pilot reported to Air Traffic Control that a "rocket" rose in front of him and continued rising above his altitude. People on shore that evening were interviewed by the FBI and confirmed that a projectile rose between airliners off Long Island at the time.

79.   Six hours earlier that November day, a witness described seeing a missile-like object rise quickly over South New Jersey or Staten Island, NY.

80.   At 1:00 a.m. the next day, a witness reported to the FBI seeing a missile-like object from central Long Island.

81.   On March 17, 1997, many commercial airline pilots reported seeing a missile or missiles flying in the vicinity of New Jersey and Pennsylvania.

82.   On that same day (March 17, 1997), an Air Force cargo pilot reported to Air Traffic Control, and later to the FBI, that he had been seconds away from taking "evasive maneuvers" to avoid being hit by a missile fired over Burlington, Vermont. After the missile arced away from his aircraft at the last minute, he flew by its "non-vapor" exhaust plume.

83.   Steve Habeger, the Executive Director of CSEDS's sister site in Virginia during this time, recently testified in Dr. Stalcup's FOIA in the United States District Court for the District of Massachusetts, *Thomas Stalcup v. Department of Defense*, Civil Action No. 1:13-cv-11967-DLC (the "FOIA Litigation"), that he was personally aware of

16

at least a dozen Aegis missile tests off the East Coast of the United States around this same overall time period.

**d. Unearthed Evidence Discredits the Government's Exploding Fuel Tank Narrative**

84.     As part of the FOIA Litigation, Dr. Stalcup recently obtained crucial new evidence regarding what caused TWA 800 to explode on July 17, 1996.

85.     For example, Dr. Stalcup obtained several FBI records never released to the TWA 800 families or the public. One described an "original [Navy radar] tape" showing an object "heading straight for TWA 800." Another describes an object on radar "impact[ing]" TWA 800 and "spiral[ling] away," while also stating that witnesses described seeing a "flair (sic) going up. . . . , orbit/circle another object. Subsequently debris fell from the sky."

86.     These records were never made part of the NTSB investigation, and no eyewitnesses were permitted to testify at any NTSB hearing. As such, the Plaintiffs were never informed of this information.

87.     In addition, on around October 2, 2019, Dr. Stalcup privately consulted with a former high-level FBI official who informed him that aerial target drones were flying in TWA 800's vicinity when TWA 800 went down—the very drones documented to have been used in East Coast missile tests of the Navy's Aegis System that summer of 1996. Those target drones ultimately parachuted to the ocean below, unscathed and abandoned.

88.     The FBI later ordered the Navy to retrieve these targets, which is contrary to the usual chain of command.

17

## JA76

89.     In addition to the documentary evidence uncovered in the FOIA Litigation, Dr. Stalcup also deposed several government witnesses regarding the TWA 800 disaster.

90.     One of these witnesses, Steven Habeger, the Executive Director of an East Coast Navy land-based test site, testified that within minutes of the TWA 800 disaster, he was ordered to allow the FBI to remove all Navy radar tapes from his facility that might have recorded the TWA 800 incident.

91.     This event was corroborated by Mr. Habeger's commanding officer and by FBI custody records obtained during the FOIA Litigation.

92.     Dr. Stalcup also discovered that five days after the TWA 800 disaster, the Joint Terrorism Task Force directed the FBI to obtain another "original [Navy] radar tape" showing an object "heading straight for TWA 800" and to "prepare FD-302 re-procurement of this original tape."

93.     These radar tapes were confiscated by the FBI immediately after the crash of TWA 800.  According to records obtained in the FOIA Litigation, they show an object "impact" TWA 800, which directly contradicts the FBI's, CIAs, and NTSB's public conclusions that what caused the incident was "NOT A MISSILE."

94.     In fact, the evidence reveals that TWA 800 was brought down by a missile and the government hid this truth from Plaintiffs and the public at large for over twenty-five years.

### V.     TOLLING OF THE STATUTE OF LIMITATIONS

18

**JA77**

95. Under normal circumstances, the statute of limitations would have run on events that occurred in 1996.

96. However, the discovery rule and fraudulent concealment doctrine toll the statute of limitations in this case.

97. Specifically, key evidence confirming that a missile caused the crash of TWA 800 was hidden from the public and the victims' families for over 25 years. This evidence was only recently unearthed by Dr. Tom Stalcup in his hard-fought FOIA litigation, which has now been pending for over ten years.

98. Plaintiffs only discovered the evidence Dr. Stalcup diligently compiled on April 15, 2021, when they attended a meeting hosted by Dr. Stalcup. At that meeting, Dr. Stalcup informed the Plaintiffs about the key facts he learned in his FOIA lawsuit indicating that the TWA 800 crash was caused by a missile.

99. Before April 15, 2021, the Plaintiffs were not aware of, or on notice of, the information that forms the basis of this complaint, nor have the Plaintiffs had any reasonable opportunity discover their injury, its cause, and the link between the two (prior to April 15, 2021).

100. In addition, the statute of limitations was tolled because the Defendants, led by the United States government, took active steps to mislead the families and the public, as well as conceal that the TWA 800 crash was caused by a missile, including confiscating and concealing evidence from the United States Navy.

19

**JA78**

101.    Therefore, the discovery rule, the fraudulent concealment doctrine, the doctrine of equitable estoppel, and the doctrine of laches, toll the statute of limitations in this case.

**VI.    SATISFACTION OF FTCA JURISDICTIONAL REQUIREMENTS**

102.    Presentation of an administrative claim to the appropriate agency is a jurisdictional prerequisite to Federal Tort Claims Act ("FTCA") claim. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106 (1993).

103.    Here, Plaintiffs sent administrative claims to the United States Navy, the United States Missile Defense Agency, and the United States Department of Defense in October 2021.

104.    While the United States Missile Defense Agency and the United States Department of Defense did not respond to the claims, Defendant United States Navy denied Plaintiffs' claims in writing, and they noted that Plaintiffs only had six months to file lawsuits under the FTCA.

105.    Plaintiffs hereby bring these claims within six months of the mailing of those rejection letters from the United States Navy.

**VII.    CAUSES OF ACTION**

**COUNT I**
**Negligence and Gross Negligence**
**(Against All Defendants)**

105.    Plaintiffs hereby incorporate by reference all of the allegations set forth above, as so though fully set forth herein.

20

106.    Plaintiffs assert claims individually and on behalf of the Estates of the decedents against the Defendants for negligence and gross negligence.

107.    As a result of the negligent, grossly negligent, reckless, or intentional conduct of the Defendants, Plaintiffs' decedents died after a missile downed TWA 800.

108.    Specifically, the Defendants negligently, recklessly, or intentionally authorized and conducted the testing of missiles in commercial airspace.  As a result of these tests, a missile downed TWA 800 and killed Plaintiffs' decedents.

109.    Defendants owed decedents and Plaintiffs a duty not to negligently test missiles in commercial airspace.

110.    Defendants breached that duty by negligently testing missiles in commercial airspace.

111.    The systems and products discussed herein were still being tested in 1996 when the TWA crash occurred, are not state-of-the art 25 years later, and therefore do not involve matters of national security in 2022 or thereafter.

112.    Defendants RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION, and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a.  Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

21

## JA80

b. The SM-2 Missile (Standard Missile 2) was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

c. The CEC (Cooperative Engagement Capability) system, Aegis system, Navy Area Defense, Linebacker, and/or similar missile defense technologies, which were being integrated with the SPY-1 Radar System, were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

d. MK illuminators (which direct beams of radiation that "paints" targets so missiles can lock onto them) were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies, and DOES 1 through 20 at the time of the subject incident;

e. The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

22

f.  The IFF (Identify Friend or Foe) System within the US Army's Patriot Missile System, as well other service's IFF systems were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

g.  The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident; and

h.  Defendant Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

113.  Defendants LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a.  Defendant Lockheed Martin Corporation and DOES 1 through 20 worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

b.  The Aegis SPY-1 Radar System was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Lockheed Martin Corporation and DOES 1 through 20 at the time of the subject incident;

23

c. The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

d. The IFF (Identify Friend or Foe) System within the US Army's Patriot Missile System, as well other service's IFF systems were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

e. The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident; and

f. Defendants Lockheed Martin Corporation and DOES 1 through 20 were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

114. Defendants UNITED STATES MISSILE DEFENSE AGENCY and DOES 1 through 20 were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

24

**JA83**

    a. Defendant United States Missile Agency (formerly known as the Ballistic Missile Defense Organization) and DOES 1 through 20 worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

    b. Defendant United States Missile Agency (formerly known as the Ballistic Missile Defense Organization) and DOES 1 through 20 were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

115. Defendant UNITED STATES DEPARTMENT OF DEFENSE and DOES 1 through 20 were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

    a. Defendant United States Department of Defense and DOES 1 through 20 worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

    b. Defendant United States Department of Defense and DOES 1 through 20 were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

116. Defendant UNITED STATES NAVY and DOES 1 through 20 were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

25

**JA84**

a. Defendant United States Navy and DOES 1 through 20 worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

b. Defendant United States Navy and DOES 1 through 20 were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

117. As a result of Defendants' breach of the applicable duties, decedents and Plaintiffs suffered damages.

118. Plaintiffs are entitled to damages resulting from the actions and/or omissions of the Defendants.

119. As a direct and proximate result of the negligent, grossly negligent, reckless, and/or intentional actions of the Defendants, decedents died, and Plaintiffs suffered damages and losses, including the following:

a. Funeral and burial expenses;

b. Loss of Financial Support and Income;

c. The economic value of decedents' lives;

d. Loss of Inheritance;

e. Loss of consortium, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice;

f. Grief and mental anguish of the Plaintiffs; and

g. Decedents' pain and suffering.

26

# JA85

120.   Plaintiffs demand judgment in their favor for the aforementioned damages, and below prayer for relief, against all Defendants.

## COUNT II
### Wrongful Death and Survivorship
### (Against All Defendants)

121.   Plaintiffs hereby incorporate by reference all of the allegations above, as though set forth herein.

122.   Plaintiffs assert claims individually and on behalf of the Estates of the decedents against the Defendants for wrongful death and survivorship.

123.   As a result of the grossly negligent, reckless, or intentional conduct of Defendants, decedents died after a missile downed TWA 800.

124.   Defendants RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION, and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

   a. Defendant Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

   b. The SM-2 Missile (Standard Missile 2) was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

27

**JA86**

c.  The CEC (Cooperative Engagement Capability) system, Aegis system, Navy Area Defense, Linebacker, and/or similar missile defense technologies, which were being integrated with the SPY-1 Radar System, were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

d.  MK illuminators (which direct beams of radiation that "paints" targets so missiles can lock onto them) was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies, and DOES 1 through 20 at the time of the subject incident;

e.  The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

f.  The IFF (Identify Friend or Foe) System within the U.S. Army's Patriot Missile System, as well other services' IFF systems were negligently and grossly negligently supplied by, tested by, approved for use by, and

28

overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

g. The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident; and

h. Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

125. Defendants LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a. Defendants Lockheed Martin Corporation and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

b. The Aegis SPY-1 Radar System was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Lockheed Martin Corporation and DOES 1 through 20 at the time of the subject incident.

c. The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, was negligently and grossly negligently supplied by, tested by,

29

**JA88**

approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

d. The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident; and

e. Defendants Lockheed Martin Corporation and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

126. Defendants UNITED STATES MISSILE DEFENSE AGENCY and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a. Defendant United States Missile Agency (formerly known as the Ballistic Missile Defense Organization) and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

b. Defendant United States Missile Agency (formerly known as the Ballistic Missile Defense Organization) and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

30

**JA89**

127. Defendants UNITED STATES DEPARTMENT OF DEFENSE and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

   a. Defendant United States Department of Defense and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

   b. Defendant United States Department of Defense and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

128. Defendants UNITED STATES NAVY and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

   a. Defendant United States Navy worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

   b. Defendant United States Navy was otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

129. As a result of Defendants' actions, Plaintiffs and other distributees of decedents' estates suffered damages, including pecuniary damages.

130. Personal representatives have been appointed for the decedents.

131. Accordingly, Plaintiffs are entitled to recover:

   a. Funeral and burial expenses;

b.  Loss of financial support and income;

c.  The economic value of decedents' lives;

d.  Loss of inheritance;

e.  Loss of consortium, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice;

f.  Grief and mental anguish of the Plaintiffs; and

g.  Decedents' pain and suffering.

131.  Plaintiffs demand judgment in their favor for the aforementioned damages, and below prayer for relief, against all Defendants.

## COUNT III
### Product Liability: Failure to Warn and Manufacturing Defect
**(Against Defendants RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION, LOCKHEED MARTIN CORPORATION, and DOES 1 through 20)**

132.  Plaintiffs hereby incorporate by reference all of the allegations above, as though set forth herein.

133.  Plaintiffs bring this claim against Defendants RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION, LOCKHEED MARTIN CORPORATION, and DOES 1 through 20, inclusive.

134.  Plaintiffs do not allege any design defects; rather, this claim alleges manufacturing defects and failure to warn.

135.  The systems and products discussed herein under test in 1996 when the TWA crash occurred, are not state-of-the art 26 years later, and therefore do not involve matters of national security in 2022 or thereafter.  Defendants' missile defense systems

32

contained significant interoperability problems—defects that could result in the loss of life, equipment, or supplies. The vast majority of these problems were caused by system-specific software problems.

136. Specific problems included: a) failure to accept changes in mislabeled data identifying a friendly aircraft as a hostile aircraft, with the potential to cause the downing of a commercial airliner; b) excess messages overloading systems, causing system crashes and the loss of command and control resources during critical periods; c) improper track identification, creating the potential for either a hostile system to penetrate defenses or a friendly system such as a commercial aircraft to be inadvertently destroyed; and d) duplicate tracks distorting the joint tactical picture, denying vital information to battle managers and shooters.

137. The contractor Defendants were aware of the aforementioned risks and concerns prior to the date of the subject TWA 800 incident.

138. Defendants LOCKHEED MARTIN, GENERAL DYNAMICS, RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION and DOES 1 through 20, inclusive, knew that the aforementioned products and systems were not ready to be used to fire live missiles in close proximity to human populations and commercial aircraft prior to the date of the subject TWA 800 incident.

139. Defendants RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION and DOES 1 through 20, inclusive, failed to warn Plaintiffs, decedents, and the United States of the following:

33

**JA92**

a. The SM-2 Missile (Standard Missile 2) was not ready to be used with the Aegis Missile System in a highly congested area that included commercial aircraft;

b. The CEC (Cooperative Engagement Capability) system, Aegis system, Navy Area Defense, Linebacker, and/or similar missile defense technologies, which were being integrated with the SPY-1 Radar System, were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

c. MK illuminators (which direct beams of radiation that "paints" targets so missiles can lock onto them) were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies, and DOES 1 through 20 at the time of the subject incident;

d. The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident;

34

## JA93

e.  The IFF (Identify Friend or Foe) System within the US Army's Patriot Missile System, as well other service's IFF systems were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company, Raytheon Technologies Corporation, and DOES 1 through 20 at the time of the subject incident; and

f.  The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident.

140.  Defendants RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION and DOES 1 through 20, inclusive, knew that the aforementioned products and systems were not ready to be used to fire live missiles in close proximity to human populations and commercial aircraft prior to the date of the subject TWA 800 incident.

141.  Defendant LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, failed to warn Plaintiffs, decedents, and the United States of the following:

a.  The Aegis SPY-1 Radar System was not ready to be used in a highly congested area that included commercial aircraft; and

b.  The IFF (Identify Friend or Foe) System within the Aegis System, which includes the SPY-1 Radar System, was not ready to be used in a highly congested area that included commercial aircraft.

35

142.    Defendants LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, knew that the aforementioned products and systems were not ready to be used to fire live missiles in close proximity to human populations and commercial aircraft prior to the date of the subject TWA 800 incident.

143.    Defendants RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION, and DOES 1 through 20, inclusive, designed the following products pursuant to design plans and specifications: SM-2 Missile (Standard Missile 2); CEC (Cooperative Engagement Capability) System, which was being integrated with the SPY-1 Radar System; the MK illuminators (a directed beam of radiation that "paints" targets so missiles can lock onto them); the IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) System; the IFF (Identify Friend or Foe) System within the United States' Patriot Missile System; and other associated products and systems used on the day of the subject incident.

144.    The following products were flawed due to manufacturing defects, and did not conform to their specifications: SM-2 Missile (Standard Missile 2), CEC (Cooperative Engagement Capability) System, which was being integrated with the SPY-1 Radar System; the MK illuminator System (a directed beam of radiation that "paints" targets so missiles can lock onto them); the IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) System; the IFF (Identify Friend or Foe) System within the United States' Patriot Missile System; and other associated products and systems used on the day of the subject incident.

36

145.     Defendant LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, designed the following products pursuant to design plans and specifications: the Aegis SPY-1 Radar System; the IFF (Identify Friend or Foe) System within the Aegis System, which includes the SPY-1 Radar System; and other associated products and systems used on the day of the subject incident.

146.     The following products were flawed due to manufacturing defects, and did not conform to their specifications: the Aegis SPY-1 Radar System; the IFF (Identify Friend or Foe) System within the Aegis System, which includes the SPY-1 Radar System; and other associated products and systems used on the day of the subject incident.

147.     As a result of the aforementioned manufacturing defects, and Defendants RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION, LOCKHEED MARTIN CORPORATION,  and DOES 1 through 20's failure to warn Plaintiffs, decedents, and the United States, a missile struck TWA 800 and caused the deaths of decedents, and Plaintiffs' damages.

148.     Plaintiffs demand judgment in their favor for the aforementioned damages, and below prayer for relief, against these Defendants.

## VIII.   PRAYER FOR RELIEF

Plaintiffs pray that the Court grant judgment in their favor against the Defendants and grant to Plaintiffs:

    a.   Compensatory damages;

    b.   Punitive damages;

c.  Interest from date of judicial demand;

d.  Costs and expenses;

e.  Attorney's fees; and

f.  Such other and further relief as this Honorable Court may determine to be just and appropriate under the circumstances.

Respectfully submitted,

Dated: September 19, 2022                BAILEY & GLASSER LLP

By:  _/s/ John Roddy_____

John Roddy (BBO. No. 424240)
*jroddy@baileyglasser.com*
**Bailey & Glasser LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954

Todd A. Walburg (*Pro Hac Vice Anticipated*)
*twalburg@baileyglasser.com*
Leslie A. Brueckner (*Pro Hac Vice Anticipated*)
*lbrueckner@baileyglasser.com*
Scott B. Baez (*Pro Hac Vice Anticipated*)
*sbaez@baileyglasser.com*
**Bailey & Glasser LLP**
1999 Harrison Street, Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000

Benjamin L. Bailey (*Pro Hac Vice Anticipated*)
*bbailey@baileyglasser.com*
Eric B. Snyder *Pro Hac Vice Anticipated*)
*esnyder@baileyglasser.com*
Christopher D. Smith (*Pro Hac Vice Anticipated*)
*csmith@baileyglasser.com*
**Bailey & Glasser LLP**

**JA97**

209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

***Attorneys for the Plaintiffs***

Frank L. Watson, III (*Pro Hac Vice Anticipated*)
fwatson@watsonburns.com
**Watson Burns, PLLC**
253 Adams Avenue
Memphis, Tennessee 38104
Phone: (901) 529-7996
Facsimile: (901) 529-7998

***Co-Counsel for Plaintiffs CHARLES HENRY
GRAY, IV, individually and on behalf of the
Estate of Charles Henry Gray, III; and
CHADWICK GRAHAM GRAY.***

# JA98

**Amended Complaint (operative), dated November 17, 2022 [JA98-JA135]**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD KRICK, Individually and on Behalf of the Estate of Oliver Krick; MARGARETA KRICK; CHRISTOPHER KRICK; DOUGLAS KEVORKIAN, Individually and on Behalf of the Estate of Ralph Kevorkian; LISA MICHELSON, Individually and on Behalf of the Estate of Yonatan Rojany; ERIC ROJANY; JODELLE GEARON, Individually and on Behalf of the Estate of Daniel Gaetke; TODD GAETKE; CRAIG GAETKE; WANDA KEMP, Individually and on Behalf of the Estates of O. Lamar Allen and Ashton Allen; CHRISTINE GROGAN; EILEEN ZAHARIOUDAKIS, Individually and Behalf of the Estate of Donald Gough; and MICHAEL DETERESA, <br><br> **Plaintiffs** <br> v. <br><br> RAYTHEON COMPANY; LOCKHEED MARTIN CORPORATION; UNITED STATES; and DOES 1 through 20, inclusive, <br><br> **Defendants.** | Judge: Honorable Angel Kelley <br><br> Case No. 1:22-cv-11032-AK <br><br><br> JURY TRIAL DEMANDED <br><br><br> [Leave to File Granted on Nov. 17, 2022] |

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES

### I.    INTRODUCTION

1.    The crash of Trans World Airlines (TWA) Flight 800 ("TWA 800") was one of the deadliest aviation incidents in the history of the United States. It also resulted in what could be considered one of the nation's biggest cover-ups.

1

**JA99**

2.      On July 17, 1996, a Boeing 747 headed for Paris took off from New York's John F. Kennedy International Airport at around 8:20 p.m. Within twelve minutes of takeoff, the plane exploded and crashed into the Atlantic Ocean off the coast of Long Island, New York. All 230 passengers and crew members perished.

3.      After the incident, the federal government released a false report contending that the explosion was the result of an electrical fire in the airplane's center fuel tank.

4.      Only recently, thanks to the work of physicist, Dr. Thomas Stalcup, through his Freedom of Information Act ("FOIA") litigation in Massachusetts federal court, has evidence emerged proving that TWA 800's explosion was not caused by any defect in the airplane, but instead by an errant United States missile fired at aerial target drones flying nearby.

5.      The evidence unearthed by Dr. Stalcup establishes that the United States, including its agencies, such as the United States Missile Defense Agency (formerly known as the Ballistic Missile Defense Organization), the United States Department of Defense, and the United States Navy (the "Government Defendants"), acting in concert and working side-by-side with Raytheon Company and Lockheed Martin Corporation (the "Contractor Defendants") and DOES 1 through 20, inclusive (collectively the "Defendants") were testing the Aegis Weapons System and firing SM-2 missiles with live warheads from warship(s) at aerial missile targets off the coast of New York in close proximity to commercial airline flight paths. One such missile struck TWA flight 800, causing it to break apart and crash into the Atlantic Ocean, killing everyone aboard.

2

6.      Newly discovered evidence also shows that these Defendants engaged in a top-down cover-up to prevent the public from learning the truth about TWA 800. Proof of this cover-up, and of Defendants' underlying culpability for the crash, was only recently unearthed by Dr. Stalcup after more than a decade of FOIA litigation against the Government Defendants.

7.      Plaintiffs are the family members and estates of victims of the TWA 800 crash. They bring this action to hold the Defendants liable for their reckless conduct and subsequent cover-up, and to vindicate the rights of those wrongly killed in the TWA 800 crash.

## II.      JURISDICTION AND VENUE

8.      This is a civil action for money damages against Raytheon Company, Lockheed Martin Corporation, the United States, and DOES 1 through 20, inclusive, and their agents and employees. It arises from reckless and grossly negligent conduct and wrongful acts and omissions resulting in the death of 230 individuals aboard TWA 800 over the Atlantic Ocean, including the decedents represented by Plaintiffs herein.

9.      One of the three Defendants named in this complaint is headquartered within the District of Massachusetts. Specifically, Defendant Raytheon Company has its headquarters and principal places of business in Waltham, Massachusetts.

10.      In addition, a related case, *Thomas Stalcup v. Department of Defense*, Case No. 1:13-cv-11967-LTS, has been pending in United States District Court, District of Massachusetts, for several years.

3

11.     Plaintiffs assert their claims against the United States under the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 2671 *et seq.*

12.     Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1331, 1332 and 28 U.S.C. § 1346(b).

13.     This Court may properly assert personal jurisdiction over all of the named Defendants because of their presence and activity in, and connections to, this forum.

14.     Venue is proper in this forum pursuant to 28 U.S.C. § 1402.

### III.    THE PARTIES

**a.    The Plaintiffs**

15.     Plaintiff Ronald Krick resides in Missouri. He is the father of Oliver Krick and brings this action individually and as personal representative on behalf of the Estate of Oliver Krick, who died on TWA 800.

16.     Plaintiff Margareta Krick resides in Missouri. She is the mother of Oliver Krick and brings this action individually.

17.     Plaintiff Christopher Krick resides in Missouri. He is the brother of Oliver Krick and brings this action individually.

18.     Plaintiff Douglas Kevorkian resides in California.  He is the son of Ralph G. Kevorkian and brings this action individually and as personal representative on behalf of the Estate of Ralph G. Kevorkian, who died on TWA 800.

19.     Plaintiff Lisa Michelson resides in California. She is the mother of Yonatan Rojany and brings this action individually and as personal representative on behalf of the Estate of Yonatan Rojany, who died on TWA 800.

4

20.     Plaintiff Eric Rojany resides in California. He is the brother of Yonatan Rojany and brings this action individually.

21.     Plaintiff Jodelle Gearon resides in Kansas. She is the sister of Daniel Gaetke and brings this action individually and as personal representative on behalf of the Estate of Daniel Gaetke, who died on TWA 800.

22.     Plaintiff Todd Gaetke resides in California. He is the brother of Daniel Gaetke and brings this action individually.

23.     Plaintiff Craig Gaetke resides in Georgia. He is the brother of Daniel Gaetke and brings this action individually.

24.     Plaintiff Wanda Kemp resides in Georgia. She is the sister of O. Lamar Allen and the aunt of Ashton Allen and brings this action individually and as personal representative on behalf of the Estates of O. Lamar Allen and Ashton Allen, both of whom died in the crash of TWA 800.

25.     Plaintiff Christine Grogan resides in California. She is the daughter of O. Lamar Allen and brings this action individually.

26.     Plaintiff Eileen Zaharioudakis resides in California. She is the sister of Donald E. Gough and brings this action individually and as personal representative on behalf of the Estate of Donald E. Gough, who died on TWA 800.

27.     Plaintiff Michael Deteresa resides in New Jersey. He is the nephew of Donald E. Gough and brings this action individually.

5

**JA103**

**b.    The Defendants**

28.    Defendant Raytheon Company is a Delaware Corporation with its headquarters and principal place of business in Waltham, Massachusetts.

29.    Defendant Lockheed Martin Corporation is a Maryland corporation with its principal place of business in Bethesda, Maryland. Defendant Lockheed Martin Corporation has significant contacts with, and conducts substantial business in, the Commonwealth of Massachusetts. For example, Defendant Lockheed Martin Corporation owns and operates several facilities in the Commonwealth of Massachusetts.

30.    Defendant the United States has significant contacts with, and conducts substantial business and operations in, the Commonwealth of Massachusetts.

31.    The Defendants identified herein as DOES 1 through 20, are the joint-venturers, agents, servants, employees, predecessor or subsequent companies or corporations, divisions, agencies, subsidiaries, and co-conspirators of the other Defendants. They have been named using these fictitious names because their true identities are currently unknown. When their true identities become known, Plaintiffs will amend this complaint to substitute the true names for the fictitious names.

### IV.    FACTS COMMON TO ALL CAUSES OF ACTION

**a. Overview: The TWA 800 Disaster**

32.    The Defendants tested missiles off the coast of the Eastern United States in 1996, which was a departure from prior practices.

33.    There are several flight paths in the vicinity of the area where the missile testing occurred, including flights taking off from, and landing at, major airports in New York and New Jersey, such as New York's John F. Kennedy International Airport, New York's LaGuardia Airport, and New Jersey's Newark International Airport.

34.    On July 17, 1996, TWA 800 took off from John F. Kennedy International Airport in New York at around 8:20 p.m.

35.    On that evening, numerous eyewitnesses described seeing a streak of light arcing from the surface of the ocean toward TWA 800 and then seeing an explosion and an object break apart and fall into the ocean.

36.    Twelve minutes after the plane took off, it broke apart and caught fire 13,800 feet over the Atlantic Ocean, precisely where the surface-originating streak observed by the eyewitnesses exploded.

37.    All two hundred and thirty passengers aboard TWA 800 died.

b. **The Government Investigation and Cover-Up**

38.    In the wake of the TWA 800 tragedy, the federal government purported to investigate its cause.

39.    However, instead of allowing the National Transportation Safety Board ("NTSB"), the agency tasked with investigating all domestic aviation incidents, to lead the investigation of the TWA 800 incident, the Federal Bureau of Investigation ("FBI") took charge. The FBI also enlisted the assistance of the Central Intelligence Agency ("CIA").

# JA105

40.    Indeed, the FBI essentially froze the NTSB out of the investigation. The FBI removed all copies (original and duplicates) of Navy radar tapes from the Navy, placing them out of the NTSB's reach, and refused to allow the NTSB to conduct eyewitness interviews or review the FBI's records that indicated the true cause of the TWA 800 crash.

41.    Eyewitnesses who were interviewed by the FBI recall being threatened by the organization.  For example, one eyewitness recalls being told to keep quiet about the "rocket" she saw in the sky or risk her citizenship application being denied.

42.    Despite this, eyewitnesses have  consistently maintained  that they saw something arcing toward TWA 800 before the plane erupted into flames and fell from the sky.

43.    For example, one eyewitness testified that she saw a "rocket go up" and explode, and then saw TWA 800's flaming wreckage fall from the sky.

44.    Two other eyewitnesses,  Air National  Guard  pilots,  Captain Christian Baur and Major Frederick "Fritz" Meyer, similarly stated that they witnessed events that indicated a missile struck TWA 800.

45.    On the day TWA 800 went down, Captain Baur and Major Meyer were flying in a Black Hawk helicopter near the area of the TWA 800 incident. Captain Baur recalled seeing an object with a "rocket type motor . . . moving quick" toward TWA 800. After the crash, Captain Baur flew to the area and conducted a search and rescue.

46.     Captain Baur's co-pilot, Major Meyer, testified that he recognized a "flak" explosion at the site of the TWA 800 explosion, which is what military anti-air explosives create.

47.     Despite this evidence, the CIA concocted materials to discredit eyewitnesses who could confirm that TWA 800 had been downed by some kind of projectile. These materials included a video and animation that was displayed during a nationally televised FBI press conference that attempted to reconcile the eyewitness testimony that the plane was struck by a projectile with the U.S. Government's official position that the crash was caused by a defect in the plane's center fuel tank.

48.     Although overwhelming eyewitness testimony indicated that TWA 800 was struck by a missile, the video and animation, which was subtitled "What Did The Eyewitnesses See?," contained a scene with large, capitalized, and underlined words, "NOT A MISSILE."  To ensure that audiences did not miss the point, a narrator read those words aloud.

9



49. Despite outwardly proclaiming that the cause of the TWA 800 explosion was, in the CIA's words, "<u>NOT A MISSILE,</u>" several internal government communications (that have only come to light in the recent FOIA litigation) indicated that a missile was involved.

50.     Following the FBI's press conference stating that TWA 800 was not brought down by a missile, the NTSB released a report stating that the likely cause of the crash was an explosion of flammable vapors in the plane's center fuel tank. This became the publicly accepted view of what happened, and Plaintiffs relied upon this misinformation.

51.     The NTSB's report did not include and/or ignored crucial evidence that ran counter to its conclusion, and NTSB team leaders were ordered not to draft analysis reports, which ran contrary to the usual procedure for NTSB aviation crash reports.

52.     The NTSB also formed a new NTSB Office of Families, headed by a public relations expert, that successfully deceived the victims' families about the true cause of the crash. Through a series of misleading official communications, the Office of Families promoted a fuel tank scenario as the only possible explanation for the crash, and told the victims' families that the idea that TWA 800 was brought down by a missile was an implausible "conspiracy theory" without any basis in fact. In reality however, the opposite is the case.

53.     This same misinformation was provided to the press, which widely reported it to the public.

54.     In short, for over 25 years, Plaintiffs and the public were led to believe—by their own government and the Defendants—that the victims of the TWA 800 crash were killed by a one-of-a-kind exploding fuel tank. Recently, however, overwhelming evidence uncovered by physicist Dr. Thomas Stalcup shows that TWA 800 was struck by an errant missile fired by the Defendants.

**c. Defendants' Rush to Test the Aegis Missile System with Live Warheads**

55.     The missile program that resulted in the crash of TWA 800 became a high priority for the U.S. Government in 1996, when former Secretary of Defense William Perry sought a significant increase in funding for the Navy's Aegis Missile system from the U.S. Senate's Armed Services Committee.

11

56.     Defendant Department of Defense proposed that this missile system proceed "as quickly as possible to production and deployment" in order to increase defense capabilities against missiles from hostile countries.

57.     Indeed, in a news briefing from the Missile Defense Agency and the Department of Defense, Secretary Perry characterized the missile threat from rogue nations as "here and now."

58.     The Senate Committee approved the funding, and the Navy accelerated testing and development of the next-generation Aegis Missile System.

59.     The key to upgrading the Aegis System for missile defense lay in its radar system. To upgrade its capabilities as a missile defense system, the radar system needed significant improvements. For example, the radar system needed to be able to track more enemy missiles at once and do so at further distances.

60.     The Aegis System's radar also needed improvement in its ability to operate close to shore and to properly integrate into existing systems.  As it stood, Aegis was confused by land and could not adequately "interoperate" with the other services' anti-missile systems. These serious flaws could result in a missile striking an unintended target.

61.      To address these key deficiencies, the Department of Defense directed the Contractor Defendants to integrate a new radar and computer system into all new ship designs, known as the SPY-ID(V).

62.     The new computer system, known as Hiper-D, was developed by the Defense Advanced Projects Agency (DARPA) to run the SPY-1D(V) radar.

12

63.     When testing of the SPY-ID(V) began, there were no ships in the Naval fleet with the hardware or computing power to accommodate and operate the new radar system.

64.     Although the SPY-ID(V) would later become a key component aboard the next wave of Navy destroyer ships, in 1996 the only option with the hardware and computing power sufficient to operate the SPY-ID(V) was a New Jersey land-based testing site called the Combat Systems Engineering and Development Site ("CSEDS").

65.     Instead of waiting five years for ships to be properly constructed with the SPY-ID(V) so that testing could be conducted far from congested air corridors and at established test ranges, the SPY-ID(V) was tested on an expedited basis in and around the CSEDS in New Jersey, in a highly congested area.

66.     The integration of the SPY-ID(V) into the Aegis Missile System was a major technological leap forward, and it should have been conducted deliberately and carefully. The system included new hardware, software, computer systems, and wireless networking to share data and coordinate with other services' missile defense systems.

67.     Despite this, the Defendants fast-tracked implementation of the system, and put it on an accelerated and unrealistic timetable.

68.     Despite the obvious risk posed by testing missiles in close proximity to people and commercial aircraft, Defendants certified the CSEDS for "operational testing" to ensure the upgraded Aegis System went online as soon as possible.

13

69.    In 1996, the Defendants began testing the SPY-ID(V) using "simulated and actual targets" in and around New Jersey.

70.    Recently unearthed evidence confirmed that in May 1996, Defendants conducted initial operational tests of the SPY-ID(V) radar upgrade with testing that involved firing at least one missile with a live warhead.

71.    That same month, a former member of the United States Coast Guard stated that he saw a missile rising over Long Island Sound as he drove to work. Two months later, and five days before TWA 800 went down, he saw another missile on his morning commute.

72.    An electrician on the roof of a nearby Long Island hospital was filming the sunrise and captured the second missile witnessed by the Coastguardsman on his VHS camera.

73.    Five days later, as Navy missile targets flew nearby, dozens of witnesses saw a missile rise off the ocean apparently heading toward something well behind TWA 800, but only to take a sharp turn toward the jetliner seconds before exploding into it.

74.    Despite this tragic incident, the Defendants continued to test the radar and missile system in this same, highly populated area.

75.    In August that year, just six weeks after TWA 800 went down off Long Island, a rocket with classified Department of Defense sensors flew near and "startled" an American Airlines pilot near CSEDS' sister land-based site on Virginia's eastern seaboard.

14

76. A month later and in the same area, two missiles were launched from Navy ships at aerial target drones flying nearby.

77. Another two months later, on November 16, 1996, almost precisely where TWA 800 went down off Long Island, a Pakistani Airlines pilot reported to Air Traffic Control that a "rocket" rose in front of him and continued rising above his altitude. People on shore that evening were interviewed by the FBI and confirmed that a projectile rose between airliners off Long Island at the time.

78. Six hours earlier that November day, a witness described seeing a missile-like object rise quickly over South New Jersey or Staten Island, NY.

79. At 1:00 a.m. the next day, a witness reported to the FBI seeing a missile-like object from central Long Island.

80. On March 17, 1997, many commercial airline pilots reported seeing a missile or missiles flying in the vicinity of New Jersey and Pennsylvania.

81. On that same day (March 17, 1997), an Air Force cargo pilot reported to Air Traffic Control, and later to the FBI, that he had been seconds away from taking "evasive maneuvers" to avoid being hit by a missile fired over Burlington, Vermont. After the missile arced away from his aircraft at the last minute, he flew by its "non-vapor" exhaust plume.

82. Steve Habeger, the Executive Director of CSEDS's sister site in Virginia during this time, recently testified in Dr. Stalcup's FOIA in the United States District Court for the District of Massachusetts, *Thomas Stalcup v. Department of Defense*, Civil Action No. 1:13-cv-11967-DLC (the "FOIA Litigation"), that he was personally aware of

15

at least a dozen Aegis missile tests off the East Coast of the United States around this same overall time period.

**d. Unearthed Evidence Discredits the Government's Exploding Fuel Tank Narrative**

83.    As part of the FOIA Litigation, Dr. Stalcup recently obtained crucial new evidence regarding what caused TWA 800 to explode on July 17, 1996.

84.    For example, Dr. Stalcup obtained several FBI records never released to the TWA 800 families or the public. One described an "original [Navy radar] tape" showing an object "heading straight for TWA 800." Another describes an object on radar "impact[ing]" TWA 800 and "spiral[ling] away," while also stating that witnesses described seeing a "flair (sic) going up. . . . , orbit/circle another object. Subsequently debris fell from the sky."

85.    These records were never made part of the NTSB investigation, and no eyewitnesses were permitted to testify at any NTSB hearing. As such, the Plaintiffs were never informed of this information.

86.    In addition, on around October 2, 2019, Dr. Stalcup privately consulted with a former high-level FBI official who informed him that aerial target drones were flying in TWA 800's vicinity when TWA 800 went down—the very drones documented to have been used in East Coast missile tests of the Navy's Aegis System that summer of 1996. Those target drones ultimately parachuted to the ocean below, unscathed and abandoned.

87.    The FBI later ordered the Navy to retrieve these targets, which is contrary to the usual chain of command.

16

88.    In addition to the documentary evidence uncovered in the FOIA Litigation, Dr. Stalcup also deposed several government witnesses regarding the TWA 800 disaster.

89.    One of these witnesses, Steven Habeger, the Executive Director of an East Coast Navy land-based test site, testified that within minutes of the TWA 800 disaster, he was ordered to allow the FBI to remove all Navy radar tapes from his facility that might have recorded the TWA 800 incident.

90.    This event was corroborated by Mr. Habeger's commanding officer and by FBI custody records obtained during the FOIA Litigation.

91.    Dr. Stalcup also discovered that five days after the TWA 800 disaster, the Joint Terrorism Task Force directed the FBI to obtain another "original [Navy] radar tape" showing an object "heading straight for TWA 800" and to "prepare FD-302 re-procurement of this original tape."

92.    These radar tapes were confiscated by the FBI immediately after the crash of TWA 800. According to records obtained in the FOIA Litigation, they show an object "impact" TWA 800, which directly contradicts the FBI's, CIAs, and NTSB's public conclusions that what caused the incident was "NOT A MISSILE."

93.    In fact, the evidence reveals that TWA 800 was brought down by a missile and the government hid this truth from Plaintiffs and the public at large for over twenty-five years.

17

### V.     TOLLING OF THE STATUTE OF LIMITATIONS

94.     Under normal circumstances, the statute of limitations would have run on events that occurred in 1996.

95.     However, the discovery rule and fraudulent concealment doctrine toll the statute of limitations in this case.

96.     Specifically, key evidence confirming that a missile caused the crash of TWA 800 was hidden from the public and the victims' families for over 25 years. This evidence was only recently unearthed by Dr. Tom Stalcup in his hard-fought FOIA litigation, which has now been pending for over ten years.

97.     Plaintiffs only discovered the evidence Dr. Stalcup diligently compiled on April 15, 2021, when they attended a meeting hosted by Dr. Stalcup. At that meeting, Dr. Stalcup informed the Plaintiffs about the key facts he learned in his FOIA lawsuit indicating that the TWA 800 crash was caused by a missile.

98.     Before April 15, 2021, the Plaintiffs were not aware of, or on notice of, the information that forms the basis of this complaint, nor have the Plaintiffs had any reasonable opportunity discover their injury, its cause, and the link between the two (prior to April 15, 2021).

99.      In addition, the statute of limitations was tolled because the Defendants, led by the United States government, took active steps to mislead the families and the public, as well as conceal that the TWA 800 crash was caused by a missile, including confiscating and concealing evidence from the United States Navy.

18

100.    Therefore, the discovery rule, the fraudulent concealment doctrine, the doctrine of equitable estoppel, and the doctrine of laches, toll the statute of limitations in this case.

## VI.    SATISFACTION OF FTCA JURISDICTIONAL REQUIREMENTS

101.    Presentation of an administrative claim to the appropriate agency is a jurisdictional prerequisite to Federal Tort Claims Act ("FTCA") claim. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106 (1993).

102.    Here, Plaintiffs sent administrative claims to the United States and its agencies, United States Navy, the United States Missile Defense Agency, and the United States Department of Defense, in October 2021.

103.    While the United States Missile Defense Agency and the United States Department of Defense did not respond to the claims, Defendant United States Navy denied Plaintiffs' claims in writing, and they noted that Plaintiffs only had six months to file lawsuits under the FTCA.

104.    Plaintiffs hereby bring these claims within six months of the mailing of those rejection letters from the United States Navy.

## VII.    CAUSES OF ACTION

### COUNT I
### Negligence and Gross Negligence
### (Against All Defendants)

105.    Plaintiffs hereby incorporate by reference all of the allegations set forth above, as so though fully set forth herein.

19

106.    Plaintiffs assert claims individually and on behalf of the Estates of the decedents against the Defendants for negligence and gross negligence.

107.    As a result of the negligent, grossly negligent, reckless, or intentional conduct of the Defendants, Plaintiffs' decedents died after a missile downed TWA 800.

108.    Specifically, the Defendants negligently, recklessly, or intentionally authorized and conducted the testing of missiles in commercial airspace. As a result of these tests, a missile downed TWA 800 and killed Plaintiffs' decedents.

109.    Defendants owed decedents and Plaintiffs a duty not to negligently test missiles in commercial airspace.

110.    Defendants breached that duty by negligently testing missiles in commercial airspace.

111.    The systems and products discussed herein were still being tested in 1996 when the TWA crash occurred, are not state-of-the art 25 years later, and therefore do not involve matters of national security in 2022 or thereafter.

112.    Defendants RAYTHEON COMPANY and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a.  Defendants Raytheon Company and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

b.  The SM-2 Missile (Standard Missile 2) was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by,

20

Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

c. The CEC (Cooperative Engagement Capability) system, Aegis system, Navy Area Defense, Linebacker, and/or similar missile defense technologies, which were being integrated with the SPY-1 Radar System, were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

d. MK illuminators (which direct beams of radiation that "paints" targets so missiles can lock onto them) were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

e. The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

f. The IFF (Identify Friend or Foe) System within the US Army's Patriot Missile System, as well other service's IFF systems were negligently and grossly negligently supplied by, tested by, approved for use by, and

21

overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

g. The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident; and

h. Defendant Raytheon Company and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

113. Defendants LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a. Defendant Lockheed Martin Corporation and DOES 1 through 20 worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

b. The Aegis SPY-1 Radar System was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Lockheed Martin Corporation and DOES 1 through 20 at the time of the subject incident;

c. The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, was negligently and grossly negligently supplied by, tested by,

22

approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

d. The IFF (Identify Friend or Foe) System within the US Army's Patriot Missile System, as well other service's IFF systems were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

e. The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident; and

f. Defendants Lockheed Martin Corporation and DOES 1 through 20 were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

114. Defendants the UNITED STATES and DOES 1 through 20 were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a. The United States Missile Agency (formerly known as the Ballistic Missile Defense Organization) and DOES 1 through 20 worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

23

# JA121

b.  The United States Missile Agency (formerly known as the Ballistic Missile Defense Organization) and DOES 1 through 20 were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

115.  Defendants the UNITED STATES and DOES 1 through 20 were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a.  The United States Department of Defense and DOES 1 through 20  worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

b.  The United States Department of Defense and DOES 1 through 20 were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

116.  Defendants UNITED STATES and DOES 1 through 20 were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a.  The United States Navy and DOES 1 through 20 worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

b.  The United States Navy and DOES 1 through 20 were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

24

117.    As a result of Defendants' breach of the applicable duties, decedents and Plaintiffs suffered damages.

118.    Plaintiffs are entitled to damages resulting from the actions and/or omissions of the Defendants.

119.    As a direct and proximate result of the negligent, grossly negligent, reckless, and/or intentional actions of the Defendants, decedents died, and Plaintiffs suffered damages and losses, including the following:

    a.  Funeral and burial expenses;

    b.  Loss of Financial Support and Income;

    c.  The economic value of decedents' lives;

    d.  Loss of Inheritance;

    e.  Loss of consortium, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice;

    f.  Grief and mental anguish of the Plaintiffs; and

    g.  Decedents' pain and suffering.

120.    Plaintiffs demand judgment in their favor for the aforementioned damages, and below prayer for relief, against all Defendants.

## COUNT II
### Wrongful Death and Survivorship
### (Against All Defendants)

121.    Plaintiffs hereby incorporate by reference all of the allegations above, as though set forth herein.

25

**JA123**

122.   Plaintiffs assert claims individually and on behalf of the Estates of the decedents against the Defendants for wrongful death and survivorship.

123.   As a result of the grossly negligent, reckless, or intentional conduct of Defendants, decedents died after a missile downed TWA 800.

124.   Defendants RAYTHEON COMPANY and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

  a.   Defendant Raytheon Company and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

  b.   The SM-2 Missile (Standard Missile 2) was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

  c.   The CEC (Cooperative Engagement Capability) system, Aegis system, Navy Area Defense, Linebacker, and/or similar missile defense technologies, which were being integrated with the SPY-1 Radar System, were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

  d.   MK illuminators (which direct beams of radiation that "paints" targets so missiles can lock onto them) was negligently and grossly negligently

26

supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

e. The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

f. The IFF (Identify Friend or Foe) System within the U.S. Army's Patriot Missile System, as well other services' IFF systems were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

g. The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident; and

h. Defendants Raytheon Company and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

27

125.  Defendants LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

   a. Defendants Lockheed Martin Corporation and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

   b. The Aegis SPY-1 Radar System was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Lockheed Martin Corporation and DOES 1 through 20 at the time of the subject incident.

   c. The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

   d. The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident; and

   e. Defendants Lockheed Martin Corporation and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

28

126.    Defendants the UNITED STATES and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a.  The United States Missile Agency (formerly known as the Ballistic Missile Defense Organization) and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

b.  The United States Missile Agency (formerly known as the Ballistic Missile Defense Organization) and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

127.    Defendants the UNITED STATES and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

a.  The United States Department of Defense and DOES 1 through 20, inclusive, worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800; and

b.  The United States Department of Defense and DOES 1 through 20, inclusive, were otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

128. Defendants the UNITED STATES and DOES 1 through 20, inclusive, were negligent, grossly negligent, and breached their duties to Plaintiffs and decedents in the following ways:

    a. The United States Navy worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800;

    b. The United States Navy was otherwise responsible for the decision to test missiles in the area where TWA 800 was downed.

129. As a result of Defendants' actions, Plaintiffs and other distributees of decedents' estates suffered damages, including pecuniary damages.

130. Personal representatives have been appointed for the decedents.

131. Accordingly, Plaintiffs are entitled to recover:

    a. Funeral and burial expenses;

    b. Loss of financial support and income;

    c. The economic value of decedents' lives;

    d. Loss of inheritance;

    e. Loss of consortium, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice;

    f. Grief and mental anguish of the Plaintiffs; and

    g. Decedents' pain and suffering.

131. Plaintiffs demand judgment in their favor for the aforementioned damages, and below prayer for relief, against all Defendants.

30

## COUNT III
### Product Liability: Failure to Warn and Manufacturing Defect
**(Against Defendants RAYTHEON COMPANY, LOCKHEED MARTIN CORPORATION, and DOES 1 through 20)**

132.   Plaintiffs hereby incorporate by reference all of the allegations above, as though set forth herein.

133.   Plaintiffs bring this claim against Defendants RAYTHEON COMPANY, LOCKHEED MARTIN CORPORATION,  and DOES 1 through 20, inclusive.

134.   Plaintiffs do not allege any design defects; rather, this claim alleges manufacturing defects and failure to warn.

135.   The systems and products discussed herein under test in 1996 when the TWA crash occurred, are not state-of-the art 26 years later, and therefore do not involve matters of national security in 2022 or thereafter. Defendants' missile defense systems contained significant interoperability problems—defects that could result in the loss of life, equipment, or supplies. The vast majority of these problems were caused by system-specific software problems.

136.   Specific problems included: a) failure to accept changes in mislabeled data identifying a friendly aircraft as a hostile aircraft, with the potential to cause the downing of a commercial airliner; b) excess messages overloading systems, causing system crashes and the loss of command and control resources during critical periods; c) improper track identification, creating the potential for either a hostile system to penetrate defenses or a friendly system such as a commercial aircraft to be

31

inadvertently destroyed; and d) duplicate tracks distorting the joint tactical picture, denying vital information to battle managers and shooters.

137.    The contractor Defendants were aware of the aforementioned risks and concerns prior to the date of the subject TWA 800 incident.

138.    Defendants LOCKHEED MARTIN, RAYTHEON COMPANY, and DOES 1 through 20, inclusive, knew that the aforementioned products and systems were not ready to be used to fire live missiles in close proximity to human populations and commercial aircraft prior to the date of the subject TWA 800 incident.

139.    Defendants RAYTHEON COMPANY and DOES 1 through 20, inclusive, failed to warn Plaintiffs, decedents, and the United States of the following:

  a. The SM-2 Missile (Standard Missile 2) was not ready to be used with the Aegis Missile System in a highly congested area that included commercial aircraft;

  b. The CEC (Cooperative Engagement Capability) system, Aegis system, Navy Area Defense, Linebacker, and/or similar missile defense technologies, which were being integrated with the SPY-1 Radar System, were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

  c. MK illuminators (which direct beams of radiation that "paints" targets so missiles can lock onto them) were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants

32

Raytheon Company and DOES 1 through 20 at the time of the subject incident;

d. The IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) and similar systems such as the Navy's Aegis system, was negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident;

e. The IFF (Identify Friend or Foe) System within the US Army's Patriot Missile System, as well other service's IFF systems were negligently and grossly negligently supplied by, tested by, approved for use by, and overseen by, Defendants Raytheon Company and DOES 1 through 20 at the time of the subject incident; and

f. The Joint Tactical Information Distribution System (JTIDS) wireless network and similar joint and service networks were negligently and grossly negligently tested by, approved for use by, and overseen by, all of the Defendants at the time of the subject incident.

140.    Defendants RAYTHEON COMPANY and DOES 1 through 20, inclusive, knew that the aforementioned products and systems were not ready to be used to fire live missiles in close proximity to human populations and commercial aircraft prior to the date of the subject TWA 800 incident.

141.    Defendant LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, failed to warn Plaintiffs, decedents, and the United States of the following:

33

a. The Aegis SPY-1 Radar System was not ready to be used in a highly congested area that included commercial aircraft; and

b. The IFF (Identify Friend or Foe) System within the Aegis System, which includes the SPY-1 Radar System, was not ready to be used in a highly congested area that included commercial aircraft.

142. Defendants LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, knew that the aforementioned products and systems were not ready to be used to fire live missiles in close proximity to human populations and commercial aircraft prior to the date of the subject TWA 800 incident.

143. Defendants RAYTHEON COMPANY and DOES 1 through 20, inclusive, designed the following products pursuant to design plans and specifications: SM-2 Missile (Standard Missile 2); CEC (Cooperative Engagement Capability) System, which was being integrated with the SPY-1 Radar System; the MK illuminators (a directed beam of radiation that "paints" targets so missiles can lock onto them); the IFF (Identify Friend or Foe) System within the CEC (Cooperative Engagement Capability) System; the IFF (Identify Friend or Foe) System within the United States' Patriot Missile System; and other associated products and systems used on the day of the subject incident.

144. The following products were flawed due to manufacturing defects, and did not conform to their specifications: SM-2 Missile (Standard Missile 2), CEC (Cooperative Engagement Capability) System, which was being integrated with the SPY-1 Radar System; the MK illuminator System (a directed beam of radiation that "paints" targets so missiles can lock onto them); the IFF (Identify Friend or Foe) System

34

within the CEC (Cooperative Engagement Capability) System; the IFF (Identify Friend or Foe) System within the United States' Patriot Missile System; and other associated products and systems used on the day of the subject incident.

145.    Defendant LOCKHEED MARTIN CORPORATION and DOES 1 through 20, inclusive, designed the following products pursuant to design plans and specifications: the Aegis SPY-1 Radar System; the IFF (Identify Friend or Foe) System within the Aegis System, which includes the SPY-1 Radar System; and other associated products and systems used on the day of the subject incident.

146.    The following products were flawed due to manufacturing defects, and did not conform to their specifications: the Aegis SPY-1 Radar System; the IFF (Identify Friend or Foe) System within the Aegis System, which includes the SPY-1 Radar System; and other associated products and systems used on the day of the subject incident.

147.    As a result of the aforementioned manufacturing defects, and Defendants RAYTHEON COMPANY, LOCKHEED MARTIN CORPORATION, and DOES 1 through 20's failure to warn Plaintiffs, decedents, and the United States, a missile struck TWA 800 and caused the deaths of decedents, and Plaintiffs' damages.

148.    Plaintiffs demand judgment in their favor for the aforementioned damages, and below prayer for relief, against these Defendants.

## VIII.   PRAYER FOR RELIEF

Plaintiffs pray that the Court grant judgment in their favor against the Defendants and grant to Plaintiffs:

**JA133**

    a.   Compensatory damages;

    b.   Punitive damages;

    c.   Interest from date of judicial demand;

    d.   Costs and expenses;

    e.   Attorney's fees; and

    f.   Such other and further relief as this Honorable Court may determine to be just and appropriate under the circumstances.

Respectfully submitted,

Dated: November 17, 2022          BAILEY & GLASSER LLP

By: */s/ John Roddy*

John Roddy (BBO. No. 424240)
*jroddy@baileyglasser.com*
**Bailey & Glasser LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954

Todd A. Walburg (*Pro Hac Vice Anticipated*)
*twalburg@baileyglasser.com*
Leslie A. Brueckner (*Pro Hac Vice Anticipated*)
*lbrueckner@baileyglasser.com*
Scott B. Baez (*Pro Hac Vice Anticipated*)
*sbaez@baileyglasser.com*
**Bailey & Glasser LLP**
1999 Harrison Street, Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000
Facsimile: (510) 463-0291

Benjamin L. Bailey (*Pro Hac Vice Anticipated*)
*bbailey@baileyglasser.com*
Eric B. Snyder *Pro Hac Vice Anticipated*)

36

*esnyder@baileyglasser.com*
Christopher D. Smith (*Pro Hac Vice Anticipated)*
*csmith@baileyglasser.com*
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

*Attorneys for the Plaintiffs*

**JA135**

<u>**Certificate of Service**</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on November 17, 2022.

*/s/ John Roddy*
John Roddy

# JA136

**Memorandum of Law of the United States in Support of Motion to Dismiss (April round), dated April 1, 2025 [JA136-JA185]**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

RONALD KRICK, et al.,

      Plaintiffs,

              v.

RAYTHEON COMPANY, et al.;

      Defendants.

Civil Action No.
1:23-cv-8093-AMD-JAM

(Donnelly, D.J)
(Marutollo, M.J)

-----------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

i

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND........................................................................................... 2

I.     THE GOVERNMENT INVESTIGATION ......................................................... 2

II.    UNOFFICIAL INVESTIGATIONS AND EARLY FREEDOM OF INFORMATION ACT CASES ALLEGED A MILITARY MISSILE DOWNED TWA FLIGHT 800 AND THE GOVERNMENT COVERED IT UP. ........................................................................ 4

III.   AS A FOIA PLAINTIFF IN HIS OWN RIGHT, DR. STALCUP ALSO ALLEGED THE GOVERNMENT COVERED UP A MISSILE STRIKE. ................................ 7

IV.   PRIOR MULTI-DISTRICT TORT LITIGATION ............................................. 9

V.    PRIOR SETTLEMENT RELEASES ............................................................ 12

VI.   PROCEDURAL POSTURE OF THIS CASE.................................................... 14

ARGUMENT................................................................................................................. 14

I.     THE FTCA DOES NOT WAIVE SOVEREIGN IMMUNITY FOR PLAINTIFFS' CLAIMS BECAUSE A SIMILARLY SITUATED PRIVATE PARTY THAT WAS RELEASED CANNOT BE LIABLE UNDER LIKE CIRCUMSTANCES................................ 14

II.    PLAINTIFFS LACK STANDING TO BRING THESE CLAIMS.................................. 18

   A.  NO ESTATES WERE REOPENED, AND NO PERSONAL REPRESENTATIVES WERE APPOINTED. ....................................................................................... 18

   B.  THE REMAINING INDIVIDUAL PLAINTIFFS LACK STANDING TO BRING THEIR OWN ACTION. ........................................................................................ 20

III.   CHRISTOPHER KRICK FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AND HIS CLAIM MUST BE DISMISSED. ........................................... 21

IV.     THE STATUTE OF LIMITATIONS HAS LONG SINCE RUN ON PLAINTIFFS' ALLEGATIONS AGAINST THE UNITED STATES. ................................................................ 22

   A.   STANDARD OF REVIEW .......................................................................................... 22

   B.   PLAINTIFFS' CLAIMS ACCRUED AT, OR NEAR, THE TIME OF THE CRASH. ... 23

      1.   Distinction between the Discovery Rule and Tolling. .................................................. 23

      2.   Plaintiffs' Claims Accrued Long Before October 2019. ............................................... 25

   C.   PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT APPLICATION OF THE FRAUDULENT CONCEALMENT DOCTRINE. .................................................................. 32

   D.   PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT APPLICATION OF EQUITABLE ESTOPPEL OR LACHES. ....................................................................................... 34

V.     PLAINTIFFS' COMPLAINT PLEADS AN ADMIRALTY CAUSE OF ACTION; THEREFORE, THIS ACTION BROUGHT UNDER THE FTCA MUST BE DISMISSED. ..... 36

CONCLUSION .................................................................................................................... 39

**JA139**

## TABLE OF AUTHORITIES

**Cases**

*A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135 (2d Cir. 2011)........................ 24, 25, 27, 32

*Accuracy in Media, Inc. v. Nat'l Transp. Safety Bd.*, No. Civ. A.03-00024 (CKK), 2006 WL 826070 (D.D.C. Mar. 29, 2006)..................................................................................... 6

*All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82 (2d Cir. 2006).................. 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................... 23, 26

*Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635 (2d Cir. 2005) ................................ 15

*Barrett v. United States*, 689 F.2d 324 (2d Cir. 1982)...................................................... 24, 30, 31

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................... 23

*Benedek v. PLC Santa Monica, LLC*, 129 Cal. Rptr. 2d 197 (Cal. Ct. App. 2002)....................... 16

*Blanco v. United States*, 775 F.2d 53 (2d Cir. 1985)...................................................... 36

*Brass v. Am. Firm Tech., Inc.*, 987 F.2d 142 (2d Cir. 1993) .......................................... 23

*Brownback v. King*, 592 U.S. 209 (2021)................................................................... 15

*Buttry v. Gen. Signal Corp.*, 68 F.3d 1488 (2d Cir. 1995).............................................. 35

*Cangemi v. United States*, 13 F.4th 115 (2d Cir. 2021)................................................. 15

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)........................................... 15, 18

*Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76 (2d Cir. 2005) ................... 21

*Cooke v. United States*, 918 F.3d 77 (2d Cir. 2019) ..................................................... 22

*Crawford v. Electric Boat Corp.*, 515 F. Supp. 2d 282 (D. Conn. 2007) .............................. 36, 37

*Dept. of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999)................................................... 36

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791 (2d Cir. 2014) ..................... 23, 24, 33, 35

*Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249 (1972)............................... 38

iv

*FDIC v. Meyer*, 510 U.S. 471 (1994) ...................................... 15

*Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982)................................. 37

*Frometa v. Mar-Can Transp. Co.*, 148 N.Y.S.3d 613 (N.Y. App. Div. 2021)............................ 21

*Frontera v. United States*, No. 05-CV-0423S, 2009 WL 909700 (W.D.N.Y. Mar. 31, 2009)..... 23

*Gabriel v. Cnty. of Herkimer*, 889 F. Supp. 2d 374 (N.D.N.Y. 2012)......................................... 21

*Garmon v. Cnty. of Rockland*, No. 10-cv-7724, 2013 WL 541380 (S.D.N.Y. Feb. 11, 2013)..... 20

*General Motors Corp. v. Super. Ct.*, 15 Cal. Rptr. 2d 622 (Cal. Ct. App. 1993) ......................... 17

*Global Minerals and Metals Corp. v. Holme*, 824 N.Y.S.2d 210 (N.Y. App. Div. 2006) ........... 17

*Gonzalez v. N.Y. City Housing Auth.*, 572 N.E.2d 598 (N.Y. 1991) ........................................... 19

*Grancio v. De Vecchio*, 572 F. Supp. 2d 299 (E.D.N.Y. 2008)............................................. 22, 29

*Haekal v. Refco, Inc.*, 198 F.3d 37 (2d Cir. 1999) ...................................................................... 33

*Harper v. Ercole*, 648 F.3d 132 (2d Cir. 2011) .......................................................................... 33

*Hernandez v. New York City Health & Hosps. Corp.*, 585 N.E.2d 822 (N.Y. 1991)............. 19, 21

*Hertz v. United States*, 560 F.3d 616 (6th Cir. 2009) ...................................................... 26, 27, 28

*Heslin v. Cnty. of Greene*, 923 N.E.2d 1111 (N.Y. 2010) .......................................................... 21

*In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, No. MDL 1448 (RWS), 2006 WL 1288298 (S.D.N.Y. May 9, 2006)............................................................................................ 38

*In re Air Crash Into Java Sea on Jan. 9, 2021*, No. 1:23-MD-3072, 2023 WL 5597824 (E.D. Va. Aug. 25, 2023) .............................................................................................................. 37

*In re Air Crash Off Long Island, N.Y., on July 17, 1996*, 209 F.3d 200 (2d Cir. 2000) ... 12, 37, 38

*In re Air Crash Off Point Mugu, Cal., on Jan. 30, 2000*, 145 F. Supp. 2d 1156 (N.D. Cal. 2001) ................................................................................................................................................. 38

*In re September 11 Litig.*, 760 F. Supp. 2d 433 (S.D.N.Y. 2011) ................................................ 19

*In Re: Air Crash*, 965 F. Supp. 5 (S.D.N.Y. 1997)........................................................ 10

*In Re: Air Crash*, No. 96-7986, 1998 WL 292333 (S.D.N.Y. June 2, 1998) ........................... 9, 12

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995)................... 37

*Joachim v. United States*, No. 22-cv-5719, 2023 WL 6292542 (E.D.N.Y. Sept. 27, 2023) ........ 19

*Keene Corp. v. United States*, 700 F.2d 836 (2d Cir. 1983) .......................................... 25

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ......................................... 33

*Koufakis v. Siglag*, 925 N.Y.S.2d 204 (N.Y. App. Div. 2011)....................................... 17

*Krick v. Raytheon Co.,* 695 F. Supp. 3d 202 (D. Mass. 2023)....................................... 26

*Lahr v. Nat'l Safety Trans. Bd.*, No. CV. 03-8023 AHM (AJWx), 2006 WL 2854314 (C.D. Cal.

   Oct. 4, 2006) ...................................................................................... 6

*Lahr v. Nat'l Trans. Safety Bd.*, 569 F.3d 964 (9th Cir. 2009) .................................... 3, 4

*Lahr v. Nat'l Transp. Safety Bd.*, 453 F. Supp. 2d 1153 (C.D. Cal. 2006), *aff'd in part, rev'd in

   part and remanded*, 569 F.3d 964 (9th Cir. 2009)....................................... 3, 4, 5, 6, 7

*Long Island Care Ctr., Inc. v. Goodman*, 26 N.Y.S.3d 595 (N.Y. App. Div. 2016).................... 21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................. 18

*Machado v. Gulf Oil, L.P.*, 146 N.Y.S.3d 66 (N.Y. App. Div. 2021) ................................. 21

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)........................................ 18, 36

*Malik v. Meissner*, 82 F.3d 560 (2d Cir. 1996)................................................... 36

*Matthias v. United States*, 475 F. Supp. 3d 125 (E.D.N.Y. 2020)................................ 15, 19, 20

*Mayes v. United States*, 790 F. App'x 338 (2d Cir. 2020)........................................... 22

*Mingo v. United States*, 274 F. Supp. 2d 336 (E.D.N.Y. 2003)...................................... 27

*Paige v. Police Dept. of Schenectady*, 264 F.3d 197 (2d Cir.2001) ................................ 32

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002)...................................... 24, 30, 32

*Picarella v. United States*, No. 22-cv-4983, 2024 WL 1435744 (E.D.N.Y. Apr. 3, 2024).......... 29

*Pipitone v. City of New York*, 57 F. Supp. 3d 173 (E.D.N.Y. 2014)............................................. 25

*Rademacher v. United States*, 3:19-cv-00157 (N.D. Miss. Mar. 19, 2020)........................... 28, 29

*Ressler v. United States*, No. 11-cv-02253, 2012 WL 4328662 (D. Colo. Sept. 20, 2012).......... 28

*Richards v. United States*, 369 U.S. 1 (1962) ............................................................................. 19

*Roque v. United States*, 676 F. Supp. 2d 36 (D. Conn. 2009) ....................................................... 24

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)........................................................... 23

*Russo v. City of Hartford*, 184 F. Supp. 2d 169 (D. Conn. 2002)................................................. 15

*S.E.C. v. Wyly*, 788 F. Supp. 2d 92 (S.D.N.Y. 2011)....................................................... 23, 30, 33

*SCA Hygiene Prod. Aktibolag v. First Quality Baby Prod., LLC*, 580 U.S. 328 (2017).............. 35

*Sephton v. FBI*, 365 F. Supp. 2d 91 (D. Mass. 2005), *aff'd*, 442 F.3d 27 (1st Cir. 2006) .............. 5

*Shelley v. S. Shore Healthcare*, 999 N.Y.S.2d 103 (N.Y. App. Div. 2014)................................... 21

*Siswanto v. Airbus Americas, Inc.*, No. 15-CV-5486, 2016 WL 7178458 (N.D. Ill. Dec. 9, 2016)

.................................................................................................................................................. 37

*Smith v. McGinnis*, 208 F.3d 13 (2d Cir. 2000)............................................................................ 32

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) ....................................... 23

*Stalcup v. CIA*, 768 F.3d 65 (1st Cir. 2014)................................................................................ 7, 8

*Stalcup v. CIA*, No. CIV. 11-11250-FDS, 2013 WL 4784249 (D. Mass. Sept. 5, 2013), *aff'd*, 768

F.3d 64 (1st Cir. 2014)........................................................................................................ 3, 4, 7

*Stalcup v. Dep't of Def.*, No. 13-11967-LTS, 2015 WL 5545059 (D. Mass. Sept. 18, 2015).... 7, 8

*Stone v. National Bank and Trust Co.*, 591 N.Y.S.2d 609 (N.Y. App. Div. 1992) ....................... 16

*Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005)........................................................ 37

*Tamayo v. Ford Motor Titling Tr.*, 726 N.Y.S.2d 709 (N.Y. App. Div. 2001) ............................. 17

*Torres v. United States*, 612 F. App'x 37 (2d Cir. 2015) ............................................................. 32

*United States v. Ibarra*, 502 U.S. 1 (1991) .................................................................................. 33

*United States v. Kubrick,* 444 U.S. 111 (1979)............................................................................. 26

*United States v. Kwai Fun Wong*, 575 U.S. 402 (2015) ............................................................... 22

*United States v. Mitchell*, 445 U.S. 535 (1980) ............................................................................ 14

*United States v. Sanders*, 17 F. Supp. 2d 141 (E.D.N.Y. 1998) ...................................................... 5

*United States v. Strock*, 982 F.3d 51 (2d Cir. 2020) ..................................................................... 23

*Valdez ex rel. Donely v. United States*, 518 F.3d 173 (2d Cir. 2008)............................... 24, 27, 32

*Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004) ...................................... 32

*Vidro v. United States*, 720 F.3d 148 (2d Cir. 2013) .................................................................... 18

*Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115, 2022 WL 3226352 (N.D.N.Y. Aug. 10,

   2022) ........................................................................................................................................... 19

*Wells v. Shearson Lehman/Am. Exp., Inc.*, 526 N.E.2d 8 (N.Y. 1988)........................................... 17

*West v. United States*, No. 00-cv-9433, 2003 WL 164278 (S.D.N.Y. Jan. 20, 2003) .................. 18

*Williams v. United States*, 711 F.2d 893 (9th Cir. 1983)............................................................... 39

**Statutes**

28 U.S.C. § 1346(b) ....................................................................................................................... 15

28 U.S.C. § 1346(b)(1) .................................................................................................................. 19

28 U.S.C. § 2401(b) ................................................................................................................. 22, 25

28 U.S.C. § 2674......................................................................................................................  15, 36

28 U.S.C. § 2675(a) ....................................................................................................................... 21

28 U.S.C. § 2680(d) ................................................................................................................. 36, 37

46 U.S.C. § 30905............................................................................................................................. 2

46 U.S.C. § 31104.................................................................................................. 36

46 U.S.C. §§ 30301–30308.................................................................................. 11

46 U.S.C. §§ 30901–30918.................................................................................. 36

46 U.S.C. §§ 31101–30013.................................................................................. 36

Cal. Civ. Proc. Code § 877(a).............................................................................. 17

N.Y. Est. Powers & Trusts § 1–2.13.................................................................... 19

N.Y. Est. Powers & Trusts § 5–4.1................................................................. 19, 20

N.Y. Est. Powers & Trusts § 5–4.4...................................................................... 20

N.Y. Gen. Obligations Law § 15-108.................................................................. 16

**Rules**

Fed. R. Civ. P. 12(b)(1)....................................................................................... 36

Fed. R. Civ. P. 12(h)(3)....................................................................................... 36

Fed. R. Civ. P. 8(c)(1).......................................................................................... 35

**Treatises**

28A N.Y. Prac., Contract Law § 26:8.................................................................. 17

**Constitutional Provisions**

U.S. Const. art. I, § 8.......................................................................................... 38

**Other Authorities**

The Federalist No. 11........................................................................................... 38

The Federalist No. 24........................................................................................... 38

**JA145**

<u>**TABLE OF EXHIBITS**</u>

| Exhibit No. | Description |
|:---:|---|
| 1 | Minute entry granting plaintiff's motion for attorneys' fees in *Lahr v. Nat'l Transp. Safety Bd.*, No. CV 03-8023 AHM (RZx) (C.D. Cal. Mar. 19, 2007) |
| 2 | Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment in *Stalcup v. CIA*, No. 1:11-cv-11250 (D. Mass. Jun. 12, 2013) |
| 3 | *In re: Air Crash off Long Island, N.Y., on July 17, 1996*, MDL No. 1161, Transfer Order (J.P.M.L. Feb. 19, 1997) |
| 4 | Combined MDL Docket Entries, *In re: Air Crash TWA et al.*, No. 96-cv-7986 (S.D.N.Y. filed Oct. 24, 1996), excerpted |
| 5 | *In re: Estates of Donald E. Gough*, No. CV96-05099, Order Settling Final Account and for Final Distribution of Estate of Donald E. Gough (2d Judicial Dist. Ct. for the State of Nevada in and for the County of Washoe, Aug. 26, 1999) |
| 6 | *In re: Oliver Krick, Deceased*, No. CV196-513P, Probate Excerpts for Estate of Oliver Krick (Cir. Ct. of St. Charles County, Mo., Probate Division filed Oct. 1, 1996) |
| 7 | *In re: Estate of Ralph G. Kevorkian*, No. A184515, Probate Excerpts for Estate of Ralph G. Kevorkian (Superior Ct. of Cal., Orange County, filed Sept. 25, 1996) |
| 8 | *In re: O. Lamar Allen, Deceased*, No. 96/1072/01, Probate Excerpts for Estates of O. Lamar Allen and Ashton Allen (Probate Ct. of Cobb County Ga. filed Aug. 7, 1996) |
| 9 | Combined Releases of All Claims Arising out of the Loss of TWA Flight 800 |
| 10 | Cover Letter Enclosing FTCA Administrative Claims on Behalf of TWA 800 Families and Claim Excerpts (received October 4, 2021) |
| 11 | Declaration of Hal H. Dronberger executed March 13, 2025 |
| 12 | *Krick v. Raytheon Co.*, No. 22-cv-11032, Motion Hearing Transcript (D. Mass. Aug. 30, 2023) |
| 13 | *Rademacher v. United States*, No. 3:19-cv-00157, slip op. (N.D. Miss. Mar. 19, 2020) |

**JA146**

## INTRODUCTION

This wrongful death action brought under the Federal Tort Claims Act (FTCA) arises from the crash of Trans World Airlines Flight 800 (TWA Flight 800) on July 17, 1996. This case constitutes the second time a tort lawsuit was brought on behalf of individuals who died on board that tragic flight. The first case was filed in 1996 and consolidated for pretrial purposes in multi-district litigation (MDL) before Judge Robert W. Sweet in the Southern District of New York (SDNY). *See In re Air Crash off Long Island*, No. 96-cv-7986, MDL 1161. All claims brought in the MDL, including the claims of the estates in this case, settled. In settling, the personal representatives, decedents' family members, and their counsel signed general releases accepting money in exchange for releasing all causes of action, past, present, or future, against all entities who may be liable for the loss of TWA Flight 800, whether known or unknown, and waiving their rights to bring a future lawsuit even if subsequent facts were discovered. The releases bar the present action.

Any analysis can stop with the releases; however, the Court also lacks jurisdiction to hear this case because the purported personal representatives of the decedents' estates lack standing. Plaintiffs allege in their Complaint that Wanda Kemp, Douglas Kevorkian, Eileen Zahrioudakis, and Ronald Krick are the court-appointed personal representatives of open estates.[1] Such allegations are inaccurate. Ms. Kemp, Mr. Kevorkian and Ms. Zahrioudakis were never appointed by any court to act as personal representatives. Only Mr. Krick was appointed to act in such a capacity, but that estate was closed in 2001, and with the closure and the settlement with Boeing, his appointment ended. Prior to filing this action, the estate of Oliver Krick was not reopened and no one was appointed as a personal representative. In addition, Christopher Krick

---

[1] For brevity, the Second Amended Complaint will be referred to as the Complaint throughout the brief since there were no amendments material to this motion.

**JA147**

never submitted an administrative claim prior to filing this lawsuit, so his failure to exhaust administrative remedies divests the Court of subject matter jurisdiction over his FTCA claim.

Assuming the Court has subject matter jurisdiction, which the United States denies, the claims are untimely because the two-year period to file an administrative claim expired a long time ago. At the latest, Plaintiffs' claims accrued by the end of 1996 when the missile theory, a.k.a. "errant missile test" or "friendly fire" theories, with its potential connection to the Navy, was a very public subject in the media. The errant missile test theory was a subject of the MDL and the impetus behind numerous Freedom of Information Act (FOIA) lawsuits and a related criminal case. It has also been the subject of reams of media reports, and was analyzed in depth in government reports. Despite the very public discussion of the errant missile test decades ago, Plaintiffs waited to file administrative claims until October 4, 2021, 26 years after the accident. Plaintiffs plead no facts that justify the delay in accrual of the cause of action or provide a basis for tolling the statute of limitations.

Lastly, the FTCA does not waive the United States' sovereign immunity for admiralty actions like this one. The facts pleaded in the Complaint arise exclusively under the Court's admiralty jurisdiction making the FTCA inapplicable. Absent the assertion of an applicable waiver of sovereign immunity, the Complaint must be dismissed. Even if Plaintiffs attempted to refile this action under the Suits in Admiralty Act or the Public Vessels Act, their suit would be barred by 46 U.S.C. § 30905, because the cause of action accrued more than two years before they filed suit on June 28, 2022. Any refiling would thus be futile.

**FACTUAL BACKGROUND**

I.      **THE GOVERNMENT INVESTIGATION**

On July 17, 1996, a Boeing 747 operated as TWA Flight 800 exploded shortly after takeoff from New York's John F. Kennedy International Airport. ECF No. 33 ¶¶ 2, 34, 36-37.

2

On board were 230 passengers and crew en route to Paris, France, all of whom died. *See id.* ¶ 2; *see also Lahr v. Nat'l Trans. Safety Bd.*, 569 F.3d 964, 969 (9th Cir. 2009). The National Transportation Safety Board (NTSB) and the Federal Bureau of Investigation (FBI) immediately launched an inquiry. ECF 33 ¶¶ 38-39; *see also Stalcup v. CIA*, No. CIV. 11-11250-FDS, 2013 WL 4784249, at *1 (D. Mass. Sept. 5, 2013), *aff'd*, 768 F.3d 64 (1st Cir. 2014). The NTSB's initial investigation focused on three possible causes: bomb, *missile*, or mechanical failure; the FBI was involved because of potential criminal activity. *Stalcup*, 2013 WL 4784249, at *1; *see also Lahr*, 569 F.3d at 969.

As part of the investigation, the FBI spoke with 244 eyewitnesses. *Stalcup*, 2013 WL 4784249, at *1. These interviews were documented, *id.*, and eventually published on the NTSB's public docket on September 1, 2000.[2] Some eyewitnesses reported seeing a "streak of light" rising up to the plane prior to the explosion, which led to the theory that a missile shot it down. *Id.*; *see also* ECF 33 ¶¶ 41-43. Because of these reports, the FBI requested the assistance of the Central Intelligence Agency (CIA) to determine whether the observations supported a theory that a missile caused the crash. *Stalcup*, 2013 WL 4784249, at *1.

The CIA investigated and prepared an animation explaining its conclusions, which aired, in its entirety, on CNN on November 17, 1997. *Lahr v. Nat'l Transp. Safety Bd.*, 453 F. Supp. 2d 1153, 1163 n.5 (C.D. Cal. 2006), *aff'd in part, rev'd in part and remanded*, 569 F.3d 964 (9th Cir. 2009); *see also* ECF 33 ¶¶ 47-49. The CIA concluded that what eyewitnesses perceived as a flare or streak of light was actually the aircraft in the process of crippled flight following an initial internal explosion. *Lahr*, 569 F.3d at 970. The CIA concluded that the explosion caused

---

[2] Nat'l Transp. Safety Bd., Public Docket for DCA96MA070, https://data.ntsb.gov/Docket/?NTSBNumber=DCA96MA070

**JA149**

the front portion to separate from the aft majority of the plane. *Id.* The loss of mass lightened the weight on the engines, and propelled the already burning aircraft upwards. *Id.* The plane later erupted into a "fuel-fed fireball." *Id.*; *see also Stalcup*, 2013 WL 4784249, at *1. The CIA animation explicitly stated that what the eyewitnesses saw was "*Not A Missile*." ECF 33 ¶ 49.

The government investigation continued through NTSB public hearings in December 1997 and August 2000. *Lahr*, 453 F. Supp. 2d at 1162. The latter coincided with the NTSB's release of its final report. ECF 45-1. The NTSB concluded that the explosion was caused by the ignition of flammable vapors within the plane's center fuel tank. ECF 33 ¶ 50. The "Factual Information" section of the report makes 97 references to the word "missile" or "missiles." ECF 45-1 at 1–255. The report, and the almost 3,000 documents from the investigation are, and have been, publicly available, most since at least September 1, 2000.[3] *Lahr*, 569 F.3d at 971. This set of publicly-available evidence includes FBI summaries from eyewitness accounts. *Id.* The NTSB report includes multiple sections dedicated to recording and evaluating eyewitness statements, along with missile related information, and a missile visibility study. ECF 45-1 at 118-19, 237-54. Some of the witnesses whose statements were included have publicly discussed how the CIA and NTSB conclusions do not accord with their memories. *Lahr*, 569 F.3d at 976.

## II.    UNOFFICIAL INVESTIGATIONS AND EARLY FREEDOM OF INFORMATION ACT CASES ALLEGED A MILITARY MISSILE DOWNED TWA FLIGHT 800 AND THE GOVERNMENT COVERED IT UP.

The Ninth Circuit, in an opinion from an early FOIA case, stated that the explosion sparked national and international media attention commensurate with such a dramatic and tragic event. *Lahr*, 569 F.3d at 976-77. The district court that heard the FOIA case mused, "Of course

---

[3] Nat'l Transp. Safety Bd., Public Docket for DCA96MA070,
https://data.ntsb.gov/Docket/?NTSBNumber=DCA96MA070

4

there was an official investigation. And of course there was an official explanation. And of course there was an ensuing torrent of critics and skeptics who challenged the *bona fides* of the investigation and rejected the explanation." *Lahr*, 453 F. Supp. 2d at 1161. Along with the media coverage was an ever-increasing body of lawsuits and opinions, publicly discussing theories about the explosion.

The first reported opinion discussing the activities of individuals outside of the government attempting to "learn the truth" about the cause of the explosion stems from a criminal case in the Eastern District of New York. *See United States v. Sanders*, 17 F. Supp. 2d 141 (E.D.N.Y. 1998). In that case two "journalists" were indicted for conspiring to remove parts of TWA Flight 800 from an evidence hangar during the government investigation. *Id*. at 143. From October 1996 through July 1997 the criminal defendants sought to obtain samples of a reddish-brown material from seat cushions which they believed would prove that "the *government was covering up* the fact that *the flight was downed by a Navy missile*." *Id*. at 147 (emphasis added). Those assertions were published in April 1997 in a book by James Sanders, one of the criminal defendants, called *The Downing of TWA Flight 800*. *Id*.

In September 1998, Graeme Sephton, an independent investigator, sent a FOIA request to the FBI for information related to foreign objects removed from the victim's bodies. *Sephton v. FBI*, 365 F. Supp. 2d 91, 93 (D. Mass. 2005), *aff'd*, 442 F.3d 27 (1st Cir. 2006). Sephton was part of a group called the Flight 800 Independent Research Organization whose purpose was to conduct an "independent investigation into the crash." *Id*. at 92. Specifically, he was looking for information related to foreign bodies found in the victims that were of an "unknown origin," *i.e.*, missile fragments. *Id*.

In May 2002, Accuracy in Media submitted FOIA requests to the NTSB in an attempt to find bad faith on the government's part in the investigation. *Accuracy in Media, Inc. v. Nat'l Transp. Safety Bd.*, No. Civ. A.03-00024 (CKK), 2006 WL 826070, at *6 (D.D.C. Mar. 29, 2006). In court filings, the FOIA plaintiff was supported by a series of affiants, some of whom were individuals associated with the government's investigation, along with eyewitnesses, who expressed the "collective opinion that there was an attempt to cover up the causes of the accident." *Id*. at *10.

In October 2003, Ray Lahr, a former airline pilot, filed over one hundred FOIA requests with the NTSB and CIA searching for information related to the animations aired on CNN in 1997. *Lahr*, 453 F. Supp. 2d at 1163. Lahr's filings expressed his belief that TWA Flight 800 was shot down by "an errant missile launched by the United States military." *Id*. at 1164; *see* ECF 33 ¶¶ 4, 54 (referencing an "errant missile"). Further, Lahr contended that the investigation that followed was a "massive cover-up." *Lahr v. Nat'l Safety Trans. Bd.*, No. CV. 03-8023 AHM (AJWx), 2006 WL 2854314, at *2 (C.D. Cal. Oct. 4, 2006). The district court's minute entry on Lahr's fee petition noted that, by March 2007, TWA Flight 800 had been the subject of nine books and over 2,000 newspaper articles. Ex. 1, *Lahr v. Nat'l Transp. Safety Bd.*, No. CV 03-8023 AHM (RZx) (C.D. Cal. Mar. 19, 2007), slip op. at 3. The court further noted that a Google search yielded over 147,000 webpage hits, and that Lahr intended on publishing the documents from his "investigation" on public websites. *Id*.

Lahr's lawsuit contains an itemization of the evidence he believed supported the missile and government cover-up theories: 1) evidence was withheld from the government probe; 2) the government altered evidence; 3) evidence was removed from the storage facility; 4) the government misrepresented radar data; 5) radar data and the flight recorder are missing; 6)

6

underwater video of the evidence recovery has been altered; 7) the government concealed missile debris; 8) the NTSB did not permit eyewitness testimony at the public hearing; 9) eyewitnesses disagree with the CIA animation, and; 10) the FBI took over the investigation from the NTSB which should have been the proper lead agency. *Compare Lahr*, 453 F. Supp. 2d at 1164-66, *with* ECF 33 ¶¶ 39-40 (FBI took over the investigation from NTSB), ¶ 42 (eyewitnesses say they saw something arcing towards aircraft), ¶ 47 (eyewitnesses disagree with CIA animation), ¶¶ 84-85 (government radar data shows something else), ¶¶ 91-92 (radar data confiscated by FBI). Dr. Stalcup, whom the Complaint extensively cites as the source of new evidence justifying this untimely lawsuit, submitted an affidavit in support of Lahr's litigation. *Lahr*, 453 F. Supp. 2d at 1164 n.6, 1166 n.11.

### III.    AS A FOIA PLAINTIFF IN HIS OWN RIGHT, DR. STALCUP ALSO ALLEGED THE GOVERNMENT COVERED UP A MISSILE STRIKE.

In March 2010, Dr. Stalcup submitted a series of FOIA requests to the CIA, the Department of Defense (DoD), the Office of the Secretary of Defense, and the Missile Defense Agency. *Stalcup*, 2013 WL 4784249, at *2; *Stalcup v. Dep't of Def.*, No. 13-11967-LTS, 2015 WL 5545059, at *1-2 (D. Mass. Sept. 18, 2015). In the FOIA cases that resulted, Dr. Stalcup, like Plaintiffs here, argued that the government, and specifically the CIA, NTSB, and FBI, were engaged in a cover-up and perpetrating a fraud on the public. *Compare Stalcup*, 2013 WL 4784249, at *5, *with* ECF 33 ¶¶ 39, 47, 51.

The First Circuit, in the appeal of the CIA case, noted that Dr. Stalcup's arguments were "nearly identical" to the ones asserted by Lahr in the Ninth Circuit years earlier. *Stalcup v. CIA*, 768 F.3d 65, 69 (1st Cir. 2014). The First Circuit also noted that Dr. Stalcup was silent on how the documents requested "would shed any new light" on the alleged cover-up and—like

**JA153**

Plaintiffs here—referenced an eyewitness who felt intimidated by investigators. *Id.* at 73; *see also* ECF 33 ¶ 41 (witness allegedly threatened by FBI).

Dr. Stalcup's 2013 opposition to the CIA's motion for summary judgment demonstrates his long-held conviction—on which Plaintiffs now rely—that the government covered up evidence of a missile strike. Ex. 2 [Pl.'s Opp'n Mot. Summ. J., Civ. No. 1:11-cv-11250]. Dr. Stalcup claimed that he was already in the possession of enough information to produce a documentary concerning the explosion and the federal investigation that followed. *Id.* ¶ 1. Then he proceeded to lay out the breadth of his investigation which included reviewing the FBI interview summaries from the NTSB docket. *Id.* ¶ 5. His opposition continued with a lengthy explanation of the alleged conspiracy between the FBI and CIA in creating the animation that aired in 1997. *Id.* ¶¶ 7-12. It repeated statements and affidavits from eyewitnesses, including several with military backgrounds, regarding their observations of something rising up to meet TWA Flight 800. *Id.* ¶¶ 19, 23-27, 29-30, 32-35. These eyewitnesses included Captain Chris Baur and Major Frederick Meyer, both of whom Plaintiffs' Complaint explicitly references. *See id.* ¶¶ 19, 35. In the later DoD case, Dr. Stalcup asserted that he had evidence regarding missile tests occurring off the East Coast. *Stalcup*, 2015 WL 5545059, at *4; *see* ECF 33 ¶ 32.

In their Complaint, Plaintiffs allege the following recently discovered evidence justifies their failure to timely file their administrative claim within two years of the accident in 1996: 1) operational testing of a radar system was conducted in May 1996 which included firing a missile with a live warhead; 2) that a dozen missile tests were conducted off the East Coast in an unidentified location, during a poorly defined time period which appears to include the late 1990s; 3) FBI records discussing an original Navy radar tape existed; 4) a conversation with an unidentified alleged FBI official about aerial target drones operating in an unidentified area near

TWA Flight 800; 5) the FBI took custody of radar tapes from the Navy; and 6) the purported existence of another radar tape that showed details of the explosion. ECF 33 ¶¶ 70, 82, 84, 86, 87, 89-92. As the above-stated facts demonstrate, and the below argument will support, none of this is actually "newly discovered" evidence; but rather additional refinement of a theory that already existed in 1996 and that Dr. Stalcup and others advanced in FOIA cases starting as early as the late 1990s and continuing through to the present.

## IV.    PRIOR MULTI-DISTRICT TORT LITIGATION

Multiple plaintiffs filed lawsuits in numerous federal district and state courts shortly after TWA Flight 800 crashed. Each of the remaining estates in the present litigation filed its lawsuit by the two-year anniversary of the explosion. The defendants in those cases removed all state court actions to federal court, after which Boeing asked the Judicial Panel for Multidistrict Litigation to centralize the litigation in a common forum. The MDL Panel ultimately assigned all cases arising out of the crash to the Southern District of New York before Judge Robert W. Sweet. Ex. 3, Transfer Order, MDL 1161, No. 15, Feb. 19, 1997. As of June 2, 1998, 145 cases were consolidated in the MDL. *In Re: Air Crash*, No. 96-7986, 1998 WL 292333, at *1 (S.D.N.Y. June 2, 1998). With respect to the claims of the estates in the present action, the MDL Panel transferred the cases of four of the remaining estates from other districts to SDNY.[4] Donald Gough's estate initially filed its action in SDNY, so it did not need to be transferred.[5]

---

[4] The remaining Plaintiffs in the present action bring claims on behalf of five decedents: Ashton Allen, O. Lamar Allen, Donald Gough, Ralph Kevorkian, and Oliver Krick. Transferred cases on the MDL docket were Doc. 48 (transferring Allen action from N.D. Ga., July 15, 1997); Doc. 62 (transferring Kevorkian action from C.D. Cal., Nov. 3, 1997); Doc. 86 (transferring Allen/Grogan action from N.D. Ga., Aug. 12, 1998); Doc. 91 (transferring Krick action from E.D. Mo., Sept. 15, 1998); see Ex. 4, MDL Docket, for docket entries.

[5] The SDNY case was No. 98-cv-1524 (Gough).

9

## JA155

Before filing the actions that were consolidated before Judge Sweet, the decedents' representatives opened estates in their relevant local jurisdictions, which included:

- Washoe County, Nevada, for the estate of Donald Gough;
- St. Charles County, Missouri, for the estate of Oliver Krick;
- Orange County, California, for the estate of Ralph Kevorkian; and
- Cobb County, Georgia, for the estates of Otis Lamar Allen and Ashton Lamar Allen.

Ex. 5-8 [Estate Documents]. The probate courts in the various states appointed the following personal representatives to administer the estates:

- Erik Gough for the estate of Donald Gough;
- Ronald and Margaret Krick for the estate of Oliver Krick;
- Christine Enlow for the estate of Ralph Kevorkian; and
- Betty Anne Allen for the estates of Otis Lamar Allen and Ashton Lamar Allen.

The plaintiffs sued multiple defendants in the centralized MDL action, including Boeing and TWA. On May 7, 1997, Judge Sweet entered an order setting up the master file, appointing the plaintiffs' steering committee, and otherwise establishing the rules for the litigation. Ex. 4, Pretrial Order # 1, *In Re: Air Crash*, No. 96-7986, MDL No. 1161 (S.D.N.Y. May 7, 1997); *see also In Re: Air Crash*, 965 F. Supp. 5 (S.D.N.Y. 1997) (describing proceedings). The court ordered both liability and damages discovery to commence. 965 F. Supp. at 8.

The plaintiffs, via well-known aviation counsel Lee Kreindler, chair of the plaintiffs' committee, told Judge Sweet on May 21, 1997, that they had a schedule for defendants' document production. Ex. 4 [Tr., May 21, 1997] at 8. And by September 11, 1997, the plaintiffs had received 15 boxes of documents from Boeing and 5,000 pages from TWA. Ex. 4 [Tr., Sept. 11, 1997] at 4. The plaintiffs were well aware of the "missile theory" at this time and served discovery on defendants relating to the missile theory. *E.g.*, Ex. 4, MDL Doc. 64.

By June 1999, the plaintiffs had taken numerous depositions, received over 130,000 pages of documents from defendants, and consulted with experts. Ex. 4, MDL Doc. 247. The

**JA156**

plaintiffs' counsel informed the court they had "uncovered evidence to establish that Boeing's conduct was reckless and may provide a basis for punitive damages." *Id*. ¶ 2. The plaintiffs were not relying solely on any investigation by federal agencies; rather "Plaintiffs' Committee has also conducted its own investigation by, among other things, consulting with experts and speaking to numerous witnesses." *Id*. ¶ 8. The plaintiffs' counsel submitted a lengthy explanation of their findings that an explosion in the center fuel tank caused the accident, and that Boeing's design was flawed. *Id*. ¶ 9.

As of December 9, 1999, the parties continued to discuss the missile theory, because Boeing's counsel thought a hole in the wall of the center fuel tank suggested that something had pierced the tank going from outside in. Ex. 4 [Tr., Dec. 9, 1999] at 6, 9. The plaintiffs had received over 200,000 pages of documents at that time and had taken many depositions. *Id*. at 7-8. Plaintiffs sought the deposition of Boeing's CEO about public comments he made about the missile theory. *Id*. at 10. The plaintiffs' counsel, whom the judge called "the cream of the collision bar," *id*. at 3, spoke about the expense of conducting discovery into the missile theory. *Id*. at 11. Judge Sweet and the plaintiffs' attorneys stated that whether an "external cause" existed for the crash was the central issue of discovery. *Id*. at 26, 28, 30. Judge Sweet referenced Pierre Salinger at a hearing in a discussion about expert testimony. *Id*. at 31. (Pierre Salinger, former Kennedy Administration Press Secretary, famously claimed, in 1996, to have proof that the U.S. Navy shot down TWA Flight 800 with a missile). *Id*. at 31.

One issue central to the case was whether the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 30301–30308, applied to limit the scope of beneficiaries who may recover for the decedents' deaths, and the type of damages available. The parties briefed the issue before Judge Sweet, who ruled that DOHSA did not apply to the crash, *In re Air Crash Off Long Island, N.Y.,*

11

*on July 17, 1996*, Nos. 96-cv-7986, MDL 1161, 1998 WL 292333 (S.D.N.Y. June 2, 1998). On March 29, 2000, the Second Circuit affirmed the district court's holding in a 2-1 decision. *In re Air Crash Off Long Island, N.Y., on July 17, 1996*, 209 F.3d 200 (2d Cir. 2000). About a dozen cases settled before the Second Circuit affirmed this ruling. After the circuit court's ruling, the remaining cases settled. The last docket entry in the MDL was on March 30, 2005.

## V.    PRIOR SETTLEMENT RELEASES

With regard to this case, the remaining decedents' families, represented by counsel, settled their wrongful death actions between April 29, 2000 and October 17, 2001. All the settlements were filed in the MDL.[6] Six of the nine individual Plaintiffs still in this case, represented by counsel at that time, also signed general releases. *See* Ex. 9 [Releases]. The only individual Plaintiffs in this case that did not sign a release twenty-five years ago were Wanda Kemp, Michael Deteresa, and Craig Gaetke. Other family members signed the releases for the decedents on whose behalf Kemp and Deteresa now bring suit. In the case of Mr. Gaetke, his attorney signed a release in the attorney's representative capacity. *See* Ex. 9 at BOE0016.

In signing the releases,[7] Plaintiffs explicitly acknowledged:

> 8. *Releasors enter into this Release contemplating the possibility that facts may be subsequently discovered that could support claims as yet unasserted against Releasees* for compensatory, consequential and/or punitive damages. . . . Releasors intend to discharge Releasees from all liability for all losses, injuries or damages arising out of the injury to or death of Decedent, both those now known and those that may be subsequently discovered. *This Release shall not be subject to any claim of mistake of fact or law by Releasors.* Releasors also fully

---

[6] MDL Docket Stipulations and Orders of dismissal after settlements: ECF 418, 420, 421, Allen (Jan. 29, 2002); ECF 290, Gaetke (Nov. 30, 2000); ECF 315, Gough (Feb. 2, 2001); ECF 261, Kevorkian (May 25, 2000); ECF 345, Krick (May 11, 2001); see Ex. 4, MDL docket for docket entries.

[7] The substantive language in the releases is nearly identical. For purposes of this motion, the United States will cite the language in the Ashton Lamar Allen Release, Ex. 9 at BOE0059-66. However, to the extent that any language is different in other releases, that language will be specifically quoted.

> understand and acknowledge that facts concerning their claims may be found hereafter to be other than or different from the facts they now believe to be true. *Releasors expressly accept and assume the risk of any such possible differences in facts and agree that this Release shall remain in full effect notwithstanding any such difference in facts.* (emphasis added).

Ex. 9 at BOE0061-62.

The releases define the term "Releasees" in two locations within the five-page agreement in the broadest possible sense to include, first: "all other persons and entities not specifically identified who are or may be liable to Releasors in whole or in part for any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800." *Id.* at BOE0059. Secondly:

> 5. Releasors intend this Release to constitute a full release and discharge of any and all claims that they may have arising out of the injury to and death of Decedent. *Releasors state that they intend to release fully all individuals, entities or corporations, whether specifically named or not, that might be liable for damages arising out of the injury or death of Decedent.* Releasors agree that they will not, directly or indirectly, make or cause to be made any further action against any person (including any individual, corporation or other entity) for losses, damages or injuries arising out of the injury to or death of Decedent. (emphasis added).

*Id.* at BOE0050 ¶ 5. In the case of the estate of Ralph Kevorkian, the release specifically defines releasees to include "any and all agencies, departments, and subdivisions of the GOVERNMENT OF THE UNITED STATES OF AMERICA (including the Federal Aviation Administration and the Department of Defense)." Ex. 9 at BOE0001.

The claims released include all potential causes of action arising from the crash of TWA Flight 800, and not just those advanced by the MDL plaintiffs:

> 3. *[R]eleasors release and forever discharge any and all actions . . . in law, admiralty or equity, which against Releasees the Releasors ever had, now have or hereafter can, shall or may have, for, upon, by reason of, arising out of, or in any way related to the Event . . . .* This Release also expressly extends to and includes, but is not limited to, each and every claim or cause of action that could have been asserted for all past and future economic damages, noneconomic damages and

13

awards recoverable or potentially recoverable from any person . . . . (emphasis added).

Ex. 9 at BOE0060 ¶ 3.

Except for Ralph Kevorkian, each release also includes a choice of law provision selecting New York law. *Id*. at BOE0063 ¶ 16. Kevorkian's release is governed by California law. *Id.* at BOE0005 ¶ 16. The releases were executed by the personal representatives and decedent's beneficiaries, before notaries, and signed by counsel. *See* Ex. 9 at BOE0065-66. Releasors "expressly confirm that they have consulted with their attorneys concerning this release and have been fully advised with respect to their rights and obligations hereunder." *Id*. at BOE0063-64 ¶ 18.

## VI.    PROCEDURAL POSTURE OF THIS CASE

Before filing their lawsuit against the United States, all but one Plaintiff submitted administrative claims to the Navy on October 4, 2021. Ex. 10 [Admin. Claims]. The administrative claims were signed (illegibly) by the same person. *Id.* The phone number associated with the signature is the same as the phone number in the signature block for Plaintiffs' former counsel Todd Walburg. *See* ECF 33 at 38. Every administrative claim lists the person on whose behalf it is filed as both an individual and on behalf of an estate. *Id*. No administrative claim was filed on behalf of Christopher Krick prior to initiating this lawsuit. *See* Ex. 11 [Navy Decl.] ¶ 4.

## ARGUMENT

## I.    THE FTCA DOES NOT WAIVE SOVEREIGN IMMUNITY FOR PLAINTIFFS' CLAIMS BECAUSE A SIMILARLY SITUATED PRIVATE PARTY THAT WAS RELEASED CANNOT BE LIABLE UNDER LIKE CIRCUMSTANCES.

The United States, as sovereign, is immune from suit unless it explicitly consents. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see also Cangemi v. United States*, 13 F.4th 115,

130 (2d Cir. 2021). Under the FTCA the United States has waived its sovereign immunity only to the extent that a similarly-situated private person could be liable under local law. 28 U.S.C. §§ 1346(b), 2674; *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (courts have jurisdiction only if claims are actionable under § 1346(b)). A claim is actionable if it alleges six elements: 1) it is against the United States, 2) for money damages, 3) for personal injury or death, 4) caused by the negligent act of a government employee, 5) acting within the scope of employment, and 6) under circumstances where a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b); *Brownback v. King*, 592 U.S. 209, 212 (2021). The elements are jurisdictional, and a plaintiff's failure to establish them deprives a court of subject-matter jurisdiction. *Brownback*, 592 U.S. at 217.

It is well established that a plaintiff bears the burden of demonstrating that a court has subject matter jurisdiction and must do so by a preponderance of the evidence. *Matthias v. United States*, 475 F. Supp. 3d 125, 133 (E.D.N.Y. 2020) (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). A defendant may challenge subject matter jurisdiction under Rule 12(b)(1) with either a facial or factual attack. *Russo v. City of Hartford*, 184 F. Supp. 2d 169, 178 (D. Conn. 2002). A facial attack merely challenges the sufficiency of the pleadings, *id.*, meaning that a court's review is limited to the complaint and exhibits attached thereto. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). In a factual attack, such as is raised in this motion, a defendant is permitted to include extrinsic evidence beyond the pleadings. *Id.* at 57. In that circumstance, no presumptive truthfulness applies to a plaintiff's allegations and the court must weigh all controverted facts. *Id.*

Plaintiffs have failed to plausibly allege or otherwise establish that a private person would be liable to them in accordance with the law of the place where the act or omission

15

occurred because the representatives for these same decedents, and in certain cases the Plaintiffs themselves, signed releases waiving their rights to bring any future lawsuit against any potential defendant. *See* Ex. 9. One release specifically named the United States as a releasee, *see* Ex. 9 at BOE0001, and the others define releasee in the broadest terms possible as:

> "all other persons or entities not specifically identified who are or may be liable to Releasors . . . for any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800."

Ex. 9 at BOE0059.

In these agreements, the representatives accepted a monetary payment in exchange for, *inter alia*, agreeing not to bring future lawsuits against any other entity. All parties were represented by counsel, and the settlements were approved by Judge Sweet. In the agreements, Plaintiffs specifically contemplated that information might later come to light that changed their understanding of the facts, and agreed that the settlement would be binding nonetheless and would release any and all future claims. Ex. 9 at BOE0061 ¶ 8. Given the centrality of the errant missile test theory in the lengthy MDL proceedings, this agreement to forgo a cause of action in the future carries particular weight.

The releases are contracts and thus constitute binding agreements to relinquish existing and future claims. *See Stone v. National Bank and Trust Co.*, 591 N.Y.S.2d 609, 611 (N.Y. App. Div. 1992); *Benedek v. PLC Santa Monica, LLC*, 129 Cal. Rptr. 2d 197 (Cal. Ct. App. 2002). Five of the releases include a New York choice of law provision; *see* Ex. 9 at BOE0063 ¶ 16, one (Kevorkian) includes a California choice of law provision, *see* Ex. 9 at BOE0005 ¶ 16. Under New York law, a settling party can execute a "limited release" to release some but not all tortfeasors, N.Y. Gen. Obligations Law § 15-108, however, that is not what was done here. The New York statute does not require that an entity be specifically named or identified in the release

16

## JA162

to be discharged. *Wells v. Shearson Lehman/Am. Exp., Inc.*, 526 N.E.2d 8, 12 (N.Y. 1988); *Tamayo v. Ford Motor Titling Tr.*, 726 N.Y.S.2d 709, 710–11 (N.Y. App. Div. 2001). If the release expressly extends to joint tortfeasors not named in the settlement, as is the case here, the release is enforceable to bar future actions. *Koufakis v. Siglag*, 925 N.Y.S.2d 204, 206 (N.Y. App. Div. 2011). This is especially true when the release is executed incident to a court-approved settlement. *Id*.

Where both parties are represented by counsel, and have roughly equivalent bargaining position, the general rule is that if the language of the release is clear, the parties' intent is expressed by that language. 28A N.Y. Prac., Contract Law § 26:8. In such circumstances, the release may be construed against the Releasor. *Id*. A court may only look to extrinsic evidence to determine the parties' intent where the release language is ambiguous. *Id*. There is no need to do so here as the intent of the parties is clear on the face of the agreement. New York courts have made clear that "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Global Minerals and Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 214 (N.Y. App. Div. 2006).

As to the Kevorkian agreement under California law, a written general release "given in good faith to a tortfeasor" will discharge a third-party beneficiary from liability if its terms so provide. Cal. Civ. Proc. Code § 877(a). While a third-party beneficiary need not be specifically named to be discharged, *see, e.g.*, *General Motors Corp. v. Super. Ct.*, 15 Cal. Rptr. 2d 622, 624 (Cal. Ct. App. 1993), the United States *was a named releasee* in the California release. *See* Ex. 9 at BOE0001 ("and any and all agencies, department, and subdivisions of the GOVERNMENT OF THE UNITED STATES OF AMERICA . . . ."). Additionally, Kevorkian specifically waived

17

# JA163

any rights or benefits with respect to unknown or unsuspected claims under California Civil Code § 1542 ("General Release; Extent") (as did other Releasors).

Nothing in the releases indicates ambiguity or an intent to limit the release. The releases expressly bar future action against unnamed potential joint tortfeasors, which is valid under both New York and California law. The signatures of multiple prominent plaintiffs' law firms show the language was no drafting mistake; to the contrary, Plaintiffs had full access to the district court, years of discovery, and a successful appeal to the Second Circuit. Far from being unsophisticated persons misled by accident investigators, the MDL litigation reveals Plaintiffs' educated and voluntary decisions to enter a covenant not to bring further lawsuits. Indeed, it is hard to imagine Boeing would have settled the wrongful death suits in the MDL, without releasing all potential tortfeasors, known and unknown, to avoid inviting re-litigation of the accident. Accordingly, the action should be dismissed.[8]

## II.   PLAINTIFFS LACK STANDING TO BRING THESE CLAIMS.

### A.   NO ESTATES WERE REOPENED, AND NO PERSONAL REPRESENTATIVES WERE APPOINTED.

A party invoking the court's jurisdiction bears the burden of proving that it has Article III standing subject to the Constitution's Case and Controversy Clause. *Carter v. HealthPort Techs. LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Such standing is determined at the time the lawsuit is commenced. *Carter*, 822 F.3d at 56. Any challenge to standing is determined under Rule 12(b)(1) as it is a threshold jurisdictional

---

[8] *See generally Vidro v. United States*, 720 F.3d 148, 150-51 (2d Cir. 2013) (action dismissed because United States is entitled to assert state law defenses available to private parties); *Makarova v. United States*, 201 F.3d 110, 116 (2d Cir. 2000) (dismissing action where it could not be brought against a private party); *West v. United States*, No. 00-cv-9433, 2003 WL 164278 at *5 (S.D.N.Y. Jan. 20, 2003) (dismissing action when private party would be immune from suit).

issue that must be decided before looking to the merits. *Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115, 2022 WL 3226352, at *2 (N.D.N.Y. Aug. 10, 2022) (citing *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)).

In an FTCA case, courts apply the law of the place where the alleged act or omission occurred, 28 U.S.C. § 1346(b)(1); *Richards v. United States*, 369 U.S. 1, 11 (1962) (in airplane crash case, holding that the FTCA requires application of the whole law of the state where the act or omission occurred). This includes determining who has the capacity to sue in a wrongful death case. *Matthias v. United States*, 475 F. Supp. 3d 125, 135 (E.D.N.Y. 2020); *see also Joachim v. United States*, No. 22-cv-5719, 2023 WL 6292542, at *2 (E.D.N.Y. Sept. 27, 2023). Here, Plaintiffs allege negligent missile testing off the coast of New York. ECF 33 ¶¶ 5, 32, ECF 95 at 23, ECF 96. Accordingly, New York law applies to Plaintiffs' FTCA claims.

In New York, a wrongful death action is entirely the product of statute, and no common law cause of action existed prior to its enactment. *Hernandez v. New York City Health & Hosps. Corp.*, 585 N.E.2d 822, 825 (N.Y. 1991). As a statutory creation, the Court of Appeals has instructed that this law must be construed strictly. *In re September 11 Litig.*, 760 F. Supp. 2d 433, 443 (S.D.N.Y. 2011) (citing *Gonzalez v. N.Y. City Housing Auth.*, 572 N.E.2d 598 (N.Y. 1991)).

Under New York's wrongful death statute, in order to demonstrate standing, a plaintiff is required to prove the appointment of a personal representative. *Matthias*, 475 F. Supp. 3d at 143; *see* N.Y. Est. Powers & Trusts § 5–4.1; *id.* at § 1–2.13. A "personal representative" is defined as "a person who has received letters to administer the estate of a decedent." *Hernandez*, 585 N.E.2d at 825 (citing N.Y. Est. Powers & Trusts § 1–2.13). Therefore, only a court-appointed personal representative may bring a wrongful death or survival action on behalf of an estate.

19

**JA165**

*Matthias*, 475 F. Supp. 3d at 135. The relevant time period for determining whether an individual has standing is whether they were appointed as a personal representative at the time the action is commenced in federal court. *Id*. at 136. A plaintiff who attempts to bring a claim on behalf of an estate, who has not been appointed as an administrator or personal representative, lacks standing because they are asserting someone else's rights. *Garmon v. Cnty. of Rockland*, No. 10-cv-7724, 2013 WL 541380, at *2 (S.D.N.Y. Feb. 11, 2013).

The Complaint alleges that personal representatives were appointed for the five estates that remain Plaintiffs in this case. *See* ECF 34 ¶¶ 15, 18, 24, 26, 130. This allegation is false. As demonstrated by the documents from the various courts in which these estates were probated, while personal representatives were appointed in the 1990s, those estates were all closed after the end of the MDL. *See* Ex. 5-8 [Estate Documents]. In addition, the individuals appointed as personal representatives by the probate courts, except for Ronald Krick, are different than the parties claiming to be the personal representatives in this case. *See* Ex. 5-8. Further, there is no evidence that the estates were ever reopened with additional or different individuals appointed as personal representatives. Therefore, the individuals claiming to act on behalf of the estates lack standing and the causes of action brought on behalf of those estates should be dismissed.

    B.    THE REMAINING INDIVIDUAL PLAINTIFFS LACK STANDING TO BRING THEIR OWN ACTION.

In addition to the decedents' estates, Plaintiffs include nine remaining individuals. *See* ECF No. 34 ¶¶ 117-19, 131. As to the United States, Plaintiffs' Complaint asserts negligence in count I and wrongful death and survivorship in count II. The Complaint does not explicitly attribute specific elements of damages to the individuals as compared to the estates.

A wrongful death claim is brought exclusively by the personal representative of the estate for the benefit of statutory distributees. N.Y. Est. Powers & Trusts §§ 5-4.1, 5-4.4; *Heslin v.*

*Cnty. of Greene*, 923 N.E.2d 1111, 1116 (N.Y. 2010); *see also Hernandez*, 585 N.E.2d at 825 (wrongful death action must be brought by personal representative). The damages recoverable are exclusively for the pecuniary loss suffered by the individual distributees as a result of the decedent's death. *Hernandez*, 585 N.E.2d at 825; *see also Gabriel v. Cnty. of Herkimer*, 889 F. Supp. 2d 374, 405 (N.D.N.Y. 2012). A personal injury claim that survives the decedent's death (a.k.a. a survival claim) belongs to, and can only be brought by, an estate. *Heslin*, 923 N.E.2d at 1116. This means any recovery for a survival action is subject to the costs owed by the estate to creditors, or for any liens, debts, or other obligations. *Id*.

Under either theory of recovery, *i.e.*, wrongful death or survival, the right to bring an action seeking compensation falls exclusively on the personal representative of the estate. *Frometa v. Mar-Can Transp. Co.*, 148 N.Y.S.3d 613, 623 (N.Y. App. Div. 2021) (citing *Machado v. Gulf Oil, L.P.*, 146 N.Y.S.3d 66 (N.Y. App. Div. 2021)). Hence individuals, such as parents, children, an aunt, siblings, or a nephew, in their individual capacities, lack standing to assert claims on their own behalf. *Id.* (citing *Long Island Care Ctr., Inc. v. Goodman*, 26 N.Y.S.3d 595 (N.Y. App. Div. 2016); *see also Shelley v. S. Shore Healthcare*, 999 N.Y.S.2d 103, 104 (N.Y. App. Div. 2014) (personal representative is the only person capable of seeking recovery). Therefore, the remaining individual Plaintiffs lack standing to bring their claims against the United States.

**III.    CHRISTOPHER KRICK FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AND HIS CLAIM MUST BE DISMISSED.**

Plaintiffs bring this action pursuant to the FTCA, which requires claimants to exhaust all administrative remedies before filing a complaint in federal court. 28 U.S.C. § 2675(a); *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). This requirement is jurisdictional and cannot be waived. *Id*. The plaintiff bears the burden of proving that he filed the

21

# JA167

requisite administrative claim before filing suit. *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019). Failure to file a claim deprives a court of subject matter jurisdiction, and requires the dismissal of the complaint. *Mayes v. United States*, 790 F. App'x 338, 340 (2d Cir. 2020).

Christopher Krick did not file an administrative claim with the Navy prior to filing this lawsuit. *See* Ex. 11 ¶ 4 [Navy Decl.]. His failure to do so means he did not comply with the FTCA's requirement to exhaust his administrative remedies. Therefore the Court lacks jurisdiction over his claims and they must be dismissed. *See Mayes*, 790 F. App'x at 340.

IV.     **THE STATUTE OF LIMITATIONS HAS LONG SINCE RUN ON PLAINTIFFS' ALLEGATIONS AGAINST THE UNITED STATES.**

A.     STANDARD OF REVIEW

Plaintiffs plead the FTCA as their sole potential waiver of sovereign immunity. *See* ECF 33 ¶ 11. The FTCA requires that "a tort claim against the United States *shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . .*" 28 U.S.C. § 2401(b) (emphasis added); *see also Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 307 (E.D.N.Y. 2008). The Plaintiffs failed to do so; therefore, their Complaint must be dismissed.

Prior to 2015, the Second Circuit viewed a motion to dismiss such as this one as an attack upon a court's subject matter jurisdiction under Rule 12(b)(1). In *United States v. Kwai Fun Wong*, however, the Supreme Court ruled that the FTCA's statute of limitations was procedural rather than jurisdictional; therefore, the time bar is an affirmative defense. 575 U.S. 402, 420 (2015). While motions based on affirmative defenses are typically made as ones for summary judgment; they may be brought as motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) if the defense is apparent on the face of the complaint. *Ellul v. Congregation of*

*Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

In considering a motion to dismiss for failure to state a claim a party is limited to 1) the complaint; 2) documents attached to, or incorporated by refence to, the complaint; 3) matters of which a court may take judicial notice; and 4) documents either in the plaintiffs' possession or which plaintiffs had knowledge of and relied upon in bringing their suit. *Frontera v. United States*, No. 05-CV-0423S, 2009 WL 909700, at *18 (W.D.N.Y. Mar. 31, 2009) (citing *Brass v. Am. Firm Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020). The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), mandate that, to survive a Rule 12(b)(6) motion, a complaint must state a "plausible" claim for relief. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).

On a Rule 12(b)(6) motion, a court must accept as true all *factual allegations* contained in the complaint and draw all reasonable inferences in a plaintiff's favor. *S.E.C. v. Wyly*, 788 F. Supp. 2d 92, 101 (S.D.N.Y. 2011). A court need not accord a presumption of truthfulness to any legal conclusions, deductions, or opinions couched as facts. *Id*. The claim must be plausible, meaning a plaintiff must plead sufficient *facts* so that a court may draw reasonable inferences that a defendant is liable for the alleged misconduct. *Id*. As will be seen, while Plaintiffs' Complaint contains many salacious allegations and legal conclusions, it is bereft of facts upon which the Court may find this action to be timely.

B.    PLAINTIFFS' CLAIMS ACCRUED AT, OR NEAR, THE TIME OF THE CRASH.

1.    Distinction between the Discovery Rule and Tolling.

The questions of accrual and tolling, while interrelated, are legally distinct. Second

**JA169**

Circuit case law nonetheless uses similar language to describe different tools for delaying the running of a limitations period. *Ellul*, 774 F.3d at 801. Regardless of whether Plaintiffs are attempting to delay the accrual of their claim or to toll a statute of limitations that has already accrued, they face a similar outcome—the two-year time period to bring a claim has long expired. Plaintiffs' administrative claims were received by the Navy on October 4, 2021, meaning that, to be timely, the underlying action must not have accrued prior to October 4, 2019. If the claim accrued prior to then, it is either untimely, or Plaintiffs must demonstrate that they are entitled to tolling. Plaintiffs' Complaint primarily focuses on two means of avoiding the time bar: 1) the discovery rule; and 2) tolling via fraudulent concealment.[9]

"Accrual is the date on which the statute of limitations begins to run." *Roque v. United States*, 676 F. Supp. 2d 36, 40 (D. Conn. 2009) (quoting *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008)). Federal law determines that date under the FTCA. *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135 (2d Cir. 2011). In general terms, the discovery rule acts to delay the time of accrual until a plaintiff knows or should know that she was injured and the cause; whereas tolling applies to stop the limitations period from running for a specified reason after it has accrued. *Ellul*, 774 F.3d at 801. In Second Circuit case law, fraudulent concealment, or as referred to by Plaintiffs here as "government cover-up," could apply to delay accrual or toll the statute of limitations. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

Both concepts are exceptions to the general rule that a claim accrues at the time of injury. *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982). A mechanical application of the

---

[9] Plaintiffs also claim equitable estoppel and laches apply; however, Plaintiffs only briefly mentioned them. *See* ECF 33 ¶¶ 94-95, 100. It appears from their Complaint, and prior briefing, that those arguments are not meritorious. Regardless they are addressed in summary *infra*.

statute of limitations benefits the very real public policy goal of compelling plaintiffs to bring timely claims, while evidence and memories are fresh, and thus avoids prejudicing defendants by unpredictably lengthening a limitations period. *A.Q.C. ex rel. Castillo*, 656 F.3d at 1142; *see also Keene Corp. v. United States*, 700 F.2d 836, 842 (2d Cir. 1983) (two-year rule is not arbitrary litigation cutoff but important tool "to provide a procedure under which the government may investigate, evaluate and consider settlement of a claim"); *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 188 (E.D.N.Y. 2014) ("Statutes of limitations, of course, also guard against 'the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'"). Such is the case here where twenty-nine years, a criminal case, multiple FOIA litigations, and an MDL were allowed to pass between the very public injury and this lawsuit.

2.       Plaintiffs' Claims Accrued Long Before October 2019.

For Plaintiffs' October 2021 administrative claims to have been timely, their cause of action must have accrued within the prior two years. 28 U.S.C. § 2401(b). Plaintiffs allege their claims accrued on April 15, 2021, when Dr. Stalcup met with them and presented his "newly discovered evidence." *See* ECF 33 ¶¶ 97-98. However, nothing in the Complaint indicates what specific "newly discovered evidence" Dr. Stalcup presented that was previously unknown to Plaintiffs. Rather, every fact within the Complaint, and the evidence the Court is permitted to review under Rule 12(b)(6), indicates that, at best, all Plaintiffs have demonstrated is the presence of additional evidence of a theory that was well known in 1996 and routinely publicly aired throughout the intervening twenty-nine years. Plaintiffs' suggested accrual date of April 15, 2021 is without factual basis or merit and the Court need not accept this legal conclusion as true.

*See Iqbal*, 556 U.S. at 678 (the tenet that a court must accept as true all allegations in a complaint is inapplicable to legal conclusions).

The district court in Massachusetts was incorrect on this point. During oral argument the Court asked Plaintiffs' counsel about the April 2021 meeting:

> THE COURT: Would you identify exactly what it was that they learned from Dr. Stalcup --
> MR. WALBURG: Yes, Your Honor.
> THE COURT: -- at this April 2021 meeting.
> MR. WALBURG: Yes, Your Honor. They learned that there were -- there was in existence Navy radar tapes that showed an object barreling towards the airplane on radar and another radar tape that showed an impact with the airplane.

Ex. 12 [Hearing Tr. 22:16-23]. The Court would later write in its opinion: "These copies of the Navy radar tapes were finally released and show an object 'heading straight for TWA 800,'" citing paragraph 84 of the Complaint. *Krick v. Raytheon Co.,* 695 F. Supp. 3d 202, 209 (D. Mass. 2023). Unfortunately, that citation, and Plaintiffs' counsel's statements, are incorrect. Paragraph 84 does not state that a radar tape was released to Dr. Stalcup, or ever shown to Plaintiffs. Rather, the Complaint states that Dr. Stalcup reviewed *an FBI record* that described what was displayed on a Navy radar tape. *See* ECF 33 ¶ 84.

The Complaint does not plead facts that establish the inapplicability of the general rule regarding accrual, *i.e.*, that this claim accrued on July 17, 1996, when TWA Flight 800 exploded. The leading precedent concerning FTCA accrual comes from *United States v. Kubrick,* 444 U.S. 111 (1979). *See Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009). *Kubrick*, a medical malpractice case, applied an "inquiry-notice rule," which provided that an FTCA claim accrues when a plaintiff possesses enough information with respect to her injury that had she sought out expert advice at that point she would have been able to determine in the two-year period whether to file an administrative claim. *Id.* at 618. The Second Circuit has relabeled it as a "diligence-

26

## JA172

discovery rule" which may apply outside of medical malpractice to latent or unknowable injury cases. *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008).

In the Second Circuit, a plaintiff may delay the accrual of a claim in a situation where she would reasonably have had difficulty discerning the fact or cause of an injury until the time where she has, or with reasonable opportunity should have, discovered the critical facts of both injury and cause. *Id*. Applicable to the FTCA is that the plaintiff knows, or should have known, that the cause of action laid with the government. *Id.* at 177-78. The level of knowledge must go beyond a mere hunch, hint, or suspicion; however, such minimal awareness may give rise to a duty to investigate further. *Id.* at 178. A plaintiff need not know each and every relevant fact of her injury, or even that the injury implicates a cognizable legal claim for it to have accrued. *Mingo v. United States*, 274 F. Supp. 2d 336, 344–45 (E.D.N.Y. 2003). While the exact parameters of the minimum knowledge standard are unclear, what is clear is that a claim accrues when a plaintiff knows enough to protect herself by seeking legal advice. *A.Q.C.*, 656 F.3d at 140. From that point, it is the duty of conscientious counsel "to protect the client's interest by investigating the case and determining whether, when, where, and against whom to bring suit." *Id*.

Airplane crash litigation does not turn on latent or unknowable causes, and it is almost always a result of negligence. For example, in *Hertz v. United States*, a case arising from the crash of an amateur-built aircraft, the plaintiff delayed filing a claim until two years and nine days after the accident. 560 F.3d at 617-18. The United States filed a motion to dismiss on statute of limitations grounds and the plaintiff opposed, arguing that her claim did not accrue until she was told by a government investigator, nearly a month after the accident, that there was likely air traffic controller negligence. *Id.* at 617. Had her claim accrued when she spoke with the

27

investigator, rather than the day of the crash, the administrative claim would have been timely filed. *See id.* at 617-18. The Sixth Circuit found plaintiffs' delayed accrual argument unpersuasive and affirmed the district court's dismissal, reasoning that death caused by an airplane crash is categorically different from a latent injury/medical malpractice case because "[p]lane crashes by their nature typically involve negligence *somewhere* in the causal chain." *Id.* at 619 (emphasis in original).

Likewise in a case arising from a commercial airline crash, the district court dismissed plaintiffs' complaint as untimely. *Ressler v. United States*, No. 11-cv-02253, 2012 WL 4328662, at *3 (D. Colo. Sept. 20, 2012). In *Ressler*, the plane crashed in December 2008. The government received plaintiffs' claim two years and eight days after the crash. *Id*. at *2. Plaintiffs argued that their claim did not accrue on the day of the accident in 2008; but rather in April 2009 when they read in the NTSB factual report that the crash was caused by air traffic controller negligence. *Id*. The district court, favorably citing *Hertz*, concluded that the accrual did not await Plaintiffs' awareness that their injury was suffered because of government negligence. *Id*. The district court charged plaintiffs with the responsibility of protecting themselves in a situation such as a plane crash, in seeking the advice of legal and subject matter experts to determine their rights. *See id*.

In yet another case, *Rademacher v. United States*, the district court was likewise unpersuaded by the proposed intervenors who argued that their claim did not accrue on the day of the accident but rather was delayed until later "discovery" of facts that only became apparent when the NTSB released transcripts of pilot-air traffic controller communications. Ex. 13, 3:19-cv-00157 (N.D. Miss. Mar. 19, 2020), slip op. at 11-12. The proposed intervenors asserted that they conducted a "reasonable investigation" but detrimentally relied on a preliminary NTSB

**JA174**

report, which stated that the pilot reported a mechanical problem prior to the crash and did not mention air traffic controller negligence as a potential cause. *Id*. at 3, 10. In denying their motion to intervene in an FTCA suit that other plaintiffs timely filed and which alleged air traffic control negligence, the district court found that the proposed intervenors offered no factual evidence of the specific steps they took in conducting their investigation and concluded that they did little to no investigation at all. *Id.* at 10.

The explosion of TWA Flight 800 was certainly no less apparent than the crashes in *Hertz*, *Ressler*, or *Rademacher*. All the major networks broadcast the explosion as breaking news that evening, and newspapers headlined it the following day. The investigation that followed was documented step-by-step by journalists, with numerous press conferences held by the FBI and NTSB furnishing information about it. ECF 33 ¶¶ 47, 50. *See Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 308 (E.D.N.Y. 2008) (widespread media coverage can trigger accrual). Beyond the time of the explosion and investigation, TWA Flight 800 provided fodder for FOIA litigation and criminal cases ensuring that the event did not leave the public consciousness over the years.

The midflight explosion of a commercial airliner cannot be classified as a latent injury of which Plaintiffs were unaware at the time. Any reasonable person would have concluded, as expressed in *Hertz, Ressler*, and *Rademacher*, that some form of negligence played a role in causing it. Therefore, Plaintiffs were charged, that day, with the responsibility of obtaining legal and expert advice in order to protect their rights. Plaintiffs saw it this way as well, as representatives for all of the decedents retained counsel, sued other entities, and settled their claims decades ago. Nowhere in the Complaint do Plaintiffs state that they were dissatisfied with the service provided by their prior counsel or were ineffectively represented in the MDL. *See Picarella v. United States*, No. 22-cv-4983, 2024 WL 1435744, at *5 (E.D.N.Y. Apr. 3, 2024)

("Once an injured party . . . knows enough to warrant consultation with counsel, and acts with diligence . . . to undertake such consultation, conscientious counsel will have ample time to protect the client's interest by investigating the case and determining whether, when, where, and against whom to bring suit.").

The United States anticipates that Plaintiffs will argue the claim did not accrue at the time of the explosion because the information upon which the claim is based was allegedly suppressed by a purported government cover-up. This argument is baseless. The United States emphasizes that no cover-up occurred, and Plaintiffs have pleaded insufficient facts to suggest otherwise. Under the correct circumstances, fraudulent actions undertaken by a defendant to obscure the fact or cause of an injury can delay accrual. *Wyly*, 788 F. Supp. 2d at 102–03. In those instances the statute does not begin to run until the fraud is discovered. *Id.*; *see also Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (standard includes known or should have known). Plaintiffs need to plead actual facts of conspiracy, however, and may not just baldly say that the government engaged in one as a conclusion. *Pearl*, 296 F.3d at 87.

The Second Circuit's decision in *Barrett v. United States*, 689 F.2d 324 (2d Cir. 1982), best lays out the factual basis necessary for the rare application of this means of delaying accrual. In *Barrett*, the decedent died after being injected with a chemical compound while in government custody in the 1950s. *Id.* at 327. At the time of his death, the decedent's family was told that he died because of medical incompetence, and the involvement of the United States, or specifically the Army Chemical Corps, was not specifically mentioned. It later became clear through the release of information several decades later that he died because he was being used by the Army Chemical Corps as "a human guinea pig." *Id.* at 329. It was also clear that even if the plaintiff had pursued her claims with more vigor and diligence in the 1950s that she may not

30

have discovered the connection between the death and the government. *Id*. at 330. In that rare instance, the Second Circuit reasoned that "[i]t is illogical to require a party to sue the government for negligence at a time when the Government's responsibility in the matter is suppressed in a manner designed to prevent the party, even with reasonable effort, from finding out about it." *Id*. However, that is not the factual situation here.

As the facts demonstrate, the errant Navy missile test theory and allegations about a government cover-up were pervasive throughout the early investigation. The missile theory and government cover-up contentions have been part of the parlance in popular imagination, the media, FOIA cases, and litigation about TWA Flight 800 since then. The 2000 NTSB factual report would not need an entire section discussing what the eyewitnesses saw, and the CIA would not need to publish a video saying "*It was not a Missile*" during an FBI press conference in 1997, had this theory not been widespread. A government cover-up cannot be so effective as to delay accrual of the claim while at the same time be so inept that it requires repeated episodes of "disinformation" to ensure that the "real" facts remain concealed.

Plaintiffs' Complaint compresses two decades of history, and in so doing removes the context that otherwise demonstrates the weakness of their arguments. The explosion of TWA Flight 800 was open and obvious. Allegations of a missile strike were so pervasive and well-documented that they motivated private citizens, Dr. Stalcup included, who had no connection with this tragedy, to engage in their own "investigations." This included undertaking actions that were illegal, in stealing evidence from a government facility, or incredibly time consuming and expensive such as writing books, producing documentaries, and engaging in decades-long FOIA litigation. *See* factual background at 3-9, *supra*.

To the extent the Complaint asserts that Plaintiffs were unaware of their injury until their meeting with Dr. Stalcup in 2021, those contentions lack plausibility to surmount the limitations bar. *See* ECF 33 ¶ 98. Plaintiffs possessed ample evidence long before October of 2019 to bring these claims. If Dr. Stalcup's presentation provided anything, it was merely more evidence of what Plaintiffs already thought they knew. *See Pearl*, 296 F.3d at 85 (citing *Paige v. Police Dept. of Schenectady*, 264 F.3d 197, 200 (2d Cir.2001)); *see also Torres v. United States*, 612 F. App'x 37, 40 (2d Cir. 2015) (all the facts were known by plaintiff prior to the meeting with physician, all the doctor provided was context). The Complaint simply lacks the factual basis to justify the extreme measure of delaying accrual by over two decades.

C.   PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT APPLICATION OF THE FRAUDULENT CONCEALMENT DOCTRINE.

Tolling, as a means of interrupting the running of the statute of limitations on an already accrued claim, can take three forms—1) equitable tolling, 2) fraudulent concealment, and 3) equitable estoppel. *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008). Plaintiffs' Complaint, unfortunately, uses these terms interchangeably. A careful review of the Complaint demonstrates that Plaintiffs' efforts are focused on the second form of tolling, *i.e.*, fraudulent concealment, or as they are more apt to put it—a government cover-up. Plaintiffs have the burden of proving the applicability of tolling. *A.Q.C.*, 656 F.3d at 144. As tolling runs counter to the critical role that statutes of limitations play, it is considered a drastic remedy applied only in rare and exceptional cases. *Id.* (citing *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)); *see also Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004).

For a plaintiff to toll the statute of limitations through the fraudulent concealment doctrine, she must allege with sufficient support that 1) the defendant wrongfully concealed material facts relating to its wrongdoing; 2) the concealment prevented plaintiff's discovery of

32

the claim within the limitations period; and 3) plaintiff exercised due diligence in pursuing the discovery of the claim during the tolled period. *Ellul*, 774 F.3d at 801 (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012)). As the first prong includes evidence of fraud, a plaintiff is additionally obligated to meet the Fed. R. Civ. P. 9(b) pleading standards. *Wyly*, 788 F. Supp. 2d at 104. To satisfy those standards, a complaint must: 1) specify the fraudulent statements; 2) identify the speaker(s); 3) state where and when the statements were made; and 4) explain why the statements were fraudulent. *Id.* at 101.

When a limitations period is stopped by tolling, that stoppage is not perpetual; but rather only lasts as long as the cause of the tolling exists. *Haekal v. Refco, Inc.*, 198 F.3d 37, 43 (2d Cir. 1999). Even then, it does not act to reset the limitations period; but rather, interrupts it. *Id*. This means once the cause of tolling is removed, "the time remaining on the (statute of limitations) clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped." *Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011) (quoting *United States v. Ibarra*, 502 U.S. 1, 4 n.2 (1991)). Meaning here again, Plaintiffs' efforts to compress the long span of history distort the analysis because the Complaint fails to account for extended periods of time, hiding these shortcomings by baldly claiming fraud and cover-up without actually pleading factual details sufficient to meet the burden of proof.

The Complaint fails to meet the Rule 9(b) pleading standards as it does not set forth allegations of specific fraudulent government statements that created a cover-up. In fact, the only statements in the Complaint attributed to the government are the CIA animation, several press conferences, the NTSB report, and potentially some communications from the NTSB Office of Families, the substance or timing of which are not provided. *See* ECF 33 ¶¶ 47, 50. Given the lack of specificity, the only externally verifiable dates of these communications are November

33

1997, for the CIA animation, and August 2000, for the NTSB report. This means these allegedly fraudulent communications first took place over a year after TWA Flight 800 exploded and last took place more than 21 years before Plaintiffs submitted their administrative claim. That leaves a long unaccounted-for time within which the limitations period could have run.

In the years since the NTSB released its allegedly false report, TWA Flight 800 has hardly fallen out of public discourse or faded from collective memory. As stated above, there has been a long-running current of litigation regarding the cause of the explosion, most of it led by individuals making salacious claims, seeking to expose an alleged widespread cover-up involving multiple federal agencies. Beyond the actions of these "truth seekers" are the publicly-available FBI witness summaries and statements eyewitnesses made to the media. These include eyewitnesses who have spoken publicly about how the CIA animation and the NTSB report did not accord with their observations regarding the flare or streak of light they saw on July 17, 1996. Were any of these lawsuits, media stories, or individuals to be credited, Plaintiffs absolutely should have been on notice that their beliefs based on the allegedly fraudulent reports were no longer justified. A reasonable person charged with notice of such facts would have been required to reevaluate their beliefs and seek legal advice.

D.     PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT APPLICATION OF EQUITABLE ESTOPPEL OR LACHES.

Plaintiffs' Complaint also alleges equitable estoppel and laches in the summary paragraph of the "tolling of the statute of limitations" section. No allegations provide justification or a basis for either and the Court should give no weight to either conclusory allegation. That being said, the Complaint does not support either principle on the merits.

Equitable estoppel is applicable *when a plaintiff knows of her cause of action* but reasonably relies on the defendant's conduct or statements in failing to bring a suit. *Ellul*, 774

**JA180**

F.3d at 802. For equitable estoppel to apply, Plaintiffs bear the burden of showing 1) the United States made a definite misrepresentation of fact, and had reason to believe that the Plaintiffs would rely on it; and 2) Plaintiffs reasonably relied on that misrepresentation to their detriment. *Id*. (citing *Buttry v. Gen. Signal Corp*., 68 F.3d 1488, 1493 (2d Cir. 1995)). Plaintiffs appear to misunderstand the concept of equitable estoppel; because, in order for it to apply it requires 1) that Plaintiffs admit accrual of a cause of action; and 2) that Plaintiffs failed to timely file a lawsuit because of a government misrepresentation. As the Second Circuit put it in *Ellul*, this relief is applicable in a case where a defendant lulls a plaintiff into not suing by assurances of settlement, for instance. 774 F.3d at 802. Those facts are not pleaded in the Complaint; to the contrary, Plaintiffs aver that their cause of action did not accrue until April 2021. ECF 33 ¶ 97. Subsequent to that alleged date of accrual, Plaintiffs plead no affirmative government misrepresentation that convinced them to not file a claim. Rather, Plaintiffs filed their claim on October 4, 2021, within two years of their conversation with Dr. Stalcup making equitable estoppel inapplicable to this case. Therefore, equitable estoppel does not save this untimely lawsuit.

Plaintiffs also plead laches as a basis for tolling the statute of limitations. ECF 33 ¶ 100. Plaintiffs appear to misunderstand that laches is an affirmative defense under Fed. R. Civ. P. 8(c)(1), and is not a doctrine that protects plaintiffs who file an untimely complaint. Courts of equity developed laches to protect *defendants* against "unreasonable, prejudicial delay in commencing suit." *SCA Hygiene Prod. Aktibolag v. First Quality Baby Prod., LLC*, 580 U.S. 328, 333 (2017). It serves a similar function as a statute of limitation. *Id*. at 334. In contemporary practice laches is a gap-filling doctrine, but where an express statute of limitations exists, like here, there is no gap to fill and thus the doctrine is not applicable. *Id*. at 335.

35

## V. PLAINTIFFS' COMPLAINT PLEADS AN ADMIRALTY CAUSE OF ACTION; THEREFORE, THIS ACTION BROUGHT UNDER THE FTCA MUST BE DISMISSED.

Plaintiffs have pleaded a textbook admiralty case arising from the crash of a transoceanic flight. However, instead of properly invoking the Court's subject matter jurisdiction over the United States via the Suits in Admiralty Act (SAA), 46 U.S.C. §§ 30901–30918, or the Public Vessels Act (PVA), 46 U.S.C. §§ 31101–30013,[10] Plaintiffs exclusively pleaded the FTCA, 28 U.S.C. § 2674 *et seq*. ECF 33 ¶ 11. The FTCA does not provide a waiver of sovereign immunity for admiralty cases. 28 U.S.C. § 2680(d). Therefore, Plaintiffs fail to invoke the Court's subject matter jurisdiction, and this action should be dismissed. Fed. R. Civ. P. 12(b)(1).

Dismissal is proper where the court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must dismiss the action if it finds that it lacks jurisdiction. Fed. R. Civ. P. 12(h)(3). As the party asserting federal jurisdiction, Plaintiffs bear the burden of establishing, by a preponderance of the evidence, that the district court has jurisdiction. *Crawford v. Electric Boat Corp.*, 515 F. Supp. 2d 282, 285 (D. Conn. 2007) (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

Neither the FTCA nor the SAA/PVA create any rights for Plaintiffs; but rather they simply act to withdraw the United States' sovereign immunity. *Crawford*, 515 F. Supp. 2d at 286 (citing *Blanco v. United States*, 775 F.2d 53, 63 n.8 (2d Cir. 1985)). The limits of the United States' waiver of sovereign immunity are strictly construed in the government's favor. *Dept. of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). One such limit is that the FTCA and

---

[10] The United States reserves the right to challenge Plaintiffs' choice of venue in E.D.N.Y. under the PVA, 46 U.S.C. § 31104, should the case proceed further.

36

SAA/PVA are mutually exclusive, meaning in cases where one applies the other cannot. *See* 28 U.S.C. § 2680(d). Therefore, if admiralty jurisdiction applies, a complaint based on the FTCA must be dismissed. *Crawford*, 515 F. Supp. 2d at 291.

To determine whether a case lies in admiralty, courts apply a locality and nexus test. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co*., 513 U.S. 527 (1995). To satisfy the locality test, the tort must either have occurred on navigable water or been caused by a vessel on navigable water. *Id*. at 534. This case satisfies the locality test. Plaintiffs pleaded that "the plane exploded and crashed into the Atlantic Ocean," and that the cause of the explosion was an alleged errant missile test which included "live warheads from warship(s) (fired) at aerial missile targets off the coast of New York . . ." and that "[o]ne such missile struck TWA flight 800, causing it to break apart and crash into the Atlantic Ocean . . . ." *See* ECF 33 ¶¶ 2, 5. This application of the locality test is consistent with the Second Circuit's evaluating the prior MDL through an admiralty lens as TWA Flight 800 crashed eight nautical miles south of Long Island. *In re Air Crash*, 209 F.3d at 201.

Turning to the nexus test, the Court conducts a two-part inquiry, analyzing the potentially disruptive impact on maritime commerce, and whether the incident shows a substantial relationship to traditional maritime activity. *Grubart*, 513 U.S. at 534, 541; *see also Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005). With respect to potential disruptive impact on maritime commerce, an aircraft sinking in the water could create a hazard for the navigation of commercial vessels in the vicinity. *See Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 n.5 (1982); *In re Air Crash Into Java Sea on Jan. 9, 2021*, No. 1:23-MD-3072, 2023 WL 5597824, at *5 (E.D. Va. Aug. 25, 2023); *Siswanto v. Airbus Americas, Inc*., No. 15-CV-5486, 2016 WL 7178458, at *4 (N.D. Ill. Dec. 9, 2016). The in-flight breakup of an aircraft creates a

debris field that poses a risk to those on-scene at the time and for an extended period thereafter. Such a tragedy requires the shuttering of sea lanes, and the use of vessels and specialized equipment to recover the remains of victims, salvage hazardous wreckage, and to mitigate the damage caused by jet fuel, and other petroleum products, to the maritime environment.

With respect to the character of the activity, TWA Flight 800 was a transoceanic flight from New York to Paris. *In re Air Crash*, 209 F.3d at 201. The Supreme Court has noted that a transoceanic crossing bears a relationship to maritime commerce because that voyage "previously would have been performed by waterborne vessels." *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 264 (1972). "Federal courts have concluded nearly unanimously that transoceanic or island voyages that, but for air travel, would have been conducted by sea have a significant relationship to maritime activity." *In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, No. MDL 1448 (RWS), 2006 WL 1288298, at *9 (S.D.N.Y. May 9, 2006) (gathering cases); *see also In re Air Crash Off Point Mugu, Cal., on Jan. 30, 2000*, 145 F. Supp. 2d 1156 (N.D. Cal. 2001) (finding admiralty jurisdiction when flight from California to Mexico crashed less than three miles from the coastline).

Plaintiffs' allegations further implicate the purpose and mission of the U.S. Navy as the protector of American maritime commerce and the free navigation of the seas. The Complaint alleges the explosion was due to an errant missile fired during a test of a new weapons system designed to confront a foreign threat that was "here and now." *See* ECF 33 ¶¶ 4-5, 55-60. Such a challenge delves into the heart of Congress's authority "to provide and maintain a Navy," U.S. Const. art. I, § 8. As the Navy's purpose was explained in the Federalist Papers, "if we mean to be a commercial people, or even secure on our Atlantic side, we must endeavor, as soon as possible, to have a navy." The Federalist No. 24; s*ee also* No. 11 (Alexander Hamilton)

38

# JA184

("[without a navy] it would be in the power of the maritime nations, availing themselves of our universal impotence, to prescribe the conditions of our political existence . . . and confine us to a passive commerce."). Plaintiffs' allegations lie in admiralty. Plaintiffs opted to plead the FTCA as their sole potential waiver of sovereign immunity against the United States. Because the United States has not waived its sovereign immunity under the FTCA for these admiralty-based allegations, Plaintiffs' Complaint must be dismissed. 28 U.S.C. § 2680(d); see *Williams v. United States*, 711 F.2d 893, 899 (9th Cir. 1983) (affirming dismissal of admiralty action brought under the FTCA).

## CONCLUSION

The United States respectfully requests the Court dismiss Plaintiffs' Second Amended Complaint.

Dated:  April 1, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

JOHN J. DURHAM
Interim United States Attorney
Eastern District of New York

ARTEMIS LEKAKIS
Assistant United States Attorney
Eastern District of New York

/s/ Robert Kelly
ROBERT KELLY
JILL DAHLMANN ROSA
Senior Trial Counsel
EMMA HILDEBRAND
Trial Attorney
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box 14271

Washington, D.C. 20044-4271
Robert.Kelly@usdoj.gov
Jill.Rosa@usdoj.gov
Emma.Hildebrand@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

To: All attorneys of record via CM/ECF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

RONALD KRICK, et al.,

                       Plaintiffs,

   - against -

RAYTHEON COMPANY, et al.,

                       Defendants.

-------------------------------------------------------------------X

C.A. No.: 1:23-cv-08093-AMD-JAM

Donnelly, D.J.
Marutollo, M.J.

**DEFENDANT RAYTHEON COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS RULE 12(b)(6)
<u>MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

Ralph V. Pagano, Esq. (RP7138)
FITZPATRICK, HUNT & PAGANO, LLP
12 East 49th Street, 34th Floor
New York, New York 10017
T: (212) 937-4000
F: (212) 937-4050
ralph.pagano@fitzhunt.com

*Attorneys for Defendant
RAYTHEON COMPANY*

**JA187**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iv

PRELIMINARY STATEMENT ........................................................................................1

      PLAINTIFFS LACK STANDING TO PROSECUTE THIS ACTION ..............................1

      THE PERSONAL REPRESENTATIVES OF THE DECEDENTS' ESTATES
      RELEASED THESE CLAIMS LONG AGO.................................................................2

      THE STATUTE OF LIMITATIONS EXPIRED LONG AGO .........................................2

      ASSUMING THE MISSILE THEORY IS TRUE,
      THE POLITICAL QUESTION DOCTRINE BARS THIS ACTION ...............................3

PROCEDURAL HISTORY.................................................................................................3

RELEVANT FACTS AND ALLEGATIONS......................................................................5

ARGUMENT......................................................................................................................7

    I.     PLAINTIFFS' CLAIMS ARE GOVERNED BY MARITIME LAW .........................7

          a.   PLAINTIFFS ALLEGE A TORT
              OCCURING OVER NAVIGABLE WATER .........................................................8

          b.   THE CONDUCT AT ISSUE HAS A SUBSTANTIAL RELATIONSHIP
              TO MARITIME ACTIVITY AND A POTENTIALLY
              DISRUPTIVE INFLUENCE ON MARITIME COMMERCE ...............................9

    II.    BOTH THE PERSONAL REPRESENTATIVES AND INDIVIDUALS
        BRINGING SUIT MUST BE DISMISSED PURSUANT TO RULE 12(B)(6).........11

          a.   STANDARD OF REVIEW ..................................................................................11

          b.   PLAINTIFFS FAIL TO PROPERLY ALLEGE THEIR STATUS
              AS PERSONAL REPRESENTATIVES .............................................................12

          c.   PLAINTIFFS ASSERTING CLAIMS IN THEIR INDIVIDUAL
              CAPACITIES MUST BE DISMISSED ..............................................................13

    III.   THE RELEASES BAR PLAINTIFFS' CLAIMS AGAINST RAYTHEON .............14

i

a.  THE COURT'S ABILITY TO CONSIDER THE RELEASES............................15

b.  RAYTHEON IS A RELEASED PARTY..................................................17

c.  THE CLAIMS ASSERTED HERE WERE RELEASED ...................................20

d.  THE RELEASES ARE BINDING ON ALL PLAINTIFFS,
    INCLUDING THOSE WHO DID NOT SIGN THE RELEASES.......................22

IV.  DISMISSAL UNDER F.R.C.P. 12(B)(6) IS APPROPRIATE
     BECAUSE THE ACTION EXCEEDS THE STATUTE OF LIMITATIONS
     AND FAILS TO ALLEGE FACTS TO SUPPORT TOLLING ...............................24

a.  STANDARD OF REVIEW SPECIFIC
    TO THE STATUTE OF LIMITATIONS.................................................25

b.  THE "DISCOVERY RULE" DOES NOT RENDER
    PLAINTIFFS' CLAIMS TIMELY........................................................25

c.  FRAUDULENT CONCEALMENT DOES NOT TOLL
    THE STATUTE OF LIMITATIONS AGAINST RAYTHEON..........................29

    i.  THERE ARE NO ALLEGATIONS SPECIFIC TO RAYTHEON...........30

    ii.  PLAINTIFFS FAIL TO PLEAD THAT THEY ACTED
         WITH REASONABLE DILIGENCE .......................................30

d.  EQUITABLE ESTOPPEL CANNOT APPLY ......................................32

V.  PLAINTIFFS' COMPLAINT PRESENTS NONJUSTICIABLE POLITICAL
    QUESTIONS REQUIRING DISMISSAL UNDER RULE 12(B)(6) ........................32

A.  THE COMPLAINT DEMANDS ADJUDICATION OF MATTERS
    CONSTITUTIONALLY COMMITTED TO THE LEGISLATIVE
    AND EXECUTIVE BRANCHES OF GOVERNMENT ....................................34

B.  THERE IS NO JUDICIALLY DISCOVERABLE,
    MANAGEABLE STANDARD FOR RESOLVING THE ISSUES
    IMPLICATED BY THIS LAWSUIT...................................................39

**JA189**

C.  POLICY DETERMINATIONS OUTSIDE OF THE COURT'S
    DISCRETION ARE IMPLICATED.......................................................................40

CONCLUSION ..........................................................................................................41

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A. Truck Renting Corp. v. Navistar, Inc.*,
    81 A.D.3d 674, 916 N.Y.S.2d 194 (2d Dept 2011) ........................................................... 18

*Aktepe v. United States*,
    105 F.3d 1400 (11th Cir. 1997) ............................................................ 35, 36, 40

*Albert v. City of N.Y.*,
    No. 17-cv-3957-ARR-SMG, 2018 U.S. Dist. LEXIS 179576,
    at *40 (E.D.N.Y. Oct. 18, 2018) ........................................................... 13

*Amedi v. BAE Systems*,
    782 F. Supp. 2d 1357 (N.D. Ga. 2011) ......................................................... 38-39

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................... 11, 12

*Baker v. Carr,*
    369 U.S. 186 (1962) ............................................................ 32-33, 35, 39

*Bancoult v. McNamara*,
    445 F.3d 427 (D.C. Cir. 2006) ........................................................... 37

*Beck v. Alaska Air Grp.*,
    No. C 02-01067 CRB, 2002 U.S. Dist. LEXIS 10017,
    at *5 (N.D. Cal. May 24, 2002) ........................................................... 12, 13-14

*Beiswenger Enters. Corp. v. Carletta*,
    86 F.3d 1032 (11th Cir. 1996) ........................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................... 11, 13

*Benoit v. Fireman's Fund Ins. Co.*,
    355 So. 2d 892 (La. 1978) ........................................................... 23

Case 1:23-cv-08093-AMD-JAM    Document 186    Filed 04/01/25    Page 6 of 58 PageID #: 1026

*Bensky v. Indyke,*
  743 F. Supp. 3d 586 (S.D.N.Y. 2024) ........................................................................ 15-16

*Bentzlin v. Hughes Aircraft Co.,*
  833 F. Supp. 1486 (C.D. Cal. 1993) ............................................................................ 38, 40

*Benzemann v. Houslanger & Assocs.*, PLLC,
  924 F.3d 73 (2d Cir. 2019) .......................................................................................... 26

*Bingham v. Zolt,*
  683 F. Supp. 965 (S.D.N.Y. 1988) .............................................................................. 30

*Burrell v. Sowers*,
  No. 22-2687, 2023 U.S. App. LEXIS 29629, at *2 (2d Cir. Nov. 7, 2023) ............... 17, 18

*Buttry v. Gen. Signal Corp.*,
  68 F.3d 1488 (2d Cir. 1995) ........................................................................................ 32

*Calton v. Zapata Lexington,*
  811 F.2d 919 (5th Cir. 1987) ....................................................................................... 23

*Can v. United States*,
  820 F. Supp. 106 (S.D.N.Y. 1993) .............................................................................. 34

*Carmichael v. Kellogg, Brown & Root Servs.*,
  572 F.3d 1271 (11th Cir. 2009) ........................................................................34-35, 36, 40

*Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.,*
  17 N.Y.3d 269, 929 N.Y.S.2d 3, 952 N.E.2d 995 (2011) ........................................... 18, 21

*Cerbone v. Int'l Ladies' Garment Workers' Union,*
  768 F.2d 45 (2d Cir. 1985) .......................................................................................... 32

*City of N.Y. v. FedEx Ground Package Sys.*,
  351 F. Supp. 3d 456 (S.D.N.Y. 2018) ......................................................................... 25

*Collins v. Harrison-Bode*,
  303 F.3d 429 (2d Cir. 2002) ........................................................................................ 17

Case 1:23-cv-08093-AMD-JAM    Document 186    Filed 04/01/25    Page 7 of 58 PageID #: 1027

*Complaint of Cosmopolitan Shipping Co., S. A.*,
    453 F. Supp. 265 (S.D.N.Y. 1978) ................................................................. 12

*Concerned About Trident v. Schlesinger*
    400 F. Supp. 454 (D.D.C. 1975) ................................................................... 37

*Corcoran v. N.Y. Power Auth.*,
    202 F.3d 530 (2d Cir. 1999)......................................................................... 29

*Cowan v. Ernest Codelia, P.C.*,
    149 F. Supp. 2d 67 (S.D.N.Y. 2001).............................................................. 16

*Crawford v. Elec. Boat Corp.*,
    515 F. Supp. 2d 282 (D. Conn. 2007)............................................................. 9

*Cruz v. Korean Air Lines Co.*,
    838 F. Supp. 843 (S.D.N.Y. 1993) ....................................................... 13, 22-23

*Ctr. For Biological Diversity v. Mattis*,
    868 F.3d 803 (9th Cir. 2017) ........................................................................ 33

*Deylii v. Novartis Pharms. Corp.*,
    No. 13-CV-06669 (NSR), 2014 U.S. Dist. LEXIS 82442,
    at *11 (S.D.N.Y. June 16, 2014)................................................................... 16

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)......................................................................... 15

*Doe v. Deutsche Bank Aktiengesellschaft*,
    671 F. Supp. 3d 387 (S.D.N.Y. 2023)............................................................ 15

*Ellul v. Congregation of Christian Bros.*,
    774 F.3d 791 (2d Cir. 2014).................................................................... 25, 32

*El-Shifa Pharm. Indus. Co. v. United States*,
    607 F.3d 836 (D.C. Cir. 2010)...................................................................... 40

*E. River S.S. Corp. v. Transamerica Delaval*,
    476 U.S. 858 (1986).................................................................................... 7

*Exec. Jet Aviation v. City of Cleveland,*
    409 U.S. 249 (1972)......................................................................................... 7

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006)............................................................................ 15

*Fire & Police Pension Ass'n v. Bank of Montreal*,
    368 F. Supp. 3d 681 (S.D.N.Y. 2019)..........................................................30-31

*Franklin v. New York City*,
    2017 U.S. Dist. LEXIS 20233, at *9 (S.D.N.Y. Feb. 10, 2017)...................... 26

*Futch v. Midland Enters., Inc.*,
    471 F.2d 1195 (5th Cir. 1973) ....................................................................... 12

*Gen. Motors Corp. v. Superior Court*,
    12 Cal. App. 4th 435, 15 Cal. Rptr. 2d 622 (1993).................................... 18, 19

*Germain v. Ficarra (In re Germain)*,
    824 F.3d 258 (2d Cir. 2016)........................................................................... 10

*Gilligan v. Morgan*,
    413 U.S. 1 (1973)......................................................................................35, 39-40

*Giuffre v. Andrew*,
    579 F. Supp. 3d 429 (S.D.N.Y. 2022)............................................................ 15

*Global Mins. & Metals Corp. v. Holme*,
    35 A.D.3d 93, 824 N.Y.S.2d 210 (1st Dept 2006)............................................ 18

*Gonzalez v. Wright*,
    665 F. Supp. 2d 334 (S.D.N.Y. 2009)............................................................ 26

*Greenfield v. Kanwit*,
    87 F.R.D. 129 (S.D.N.Y. 1980) ..................................................................... 30

*Grell v. Trump*,
    330 F. Supp. 3d 311 (D.D.C. 2018)................................................................ 34

*Guilbert v. Gardner*,
      480 F.3d 140 (2d Cir. 2007)............................................................................ 26

*Haig v. Agee*,
      453 U.S. 280 (1981)....................................................................................... 40

*Harris v. Kellogg Brown & Root Servs.*,
      724 F.3d 458 (3d Cir. 2013)............................................................................ 33

*Homlaor v. Korean Air Lines Co.*,
      MDL No. 565, Misc. No. 83-0345, 84 Civ. 4083 (TPG),
      1997 U.S. Dist. LEXIS 7592, at *7 (S.D.N.Y. May 29, 1997)............................. 12, 13, 23

*In re Air Crash off Long Island*
      209 F.3d 200 (2d Cir. 2000)............................................................................. 8

*In re Air Crash at Belle Harbor*,
      2006 U.S. Dist. LEXIS 27387, at *44 (S.D.N.Y. May 9, 2006)............................... 8, 9, 10

*In re Complaint of Midland Enters., Inc.*,
      886 F.2d 812 (6th Cir. 1989) .......................................................................... 12

*In re D'Ancona*,
      2023 U.S. Dist. LEXIS 16490, at *7 (E.D.N.Y. Jan. 30, 2023) ........................................ 9

*In re Fire Island Ferries, Inc.*,
      No. CV 11-3475, 2016 U.S. Dist. LEXIS 16538, at *10 (E.D.N.Y. Feb. 4, 2016).......... 25

*In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*,
      No. 00-cv-7804, 2004 U.S. Dist. LEXIS 3892 (S.D.N.Y. Mar. 12, 2004)....................... 29

*In re Korean Air Lines Disaster*,
      597 F. Supp. 613 (D.D.C. 1984) ...................................................................... 37

*In re Marquette Transp. Co. Offshore, LLC*,
      No. 23-6403, 2024 U.S. Dist. LEXIS 83197, at *11 (E.D. La. May 6, 2024)....... 12, 13-14

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
      No. 2179, 2017 U.S. Dist. LEXIS 193121, at *14 (E.D. La. Nov. 22, 2017).................. 23

*Japan Whaling Ass'n v. Am. Cetacean Soc'y,*
    478 U.S. 221 (1986)................................................................................................... 32

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
    513 U.S. 527 (1995).......................................................................................... 8, 9, 10

*Jordan v. Metro. Jewish Hospice,*
    122 A.D.3d 682, 995 N.Y.S.2d 610 (2d Dept 2014) ........................................ 12

*Koch v. Christie's Int'l PLC,*
    699 F.3d 141 (2d Cir. 2012).................................................................... 28, 29, 30

*Kramer v. Time Warner, Inc.,*
    937 F.2d 767 (2d Cir. 1991)................................................................................ 15

*Krick v. Raytheon Co.,*
    695 F. Supp. 3d 202 (D. Mass. 2023) ................................................................ 16

*Lane v. Halliburton,*
    529 F.3d 548 (5th Cir. 2008) .............................................................................. 33

*Levy v. BASF Metals Ltd.,*
    917 F.3d 106 (2d Cir. 2019)........................................................................26-27, 28

*Litle v. Arab Bank, PLC,*
    No. 04-CV-5449 (NG)(VVP), 2007 U.S. Dist. LEXIS 20539,
    at *8 (E.D.N.Y. Mar. 22, 2007) ........................................................................ 26

*Loquasto v. Fluor Corp.,*
    512 F. Supp. 3d 728 (N.D. Tex. 2021) .............................................................. 33

*Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC,*
    No. 05Civ.6757 (LTS) (MHD), 2006 U.S. Dist. LEXIS 91998
    (S.D.N.Y. Dec. 20, 2006).................................................................................... 16

*Mangiafico v. Blumenthal*
    471 F.3d 391 (2d Cir. 2006)................................................................................ 15

*Markel Am. Ins. Co. v. Mr. Demolition, Inc.*
    717 F. Supp. 3d 238 (E.D.N.Y. 2024) ............................................................... 11

*McMahon v. Presidential Airways, Inc.*,
  502 F.3d 1331 (11th Cir. 2007) ...................................................................... 39

*Mobil Oil Corp. v. Higginbotham*,
  436 U.S. 618 (1978)........................................................................................ 8

*Moragne v. State Marine Lines*,
  398 U.S. 375 (1970)................................................................................... 8, 13

*National Union Fire Ins. Co. v. Califinvest*,
  1992 U.S. Dist. LEXIS 1956, *26 (S.D.N.Y. Feb. 13, 1992)...................... 29-30

*Nejad v. United States*,
  724 F. Supp. 753 (C.D. Cal. 1989) ................................................................ 40

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
  830 F.3d 152 (2d Cir. 2016)........................................................................... 17

*Renner v. Rockwell Int'l Corp.*,
  403 F. Supp. 849 (C.D. Cal. 1975) ................................................................ 14

*Renner v. Rockwell Int'l Corp.*,
  587 F.2d 1030 (9th Cir. 1978) ........................................................................ 14

*Roane v. Greenwich Swim Comm.*,
  330 F. Supp. 2d 306 (S.D.N.Y. 2004)............................................................... 7

*Rodriguez v. Oto*,
  212 Cal. App. 4th 1020, 151 Cal. Rptr. 3d 667 (2013)............................... 18, 19

*Roeder v. J.P. Morgan Chase & Co.*
  523 F. Supp. 3d 601, 606-07 (S.D.N.Y. 2021), *aff'd*, No. 21-552,
  2022 U.S. App. LEXIS 2183 (2d Cir. Jan. 25, 2022) ............................... 27, 28

*Rolon v. Henneman*,
  517 F.3d 140 (2d Cir. 2008)........................................................................... 11

*Rotella v. Wood*,
  528 U.S. 549 (2000)........................................................................... 26, 27, 28

*Schneider v. Kissinger*,
     412 F.3d 190 (D.C. Cir. 2005) ........................................................................ 34

*SEC v. Gabelli*,
     653 F.3d 49 (2d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1216,
     185 L. Ed. 2d 297 (2013) ............................................................................... 25

*Simmons v. Reich*,
     2021 U.S. App. LEXIS 32372, at *7 (2d Cir. Oct. 29, 2021) ........................... 31

*Smith v. Local 819 I.B.T. Pension Plan*,
     291 F.3d 236 (2d Cir. 2002) ...................................................................... 11-12

*Sonenberg v. Princess Cruise Lines*
     No. CV 14-08971, 2015 U.S. Dist. LEXIS 199928,
     at *23 (C.D. Cal. Apr. 22, 2015) ..................................................................... 13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
     547 F.3d 406, 425 (2d Cir. 2008) .................................................................... 25

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
     425 F.3d 119 (2d Cir. 2005) ............................................................................ 19

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
     752 F.3d 239 (2d Cir. 2014) ......................................................................... 9-10

*Tarros S.p.A. v. United States*,
     982 F. Supp. 2d 325 (S.D.N.Y. 2013) ......................................................... 33-34

*Tidewater Marine Towing, Inc. v. Dow Chemical Co.*,
     689 F.2d 1251 (5th Cir. 1982) ........................................................................ 12

*Tromp v. City of N.Y.*,
     465 F. App'x 50 (2d Cir. 2012) ....................................................................... 17

*TRW Inc. v. Andrews*,
     534 U.S. 19 (2001) .......................................................................................... 25

*Union Pac. R. Co. v. Beckham*,
     138 F.3d 325 (8th Cir. 1998) .......................................................................... 26

*United States ex rel. Ranasinghe v. Ocwen Loan Servicing LLC*,
　　No. 20-CV-02890 (OEM) (LKE), 2025 U.S. Dist. LEXIS 45070,
　　at *17 (E.D.N.Y. Mar. 12, 2025) ....................................................... 29

*United States* v. *Reliable Transfer Co.*,
　　421 U.S. 397 (1975)......................................................................... 7-8

*Vasquez v. GMD Shipyard Corp.*,
　　582 F.3d 293 (2d Cir. 2009)............................................................ 8, 9

*Vieth v. Jubelirer*,
　　541 U.S. 267 (2004)........................................................................... 33

*Wang v. Paterson*,
　　No. 07-2032, 2008 U.S. Dist. LEXIS 102495, at *4 (S.D.N.Y. Dec. 18, 2008) .............. 17

*Wahlstrom v. Kawasaki Heavy Indus.*,
　　4 F.3d 1084 (2d Cir. 1993)................................................................. 8

*Wells v. Shearson Lehman/American Express, Inc.*,
　　72 N.Y.2d 11, 530 N.Y.S.2d 517, 526 N.E.2d 8 (1988).................................... 19

*Whitaker v. Kellogg Brown & Root, Inc.*,
　　444 F. Supp. 2d 1277 (M.D. Ga. 2006) .................................................. 33, 35

*Winet v. Price*,
　　4 Cal. App. 4th 1159, 6 Cal. Rptr. 2d 554 (1992)............................................ 21

*Wolson v. Reed Elsevier Inc.*,
　　No. 09 Civ. 4040(DC), 2010 U.S. Dist. LEXIS 7533,
　　2010 WL 334919, at *1 (S.D.N.Y. Jan. 29, 2010)............................................ 16

*Yamaha Motor Corp., U.S. A. v. Calhoun*,
　　516 U.S. 199 (1996)......................................................................... 7, 8

*Zirvi v. Flatley*,
　　838 F. App'x 582 (2d Cir. 2020) ....................................................... 29

*Zuckerbraun v. Gen. Dynamics Corp.*,
　　755 F. Supp. 1134 (D. Conn. 1990).................................................... 40

**Statutes**

28 U.S.C. § 1333(1) ...........................................................................................................7

33 U.S.C. § 901..................................................................................................................8

42 U.S.C. § 1985(1) .........................................................................................................27

46 U.S.C. app. § 688 (1988) ....................................................................................8, 12, 23

46 U.S.C. § 30106....................................................................................................24, 25, 28

46 U.S.C. §§ 30301–30308.........................................................................8, 12, 13, 14, 23

7 U.S.C.S. § 1....................................................................................................................27

Cal. Civ. Code § 1542........................................................................................................21

Cal. Civ. Code § 1559........................................................................................................19

Cal. Civ. Code § 1636........................................................................................................18

Cal. Civ. Code § 1638........................................................................................................18

Cal. Civ. Code § 1639........................................................................................................18

Cal. Prob. Code § 58..........................................................................................................24

Fed. R. Civ. P. 9(b) .....................................................................................................29, 30

Fed. R. Civ. P. 12(b)(6)...........................................................................11, 15, 17, 24, 25, 32

Fed. R. Civ. P. 12(b)(1)...............................................................................................16, 34

Fed. R. Civ. P. 201............................................................................................................15

N.Y. Est. Powers & Trusts Law § 1-2.13 ................................................................... 12-13

N.Y. Est. Powers & Trusts Law § 5-4.1(1)........................................................................13

**JA200**

**Other Authorities**

2 Benedict on Admiralty § 83(a)(1).............................................................................................12

Restatement (Second) of Contracts § 302 (Am. Law Inst. 1981)...................................................19

U.S. Const. art. I, § 8 ...................................................................................................................34

U.S. Const. art. II, § 2  .................................................................................................................34

**JA201**

## PRELIMINARY STATEMENT

This case arises from the July 17, 1996, crash of a Boeing 747 operated as Trans World Airways Flight 800 ("TWA Flight 800") off the coast of Long Island. The crash resulted in the death of all 230 occupants on board. The National Transportation Safety Board's ("NTSB") investigation concluded that the likely cause of the crash was an explosion of flammable vapors in the aircraft's center fuel tank. Representatives of the aircraft's occupants sued Boeing, TWA, and Hydro-Aire, Inc. (fuel system manufacturer) within the three-year statute of limitations and those cases were consolidated in a Multidistrict Litigation ("MDL") proceeding in the Southern District of New York. The MDL resulted in full and final settlements and dismissals with prejudice pursuant to broad releases.

Plaintiffs representing six passengers onboard the flight bring the instant lawsuit against Raytheon Company ("Raytheon"), Lockheed Martin Corporation, and the United States twenty-six years after the accident and over twenty years after they settled their claims. Plaintiffs allege that on April 15, 2021, they received a presentation from a physicist, Dr. Thomas Stalcup, advising them that an errant U.S. missile hit the aircraft during testing and that they now know this was the "real" cause of the accident. Plaintiffs also contend that this revelation tolled the three-year statute of limitations until 2021 and excuses the untimely filing of this case. It does not, and Plaintiffs' claims must be dismissed for the following additional reasons.

### Plaintiffs Lack Standing to Prosecute This Action

Plaintiffs' claims fall within this Court's admiralty jurisdiction and thus substantive maritime law applies. Under maritime law, the personal representatives of the decedents' estates are the only parties with standing to prosecute these claims. While certain Plaintiffs allege that they bring these cases "as personal representative" of their respective decedents' estates, they offer

1

**JA202**

no support for this allegation that would allow the litigants to ascertain the when, how, or in what capacity they were appointed. Without alleging such basic, requisite information, Plaintiffs' Second Amended Complaint for Damages ("Complaint") fails to state a claim. Moreover, because only personal representatives can bring the claims asserted, Plaintiffs bringing suit in their individual capacities must be dismissed[1].

### *The Personal Representatives of The Decedents' Estates Released These Claims Long Ago*

The releases entered into as a result of the MDL litigation over twenty years ago unambiguously bar the claims against Raytheon here. Plaintiffs Ronald Krick, Margaret Krick, Christopher Krick, Douglas Kevorkian, Christine Grogan, and Eileen Zaharioudakis all signed the releases in either their individual or representative capacities (or both) and were all represented by counsel. While Plaintiffs Craig Gaetke, Wanda Kemp, and Michael Deteresa did not sign the releases, the personal representatives representing their respective decedents in the MDL litigation did and the releases are therefore binding upon all heirs and beneficiaries, including them.

### *The Statute of Limitations Expired Long Ago*

Plaintiffs candidly admit that their Complaint is untimely but seek relief from the three-year statute of limitations through (1) the discovery rule, (2) the doctrine of fraudulent concealment, and (3) equitable estoppel. None of these doctrines can revive Plaintiffs' untimely claims.

The discovery rule is a rule of accrual. Under the rule, Plaintiffs' causes of action accrue when they discover their "injury" and not the other elements of their claims. The "injury" was their decedents' tragic deaths and therefore the claims accrued when they learned of the deaths over twenty years before bringing this lawsuit. Their claims are thus untimely.

---

[1] Raytheon also adopts and joins Co-Defendant The United States' Rule 12(b)(1) argument on why the probate records attached to its motion demonstrate that Plaintiffs lack standing for not having a personal representative appointed.

The doctrine of fraudulent concealment must be pled with Fed. R. Civ. P. 9(b) specificity as to <u>each</u> Defendant. However, Plaintiffs' Complaint is devoid of any allegations providing the who, what, when, where, or how <u>Raytheon</u> participated in the alleged "cover-up". Moreover, the doctrine requires Plaintiffs to plead their due diligence in attempting to discover their claim during the period they seek to have tolled. No such allegations are present in the Complaint. As a result, Plaintiffs cannot utilize the doctrine to save their untimely claims.

Equitable estoppel requires a plaintiff to allege that they <u>knew</u> they had a cause of action, but the defendant lulled them into not filing a timely lawsuit. Here, Plaintiffs allege they did not file a timely suit because they did <u>not</u> know of their cause of action. Equitable estoppel therefore does not apply.

### *Assuming the Missile Theory is True, the Political Question Doctrine Bars This Action*

Additionally, dismissal of the Complaint is necessary because the allegations require this Court to adjudicate issues that the Constitution makes the sole responsibility of the Legislative and/or Executive branches of the U.S. The allegations in the Complaint squarely take aim at the U.S. Government's assessment of the need for the Aegis missile system that allegedly brought down TWA Flight 800 in view of national safety issues and its decisions regarding the development, design specifications, operability and (alleged) actual testing of the Aegis missile system—including when to test, where to test, and how to test. These matters are not to be adjudicated by the judiciary and should be dismissed under the political question doctrine.

### <u>PROCEDURAL HISTORY</u>

On June 28, 2022, thirteen Plaintiffs purporting familial relationships to seven decedents on board TWA Flight 800 commenced litigation in the United States District Court for the District of Massachusetts against U.S. governmental agencies, Raytheon Technologies Corporation,

# JA204

Raytheon Company, and Lockheed Martin Corporation seeking compensatory and non-compensatory damages under theories of negligence and strict liability for the death of their relatives on board the flight. [*See* Dkt. 1, Compl. at ¶¶ 15-27]. On September 19, 2022, Plaintiffs filed a substantively identical First Amended Complaint adding two Plaintiffs to the case. [*See* Dkt. 6, Am. Compl.]. On November 17, 2022, Plaintiffs filed the operative Second Amended Complaint ("Complaint"), correcting the caption by naming the United States in place of the government agencies, dropping Raytheon Technologies Corporation, and dropping the two Plaintiffs added to the First Amended Complaint. [*See* Dkt. 33, 2d Am. Compl. ("Compl.")]. The Second Amended Complaint is substantively identical to its predecessors.

Each Defendant filed separate motions to dismiss, [Dkts. 41, 43, 72], to which Plaintiffs responded. [Dkts. 75, 85]. The District Court denied Defendants' motions to dismiss without prejudice and ordered that the case be transferred to a proper venue pursuant to the United States' argument that venue was improper. [Dkt. 95]. The case then landed here. [Dkts. 99-100].

After the transfer, Defendants filed notice that they intended to renew their Rule 12(b) motions. [Dkts. 108-110]. Thereafter, Raytheon submitted a request to Magistrate Marutollo that sought permission to issue a limited, pre-discovery subpoena to obtain copies of the settlement agreements or releases related to the original MDL litigation. [Dkt. 131]. Plaintiffs did not oppose the request, [Dkt. 132], and Raytheon procured the releases sought from Boeing via subpoena.

This set off a series of events delaying the instant motion, including the withdrawal of Plaintiffs' former counsel, [Dkt. 159], and dismissal of the Plaintiffs related to decedent Rojany. [Dkts. 139, 148]. Ultimately, Plaintiffs acquired new counsel and a briefing schedule was entered for Defendants' motions.

4

**JA205**

### RELEVANT FACTS AND ALLEGATIONS

On July 17, 1996, a Boeing 747 operated as TWA Flight 800 departed John F. Kennedy International Airport en route to Paris, France at approximately 8:20 p.m. [Dkt. 33, Compl. at ¶ 2]. Twelve minutes after take-off, the aircraft crashed into the Atlantic Ocean resulting in the deaths of all 230 persons on board. [*Id.*] The NTSB launched an investigation into the accident, ultimately concluding that the likely cause of the accident was an explosion of flammable vapors in the plane's center fuel tank. [*Id.* at ¶ 50].

The accident resulted in a MDL venued in the Southern District of New York captioned: *In re: Air Crash TWA*, No. 1:96-cv-7986, MDL No. 1161 (Oct. 24, 1996). [*See* Ex. A, *TWA Flight 800 MDL* Docket attached to Pagano Decl.]. The representatives of the Estates of all decedents identified in the Complaint were represented by counsel in those proceedings and sued Boeing, TWA, and Hydro-Aire, Inc. All claims, including those brought on behalf of Plaintiffs' decedents, were settled and dismissed with prejudice. [*Id.* at Dkts. 261 (Kevorkian), 290 (Gaetke), 315 (Gough), 345 (Krick), 418 (Ashton L. Allen), 420 (O. Lamar Allen), 421 (O. Lamar Allen #2[2]), 470 (Dismissal of all Defendants); *see also* Ex. B, Stipulations and Orders of Dismissal attached to Pagano Decl.].

The instant Complaint alleges that the NTSB's conclusion was "false", and TWA Flight 800 was actually brought down by a "United States missile fired at aerial target drones flying nearby." [Dkt. 33, Compl. at ¶ 4]. Plaintiffs allege the Defendants, led by the U.S. government, took "active steps to mislead the families and the public, as well as conceal that the TWA 800 crash was caused by a missile, including confiscating and concealing evidence from the United States Navy." [*Id.* at ¶ 99]. Plaintiffs' Complaint does not allege any specific acts of concealment

---

[2] This action was brought separately and solely by decedent O. Lamar Allen's daughter, Dr. Christine Grogan, who is a Plaintiff here.

5

by Raytheon, or indeed specify any actions or statements it made in the course of the investigation.

As to the origin of the "cover-up," Plaintiffs allege that numerous witnesses described seeing a streak of light from the surface of the ocean moving towards TWA Flight 800 before seeing an explosion. [*Id.* at ¶ 35]. The FBI subsequently took charge of leading the investigation rather than the NTSB, which is typically tasked with investigating aviation accidents. [*Id.* at ¶ 39]. The FBI then removed all copies of Navy radar tapes that purport to show a missile near TWA Flight 800 to place them out of the NTSB's reach, and refused to allow the NTSB to conduct eyewitness interviews or review the FBI's records that indicated the true cause of the crash. [*Id.* at ¶ 40]. The FBI also threatened witnesses and enlisted the help of the CIA, which concocted materials to discredit eyewitnesses. [*Id.* at ¶¶ 39-47]. The FBI even held a nationally-televised press conference to reconcile the eyewitness testimony with the official position that the crash was caused by a defect in the center fuel tank. [*Id.* at ¶ 47]. It showed a video and animation by the CIA titled "What Did the Eyewitnesses See?" that contained a scene showing the words: "NOT A MISSILE." [*Id.* at ¶¶ 48-49]. The NTSB released a report thereafter affirming its conclusion that the explosion originated in the center fuel tank. [*Id.* at ¶ 50].

Plaintiffs allege that they only learned of the "true" cause of the accident when they attended a meeting hosted by physicist Dr. Thomas Stalcup on April 15, 2021, who informed them of "the key facts he learned in his FOIA lawsuit indicating that the TWA 800 crash was caused by a missile." [*Id.* at ¶¶ 95-100]. Plaintiffs allege that these facts are found in (1) "an 'original [Navy radar] tape' showing an object 'heading straight for TWA 800'" and another record describing an object impacting the TWA 800; (2) witness statements about seeing a flair go up and hit an object in the sky; (3) "internal government communications" indicating that a missile was involved; and (4) a private consultation with a former FBI official who informed him that drone targets were

6

**JA207**

flying in the area when TWA Flight 800 crashed. [*Id.* at ¶¶ 49, 84, 86].  Plaintiffs do not describe any of their own efforts to investigate the missile theory prior to this meeting.

Plaintiffs' allegations also focus heavily on the decision-making of the U.S. Government to take certain actions with respect to the Aegis missile program, the testing of which allegedly resulted in TWA Flight 800 being shot down. [*Id.* at ¶ 5].  Plaintiffs allege the missile program "became a high priority for the U.S. Government in 1996, when former Secretary of Defense William Perry sought a significant increase in funding for the Navy's Aegis Missile system from the U.S. Senate's Armed Services Committee." [*Id.* at ¶ 55].  Plaintiffs claim the Department of Defense proposed that the Aegis missile system proceed "as quickly as possible to production and deployment" to increase the United States' defense capability against missiles from hostile countries. [*Id.* at ¶ 56]. Plaintiffs allege that Secretary Perry "characterized the missile threat from rogue nations as 'here and now.'" [*Id.* at ¶ 57]. As a result of these governmental decisions, Plaintiffs allege that the testing of the system was expedited, conducted in close proximity to people and commercial aircraft, and resulted in the loss of TWA Flight 800. [*Id.* at ¶¶ 55-74].

## ARGUMENT

### I.    PLAINTIFFS' CLAIMS ARE GOVERNED BY MARITIME LAW

In deciding whether maritime law applies, a court must determine whether the plaintiff's claim(s) fall within the court's federal admiralty jurisdiction under 28 U.S.C. § 1333(1). *Roane v. Greenwich Swim Comm.*, 330 F. Supp. 2d 306, 311 (S.D.N.Y. 2004). With the attachment of admiralty jurisdiction comes the application of substantive admiralty law. *See Exec. Jet Aviation v. City of Cleveland,* 409 U.S. 249, 255, 266-68 (1972); *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 206 (1996). Where there is no admiralty statute governing a given issue, "the general maritime law, as developed by the judiciary, applies." *E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864 (1986) (citing *United States* v. *Reliable Transfer Co.*, 421 U.S. 397, 409

7

**JA208**

(1975)).

Plaintiffs plead that their decedents died when their aircraft "exploded and crashed into the Atlantic Ocean off the coast of Long Island, New York." [Dkt. 33, Compl. at ¶ 2]. The location of the crash was approximately eight nautical miles south of the shore of Long Island, which is within the territorial waters of the United States. *See In re Air Crash off Long Island*, 209 F.3d 200, 201-02 (2d Cir. 2000) (finding that the TWA 800 accident occurred in territorial waters). For commercial aviation accidents, there is no admiralty statute for wrongful deaths of non-seafarers[3] in territorial waters, so in these cases, the general maritime law and wrongful death action recognized in *Moragne v. State Marine Lines*, 398 U.S. 375, 395 (1970) ("*Moragne*") applies[4]. *See In re Air Crash at Belle Harbor*, 2006 U.S. Dist. LEXIS 27387, at *44 (S.D.N.Y. May 9, 2006) (citing *Yamaha Motor Corp.*, 516 U.S. at 215 n.7) (holding passenger death claims arising from crash of American Airlines Flight over Belle Harbor, New York fell within admiralty jurisdiction and thus were *Moragne* death and survival claims). Therefore, if admiralty jurisdiction attaches, Plaintiffs' wrongful death claims and survival claims are general maritime *Moragne* actions.

### a.  Plaintiffs Allege a Tort Occurring Over Navigable Water

To determine whether a tort action falls within a federal court's admiralty jurisdiction, courts apply a two-part test. *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 298 (2d Cir. 2009). "First, the alleged tort must have occurred on or over 'navigable waters.'" *Id.* (citing *Jerome B.*

---

[3] "Nonseafarers" are "persons who are neither seamen covered by the Jones Act, 46 U.S.C. App. § 688 (1988 ed.), nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*" *Yamaha*, 516 U.S. at 205 n.2. Neither statute is pled nor applies.

[4] When the Supreme Court created *Moragne* actions, it did not define all aspects of the cause of action, such as damages and beneficiaries. The Supreme Court has since noted that: "As *Moragne* itself implied, [The Death On The High Seas Act (DOHSA)] should be the courts' primary guide as they refine the nonstatutory death remedy, both because of the interest in uniformity and because Congress' considered judgment has great force in its own right." *Wahlstrom v. Kawasaki Heavy Indus.*, 4 F.3d 1084, 1090 (2d Cir. 1993) (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 624 (1978)). Thus, this brief utilizes case law applying DOHSA (46 U.S.C. §§ 30301–30308) to supplement its analysis of the *Moragne* action.

8

*Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)). "Where the tort occurred" is defined as where the alleged negligence takes effect, rather than where the negligent act occurred, so even if the negligent act at issue originates on land, this portion of the test is satisfied as long as the injuries occurred on or over navigable waters. *See In re D'Ancona*, 2023 U.S. Dist. LEXIS 16490, at *7 (E.D.N.Y. Jan. 30, 2023) (citations omitted).

Here, TWA Flight 800 exploded over, and crashed into, the Atlantic Ocean. [*See* Dkt. 33, Compl. at ¶¶ 2, 8]. As the Atlantic Ocean is navigable water, the locality requirement is clearly satisfied. *See Crawford v. Elec. Boat Corp.*, 515 F. Supp. 2d 282, 288 n.4 (D. Conn. 2007) (finding that the Atlantic Ocean "undoubtedly qualifies as 'navigable water'").

### b. The Conduct at Issue Has a Substantial Relationship to Maritime Activity and a Potentially Disruptive Influence on Maritime Commerce

The second part of the test requires that "the activity giving rise to the incident must have had a substantial relationship to traditional maritime activity, such that the incident had a potentially disruptive influence on maritime commerce." *Vasquez*, 582 F.3d at 298 (citing *Grubart*, 513 U.S. at 534). This requires two inquiries: "A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *In re Air Crash at Belle Harbor*, 2006 U.S. Dist. LEXIS 27387, at *26 (quoting *Grubart*, 513 U.S. at 534).

In assessing the potential effect of a given incident on maritime commerce, the Supreme Court has instructed courts to "begin by describing the incident 'at an intermediate level of possible generality.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 249 (2d Cir. 2014) (quoting *Grubart*, 513 U.S. at 538). "[The] description should be general enough to capture

9

**JA210**

the possible effects of similar incidents on maritime commerce, but specific enough to exclude irrelevant cases." *Id.* A court then uses the description to determine whether the type of incident at issue is "likely to disrupt [maritime] commercial activity." *Id.* (quoting *Grubart*, 513 U.S. at 538). "The overall purpose of the exercise is to determine 'whether the incident could be seen within a class of incidents that pose[] more than a fanciful risk to commercial shipping." *Id.* (quoting *Grubart*, 513 at 539). Put another way, the focus on this part of the test "is on capturing possible effects of similar incidents on maritime commerce." *Germain v. Ficarra (In re Germain)*, 824 F.3d 258, 272 (2d Cir. 2016).

Following this guidance, Raytheon submits that the incident alleged in Plaintiffs' Complaint can be described as a transoceanic commercial flight crashing into navigable waters due to military warships testing weapons in the vicinity of commercial flight paths. [*See* Dkt. 33, Compl. at ¶¶ 5, 32-37, 70-82]. That such activity could disrupt maritime commercial activity cannot reasonably be disputed. By their very nature, transoceanic flights *are* commercial activities, so their destruction disrupts maritime commerce. Similarly, the necessary search and recovery efforts following such a loss will undoubtedly block routes for commercial shipping, thereby disrupting maritime commerce. *See In re Air Crash at Belle Harbor*, 2006 U.S. Dist. LEXIS 27387, at *31-*32 (finding large piece of aircraft sinking in navigable waters satisfied test as aircraft sinking in water could create hazard for commercial vessel navigation). This portion of the test is thus satisfied.

As to the second inquiry, whether there is "a substantial relationship to traditional maritime activity" "[f]ederal courts have concluded nearly unanimously that transoceanic or island voyages, but for air travel, would have been conducted by sea [and] have a significant relationship to maritime activity." *Id.* at *27-*28 (finding "no question" that transoceanic flight from New York

10

# JA211

to the Dominican Republic bore significant relationship to traditional maritime activity) (collecting cases). Since the flight at issue was a transoceanic trip from New York to Paris that would have been conducted by sea but for air travel, it has a significant relationship to maritime activity.

As both parts of the test are met, admiralty jurisdiction attaches. This means Plaintiffs assert *Moragne* general maritime death actions, the effect of which is articulated below.

## II. BOTH THE PERSONAL REPRESENTATIVES AND INDIVIDUALS BRINGING SUIT MUST BE DISMISSED PURSUANT TO RULE 12(b)(6)

The only parties entitled to bring *Moragne* death actions are the personal representatives of the decedents' estates. This presents two problems for Plaintiffs. First, the Plaintiffs purporting to be personal representatives do not allege sufficient facts for their averment on the requirement to be taken as true. Second, Plaintiffs' bringing suit in their individual capacities must be dismissed because only personal representatives may bring the instant action.

Raytheon also joins Defendant the United States' separate argument on why the Estate documents it cites demonstrate that Plaintiffs lack standing and incorporates that argument as if set forth in full herein.

### a. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although all allegations contained in a complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *Markel Am. Ins. Co. v. Mr. Demolition, Inc.*, 717 F. Supp. 3d 238, 243 (E.D.N.Y. 2024) (quoting *Iqbal*, 556 U.S. at 678). A court is "not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240

(2d Cir. 2002)). While "detailed factual allegations" are not required, the Complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### b. Plaintiffs Fail to Properly Allege Their Status as Personal Representatives

Only the personal representative of a decedent's estate is entitled to bring a *Moragne* death action[5]. *See Complaint of Cosmopolitan Shipping Co., S. A.*, 453 F. Supp. 265, 266-67 (S.D.N.Y. 1978) (noting that the Jones Act, DOHSA, and *Moragne* maritime actions at issue vest in the personal representative of the deceased); *Beck v. Alaska Air Grp.*, No. C 02-01067 CRB, 2002 U.S. Dist. LEXIS 10017, at *5 (N.D. Cal. May 24, 2002) ("The federal courts have uniformly held that wrongful death actions under general maritime law…, may only be brought by the personal representative of the deceased's estate.") (citing *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1041 (11th Cir. 1996); *In re Complaint of Midland Enters, Inc.*, 886 F.2d 812, 816 (6th Cir. 1989); *Tidewater Marine Towing, Inc. v. Dow Chemical Co.*, 689 F.2d 1251, 1253 (5th Cir. 1982)); *In re Marquette Transp. Co. Offshore, LLC*, No. 23-6403, 2024 U.S. Dist. LEXIS 83197, at *11 (E.D. La. May 6, 2024) (same); *Futch v. Midland Enters., Inc.*, 471 F.2d 1195, 1195-96 (5th Cir. 1973) (same); 2 Benedict on Admiralty § 83(a)(1) ("The decedent's personal representative is…the proper plaintiff in *Moragne* actions."). "The 'personal representative' of the decedent must be a person empowered **by law** to administer the decedent's estate." *Homlaor v. Korean Air Lines Co.*, MDL No. 565, Misc. No. 83-0345, 84 Civ. 4083 (TPG), 1997 U.S. Dist. LEXIS 7592, at *7 (S.D.N.Y. May 29, 1997) (emphasis added). In New York, for instance, "[a] personal representative is a person who has received letters to administer the estate of a decedent." N.Y.

---

[5] The same is true under New York law. *See Jordan v. Metro. Jewish Hospice*, 122 A.D.3d 682, 995 N.Y.S.2d 610, 610 (2d Dept 2014) ("A personal representative who has obtained letters of administration to administer the estate of a decedent is the only party who is authorized to commence…a wrongful death action.").

Est. Powers & Trusts Law § 1-2.13. Thus, if the plaintiff is not a legally-appointed personal representative, they cannot bring the claim.

Plaintiffs purporting to be representatives of their decedents' estates merely allege, without more, that they bring this action "as personal representative on behalf of" their given decedents' estate. [Dkt. 33, Compl. at ¶¶ 15, 18, 21, 24, 26]. They do not allege that they were <u>legally</u> appointed as such or provide any details as to where, when, in what capacity, or by whom they were appointed. That is not enough. In *Sonenberg v. Princess Cruise Lines*, for example, the plaintiff bringing an admiralty action (DOHSA) alleged she was "the personal representative of the estate of the deceased." No. CV 14-08971, 2015 U.S. Dist. LEXIS 199928, at *23 (C.D. Cal. Apr. 22, 2015). That was insufficient because the "bare allegation" did not indicate she was appointed by a court as executrix or administratrix of her decedent's estate and thus did not give a plausible inference she was the "personal representative." *Id.* at *23-*24 (citing *Twombly*, 550 U.S. at 555). Consequently, her claim was dismissed for lack of standing. *Id.* at *24. The same result is warranted here as Plaintiffs' bare allegations that they bring this case "as personal representatives" provide no inference that they were <u>legally appointed</u> as such.

### c. Plaintiffs Asserting Claims in Their Individual Capacities Must Be Dismissed

Because personal representatives are the only parties with standing to bring *Moragne* claims, it is improper for beneficiaries to bring claims in their individual capacities and all such claims should be dismissed[6]. *See In re Marquette Transp. Co. Offshore, LLC*, No. 23-6403, 2024

---

[6] The cases cited here are specifically within the context of *Moragne* actions. The same result occurs under New York's wrongful death statute and the Death on the High Seas Act (DOHSA). *See, e.g. Cruz v. Korean Air Lines Co.*, 838 F. Supp. 843, 846-47 (S.D.N.Y. 1993) (holding that beneficiaries have no right to sue on their own behalf under DOHSA); *Homlaor*, No. 84 Civ. 4083 (TPG), 1997 U.S. Dist. LEXIS 7592 (same); *Albert v. City of N.Y.*, No. 17-cv-3957-ARR-SMG, 2018 U.S. Dist. LEXIS 179576, at *40 (E.D.N.Y. Oct. 18, 2018) (dismissing children of decedent as plaintiffs because only the personal representative of the estate has the power to bring wrongful death claims under New York law) (citing N.Y. Est. Powers & Trusts Law § 5-4.1(1)).

13

U.S. Dist. LEXIS 83197, at *10-11 (dismissing beneficiaries in their individual capacities); *Beck*, No. C 02-01067 CRB, 2002 U.S. Dist. LEXIS 10017, at *5 (noting the plaintiff would still be dismissed for lack of standing even if found to be a beneficiary because she was not a personal representative); *Renner v. Rockwell Int'l Corp.*, 403 F. Supp. 849, 851 (C.D. Cal. 1975), *vacated on other grounds in Renner v. Rockwell Int'l Corp.*, 587 F.2d 1030, 1031 (9th Cir. 1978) (holding that actions under both DOHSA and general maritime law must be brought by the personal representative and therefore all plaintiffs besides the personal representative must be dismissed).

Plaintiffs Margareta Krick, Christopher Krick, Craig Gaetke, Christine Grogan, and Michael Deteresa must be dismissed because they bring their actions solely in their individual capacities. [*See* Dkt. 33, Compl. at ¶¶ 15-27 (listing parties and their capacities)]. Similarly, as to the Plaintiffs purporting to be personal representatives that also bring claims in their individual capacities, the claims brought in their individual capacities must be dismissed. [*Id.*]

### III.    THE RELEASES BAR PLAINTIFFS' CLAIMS AGAINST RAYTHEON

In the original MDL action arising from this loss, the Estates and beneficiaries of all decedents identified in the instant Complaint were represented by counsel and sued Boeing, TWA, and Hydro-Aire, Inc. [*See* Exs. A-B, MDL Litigation Docs]. All of their claims were ultimately dismissed with prejudice pursuant to settlement. [*Id.*] Boeing provided Raytheon with copies of the releases entered into as a condition of the settlements and the terms unambiguously release the claims Plaintiffs assert.

Most, but not all, of the individual Plaintiffs here signed the releases. The Plaintiffs who did not sign the releases are still bound by them because the personal representatives of their decedents' estates did so and they are thus binding on all potential beneficiaries. Therefore, all claims must be dismissed as being barred by the releases.

14

### a. The Court's Ability to Consider the Releases

On a Rule 12(b)(6) motion to dismiss, a Court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Even where a document is not incorporated by reference, "the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). If it is "integral," it must be clear that no dispute exists as to its authenticity or accuracy and that there are no material disputed issues of fact regarding the relevance of the document. *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). A court may also consider documents subject to judicial notice under Fed. R. Civ. P. 201. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

When considering a Rule 12(b)(6) motion, "the Court retains discretion to consider even at this early stage an affirmative defense that presents a straightforward issue of law…, where the relevant facts are not in dispute." *Doe v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 401 (S.D.N.Y. 2023). In *Doe*, the court considered a release attached to a Rule 12(b)(6) motion despite it not being mentioned in the complaint because the "[t]he authenticity … is not disputed, and neither party has suggested that extrinsic evidence would inform the Court's interpretation of it." *Id.* It noted that as evaluating the agreement "present[ed] an unfettered question of law that c[ould] be resolved on a motion to dismiss [it] should not be deferred." *Id.* A related proceeding also took judicial notice of a release because it appeared authentic and "[i]ts wording (as distinguished from its legal effect) [wa]s undisputed." *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 438 (S.D.N.Y. 2022); *see also Bensky v. Indyke*, 743 F. Supp. 3d 586, 593 (S.D.N.Y. 2024)

15

**JA216**

(considering releases in related case because authenticity was not disputed and neither party suggested extrinsic evidence was needed to interpret it).

The releases here present a simple question of law (their legal effect) and there have been no challenges made that they are inauthentic. Indeed, Plaintiffs acknowledged in contesting a motion to seal the releases that "[t]he releases at issue here emerged from th[]e settlements" of the original MDL litigation. [Dkt. 174, Resp. to Mot. To Seal at PageID 467]. They also fought the sealing on the basis that "the fact of [the] settlement releases has been judicially reported." [*Id.* at PageID 473 (citing *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 208 (D. Mass. 2023)). And, when this case was transferred to this Court, Defendants requested authority to issue a subpoena for the releases, Plaintiffs did not oppose it, and the Releases were provided by Boeing. [Dkts. 131, 132, Subpoena Request and Resp.]. Thus, Defendants, Plaintiffs, and the Court have known these releases are central to these claim – and the early disposition thereof – and it makes little sense to defer their consideration.

Moreover, this situation is unique in that one Defendant – the United States – has the ability to attach the Releases as extrinsic evidence to support its Rule 12(b)(1) motion because they may deprive the Court of subject-matter jurisdiction. They will thus be a matter of record on the Court's docket and courts may take judicial notice of settlement agreements on a public docket to determine if claims are barred. *See Deylii v. Novartis Pharms. Corp.*, No. 13-CV-06669 (NSR), 2014 U.S. Dist. LEXIS 82442, at *11 (S.D.N.Y. June 16, 2014) (citing *Cowan v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67 (S.D.N.Y. 2001); *Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC*, No. 05Civ.6757 (LTS) (MHD), 2006 U.S. Dist. LEXIS 91998 (S.D.N.Y. Dec. 20, 2006); *Wolson v. Reed Elsevier Inc.*, No. 09 Civ. 4040(DC), 2010 U.S. Dist. LEXIS 7533, 2010 WL 334919, at *1 (S.D.N.Y. Jan. 29, 2010)). It would make little sense and waste judicial resources if the Court

16

were to evaluate the releases as to one Defendant but not the others when the analysis is the same. Therefore, Raytheon respectfully requests that the Court consider the releases under Rule 12(b)(6).

### b. Raytheon Is a Released Party

Attached hereto are the seven Releases governing all of the claims alleged in Plaintiffs' Complaint ("the Releases"). [Exs. C-I, Releases attached to Pagano Decl. ]. All of the releases are governed by New York law, save for the Kevorkian release, which is governed by California law. [Ex. C, Krick Release at BOE0041 at ¶ 26; Ex. I, Kevorkian Release at BOE005, ¶ 16]. The release provisions at issue are nearly identical, so Raytheon refers solely to the Krick release[7]. [Ex. C, Krick Release]. As the analysis of whether the Releases bar the claims at issue is generally the same as to each Defendant, Raytheon incorporates and references the United States' and Lockheed Martin's arguments as supplementing the arguments herein.

Under New York law, settlement agreements are contracts and are therefore construed according to general principles of contract law. *Tromp v. City of N.Y.*, 465 F. App'x 50, 51 (2d Cir. 2012) (quoting *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)). Where the language of a release is clear, effect must be given to the intent of the parties as indicated by the language of the document. *Id.* (quoting *Wang v. Paterson*, No. 07-2032, 2008 U.S. Dist. LEXIS 102495, at *4 (S.D.N.Y. Dec. 18, 2008)). A contract is unambiguous "if the contract language has a definite and precise meaning … and concerning which there is no reasonable basis for a difference of opinion." *Burrell v. Sowers*, No. 22-2687, 2023 U.S. App. LEXIS 29629, at *2 (2d Cir. Nov. 7, 2023) (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016)).

---

[7] The only differences among the release provisions cited below are the use of plural v. singular language and gender-specific language.

Generally, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276, 929 N.Y.S.2d 3, 952 N.E.2d 995 (2011) (quoting *Global Mins. & Metals Corp. v. Holme*, 35 A.D.3d 93, 98, 824 N.Y.S.2d 210 [1st Dept 2006]). "[W]ords of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." *Burrell v. Sowers*, No. 22-2687, 2023 U.S. App. LEXIS 29629, at *2 (2d Cir. Nov. 7, 2023) (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 81 A.D.3d 674, 916 N.Y.S.2d 194, 196 (2d Dept 2011)). California applies similar standards.

Under California law, "the interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement." *Gen. Motors Corp. v. Superior Court*, 12 Cal. App. 4th 435, 439, 15 Cal. Rptr. 2d 622 (1993) (citations omitted). "The existence of a valid release is a complete defense to a tort action against the releasee." *Rodriguez v. Oto*, 212 Cal. App. 4th 1020, 1026, 151 Cal. Rptr. 3d 667 (2013).

In California, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. Generally, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." *Id.* at § 1638. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible…" *Id.* at § 1639.

First, it is clear that the intent of the Releases were to include unnamed entities like Raytheon within their scope. In defining the scope of the released parties (the "Releasees"), the Releases list Boeing and other specifically-named entities as well as:

18

> …all other persons and entities not specifically identified who are or may be liable to Releasors in whole or in part for any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800 (hereinafter collectively referred to as "Releasees"). [Ex. C, Krick Release at BOE0037].

The plain language of this provision includes all entities, like Raytheon, "who are or may be liable" to Releasors for "known or unknown" damages that arise out of, relate to, or result from "the loss of TWA Flight 800." This interpretation is bolstered by ¶ 5, which states:

> 5. Releasors intend this Release to constitute a full release and discharge of any and all claims that they may have arising out of the injury to and death of Decedent. **Releasors state that they intend to release fully all individuals, entities or corporations, whether specifically named or not, that might be liable for damages arising out of the injury to or death of Decedent**…. [*Id.* at BOE0038 (emphasis added)].

This language demonstrates the Releasors' unmistakable intent to release unnamed parties from liability arising out of the death of Plaintiffs' decedents and is sufficient to do so under New York and California law[8]. *Wells v. Shearson Lehman/American Express, Inc.*, 72 N.Y.2d 11, 20-25, 530 N.Y.S.2d 517, 526 N.E.2d 8 (1988) (holding that release of "anyone else" in connection with the events at issue sufficient to release unnamed party under New York law); *Gen. Motors Corp.*, 12 Cal. App. 4th at 438, 441 (finding "any and all other persons, firms, and corporations, whether herein named or referred to or not" sufficient language to release unnamed corporation and the "rest of the world" under California law). Reading these paragraphs in conjunction leaves no doubt that entities not specifically named in the releases were contemplated within the scope of the Releases at the time of signing.

---

[8] This is also express language that the contracting parties intended to confer enforceable rights to nonparties like Raytheon. *See Rodriguez*, 212 Cal. App. 4th at 1028 (citing Restatement (Second) of Contracts § 302; Cal. Civ. Code § 1559) (noting the governing principle of whether a nonparty who claims benefits under a contract is whether contracting parties *intended* to confer the benefit rather than incidentally do so); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citation omitted) (noting a claimant must establish that the parties to the contract *intended* to confer a benefit on the third-party for it to enforce the contract as a beneficiary).

### c.  The Claims Asserted Here Were Released

The Releases also unambiguously apply to the <u>claims</u> brought here. Paragraph 3 defines what claims are released in consideration of the payment, stating:

> 3… For and in consideration of payment of the sum of [REDACTED], Releasors release and forever discharge any and all actions, causes of action…, claims, and demands whatsoever, in law, admiralty or equity, which against Releasees the Releasors ever had, now have or hereafter can, shall or may have, for, upon, by reason of, arising out of, or in any way related to the Event, including but not limited to: injury to or death of Decedent (whether assertable by Decedents heirs, beneficiaries, dependents, or personal representative, or by anyone else, and whether characterized as claims for wrongful death, survival, survivorship, personal injuries, or otherwise)…. [Ex. C, Krick Release at BOE0037-038]

This provision broadly covers "any and all" claims "whatsoever" that could arise from or relate to both the "Event[9]" or the "injury to or death of Decedent," including those assertable by the beneficiaries, personal representatives, or anyone else. As such, there can be no doubt that the claims in Plaintiffs' Complaint are covered and released. This is reaffirmed in ¶ 5, which states: "Releasors intend this Release to constitute a full release and discharge of any and all claims that they may have arising out of the injury to and death of Decedent." [*Id.*]. Paragraph 6 further expands the scope to release claims assertable by beneficiaries or claimants not specifically identified:

> 6. This Release is intended to, and Releasors represent and warrant that it will, dispose of all liability of Releasees to Releasors and all heirs and dependents of Decedent not otherwise identified, and their successors and assigns, that might now or in the future assert a claim, demand, action or bring suit arising out of injury to or the death of decedent…. [*Id.* at BOE0038-39].

---

[9] "Event" is defined as: "On or about July 17, 1996, Decedent died in the loss of TWA Flight 800, a Boeing 747-131, Registration No. N93119, off the coast of Long Island, New York (hereinafter referred to as 'Event')." [Ex. C, Krick Release at BOE0037].

20

**JA221**

Then, ¶ 8 removes any doubt as to whether claims not specifically known at the time the Releases were entered into were covered:

> 8. Releasors intend to discharge Releasees from all liability for all losses, injuries or damages arising out of the injury to or death of Decedent, both those now known and those that may be subsequently discovered. This release shall not be subject to any claim of mistake of fact or law by Releasors. Releasors also fully understand and acknowledge that facts concerning their claims may be found hereafter to be other than or different from the facts they now believe to be true. Releasors expressly accept and assume the risk of any such possible differences in facts and agree that this Release shall remain in full effect notwithstanding any such difference in facts. Releasors waive any rights or benefits conferred by any statute or common law decision with respect to unknown or unsuspected claims, including, but not limited to, Section 1542 of the Civil Code of the State of California:
>
>> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

[*Id.* at BOE0039-40]. This provision is significant for two reasons. First, Releasors understood, acknowledged, and expressly accepted the possibility that new or different facts about the accident could become known but it was their fully informed intent to release all potential claims anyway. Second, they waived their right to invoke any statutes or authority that would allow them to claim that "unknown or unsuspected claims" were beyond the scope of the release. Such language is enforceable under both New York and California law. *See Centro Empresarial*, 17 N.Y.3d at 276, 929 N.Y.S.2d at 8 ("[A] release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is 'fairly and knowingly made.'") (citations omitted); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166-69, 6 Cal. Rptr. 2d 554 (1992) (finding language releasing all known or unknown claims sufficient to bar unknown claims and identifying waiver of Cal. Civ. Code § 1542 as additional evidence of intent to do so).

In sum, the Releases unambiguously operate to release claims against known and unknown entities potentially liable for Plaintiffs' damages as well as claims that were not yet discovered at

21

the time the Releases were entered into. This speaks directly to the situation presented by the instant litigation and bars Plaintiffs' claims.

> **d. The Releases Are Binding on All Plaintiffs, Including Those Who Did Not Sign the Releases**

Plaintiffs Ronald Krick, Margareta Krick, Christopher Krick, Douglas Kevorkian, Christine Grogan, and Eileen Zaharioudakis all signed the releases in either their individual or representative capacities (or both). As such, their claims are barred. Plaintiffs Craig Gaetke, Wanda Kemp, and Michael Deteresa did not sign the Releases, but the Releases also operate to bar their claims.

Personal representatives have the sole authority to settle *Moragne* actions and do so on behalf of all beneficiaries. Their decisions are thus binding on anyone entitled to recover for the loss. In *Cruz v. Korean Air Lines Co.*, for instance, the plaintiff brought a wrongful death action arising from an airline crash "as executrix on behalf of the estate of her deceased husband and on behalf of her five adult children." 838 F. Supp. 843, 844 (S.D.N.Y. 1993). Plaintiff's attorney negotiated an $800,000 settlement authorized by the plaintiff and sent releases to plaintiff and her five adult children. *Id.* at 844-45. The plaintiff and three of her children signed the release, but eventually the plaintiff and all her children expressed their desire not to accept the settlement. *Id.* at 845. The defendant then moved to enforce the release.

The court first found that plaintiff's signature created an enforceable settlement. It then addressed the argument that the release was not binding on the children that had not signed it because they did not give authority to settle their claims. *Id.* at 846. The court rejected this argument, holding:

> [T]he children misconceive their legal status in relation to the claims for their benefit. Although claims existed for their benefit, the children had no authority either to bring or to settle such claims. They are in the position of passive

**JA223**

> beneficiaries. Roberta Cruz, as the legal representative of the decedent's estate, had the sole authority to bring claims for the children and had full authority to settle those claims, with or without her children's approval. *Id.*

This result was warranted under both New York law and the DOHSA. *Id.* Thus, the Releases agreed to by the personal representatives of Plaintiffs' decedents are binding on all beneficiaries whether the beneficiaries signed them or not. *See also In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 2179, 2017 U.S. Dist. LEXIS 193121, at *14 (E.D. La. Nov. 22, 2017) (dismissing plaintiff's claim under the Jones Act, DOHSA, and general maritime law because decedent's wife had already released defendants as personal representative and administratrix of decedent's estate); *Calton v. Zapata Lexington*, 811 F.2d 919 (5th Cir. 1987) (dismissing Jones Act admiralty claim brought by ex-wife and children of decedent because personal representative already settled the claim); *Benoit v. Fireman's Fund Ins. Co.*, 355 So. 2d 892, 894 (La. 1978) (finding that personal representative had sole authority to settle Jones Act, DOHSA, and general maritime claims); *Homlaor*, MDL No. 565, Misc. No. 83-0345, 84 Civ. 4083 (TPG), 1997 U.S. Dist. LEXIS 7592, at *8 (holding personal representative has sole control over DOHSA claims and beneficiaries "have no legal right to settle claims"). This occurred here[10]:

- For the Oliver Krick claim, Plaintiffs Ronald and Margaret Krick both signed the Release as "Co-Personal Representative of Decedent's Estate." [Ex. C, Krick Release at BOE0042-43]. Plaintiff Christopher Krick also signed the release in his individual capacity [*Id.*];

- For the Ashton L. Allen claim, non-party Betty Anne Allen signed the release as "Decedent's Mother, Personal Representative, and Administrator of Decedent's Estate" [Ex. D, A. Allen Release at BOE0065];

- For the O. Lamar Allen claim, non-party Betty Anne Allen signed the release as "Decedent's Wife, Personal Representative and Executrix of Decedent's Estate. [Ex. E, O. Lamar Allen Release No. 1 at BOE0073]. Plaintiff Christine Grogan

---

[10] Each of the Releases also contains a clause where Releasors "represent and warrant" that "there is no Executor, Executrix, Administrator, Administratrix, or other Personal Representative" other than the undersigned, who is "authorized without further court approval to execute this release on behalf of Decedent's Estate and all heirs thereto." [Ex. C, Krick Release at BOE0037, ¶ 2]. That is, save for Plaintiff Dr. Christine Grogan's Release, which only warrants that she is the daughter of her decedent. [Ex. F, Grogan Release at BOE0075, ¶ 2].

23

also signed a separate release in her individual capacity. [Ex. F, O. Lamar Allen Release No. 2 at BOE0080];

- For the Ralph Kevorkian claim, Plaintiff Douglas Kevorkian signed the release "Individually and as Personal Representative of the Estate of Ralph George Kevorkian." [Ex. I, Kevorkian Release at BOE0007].

- For the Daniel Gaetke claim, non-party Jodelle M. Gearon signed the release "Individually as Decedent's Sister and as Decedent's Personal Representative and Administrator Ad Litem of Decedent's Estate." [Ex. G, D. Gaetke Release at BOE0014].

For the Donald Gough claim, Plaintiff Eileen Zaharioudakis signed the release as "Decedent's sister and sole surviving sibling" and non-party Erik E. Gough signed the release as "Decedent's son and sole child." [Ex. H, Gough Release at BOE0022-23]. The signature of the personal representative is left blank, but Erik Gough, who was the "Special Administrator" of the California Estate, retained responsibility for pursuing wrongful death actions on behalf of the Estate, as demonstrated by the documents attached to the release. [*Id.* at BOE0031-33 at ¶¶ 3-5, 7, BOE0034-36 at ¶ 3]. Under Cal. Prob. Code § 58, the definition of "personal representative" includes "Special Administrator." Thus, Erik Gough was the personal representative of the Estate at the time the release was signed and extinguished all current and future claims related to this tragic accident.

In conclusion, the Releases at issue released Raytheon from all claims brought herein and are binding on all Plaintiffs in the present action.

IV.    **DISMISSAL UNDER F.R.C.P. 12(B)(6) IS APPROPRIATE BECAUSE THE ACTION EXCEEDS THE STATUTE OF LIMITATIONS AND FAILS TO ALLEGE FACTS TO SUPPORT TOLLING**

The Uniform Statute of Limitations for Maritime Torts ("USLMT") applies to all maritime tort claims. The statute provides that "a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." 46 U.S.C. § 30106. As the subject accident occurred on July 17, 1996, Plaintiffs acknowledge that "[u]nder

24

normal circumstances, the statute of limitations would have run" on their claims. [Dkt. 33, Compl. at ¶ 94]. They argue that the discovery rule, fraudulent concealment doctrine, and equitable estoppel render their claims timely, however[11]. [*Id.* at ¶ 95]. That is not the case.

### a. Standard of Review Specific to the Statute of Limitations

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in [an] answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 (2d Cir. 2014) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). Such is the case here.

### b. The "Discovery Rule" Does Not Render Plaintiffs' Claims Timely

When a federal statute like the USLMT does not define when a cause of action accrues, courts sometimes apply the federal "discovery rule" of accrual. While Raytheon contends that the discovery rule should not apply here[12], the result is the same if it does. Assuming, *arguendo*, that the discovery rule applies, Plaintiffs' claims are barred because their causes of action accrued on the date they learned of their "injuries." That is, when they learned that their decedents died in a plane crash on July 17, 1996.

---

[11] Plaintiffs also allege that the doctrine of "laches" saves their time-barred claims, but that doctrine no longer applies to personal injury or death claims after the enactment of the USLMT. *See In re Fire Island Ferries, Inc.*, No. CV 11-3475, 2016 U.S. Dist. LEXIS 16538, at *10 (E.D.N.Y. Feb. 4, 2016).

[12] "The standard rule is that a claim accrues when the plaintiff has a complete and present cause of action." *City of N.Y. v. FedEx Ground Package Sys.*, 351 F. Supp. 3d 456, 475 (S.D.N.Y. 2018). While lower federal courts have applied a discovery accrual rule where a federal statute is silent on the issue, the Supreme Court has disclaimed that position as its own. *Id.* (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001)). Claims of this nature, where the injury at issue is not inherently self-concealing, should be governed by the "standard rule." *See SEC v. Gabelli*, 653 F.3d 49, 59 (2d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1216, 185 L. Ed. 2d 297 (2013) ("As a general matter, [the discovery] rule does not govern the accrual of most claims because most claims do not involve conduct that is inherently self-concealing.").

**JA226**

Under the federal discovery rule, "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, **the injury** that is the basis of the litigation." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) (emphasis added) (quoting *Union Pac. R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998)); *Benzemann v. Houslanger & Assocs.*, PLLC, 924 F.3d 73, 81 (2d Cir. 2019) (same). It is anticipated that Plaintiffs will argue that the discovery rule requires that they know of both their injury "and its cause" before their claims accrue, but that is an inaccurate interpretation of the rule.

The U.S. Supreme Court has explained that "in applying a discovery accrual rule, [it] ha[s] been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000). Indeed, "delay in discovering the cause of the injury does not prevent the claim from accruing." *Franklin v. New York City*, 2017 U.S. Dist. LEXIS 20233, at *9 (S.D.N.Y. Feb. 10, 2017) (quoting *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 348-49 (S.D.N.Y. 2009) (quoting *Rotella*, 528 U.S. at 555). Put another way, "the question of when the plaintiffs knew or had reason to know of the defendant's participation in the tortious conduct is irrelevant. It is the discovery of the plaintiffs' injuries…, that starts the clock." *Litle v. Arab Bank*, No. 04-CV-5449, 2007 U.S. Dist. LEXIS 20539, at *8 (E.D.N.Y. Mar. 22, 2007) (Magistrate Pohorelsky, V.) (finding that under the discovery rule, plaintiffs' claims accrued upon sustaining physical injuries in a terrorist attack and not upon learning of defendants' role in it). Therefore, because Plaintiffs learned of their decedents' deaths immediately after this tragic accident, the claim accrued at that time.

In *Levy v. BASF Metals Ltd.*, for example, the plaintiff sustained investment losses in the platinum market in 2008 and brought suit against various defendants for causing her losses through market manipulation. 917 F.3d 106, 108 (2d Cir. 2019). She settled that claim and brought another

26

lawsuit against different defendants in 2015 for manipulating the platinum market. *Id.* She alleged

she only became aware of this different manipulation scheme through a class action complaint she

received after settling her prior lawsuit. *Id.* The federal claims in her second case were barred as

untimely.

On appeal, the plaintiff argued, *inter alia*, that the district court erred in dismissing her

claim under the Commodity Exchange Act ("CEA") because it conflated the date she suffered her

investment losses with the date her cause of action accrued. *Id.* at 108. As the CEA does not

articulate when a cause of action accrues, the Court applied the discovery accrual rule under

*Rotella*. *Id.* It rejected her argument, explaining:

> The relevant inquiry, however, is not whether Levy had discovered the identity of
> the defendants or whether she had discovered the manipulation scheme she alleges
> in her complaint. Rather, the question is when Levy discovered her CEA injury—
> that is, a loss that was the result of a CEA violation. *Id.*

Thus, because she alleged that her investment losses occurred in 2008 when the platinum market

dropped by over 50% with no explanation other than market manipulation, she knew of her CEA

injury at that time and the cause of action accrued. *Id.* at 108-109.

Similarly, in *Roeder v. J.P. Morgan Chase & Co.*, the plaintiffs, former hostages and their

family members, brought suit against Chase Bank ("Chase") for its involvement in the 1979 Iran

hostage crisis that led to the hostages' seizure and delayed release. 523 F. Supp. 3d 601, 606-07

(S.D.N.Y. 2021), *aff'd*, No. 21-552, 2022 U.S. App. LEXIS 2183 (2d Cir. Jan. 25, 2022). Plaintiffs

filed suit in March 2020 alleging various state law causes of action and a single federal cause of

action for conspiracy to impede or injure an officer of the United States in violation of 42 U.S.C.

§ 1985(1). *Id.* at 610, 612.

In their complaint, the plaintiffs relied on the discovery rule to allege that their federal

claim accrued on December 29, 2019, when the *New York Times* first revealed the records showing

27

the critical facts about how and why Chase had injured them. *Id.* at 613. The court rejected this argument[13].

It explained that Plaintiffs misread *Rotella* and their suggestion that the statute of limitations did not begin to run against a particular defendant until they knew the defendant had caused their injury was mistaken. *Id.* It stated that, "[t]he broader discussion in *Rotella* makes clear that the 'critical facts' for purposes of the discovery rule is 'discovery of the injury, not discovery of the other elements of the claim.'" *Id.* (quoting *Rotella*, 528 U.S. at 556). Thus, plaintiffs' claims accrued in January 1981 when the hostages were released from imprisonment, which was when the claim was complete and plaintiffs were aware of their injuries. *Id.* at 615. "It d[id] not matter that, at the time, Plaintiffs were not aware that the injury was a consequence of a conspiracy" as they "need not know of their cause of action for the statute of limitations to run." *Id.* (citing *Rotella*, 528 U.S. at 555-57; *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012)).

Like the plaintiffs in *Levy* and *Roeder*, Plaintiffs' claims accrued when they learned of their injuries (their decedents' deaths) and not when they allegedly learned about the involvement of any specific Defendant or cause. Moreover, Plaintiffs cannot plausibly suggest that they did not suspect that their decedents' deaths were wrongfully caused until much later because they filed suit against Boeing and other defendants in the MDL litigation alleging wrongful death. As such, the statute of limitations began to run when they learned of their decedents' deaths in 1996 and the three-year statute of limitations under the USLMT has long since passed.[14]

---

[13] The Court found that plaintiffs abandoned the argument in briefing and at oral argument, but still addressed it.

[14] At best, the latest Plaintiffs could argue their cause of action accrued was upon filing suit against Boeing and its co-defendants. At that time it is clear that they knew the deaths were wrongfully caused.

28

**JA229**

**c. Fraudulent Concealment Does Not Toll the Statute of Limitations Against Raytheon**

Plaintiffs also argue that the "fraudulent concealment doctrine toll[s] the statute of limitations in this case." [Dkt. 33, Compl. at ¶ 95]. This argument fails because Plaintiffs do not adequately plead the doctrine under Rule 9(b)'s heightened pleading standard and they cannot demonstrate that they exercised the necessary due diligence in pursuing the discovery of their claim.

Fraudulent concealment is a form of equitable tolling. *Zirvi v. Flatley,* 838 F. App'x 582, 585 (2d Cir. 2020). To invoke the doctrine, a plaintiff must show that: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch*, 699 F.3d at 157 (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)). These allegations are subject to Fed. R. Civ. P. 9(b). *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 462 (S.D.N.Y. 2020) (citing *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, No. 00-cv-7804, 2004 U.S. Dist. LEXIS 3892 (S.D.N.Y. Mar. 12, 2004)). This requires the complaint to "set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel. Ranasinghe v. Ocwen Loan Servicing LLC*, No. 20-CV-02890 (OEM) (LKE), 2025 U.S. Dist. LEXIS 45070, at *17 (E.D.N.Y. Mar. 12, 2025) (citation omitted). Plaintiffs' Complaint is devoid of these required allegations.

Critically, "[a]llegations that other defendants acted to deceive plaintiffs from filing suit do not plead fraudulent concealment against all defendants" because "[t]he doctrine of fraudulent concealment tolls the statute of limitations only as to those defendants who committed the

29

**JA230**

concealment." *National Union Fire Ins. Co. v. Califinvest*, 1992 U.S. Dist. LEXIS 1956, *26 (S.D.N.Y. Feb. 13, 1992) (emphasis in original) (quoting *Bingham v. Zolt*, 683 F. Supp. 965, 975 (S.D.N.Y. 1988)). "Thus, a plaintiff may not use fraudulent concealment by one defendant as a basis for tolling the statute of limitations against another defendant who did not engage in affirmative fraudulent acts to conceal." *Id.* (citing *Greenfield v. Kanwit*, 87 F.R.D. 129, 132 (S.D.N.Y. 1980)).

### i.    There Are No Allegations Specific to Raytheon

Plaintiffs' only allegations as to Raytheon's alleged concealment are that "these Defendants engaged in a top-down cover-up to prevent the public from learning the truth about TWA 800" and that "Defendants, led by the United States government, took active steps to mislead the families and the public, as well as conceal that the TWA 800 crash was caused by a missile, including confiscating and concealing evidence from the United States Navy." [Dkt. 33, Compl. at ¶¶ 6, 99]. However, there are no allegations as to the who, what, when, where, or how of Raytheon's actions. While Plaintiffs allege a host of actions taken by the NTSB, FBI, and CIA to cover-up the missile theory during the investigation, [*Id.* at ¶¶ 38-54], none of them allege Raytheon's involvement. As Plaintiffs are required to allege what Raytheon itself did - with Rule 9(b) specificity - their allegations fall far short. For this reason alone, Plaintiff cannot invoke fraudulent concealment to toll the statute of limitations against Raytheon.

### ii.    Plaintiffs Fail to Plead That They Acted With Reasonable Diligence[15]

"Reasonable diligence is a prerequisite to the applicability of equitable tolling." *Koch*, 699 F.3d 141, 157. "Due diligence is not adequately pled if plaintiffs did not allege in the complaint that they exercised due diligence or if they make no allegation of any specific inquiries of

---

[15] If Court evaluates Plaintiffs' diligence in discovering their cause of action under the "discovery rule," this argument also demonstrates that diligence would have provide sufficient notice for their cause of action to accrue.

30

**JA231**

defendants, or detail when such inquiries were made, to whom, regarding what, and with what response." *Fire & Police Pension Ass'n v. Bank of Montreal*, 368 F. Supp. 3d 681, 704 (S.D.N.Y. 2019) (internal citations omitted). These details are completely absent from Plaintiffs' Complaint.

Plaintiffs' allegations make clear that the missile theory was not concealed. Indeed, they identify "a nationally televised FBI press conference that attempted to reconcile the eyewitness testimony that the plane was struck by a projectile with the U.S. Government's official position." [Dkt. 33, Compl. at ¶¶ 47]. The FBI even showed a video that said "NOT A MISSILE." [*Id.* at ¶ 48]. They further allege that NTSB "told the victims' families that the idea that TWA 800 was brought down by a missile was an implausible 'conspiracy theory'" and "the same misinformation was provided to the press, which widely reported it to the public." [*Id.* at ¶¶ 52-53]. The missile theory was thus known to Plaintiffs, but there are no allegations that they made any inquiries about it despite having the ability to do so. *See Simmons v. Reich*, 2021 U.S. App. LEXIS 32372, at *7 (2d Cir. Oct. 29, 2021) (finding fraudulent concealment inapplicable where plaintiffs had notice of fraud at issue, but failed to allege any inquiries or investigations to obtain withheld information).

Plaintiffs allege that the FBI confiscated Navy radar tape showing an object headed straight for TWA 800 and that records obtained in Dr. Stalcup's FOIA litigation show an object impacting TWA 800. [Dkt 33, Compl. at ¶¶ 91-92]. They also allege a host of witnesses that saw objects in the sky consistent with a projectile, describing it as "overwhelming eyewitness testimony indicat[ing] that TWA 800 was struck by a missile." [*Id.* at ¶¶ 40-48]. Plaintiffs do not plead that they attempted to procure that Navy radar tape or any other types of documents obtained in the FOIA litigation, whether independently or through the discovery vehicles available to them in the MDL litigation when they were represented by sophisticated counsel. They also fail to describe

31

any attempt (or impediment) to speak with or depose the eyewitnesses. Therefore, they fail to allege any due diligence during the decades they seek to have tolled despite being on notice of the missile theory. They cannot invoke fraudulent concealment.

### d. Equitable Estoppel Cannot Apply

"Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit." *Ellul*, 774 F.3d at 802 (citing *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49-50 (2d Cir. 1985)). "To invoke equitable estoppel, a plaintiff must show that: '(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment.'" *Id.* (quoting *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)).

Plaintiffs' cannot utilize equitable estoppel here because they allege that they did <u>not</u> know of the existence of their cause of action against Raytheon until April 15, 2021, well after the statute of limitations had expired. [Dkt. 33, Compl. at ¶¶ 96-99]. Furthermore, as explained above, they did not plead any misrepresentations or reliance as to Raytheon. The doctrine cannot save Plaintiffs' untimely claim.

### V.    PLAINTIFFS' COMPLAINT PRESENTS NONJUSTICIABLE POLITICAL QUESTIONS REQUIRING DISMISSAL UNDER RULE 12(B)(6)

"The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or in the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). A political question exists if any one of the factors set

**JA233**

forth by the Supreme Court in *Baker v. Carr* is "inextricable from the case at bar." *Baker v. Carr,* 369 U.S. 186, 217 (1962). These factors include:

(1) A textually demonstrable constitutional commitment of the issue to a coordinate political department; or
(2) A lack of judicially discoverable and manageable standards for resolving it; or
(3) The impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or
(4) The impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or
(5) An unusual need for unquestioning adherence to a political decision already made; or
(6) The potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id*. These factors are "probably listed in descending order of both importance and certainty." *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004). The first two factors carry the most weight. *See Ctr. For Biological Diversity v. Mattis*, 868 F.3d 803, 822 (9th Cir. 2017).

In determining whether a political question exists, courts will consider the whole case, looking not only to the plaintiff's claims, but also to the defendant's potential defenses, as well as the apportionment of liability or causation, to determine whether reviewing any of them will require review of military judgments or policies. *Harris v. Kellogg Brown & Root Servs*., 724 F.3d 458, 467-77 (3d Cir. 2013) (reviewing plaintiffs' claims and defenses, including proximate cause and contributory negligence); *Lane v. Halliburton*, 529 F.3d 548, 564-65 (5th Cir. 2008) (reviewing plaintiffs' claims and elements thereof); *Id*. at 565-68 (reviewing causation); *Loquasto v. Fluor Corp*., 512 F. Supp. 3d 728, 737-38 (N.D. Tex. 2021) (reviewing defendants' affirmative defenses). The classic political question is observed when the question at issue "necessarily implicates the wisdom of the military's strategic and tactical decisions." *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d 1277, 1282 (M.D. Ga. 2006); *see also Tarros S.p.A. v. United*

33

**JA234**

*States*, 982 F. Supp. 2d 325, 332 (S.D.N.Y. 2013) ("Cases touching upon foreign relations and military affairs are, therefore, particularly sensitive to political question concerns.").

The allegations in Plaintiffs' Complaint, and Raytheon's anticipated defenses, are inextricably intertwined with matters that are textually committed to the Legislative and Executive Branches. To rule on the ultimate issues in this case, the Court must question matters of policy and decision making by these Branches. This case also requires resolution of matters for which there are no judicially ascertainable standards. Thus, because litigation of Plaintiffs' claims demands inquiry and adjudication into nonjusticiable political questions, dismissal is warranted. See *Tarros S.p.A. v. United States*, 982 F. Supp. 2d 325 (S.D.N.Y. 2013) (granting 12(b)(1) dismissal as the claim required an assessment of the United States' decision to divert a vessel near Libya during ongoing coalition action); *Can v. United States*, 820 F. Supp. 106 (S.D.N.Y. 1993) (plaintiff's claim to recover foreign assets frozen under federal law following the Vietnam War was dismissed as it presented a political question regarding United States foreign policy and military actions).

A. **The Complaint Demands Adjudication of Matters Constitutionally Committed to the Legislative and Executive Branches of Government**

The Constitution grants Congress the power to declare war, and provide for, organize, arm, maintain, and govern the military. U.S. Const. art. I, § 8, cls. 11-16. The Constitution also designates the President as the Commander in Chief of the Armed Forces. U.S. Const. art. II, § 2, cl. 1. Relying on these Constitutional provisions, courts have held that decisions regarding foreign policy and national security are textually committed to the political branches of the government. *See Grell v. Trump*, 330 F. Supp. 3d 311, 317 (D.D.C. 2018) (explaining that there is "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of government") (quoting *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005)). Additionally, there is "little doubt" that military judgments are constitutionally

34

**JA235**

committed to these branches. *Carmichael v. Kellogg, Brown & Root Servs.*, 572 F.3d 1271, 1281 (11th Cir. 2009); *see also Whitaker*, 444 F. Supp. 2d at 1281 (explaining that a political question is implicated when military decisions are at issue where the military partners with a contractor that is subject to the government's orders, regulations, and plans). Further, the Constitution "reserves to the legislative and executive branches responsibility for developing military training procedures that will ensure the combat effectiveness of [the United States'] fighting forces." *Aktepe v. United States*, 105 F.3d 1400, 1403 (11th Cir. 1997); *see also Whitaker*, 444 F. Supp. at 1280-82 (relying on *Aktepe*'s reasoning to find a political question where the claims were brought against a contractor). In these circumstances, the first *Baker* factor – i.e., "a textually demonstrable constitutional commitment of the issue to a coordinate political department" – is established. *Baker*, 369 U.S. at 217.

A good example of this is found in *Gilligan v. Morgan*, where the Supreme Court declined to review plaintiffs' request for injunctive relief regarding the Ohio National Guard's training, weaponry, and orders, observing that "[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). The *Gilligan* case involved neither foreign military operations nor active wartime decisions, but the Court nonetheless observed and respected the Constitutional commitment of military training and weaponry to the other branches of government. *Id*. at 10-12. The decision to enhance the Aegis missile system and to test it – as alleged in Plaintiffs' Complaint – is equally subject to the professional decision-making of our military.

Decisions regarding military training, and by logical extension the testing of military weapons, implicate a political question because these procedures are aimed at ensuring the

35

**JA236**

"combat effectiveness of our fighting forces." *Aktepe*, 105 F.3d at 1403 (finding analysis of NATO training exercises beyond judicial review); *see also Carmichael*, 572 F.3d at 1293 (finding that a "negligent training claim would entail judicial scrutiny of sensitive judgments customarily entrusted to the military"). These decisions result from a "complex, subtle balancing of many technical and military considerations, including the trade-off between safety and greater combat effectiveness." *Aktepe*, 105 F.3d at 1404. Thus, the government's testing of the Aegis system – including how, when and where – are not subject to judicial inquiry.

In *Aktepe v. United States*, the Eleventh Circuit found that it could not determine whether the Navy was negligent in conducting a NATO military training simulated attack exercise with Turkey when two live missiles were fired after a miscommunication, killing and injuring individuals from the Turkish forces participating in the exercise. *Id.* at 1402-03. The court explained that the determination of negligence would necessarily require the court to question the necessity of simulating actual battle conditions. *Id.* at 1403. These matters are political questions, beyond the purview of the judiciary. *See id.*

Likewise, adjudication of Plaintiffs' claims here, if true, would require the Court to question whether it was necessary for the military to test the Aegis missile system when it did, how it did, and where it did. Resolution of these issues directly implicates questions about what is necessary to prepare our nation to defend itself against foreign threats and whether the Executive Brach accurately perceived these threats as imminent. [Dkt. 33, Compl. at ¶¶ 55-58]. These are precisely the type of matters the Constitution has delegated to the Legislative and Executive branches.

Similarly, the DoD and Congress' decision to enhance the Aegis missile system, how to achieve this goal, and when to implement the system in testing or in the field, is unreviewable. In

36

**JA237**

*Concerned About Trident v. Schlesinger*, the D.C. District Court determined that the decision to begin development on a missile program and where to place its base is an unreviewable political question. 400 F. Supp. 454, 482-83 (D.D.C. 1975). The court explained that "substantive decisions relating to the national defense and national security lie within the narrow band of matters wholly [committed] to official discretion both because of the delicate security issues they raise and the constitutional delegation of those concerns to the political departments of our government." *Id.* Further, courts have declined to evaluate decisions regarding base and housing locations under the guise of political question doctrine, in that there are tactical implications as to why certain locations are chosen. *See Bancoult v. McNamara*, 445 F.3d 427, 436 (D.C. Cir. 2006). The issues Plaintiffs raise about the Aegis missile system compel the same disposition.

Plaintiffs allege that United States Secretary of Defense Perry made certain decisions regarding the Aegis system due to the "here and now" threat from rogue nations. [Dkt. 33, Compl. at ¶ 57]. Any decisions that the Department of Defense made to advance the security of our nation, keeping it safe from a perceived threat of foreign enemies, is a military decision concerning our nation's security that is exempt from judicial review. See *In re Korean Air Lines Disaster*, 597 F. Supp. 613, 616 (D.D.C. 1984) ("[P]laintiffs may not present these claims against the government based upon the decisions of the military concerning the national security.").

Further, Plaintiffs' challenge to the manufacture and warnings relating to the Aegis missile system necessarily requires inquiry into government and military decisions. Considering the claims and anticipated defenses, this action will require examination into the military design specifications for each component of the system, how the systems and features were intended to work together, whether they functioned as intended or some other feature of the system acted to inhibit intended function, whether the military specifications were followed and manufactured in

37

accordance with the specifications, whether any decision making or instruction from the military during the design or testing process caused the alleged event, and whether some act by the military was the proximate cause of the event. Determination of these issues necessarily requires evaluation of other variables and causes that involve military strategy. *See Bentzlin v. Hughes Aircraft Co.,* 833 F. Supp. 1486, 1497 (C.D. Cal. 1993) (explaining that the case requires inquiry into other possible causes of a friendly fire incident during wartime, and no fact finder could reach the manufacturing defect issue without eliminating other variables that would involve military strategy and orders to troops).

In *Amedi v. BAE Systems*, the court held that claims against a government contractor for alleged defects in its Mine Resistant Ambush Protected ("MRAP") vehicle implicated political questions that could not be evaluated by the court. 782 F. Supp. 2d 1357, 1358 (N.D. Ga. 2011). Plaintiff alleged that BAE Systems negligently designed its MRAP vehicle and because of that negligence the vehicle failed to protect her husband from the blast of an explosive device while traveling with a convoy in Iraq. *Id.* at 1351-52. Plaintiff argued that there were no military decisions involved because it was BAE's negligence that caused her husband's death. *Id.* at 1356. The court flatly rejected plaintiff's contention and concluded that the defendant would "inevitably raise the issues of the formation of the convoy, the number of vehicles selected, the route used, whether there were sufficient safeguards taken to avoid improvised explosive devices, and so forth, as a means of defending against liability and rebutting Plaintiff's assertion that issues of manufacturing were the sole cause" of decedent's death. *Id.* at 1357.

The *Amedi* court also noted that the "military decisions that could potentially have contributed" to decedent's death went well beyond the date of the incident. *Id.* The military decided the type of vehicle, that it was a priority to have it designed, and made the decision to fast-track

the production of the vehicle. *Id*. The court noted the government initiated the MRAP program in response to an urgent need to offer greater protection to military personnel and the Secretary of Defense declared this program to be of highest priority within the DoD. *Id*. at 1352. The court acknowledged that the government contractor defense could address some of the issues raised in the case, but that it also would require the court to reexamine the military decisions in "every aspect," including beyond the incident itself. *Id*. at 1357.

This Court is faced with the same issue. Specifically, in order to resolve Plaintiffs' manufacturing defect, failure to warn, and negligence claims, the Court will be compelled to assess the actions of the military during the alleged testing, including: whether and where targets or missiles should have been launched, how they should have been launched, and the timing and all other potential actions by the military that could have caused the alleged events. This Court would further have to the address the DoD, Congress, and the military's decisions in response to national security threats, including the expedited development of the Aegis missile system as one of those responses. Inquiries into military decisions would be pervasive, and Raytheon respectfully submits, beyond judicial review.

### B. There is No Judicially Discoverable, Manageable Standard for Resolving the Issues Implicated by This Lawsuit

Litigating this case to conclusion would require the Court to adjudicate questions for which there are no "judicially discoverable and manageable standards." *Baker*, 369 U.S. at 217. Other courts have concluded that they were unable to apply judicially manageable standards when the issues in a case implicate combat and training activities. *See McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1363 (11th Cir. 2007). This is the logical conclusion here too because in order to determine whether the missile testing was performed negligently, this Court would have to determine how and where a reasonable military force would have conducted the testing. As the

Supreme Court noted in a related context, "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Gilligan*, 413 U.S. at 10.

It is difficult, if not impossible, for a court to discern the relevant standards of care for cases involving military action, which often differ from those in standard tort cases. *See Carmichael*, 572 F.3d at 1288-89. For example, in *Aktepe*, where the plaintiffs alleged negligence by the Navy in a missile firing drill, the Eleventh Circuit explained that it would have to determine how a reasonable military force would have conducted such drill, but it lacked knowledge of the facts or standards sufficient to determine whether reasonable care was indeed taken, or what such reasonable care might look like. *See Aktepe*, 105 F.3d at 1404. Questions such as what a "reasonable intercept" is or what a "reasonable military training exercise" might entail, where it might occur, and the reasons it may occur in a particular location and at a particular time based on perceived threats, necessarily invoke a judicially unmanageable standard. *See generally id*.

### C. Policy Determinations Outside of the Court's Discretion are Implicated

"Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention." *Haig v. Agee*, 453 U.S. 280, 292 (1981). The political branches of government are afforded a high degree of deference regarding military affairs because the Constitution delegates such authority to them. *See Aktepe*, 105 F.3d at 1403. Decisions regarding the development of a missile program inherently call into question the decision making of the Congress and the Armed Forces. *See, e.g.*, *Bentzlin*, 833 F. Supp. at 1497 (friendly fire incident which killed Marines); *Zuckerbraun v. Gen. Dynamics Corp.*, 755 F. Supp. 1134, 1141-42 (D. Conn. 1990) (manufacturing defects in missile systems); *Nejad v. United States*, 724 F. Supp. 753, 754-55 (C.D. Cal. 1989) (missile that shot down civilian airplane in Iran); *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 843-44 (D.C. Cir. 2010) (President's decision to launch missile at foreign target).

40

**JA241**

By Plaintiffs' own word, the Aegis missile system was enhanced, designed, and implemented to counter the "here and now" threats presented by rogue nations. [Dkt. 33, Compl. at ¶ 57]. This concern also prompted the accelerated timetable to implement the system and led to its alleged testing in a congested area. [*Id.* at ¶¶ 65-74]. The reasons for developing a new radar system or enhancing a missile program in view of government perceived threats to the nation are not ripe for judicial intervention. The military and Congress' decisions to fund the program, "fast track" the program, and if true, test the program in the alleged manner and location, are all matters of policy left to these other branches of government. These issues raise nonjusticiable political questions, necessitating dismissal of the Complaint.

<u>**CONCLUSION**</u>

For the reasons set forth herein, Raytheon respectfully requests that Plaintiffs' Complaint be dismissed with prejudice, requesting costs, fees, and any other relief the Court may deem just and proper.

Dated: April 1, 2025                          Respectfully submitted,

                                              FITZPATRICK, HUNT & PAGANO, LLP

                          By:    _____
                                 Ralph V. Pagano, Esq. (RP7138)
                                 12 East 49th Street, 34th Floor
                                 New York, New York 10017
                                 T: (212) 937-4000
                                 F: (212) 937-4050
                                 ralph.pagano@fitzhunt.com

                                 *Attorneys for Defendant*
                                 *RAYTHEON COMPANY*

41

**JA242**

### LOCAL RULE 7.1(c) CERTIFICATE OF WORD COUNT COMPLIANCE

The undersigned certifies that this document complies with the word and page limitations in Local Rule 7.1(c). Each additional page beyond the 25-page limit, which was authorized by the Court, contains no more than 350 additional words per page. The entire brief contains 13,865 words, calculated in accordance with the strictures of Local Rule 7.1(c).

By: _____

Ralph V. Pagano, Esq. (RP7138)
12 East 49th Street, 34th Floor
New York, New York 10017
T: (212) 937-4000
F: (212) 937-4050
ralph.pagano@fitzhunt.com

*Attorneys for Defendant*
*RAYTHEON COMPANY*

42

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on April 1, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the U.S. District Court for the Eastern District of New York, by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants of record in this matter.

 Dated: April 1, 2025


By:    /s/ Anca Popa
               Anca Popa

# JA244

**Memorandum of Law in Support of Motion to Dismiss, dated April 1, 2025 [JA244-JA281]**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

RONALD KRICK, et al.,

                                    Plaintiffs,

                  v.

RAYTHEON COMPANY, et al.;

                                  Defendants.

--------------------------------------------------------x

Civil Action No.
1:23-cv-8093-JAM

(Donnelly, D.J.)
(Marutollo, M.J)

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LOCKHEED MARTIN CORPORATION'S MOTION TO DISMISS

---

Defendant Lockheed Martin Corporation ("Lockheed Martin"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), hereby files this Memorandum of Law in support of its Motion to Dismiss the Plaintiffs' Second Amended Complaint.

i

**JA245**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 1

    I.      Background. ................................................................................... 1

    II.    Procedural History. ....................................................................... 2

LEGAL STANDARD............................................................................................... 3

ARGUMENT ........................................................................................................... 5

    I.      Plaintiffs Lack Capacity and Standing to bring their Current Claims. ................... 6

    II.    Plaintiffs Released their Claims Arising from the Crash of TWA 800 Decades ago. ...................................................................... 12

            A.     Plain Language of Releases Require Dismissal........................................ 13

            B.     This Court Must Dismiss Irrespective of the Standard Applied .............. 16

    III.   Plaintiffs' Claims are barred by the applicable Statute of Limitations. ................. 19

    IV.   This Case Presents Nonjusticiable Political Questions, warranting dismissal........................................................................... 22

CONCLUSION........................................................................................................ 26

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*767 Third Ave. Assoc. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*,
    218 F.3d 152 (2d Cir. 2000).........................................................................................25

*Aiello v. Kellogg, Brown & Root Servs.*,
    751 F. Supp. 2d 698 (S.D.N.Y. 2011)............................................................................5

*In re Air Crash at Belle Harbor*,
    2006 U.S. Dist. LEXIS 27387 (S.D.N.Y. May 9, 2006)................................................7

*Alperin v. Vatican Bank*,
    410 F.3d 532 (9th Cir. 2005) ......................................................................................23

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974)................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)............................................4

*Baker v. Carr*,
    369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962)...............................5, 22, 23, 26

*Bao Hua Jie v. United States*,
    2024 U.S. Dist. LEXIS 162793 (E.D.N.Y. Sep. 10, 2024, No. 23-CV-4961).............13, 14, 16

*Barshay v. Naithani*,
    2023 U.S. App. LEXIS 33408 (2d Cir. Dec. 18, 2023, No. 23-382).....................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).........................................4

*Bennett v. United States Lines*,
    64 F.3d 62 (2d Cir. 1995)...........................................................................................21

*Bryant v. Steele*,
    25 F. Supp. 3d 233 (E.D.N.Y. 2014) .............................................................................3

*Burnett v. New York Cent. R. R. Co.*,
    380 U.S. 424, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965)............................................20

*Butler v. Am. Trawler Co.*,
   887 F.2d 20 (1st Cir. 1989)..................................................................................8

*Estate of Capo v. Haquif*,
   2019 U.S. Dist. LEXIS 92713 [S.D.N.Y. May 31, 2019]................................4, 7, 11

*Carmichael v. Kellogg, Brown & Root Servs.*
   572 F.3d 1271 (11th Circ. 2009)........................................................................22

*Cerbone v. International Ladies' Garment Workers' Union*,
   768 F.2d 45 (2d Cir. 1985).................................................................................21

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)................................................................................4

*Cherry v. Hillside Manor Rehab. & Extended Care*,
   No. 06-cv-3296, 2008 WL 2559378, 2008 U.S. Dist. LEXIS 48235 (E.D.N.Y. June
   23, 2008) .............................................................................................................6

*Corrie v. Caterpillar, Inc.*,
   503 F.3d 974 (9th Cir. 2007) .............................................................................22

*Cruz v. Korean Air Lines Co.*,
   838 F. Supp. 843 (S.D.N.Y. 1993) ...................................................................8, 11

*Dillman v. Combustion Engineering, Inc.*,
   784 F.2d 57 (2d Cir. 1986)..................................................................................21

*Ellul v. Congregation of Christian Bros.*,
   774 F.3d 791 (2d Cir. 2014)................................................................................5

*Fernandez v. City of NY*,
   2012 U.S. Dist. LEXIS 181631, (E.D.N.Y. Mar. 21, 2012, No. 10 CV 5933).........17

*Frederick v. Biden*,
   2023 U.S. Dist. LEXIS 200030 (S.D.N.Y. Nov. 6, 2023, No. 23-CV-7659)...........25

*United States ex rel. Geisler v. Walters*,
   510 F.2d 887 (3d Cir. 1975)................................................................................17

*Gilligan v. Morgan*,
   413 U.S. 1, 93 S. Ct. 2440, 37 L. Ed. 2d 407 (1973)...............................................24

*Glus v. Brooklyn E. Term.*,
   359 U.S. 231, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959)...............................................20

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985)...................................................................................17

*Gregory v. Monroe County Water Authority*,
    795 F. Supp. 92 (W.D.N.Y. 1992) ............................................................................7

*Hartke v. Bonhams*,
    2024 U.S. Dist. LEXIS 11483 (S.D.N.Y. Jan. 23, 2024).........................................12

*Herb v. Pitcairn*,
    325 U.S. 77, 65 S. Ct. 459, 89 L. Ed. 789 (1945)...................................................20

*Holmberg v. Armbrecht*,
    327 U.S. 392, 66 S. Ct. 582, 90 L. Ed. 743 (1946).................................................20

*In Re Air Crash off Long Island*,
    No. 96 Civ. 7986, MDL No. 1161 (S.D.N.Y. Oct. 24, 1996)..................................18

*Japan Whaling Ass'n v. Am. Cetacean Soc.*,
    478 U.S. 221, 106 S. Ct. 2860, 92 L. Ed. 2d 166 (1986).........................................22

*Joachim v. United States*,
    2023 U.S. Dist. LEXIS 173129 (E.D.N.Y. Sep. 27, 2023, No. 22-cv-5719) ......................7, 11

*Jones v. Bock*,
    549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)..........................................5

*Kamen v. American Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986)...................................................................................13

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)....................................................................................17

*Krick v. Raytheon Co.*,
    695 F. Supp. 3d 202 (D. Mass. 2023) ......................................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)........................................11

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000).......................................................................4, 11, 13, 16

*Maxwell v. Swain*,
    833 F.2d 1177, 1987 U.S. App. LEXIS 16319 (5th Cir. 1987) .............................20

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)..................................................................................4

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    438 F. Supp. 2d 291 (S.D.N.Y. 2006)..................................................................5

*Miller v. United States*,
    725 F.2d 1311 (11th Cir. 1984) ...........................................................................7

*Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum etc.*,
    577 F.2d 1196 (5th Cir. 1978) ...........................................................................23

*Osbourne v. United States*,
    164 F.2d 767, 1947 U.S. App. LEXIS 3189 (2d Cir. 1947) ..............................20

*Pearl v. City of Long Beach*,
    296 F.3d 76 (2d Cir. 2002)................................................................................20

*Prime Contrs. Inc. v. Aps Contrs. Inc.*,
    2024 U.S. Dist. LEXIS 179233 [E.D.N.Y. Oct. 1, 2024, No. 22-CV-1581].................3, 16, 17

*Ramakrishna C. V. Rao v. New York City Dep't of Parks and Recreation*,
    No. 92 Civ. 2463, 1997 U.S. Dist. LEXIS 13081 (S.D.N.Y. Aug 26, 1997) .........................21

*Republic of Colombia v. Diageo North America Inc.*,
    531 F.Supp.2d 365 (E.D.N.Y. 2007) ...................................................................5

*Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*,
    896 F.2d 674 (2d Cir. 1990)...............................................................................14

*Richards v. Johnson & Johnson, Inc.*,
    2018 U.S. Dist. LEXIS 152016 (N.D.N.Y. Mar. 30, 2018)...........................4, 6, 7

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*,
    748 F.2d 774 (2d Cir. 1984)...............................................................................17

*Schoeps v. Museum of Modern Art*,
    594 F. Supp. 2d 461 (S.D.N.Y. 2009)..................................................................7

*Roeder v. J.P. Morgan Chase & Co.*,
    2022 U.S. App. LEXIS 2183 (2d Cir Jan. 25, 2022, No. 21-552)..........................20

*Smith v. Keane*,
    1998 U.S. Dist. LEXIS 3702, 1998 WL 146225 (S.D.N.Y. 1998)..........................21

*Smith v. McGinnis*,
208 F.3d 13 (2d Cir. 2000)..................................................................................................21

*Solis v. 666 Fifth Assoc. LLC*,
2021 U.S. Dist. LEXIS 242532 (S.D.N.Y. Dec. 20, 2021) ................................................13, 16

*Stillman v. Marlboro State Hosp.*,
2003 U.S. Dist. LEXIS 18343 (S.D.N.Y. Oct. 15, 2003) .......................................................22

*Estate of Vaiselberg*,
2003 U.S. Dist. LEXIS 6166, 2003 WL 1878248 ....................................................................7

*Whyte v. Bayview Loan Servicing, LLC*,
2022 U.S. Dist. LEXIS 175095 (E.D.N.Y. Sep. 27, 2022, No. 21-CV-3301)...........................4

*In re World Trade Center Lower Manhattan Disaster Site Litigation*,
828 Fed.Appx. 734 (2d Cir. 2020)...........................................................................................13

*Yung v. Lee*,
432 F.3d 142 (2d Cir. 2005).......................................................................................................4

**State Cases**

*Carrick v. Cent. Gen. Hosp.*,
51 N.Y.2d 242, 414 N.E.2d 632, 434 N.Y.S.2d 130 (N.Y. 1980).......................................7, 11

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*,
17 N.Y.3d 269, 952 N.E.2d 995, 929 N.Y.S.2d 3 (N.Y. 2011)...............................................13

*Hernandez v. NY City Health & Hosps. Corp.*,
78 N.Y.2d 687 (1991) ..............................................................................................................19

*Mingone v. New York*,
100 A.D.2d 897, 474 N.Y.S.2d 557 (2d Dept. 1984) .................................................................7

*O'Hara v. Bayliner*,
89 N.Y.2d 636 [1997] ..............................................................................................................20

**Federal Statutes**

46 U.S.C. § 761.............................................................................................................................8

46 U.S.C. § 30106.......................................................................................................................19

**State Statutes**

N.Y. Est. Powers & Trusts Law § 1-2.13 .......................................................................6, 9

N.Y. Est. Powers & Trusts Law § 5-4.1 .........................................................................19

N.Y. Est. Powers & Trusts Law § 5-4.1(1).......................................................................6

**Rules**

Fed. R. Civ. P. § 12..........................................................................................................2, 4

Fed. R. Civ. P. § 12(b) .......................................................................................................13

Fed. R. Civ. P. § 12(b)(1)....................................................1, 3, 4, 5, 7, 11, 12, 13, 16, 26

Fed. R. Civ. P. § 12(b)(6)...........................................1, 3, 4, 5, 7, 11, 13, 16, 17, 18, 26

Fed. R. Civ. P. § 17(b)(3)....................................................................................................6

Fed. R. Civ. P. § 56............................................................................................................17

Fed. R. Evid. § 201 ......................................................................................................17, 19

NY CPLR § 214(5)............................................................................................................19

<u>**PRELIMINARY STATEMENT**</u>

This case arises out of the July 17, 1996 crash of Trans World Airlines Flight 800 ("TWA 800") into the Atlantic Ocean off the coast of Long Island, New York, resulting in the death of all 230 passengers and crew. Plaintiffs' Second Amended Complaint must be dismissed as Plaintiffs are not authorized personal representatives of estates that have been closed for decades. This lack of standing cannot be corrected through substitution or an amendment, as personal representatives—with the assistance of legal counsel—agreed to and signed general releases decades ago extinguishing all claims related to the subject crash. Plaintiffs' claims must be dismissed for other reasons also, namely as Plaintiffs' claims are barred by the expiration of the statute of limitations and the doctrine of political question. All claims warrant dismissal with prejudice pursuant to Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

<u>**STATEMENT OF FACTS**</u>

**I.      Background.**

On July 17, 1996, TWA 800 departed from John F. Kennedy International Airport at approximately 8:20 p.m. and began its transatlantic journey to Paris, France. Within minutes after takeoff, TWA 800 exploded and crashed into the Atlantic Ocean off the coast of Long Island, New York, claiming the lives of all 230 passengers and crew on board. Years of extensive investigation led to the NTSB's finding that the likely cause of the crash was an electrical fire in the aircraft's center fuel tank. Doc. No. 33 ¶ 3. Families asserted wrongful death claims by way of multi-district litigation which ultimately resulted in settlements.

1

Since the crash, multiple conspiracy theories emerged about alternative causes of the crash garnering significant media attention and leading to the vast spread of illogical and false information. Freedom of Information Act ("FOIA") litigation on behalf of physicist, Dr. Tom Stalcup, led Plaintiffs to believe that the NTSB's report is false and amounts to a coverup by the federal government. Doc. No. 33 ¶ 5,6. Further, Plaintiffs filed the present lawsuit on the premise that "Defendants, acting in concert… were testing the Aegis Weapons System and firing SM-2 missiles with live warheads from warship(s) at aerial missile targets off the coast of New York in close proximity to commercial airline flight paths." Doc. No. 33 at ¶ 5. More specifically, Plaintiffs adamantly believe that one of the missiles struck TWA 800, causing it to explode and subsequently crash into the Atlantic Ocean. Based on what Plaintiffs claim to be "newly discovered evidence" obtained from Dr. Stalcup, they initiated the present suit.

## II.    Procedural History.

Plaintiffs, through counsel, filed the instant action on June 28, 2022, in the United States District Court for the District of Massachusetts on behalf of victims Oliver Krick, Ralph G. Kevorkian, Yonatan Rojany[1], Daniel Gaetke[2], O. Lamar Allen and Ashton Allen, and Donald Gough. Doc. No. 33. However, motion practice revealed that venue was improper in Massachusetts and the Judge transferred the matter to the Eastern District of New York on

---

[1] All parties that previously appeared on behalf of victim Yonatan Rojany filed dismissals with prejudice. See Doc. No.'s 139 and 148.

[2] Jodelle Gearon previously appeared on behalf of victim Daniel Gaetke and recently filed a dismissal with prejudice. See Doc. No's 137. Similarly, Todd Gaetke (brother of victim Daniel Gaetke) previously appeared in this action individually, and recently filed a Stipulation of Dismissal with Prejudice. See Doc. No. 138. Craig Gaetke (brother of victim Daniel Gaetke) remains in this action, individually.

2

**JA254**

September 29, 2023. Doc. No. 99. Shortly thereafter, counsel for all Defendants properly expressed their intent to renew their previously filed Rule 12 motions. Doc. No.'s 108-110.

Subsequently, this Court, at Defendants' request, issued a subpoena to Boeing Company to obtain releases previously executed on behalf of the respective estates (which were unavailable when Defendants filed their dispositive motions in the District of Massachusetts). After the parties obtained the releases, this Court established a briefing schedule for Defendants' Motions to Dismiss. Subsequently, before Defendants filed their opening briefs, Plaintiffs' prior counsel filed a Motion to Withdraw, which was granted on October 8, 2024. Doc. No. 140, 152. The Court then ordered Plaintiffs Ronald Krick, Wanda Kemp, Eileen Zaharioudakis, and Douglas Kevorkian to show cause why they should be allowed to proceed *pro se* with this action on behalf of decedents Oliver Krick, O. Lamar Allen and Ashton Allen, Donald E. Gough, and Ralph G. Kevorkian estates, respectively. Doc. No. 152. The Court specifically directed each of these then *pro se* Plaintiffs to affirm that they were the sole beneficiaries of the estate, that there were no creditors, and to explain why the decedent's survivors do not defeat their status as beneficiaries. Doc. No. 152. The then *pro se* Plaintiffs never provided an adequate response to this order.

On October 18, 2024, Attorney Stephani Ayers filed a Motion to Appear Pro Hac Vice, which was granted the same day. Doc. No. 153. Subsequent to all of these developments, this Court established the most recent briefing schedule for Defendants' Motions to Dismiss which brings us before the Court at this juncture. Defendants also moved to file the subject releases under seal and Plaintiffs objected. Doc. No. 168-174. Subsequently, Defendants received permission

3

**JA255**

from Boeing to file redacted copies of the subject releases without the need for sealing, and the Court ordered the filing accordingly. Doc. No. 177-178.

## LEGAL STANDARD

Federal courts have consistently held that "the standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *See Prime Contrs. Inc. v. Aps Contrs. Inc.,* 2024 U.S. Dist. LEXIS 179233, at *11 (E.D.N.Y. Oct. 1, 2024, No. 22-CV-1581). A federal court may only exercise subject matter jurisdiction over a cause of action "when it has authority to adjudicate the cause pressed in the Complaint." *Id*. at *12 (quoting *Bryant v. Steele,* 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014). Therefore, in reviewing a motion to dismiss under Rule 12(b)(1), federal courts are required to "accept as true all material factual allegations in the complaint," and should not "[draw] inferences from the pleadings favorable to the party asserting jurisdiction." *See Whyte v. Bayview Loan Servicing, LLC*, 2022 U.S. Dist. LEXIS 175095, at *8 (E.D.N.Y. Sep. 27, 2022, No. 21-CV-3301). To prevail, parties asserting subject matter jurisdiction have the "burden of proving by a preponderance of the evidence that it exists." *Id*. (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); Federal Rule 12(b)(6).

"To survive a motion to dismiss for failure to state a claim [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Moreover, "[w]hen deciding a motion to dismiss, the Court's review is ordinarily limited

4

**JA256**

to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Richards v. Johnson & Johnson, Inc*., 2018 U.S. Dist. LEXIS 152016, at \*28 (N.D.N.Y. Mar. 30, 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, "[t]he Court may also consider 'any document not incorporated but that is, nevertheless, 'integral' to the complaint because the complaint 'relies heavily upon its terms and effect.'" *See Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

Federal courts have held that Rule 12 motions are the appropriate vehicle for raising defenses based on lack of standing and previously released claims. *See* e.g. *Estate of Capo v. Haquif*, 2019 U.S. Dist. LEXIS 92713 (S.D.N.Y. May 31, 2019). Rule 12(b)(6) is an appropriate method of raising a statute of limitations defense. *See Ellul v. Congregation of Christian Bros*., 774 F.3d 791 (2d Cir. 2014). If the allegations in a complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

And, finally, federal courts in this state have held that the political question doctrine may properly be raised under Rule 12(b)(1) and Rule 12(b)(6). *See Aiello v. Kellogg, Brown & Root Servs*., 751 F. Supp. 2d 698, 702 (S.D.N.Y. 2011); *Baker v. Carr*, 369 U.S. 186, 198, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *see also Republic of Colombia v. Diageo North America Inc*., 531 F.Supp.2d 365, 381 (E.D.N.Y. 2007). Pursuant to *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* "[a] motion to dismiss pursuant to the political question doctrine is a motion to dismiss for

5

failure to state a justiciable cause of action." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 438 F. Supp. 2d 291, 295-96 (S.D.N.Y. 2006). "[F]or a motion to dismiss on nonjusticiability to succeed, it must be clear from the Complaint that the case involves or requires determination of an inextricably linked political question." *Id.* at 295.

## ARGUMENT

Plaintiffs are not authorized personal representatives of any estate purportedly pursuing this action, and therefore lack standing and legal capacity to bring claims on behalf of the respective estates. Any opportunity to rectify this defect via amendment or otherwise at this juncture would be futile because general releases were properly executed on behalf of each respective estate in the early 2000s barring any and all future claims such as those asserted in the present action. Even if these incurable defects did not exist, Plaintiffs' claims were asserted after the expiration of the applicable statute of limitations and no tolling provision applies to revive Plaintiffs' claims. Likewise, Plaintiffs' Second Amended Complaint raises several nonjusticiable political questions that fall outside the purview of this Court warranting dismissal.

### I.    Plaintiffs Lack Capacity and Standing to bring their Current Claims.

The Federal Rules of Civil Procedure provide that "capacity to sue for individuals seeking to act in representative capacities is determined 'by the law of the state where the court is located.'" *Richards* at 28, (quoting Fed. R. Civ. P. 17(b)(3)). New York law sets forth clear rules regarding standing to sue in the context of wrongful death claims. Pursuant to N.Y. Est. Powers & Trusts L. § 5-4.1(1), "[t]he personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a

6

wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." Consequently, the individual entitled to commence a wrongful death action is not the decedent's distributee -- who is the beneficiary of the claim -- but the decedent's personal representative. *Id.* Therefore, the capacity to sue in the wrongful death context is solely vested in a duly appointed representative. New York law specifically defines a personal representative in this context as "a person who has received letters to administer the estate of the decedent. N.Y. Est. Powers & Trusts Law § 1-2.13.

Consequently, New York law prohibits individuals from bringing wrongful death claims on behalf of an estate without a duly appointed personal representative. Likewise, "[a] person who undertakes to settle the estate of [a] decedent without the formality of court administration is known as a 'voluntary administrator' and does not have the power to enforce a claim for the wrongful death or personal injuries of a decedent.'" *See Cherry v. Hillside Manor Rehab. & Extended Care*, No. 06-cv-3296, 2008 WL 2559378, at *5, 2008 U.S. Dist. LEXIS 48235, at *17-18 (E.D.N.Y. June 23, 2008); accord *Schoeps v. Museum of Modern Art*, 594 F. Supp. 2d 461, 466 (S.D.N.Y. 2009). Moreover, "the existence of a qualified administrator is essential to the maintenance of the action and [the] statutory right to recover for wrongful death does not even arise until an administrator has been named through the issuance of letters of administration." *See Estate of Capo v. Haquif*, 2019 U.S. Dist. LEXIS 92713, at *7 (S.D.N.Y. May 31, 2019) (quoting *Carrick v. Cent. Gen. Hosp.*, 51 N.Y.2d 242, 414 N.E.2d 632, 434 N.Y.S.2d 130, 134 n.2 (N.Y. 1980). Thus under New York law, "a [P]laintiff's failure to obtain the requisite letters of

7

**JA259**

administration means that the [P]laintiff cannot rightfully be a personal representative of an estate within the meaning of the statute and thus lacks capacity to bring survival and wrongful death claims." *Richards* at 31.

New York Courts have repeatedly dismissed under both Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) in instances where individuals who have not been duly appointed as personal representatives have sought to assert wrongful death claims due to a lack of legal capacity. *See* e.g. *Estate of Capo v. Haquif*, 2019 U.S. Dist. LEXIS 92713 [S.D.N.Y May 31, 2019] and *Estate of Vaiselberg*, 2003 U.S. Dist. LEXIS 6166, 2003 WL 1878248 at *1. *See also Mingone v. New York*, 100 A.D.2d 897, 474 N.Y.S.2d 557, 560 (2d Dept. 1984); *Gregory v. Monroe County Water Authority*, 795 F. Supp. 92, 94-95 (W.D.N.Y. 1992); *Joachim v. United States*, 2023 U.S. Dist. LEXIS 173129 (E.D.N.Y. Sep. 27, 2023, No. 22-cv-5719).

If this Court finds that maritime law should apply and there is admiralty jurisdiction, Plaintiffs likewise do not have standing. *Miller v. United States*, 725 F.2d 1311, 1315 (11th Cir. 1984); *See also In re Air Crash at Belle Harbor*, 2006 U.S. Dist. LEXIS 27387, at **21-39 (S.D.N.Y. May 9, 2006) (holding that cases involving the claims of the passenger decedents from the crash of American Airlines Flight 587 over Belle Harbor, New York fell within the admiralty jurisdiction of the federal courts); *see also Butler v. Am. Trawler Co.*, 887 F.2d 20, 21 (1st Cir. 1989).

In the event the Court applies substantive maritime law to this action, the Death on High Seas Act ("DOHSA") may properly be applied. DOHSA provides in pertinent part:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default
> occurring on the high seas beyond a marine league from the shore of any State, or

8

the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

46 U.S.C. § 761 et seq.

Courts have held that the difference between the New York wrongful death statute and DOHSA is "academic, [as] the New York statute has the same effect as DOHSA." See *Cruz v. Korean Air Lines Co.*, 838 F. Supp. 843, 847 (S.D.N.Y. 1993). As further set forth in *Cruz*, "[c]ourts have consistently interpreted language in § 761 [to mean] that the personal representative "may maintain a suit for damages . . . for the exclusive benefit" of other claimants to mean that only the personal representative may bring the claims of the other claimants. *Id*. at 846-847. Therefore, as Plaintiffs in this action have not been duly appointed as personal representatives for the respective estates, they lack capacity to bring the current action under both New York state and maritime law.

Plaintiffs' unsupported statements in this action claiming they are the "personal representatives" on behalf of respective estates have no basis and the Court should disregard them. Specifically, the Second Amended Complaint makes blanket assertions, without supporting documentation, that:

- (1) Plaintiff Ronald Krick brings this action individually and as personal representative on behalf of the Estate of Oliver Krick;

- (2) Plaintiff Douglas Kevorkian brings this action individually and as personal representative on behalf of the Estate of Ralph G. Kevorkian;

- (3) Plaintiff Wanda Kemp brings this action individually and as personal representative on behalf of the Estates of O. Lamar Allen and Ashton Allen; and

9

- (4) Plaintiff Eileen Zaharioudakis brings this action individually and as personal representative on behalf of the Estate of Donald E. Gough.

Doc. No. 33 ¶ 15, 18, 19, 21, 24, 26; *see also* ¶ 106, 122, 130.

In addition to the vague conclusory statements, the Second Amended Complaint fails to provide information concerning whether **any** of the named Plaintiffs are *duly appointed* personal representatives of the estates or if these self-proclaimed personal representatives are qualified to administer the estate in accordance with N.Y. Est. Powers & Trusts Law § 1-2.13. The Second Amended Complaint makes no mention of the timing of any appointments of the purported "personal representatives" in this action, and no letters of administration or documentation whatsoever accompany the Second Amended Complaint to confirm the appointment of any Plaintiff in this action.  This is perplexing in light of the fact that this very issue has been raised in this litigation. *See*, *i.e.*, Transcript of Dec. 16, 2024, Hearing, p. 16. Taken a step further, Plaintiffs aforementioned blanket assertions concerning the identities of alleged personal representatives of the respective estates contradict representations made in the general releases as follows:

| Decedents' Estates | Personal Representative Identified in the Second Amended Complaint | Personal Representative(s) Identified on the face of the Release |
|---|---|---|
| Krick | Ronald Krick | Co-Personal Representatives Ronald W. Krick and Margaret J. Krick |
| Kevorkian | Douglas Kevorkian | Douglas Kevorkian (although Christine Enlow signed the release as surviving spouse of decedent, and is also named as personal representative of the Kevorkian estate in pertinent estate documents |

10

**JA262**

|  |  | rather than Douglas Kevorkian) |
|---|---|---|
| Gough | Eileen Zaharioudakis | William E. Smith |
| O. Lamar Allen | Wanda Kemp | Betty Anne Allen |
| Ashton Allen | Wanda Kemp | Betty Anne Allen |

In light of Plaintiffs' failure to adequately provide proof of their qualifications to represent each respective estate in this action, all of the purported "personal representatives" in this action lack capacity and standing to sue for wrongful death, are unqualified to recover for the estates, and do not possess the statutory right to do so.

Notwithstanding the lack of information provided concerning the qualifications of these purported administrators, it is well understood that the respective estates in this action were opened decades ago and have been closed for several years without being reopened. A review of estate documents on behalf of the estates of Decedents Krick, Kevorkian, Gough, and the Allens reveals that each estate was closed in the early 2000s. See **Exhibit A**. Plaintiffs Kevorkian, Zaharioudakis, and Kemp are not now, nor have they ever been duly appointed representatives of the Kevorkian, Gough, or Allen estates. Similarly, estate documents reveal that back in the late 90s, Plaintiffs Margareta and Ronald Krick were appointed as personal representatives of the estate of Decedent Oliver Krick. *Id*. However, the Krick estate was closed in August of 2001 and has never been reopened, notwithstanding Margareta and Ronald Krick's representations to the Court that they have assigned their rights in the estate to their son, Christopher Krick, and expressed their wishes to have Christopher Krick serve as the executor of Decedent Krick's estate. Doc. No. 161.

11

**JA263**

Therefore, there is no indication that the remaining Plaintiffs in this action have authority to administer the respective estates or file this action; this includes the remaining Plaintiffs seeking to bring claims individually. This lack of authority is underscored by the Plaintiffs' failure to adequately respond to the Court's order directing the then *pro se* Plaintiffs to explain their relationship to the estates. Doc. No. 152; 161-163.

Much like the children of Decedent Alfredo Cruz discussed in *Cruz v. Korean Airlines Co.*, several of the Plaintiffs in this action are passive beneficiaries and have no authority to bring claims on behalf of the respective estates. *See Cruz* at 846-847 (explaining that the right to settle and litigate wrongful death claims rested with Roberta Cruz, the widow of Decedent Alfredo Cruz and duly appointed legal representative of his estate, and the children of the Decedent lacked standing to prosecute their claims). Likewise, this case is also similar to *Estate of Capo v. Haquif*, in which the Plaintiffs did not possess letters of administration at the commencement of their action, resulting in the dismissal of their action pursuant to Rule 12(b)(6). *Estate of Capo v. Haquif*, 2019 U.S. Dist. LEXIS 92713 (S.D.N.Y. May 31, 2019).

As stated in *Makarova v. United States*, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See Makarova* at 119. In *Joachim v. United States*, this Court dismissed the Plaintiff's wrongful death action pursuant to Rule 12(b)(1) because the Plaintiff had not received letters of administration for the Decedent's estate at the time of filing her complaint. *See Joachim* at *7; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 5, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (noting that the absence of standing is considered a jurisdictional defect and

12

"standing is to be determined as of the commencement of suit."); *Carrick v. Cent. Gen. Hosp.*, 51 N.Y.2d 242, 249, 414 N.E.2d 632, 434 N.Y.S.2d 130 (noting that under New York law, standing is assessed at the time of filing).

Similarly in *Hartke v. Bonhams*, a Plaintiff sought to bring an action on behalf of the estate of her uncle without being duly appointed as a personal representative of his estate, resulting in the Court's determination that she lacked standing to bring the action. As a result, the Court dismissed the niece's action for lack of subject matter jurisdiction with prejudice pursuant to Rule 12(b)(1). *Hartke v. Bonhams*, 2024 U.S. Dist. LEXIS 11483 (S.D.N.Y. Jan. 23, 2024). Plaintiffs in this action have failed to provide letters of administration to prove the existence of a duly appointed administrator on behalf of any of the respective estates involved in this action. As they lack standing, Plaintiffs' current action is jurisdictionally defective.

Providing Plaintiffs with an opportunity to correct these issues is not possible; any such attempt to become a personal representative would conflict with a predecessor estate that was opened for the purpose of resolving earlier claims arising out of this crash. Moreover, such an opportunity would be prejudicial to Defendants, further delaying the resolution of a case that has been riddled with delays since its inception due to Plaintiffs' array of ongoing issues including, but not limited to, Plaintiffs filing in the wrong venue, Plaintiffs' former counsel seeking to be relieved, and the then *pro se* Plaintiffs' delay in responding to orders concerning their relationship to the estates of the decedents.

More importantly, any amendment of the pleadings would be futile as the estates released any claims arising out of this high-profile plane crash decades ago. These broad releases were

13

signed by the estates with the representation of highly skilled counsel in exchange for significant monetary settlements.

## II.    Plaintiffs Released their Claims Arising from the Crash of TWA 800 decades ago.

Plaintiffs seek to use a conspiracy theory to litigate claims that were unequivocally released decades ago and are requesting that this Court disregard the effects and consequences of releases to enable Plaintiffs to relitigate barred and expired claims. This Court has offered differing opinions concerning the proper vehicle under Federal Rule 12(b) in which to present evidence of releases for the purposes of dismissal as will further be discussed below. Irrespective of whether the argument is made under Rule 12(b)(1) or 12(b)(6), this Court has sufficient grounds to dismiss Plaintiffs' claims due to the execution of broad releases on behalf of each respective estate.

### A.  Plain Language of Releases Require Dismissal

When "resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court… may [consider] evidence outside the pleadings." *See Makarova* at 113; *see also Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). A "valid release" typically operates as "a complete bar to an action on a claim which is the subject of the release." *Bao Hua Jie v. United States*, 2024 U.S. Dist. LEXIS 162793, at *7-8 (E.D.N.Y. Sep. 10, 2024, No. 23-CV-4961) (quoting *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 952 N.E.2d 995, 1000, 929 N.Y.S.2d 3 (N.Y. 2011). Moreover, "[i]f the language of the release is unambiguous, the signing of the release is binding on the parties. *Id*. Courts in this circuit have held that settlements have "the effect of mooting subsequent claims by a third party contemplated in the settlement agreement*." Solis v. 666 Fifth Assoc. LLC*, 2021 U.S. Dist. LEXIS

14

242532, at *8 (S.D.N.Y. Dec. 20, 2021); *see also In re World Trade Center Lower Manhattan Disaster Site Litigation*, 828 Fed.Appx. 734, 736 (2d Cir. 2020).

Generally, a Plaintiff's release of all claims against a Defendant devoids the Plaintiff of any cognizable interest in a related subsequent lawsuit asserting the same or similar claims. *Solis v. 666 Fifth Assocs*. *See also Barshay v. Naithani*, 2023 U.S. App. LEXIS 33408 (2d Cir. Dec. 18, 2023, No. 23-382). Our Courts have held that a motion to dismiss for failure to state a claim may only be decided after determining that the Court has subject matter jurisdiction to hear the case. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). If a court lacks subject matter jurisdiction, it cannot properly address the merits of a Defendant's arguments that a Plaintiff has failed to state a claim for relief. *See Boa Hua Jie v. United States,* at *4. Here, the Court lacks subject matter jurisdiction over Plaintiffs' claims due to the existence of valid releases executed decades ago.

Plaintiffs instituted the present action despite the existence of previously executed *Releases of All Claims* entered into on behalf of each respective estate during the late 90's and early 2000s in response to the TWA 800 crash. *See* **Exhibit B**.  The releases brought an end to multi-district litigation resulting from the crash, namely case number 1:96-cv-7986, which consolidated various related cases. Each release contained the same language, with the exception of differing releasor and attorney's names to coincide with each respective estate. Each respective release contains clear language barring any future claims, such as the ones currently instituted. Specifically, the releases contain the following specific language including but not limited to the following:

> Releasors state that they intend to release fully all individuals, entities or corporations, whether specifically *named or not*, that might be liable for damages

15

arising out of the injury to or death of Decedent. Releasors agree that they will not, directly or indirectly, make or cause to be made any further action against any person (including any individual, corporation or other entity) for losses, damages, or injuries arising out of the injury to or death of Decedent.

*Exhibit B, Section 5* (emphasis added).

Further, Section 8 of the releases expressly provides the following clear language that

operates as a bar the present action:

Releasors enter this release contemplating the possibility that facts may be subsequently discovered that could support claims as yet unasserted against Releasees for compensatory, consequential and/or punitive damages. Releasors realize that losses, injuries or damages not now known may be subsequently discovered and that their known losses, injuries or damages may prove to be greater than presently believed. Releasors assume all risk, chance or hazard that their losses, injuries or damages may be or become permanent, progressive, greater or more extensive than is now known, anticipated or expected.  Releasors intend to discharge Releasees from all liability for all losses, injuries or damages arising out of the injury to or death of Decedent, both those now known and those that may be subsequently discovered. This Release shall not be subject to any claim of mistake of fact or law by Releasors. *Releasors also fully understand and acknowledge that facts concerning their claims may be found hereafter to be other than or different from the facts they now believe to be true. Releasors expressly accept and assume the risk of any such possible differences in facts and agree that this Release shall remain in full effect notwithstanding any such difference in facts.*

*Exhibit B, Section 8* (emphasis added).

Each Defendant in this action can be rightfully considered as an anticipated Releasee within

the meaning of the releases. The first page of the releases includes inclusive language to expand

the definition of Releasees and includes the following description of additional parties as Releasees

under the agreements:

[A]ll other persons and entities not specifically identified who are or may be liable to Releasors in whole or in part for any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800.

16

**JA268**

*Exhibit B, Pg. 1.*

Notwithstanding the unambiguous release language, Plaintiffs opted to proceed with the instant lawsuit for the exact same incident that is the subject matter of the prior lawsuit. Within each release, the Releasors acknowledged that they signed knowingly, voluntarily, and of their own free will, and expressly confirmed that they consulted with their attorneys concerning the release and had been fully advised with respect to their rights and obligations thereunder. *See* **Exhibit B**, Sections 17-18. In addition, *Stipulations and Orders of Dismissal with Prejudice of all Claims* arising from the deaths of each decedent referenced in this action were executed in the early 2000s. The *Stipulations and Orders of Dismissal* are referenced in each respective court docket, which is publicly accessible.

Plaintiffs recently acknowledged the existence and validity of the releases. Doc. No. 174. There is simply no basis to contest that they are binding on Plaintiffs. The parties to each respective release indicated that they were the "sole heirs at law of Decedent and that there is no "Executor, Executrix, Administrator, Administratrix, or other Personal Representative of the Will or of the Estate of Decedent other than the undersigned…'" **Exhibit B**, **Section 2**. Additionally, the releases extended to "all heirs and dependents of Decedent[s] not otherwise identified, and their successors, and assigns that may now or in the future assert a claim, demand, action or bring suit arising out of injury to or death of Decedent." **Exhibit B, Section 6**. Each Releasor to the subject releases signed each release with knowledge that any future claim on behalf of each respective estate would be barred, and with the intent that their claims would be forever discharged. Therefore, the current

17

action is barred by the subject releases, and this Court is devoid of jurisdiction over Plaintiffs' claims.

### B. This Court Must Dismiss Irrespective of the Standard Applied

Although not attached to Plaintiffs' Second Amended Complaint, the Court has authority to review and consider the releases to determine whether it lacks subject matter jurisdiction under Rule 12(b)(1). *See Makarova* [cite] at 113. This Court allowed the subpoena to Boeing to retrieve copies of the releases and their authenticity is undisputed. In fact, this Court recently dismissed at the same stage a Plaintiff's complaint for lack of subject matter jurisdiction due to a settlement effectively releasing all of the Plaintiff's claims. *See Bao v. United States,* 2024 U.S. Dist. LEXIS 162793 (E.D.N.Y. Sep. 10, 2024, No. 23-CV-4961)*; see also Solis v. 666 Fifth Assocs*., 2021 U.S. Dist. LEXIS 242532 (S.D.N.Y. Dec. 20, 2021).

Alternatively, dismissal is warranted under Federal Rule 12(b)(6). *Prime Contrs. Inc. v. Aps Contrs. Inc*., at *15-16 (finding that a challenge to contractual standing implicates the merits of a claim rather than a court's subject matter jurisdiction).[3] Generally, when ruling on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he Court [typically] limits itself to facts stated in the complaint, documents attached to the complaint as exhibits, or incorporated in the complaint by reference." *Fernandez v. City of NY*, 2012 U.S. Dist. LEXIS 181631, at *5 (E.D.N.Y. Mar. 21, 2012, No. 10 CV 5933). However, "the Court may also take judicial notice of matters, as per Fed. R. Evid. 201." *Id*. at *6; *Kramer v. Time Warner Inc*., 937

---

[3] Defendants recognize the differences in the case at bar from *Prime*, as Defendant Lockheed is not a signatory to the release but is a third party beneficiary of this broad release.

**JA270**

F.2d 767, 773 (2d Cir. 1991) (citing *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985), and *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). "A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Kramer* at 774 (2d Cir. 1991) (citing *United States ex rel. Geisler v. Walters*, 510 F.2d 887, 890 n.4 (3d Cir. 1975)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Fernandez* at *7.

"A court may only take 'judicial notice of a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.'" *Prime Contrs. Inc. v. Aps Contrs. Inc.*, at *19. In some instances where courts have opted to take judicial notice of matters outside of the Complaint, they have chosen to convert the motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56. Although similar instances of such conversion have occurred during litigation in this very Court and within this circuit, this matter presents differing circumstances that may reasonably be considered to warrant dismissal under Rule 12(b)(6) as will further be discussed below.

Although the releases are not attached to the Complaint or in any way incorporated by reference, the Massachusetts District Court previously took judicial notice that "Plaintiffs previously sued Boeing, TWA, and Hydro-Aire (fuel system manufacturer) in the Southern District of New York and received a settlement. [Doc. 74 at 14]; *see In Re Air Crash off Long*

19

**JA271**

*Island*, No. 96 Civ. 7986, MDL No. 1161 (S.D.N.Y. Oct. 24, 1996); *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 208 (D. Mass. 2023). Likewise, in the present case, the Court has (1) acknowledged and reviewed the subject releases on various occasions before setting a briefing schedule on this motion; (2) granted the parties' request to issue subpoenas to non-party Boeing Company for production of the settlement agreements or releases relating to the Plaintiffs or decedents identified in the Second Amended Complaint. Doc. No. 152 at 4; and (3) recently ordered the filing of the subject releases on the public docket. Doc. No. 177, which in and of itself will provide this Court with sufficient grounds to take judicial notice of the releases.

Plaintiffs do not dispute the existence or importance of the releases and have made strong assertions about the public's interest concerning the settlements, specifically noting that the "TWA 800 disaster and resulting lawsuits have garnered massive media attention, and that "[n]umerous press reports covered the litigation and eventual settlements." Doc. No. 174. Plaintiffs themselves have asserted that the releases are "judicial documents," and recently argued that "[d]ocuments submitted to the court in support of a motion to dismiss are quintessential judicial records." Doc. No. 174. Likewise, Plaintiffs themselves have also referenced this Court's acknowledgement of the existence of the subject releases, along with the Massachusetts District Court's acknowledgment of the prior settlements. Doc. No. 174 at 8.

Given the publicity surrounding the settlement itself, the publicly accessible Stipulations and Orders of Dismissals filed on behalf of the Plaintiffs, this Court's acknowledgement of the prior settlement and existence of releases, and Plaintiff's acknowledgment of the releases, this Court may reasonably take judicial notice of the releases pursuant to Fed. R. Evid. 201 without

20

need to convert the present motion to a motion for summary judgment. Based on the current facts, the existence of the releases is generally known within this trial Court's territorial jurisdiction and can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. On its face, the release language is unequivocally clear enough to show that Plaintiffs' current claims are forever barred and are not rightfully before this Court. Therefore, dismissal with prejudice is appropriate under the circumstances because affording Plaintiffs the opportunity to establish standing at this time would undermine the purpose and effect of the releases which contemplated the present claims.

### III.     Plaintiffs' Claims are barred by the applicable Statute of Limitations.

Pursuant to New York Est., Powers & Trusts Law § 5-4.1, an action to recover damages for wrongful death must be commenced within two years after decedent's date of death. Failure of a personal representative to commence an action for wrongful death within two years of the date of decedent's death bars the action. *See Hernandez v. NY City Health & Hosps. Corp*., 78 N.Y.2d 687 (1991). Similarly, New York generally assigns a three-year period to personal injury claims. See N.Y. C.P.L.R. § 214(5). However, 46 U.S.C. § 30106 sets forth the applicable statute of limitations for maritime actions and states: "Except as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." 46 U.S.C. § 30106. As aforementioned, regardless of whether maritime law or New York state law governs this action, Plaintiffs claims are equally barred as untimely because Plaintiffs [knew or had] "reason to know of the injury that is the basis of this action well before the statute of limitations expired." *See Roeder v. J.P. Morgan Chase & Co*.,

21

2022 U.S. App. LEXIS 2183 (2d Cir Jan. 25, 2022, No. 21-552) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

Here, Plaintiffs filed their original Complaint on June 28, 2022. At the latest, the statute of limitations ran on July 17, 1999, making Plaintiffs' Second Amended Complaint over two decades too late. Therefore, it would be prejudicial to Defendants to allow Plaintiffs to proceed with this lawsuit in light of the expiration of the statute of limitations.

Pursuant to *O'Hara v. Bayliner*, "[t]he well-settled and limited circumstances for equitable tolling of the statute of limitations are summarized as follows: (1) the plaintiff timely filed the complaint in the wrong forum (see, *Burnett v. New York Cent. R. R. Co*., 380 U.S. 424; *Herb v. Pitcairn*, 325 U.S. 77; *Maxwell v. Swain*, 833 F.2d 1177, supra; see also, *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, (2) the Defendant actively misled the plaintiff (see, *Glus v. Brooklyn E. Term*., 359 U.S. 231; *Holmberg v. Armbrecht*, 327 U.S. 392), or (3) the Plaintiff in some extraordinary way had been prevented from complying with the limitations period (see, *Osbourne v. United States*, 164 F.2d 767, 769)." *O'Hara v. Bayliner*, 89 N.Y.2d 636, 646 [1997]. Here, Plaintiffs' Second Amended Complaint cannot reasonably be considered as timely because it was filed decades after the statute of limitations expired. Plaintiffs have not alleged sufficient facts to indicate that Defendant Lockheed Martin Corporation misled them in any form or fashion. Plaintiffs vaguely indicate in the Complaint that Defendants "took active steps to mislead the families and the public, as well as conceal that the TWA 800 crash was caused by a missile, including confiscating and concealing evidence from the United States Navy." Doc. No. 33 ¶ 100. However, Plaintiffs fail to explicitly assert how Defendant Lockheed Martin Corporation

22

## JA274

specifically misled them. Plaintiffs indicate that they learned "key facts" during a meeting with Dr. Stalcup on April 15, 2021, however, they fail to include pertinent information about said key facts or an explanation of why those facts were incapable of discovery within the statutory time period. *Id*. at ¶ 98. For the same reasons, Plaintiffs cannot reasonably argue that they were prevented in some extraordinary way from complying with the limitations period and have not alleged sufficient facts to support such an assertion.

Equitable tolling is distinct from the doctrine of equitable estoppel; equitable tolling prevents the running of a statute of limitations against a Plaintiff who is unaware that he has a cause of action because of Defendant's fraudulent acts or concealment. *See Dillman v. Combustion Engineering, Inc*., 784 F.2d 57, 60 (2d Cir. 1986); *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48-49 (2d Cir. 1985). According to *Bennett v. United States Lines*, "[t]he doctrine may be applied in cases where the defendant is shown to have "engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action." *Bennett v. United States Lines*, 64 F.3d 62, 66 (2d Cir. 1995) (quoting *Cerbone*, 768 F.2d at 48). Equitable tolling, which allows a party to file an action beyond the expiration of a statute of limitations, "applies only in the rare and exceptional circumstance." *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Our Courts have held that in order to effectively plead the doctrine of equitable tolling, the plaintiff must plead "(1) the wrongful concealment by the defendant of its actions; (2) the failure by the plaintiff to discover the operative facts underlying the action within the limitations period, and (3) the plaintiff's due diligence to discover the facts." *See Ramakrishna C. V. Rao v. New York City Dep't of Parks and Recreation*, No. 92 Civ. 2463, 1997 U.S. Dist.

23

LEXIS 13081, *15-16 (S.D.N.Y. Aug 26, 1997) (citing *Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986)); *Smith v. Keane*, 1998 U.S. Dist. LEXIS 3702, 1998 WL 146225 at *4 (S.D.N.Y. 1998). *See also Stillman v Marlboro State Hosp.*, 2003 U.S. Dist. LEXIS 18343, at *4 (S.D.N.Y. Oct. 15, 2003).

Here, Plaintiffs alleged fraudulent concealment and an alleged coverup on behalf of the Defendants. Plaintiffs failed to show that they have acted diligently to discover the "newly discovered evidence." It is difficult to understand how any "key facts" were discovered 20+ years after this incident in light of the scope of the NTSB investigation, international publicity, and prior litigation where Plaintiffs were represented by legal counsel. Even if the Court were to determine that equitable tolling applies under the circumstances, Plaintiffs have effectively released their claims in this action, mooting any potential relief under the statute of limitations.

### IV.    This Case Presents Nonjusticiable Political Questions, warranting dismissal.

In their Second Amended Complaint, Plaintiffs raise nonjusticiable political questions concerning military affairs which falls outside the purview of federal courts. The political question doctrine prohibits federal courts from evaluating questions committed exclusively to coordinate branches of government. *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 982 (9th Cir. 2007); *Carmichael v. Kellogg, Brown & Root Servs.*, 572 F.3d 1271 at 1280. In *Baker v. Carr*, the Supreme Court identified the following six characteristics of political-question cases:

> (1)    A textually demonstrable constitutional commitment of the issue to a coordinate political department; or

24

# JA276

(2)    A lack of judicially discoverable and manageable standards for resolving it; or

(3)    The impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or

(4)    The impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or

(5)    An unusual need for unquestioning adherence to a political decision already made; or

(6)    The potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962).

While there is some room for overlap amongst the analyses, these are six independent tests—if any one factor is inextricably present, dismissal is appropriate. *Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005); see also *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum etc.*, 577 F.2d 1196, 1203 (5th Cir. 1978). Similar to the many cases that directly implicate military affairs, this case raises a nonjusticiable political question and exhibits most of the characteristics of political question cases as set forth in *Baker*. Plaintiffs' Second Amended Complaint contains multiple allegations that invoke the political question doctrine. Specifically, Plaintiffs allege:

- Testing missiles off the east coast of the United States was a departure from prior practices. (Doc. No. 33, ¶ 32.)

- The missile program that resulted in the crash of TWA 800 became a high priority for the U.S. Government in 1996 when then Secretary of Defense William Perry sought an increase in funding for the Navy's Aegis Missile system. (*Id.* ¶ 55.)

- DOD proposed that this missile system proceed "as quickly as possible to production and deployment" in order to increase defense capabilities against missiles

25

from hostile countries. (*Id.* ¶ 56.)

- In a news briefing from the Missile Defense Agency and DOD, Secretary Perry characterized the missile threat from rogue nations as "here and now." (*Id.* ¶ 57.)

- Funding was approved and the Navy accelerated testing and development of the next-generation Aegis Missile System. (*Id.* ¶ 58.)

- Lockheed Martin designed the SPY-ID(V) radar pursuant to design plans and specifications. (*Id.* ¶ 145.)

- At that time there were no Navy ships that could accommodate the new radar and computer systems, so the radar testing was conducted from CSEDS. (*Id.* ¶¶ 63-64.)

- Instead of waiting five years for the ships to be constructed with the SPY-ID(V) radar so that testing could be conducted far from congested air corridors and at established test ranges, the SPY-ID(V) radar was tested on an expedited basis in and around the CSEDS in New Jersey. (*Id.* ¶ 65.)

- The United States "worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800" and was "responsible for the decision to test missiles in the area where TWA 800 was downed." (*Id.* ¶¶ 114-16, 126-28.)

Therefore, it is quite evident that litigating this matter will certainly require consideration of the "foreign policy and national security" issues that courts recognize are outside of the scope of Article III's purview. Adjudication of the claims and defenses regarding Lockheed Martin's alleged negligence or any alleged product defect will require reviewing, among other things: (1) the DOD's decisions to make the Navy's Aegis missile system a high priority in 1996; (2) the decision to proceed "as quickly as possible to production and deployment" in order to increase defense capabilities against missiles from hostile countries; (3) the decision by the Navy to accelerate testing and development of the Aegis Weapons System; (4) the decision to conduct the SPY-ID(V) radar testing from CSEDS and off the East Coast near civilian air traffic (and the area

26

where TWA 800 was allegedly downed) on an expedited basis instead of waiting five years for the SPY-ID(V) radar to be installed on Navy ships; (5) the decision to depart from prior practices and test missiles off the East Coast; (6) the DOD's procurement decisions related to the SPY-ID(V) radar; and (7) the design plans and specifications of the SPY-ID(V) radar. Plaintiffs put these decisions directly at issue in the Second Amended Complaint. As the Supreme Court stated in *Gilligan v. Morgan*, these are all complex, "subtle, and professional decisions as to the composition, training, equipping, and control of a military force" and therefore improper for judicial second-guessing. *Gilligan*, 413 U.S. 1, 10 (1973).

In the event that this Court does not find that the Second Amended Complaint raises a political question, Lockheed Martin's anticipated affirmative defenses will likely raise political questions. As with any tort, causation is key here; Lockheed Martin would raise defenses and issues that directly call into question the military decision-making regarding the testing of the SPY-ID(V) radar as alleged by Plaintiffs. Lockheed Martin's defenses will require, among other things: (1) analyzing the SPY-ID(V) radar and other system specifications; (2) analyzing any decision-making by the United States with respect to when and where the testing was conducted; (3) subpoenaing all relevant military personnel records; (4) subpoenaing all relevant training manuals and documents for relevant military personnel conducing the alleged testing; (5) determining if operator error led to the alleged errant missile; and (6) determining if a product defect of another system not produced by Lockheed Martin was causal. Thus, Lockheed Martin's defenses in and of themselves raise a nonjusticiable political question. As illustrated in *767 Third Ave. Assoc. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*, in instances where "adjudication would

27

force the court to resolve political questions, the proper course for the courts is to dismiss." *767 Third Ave. Assoc. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*, 218 F.3d 152, 164 (2d Cir. 2000). *See also Frederick v Biden*, 2023 U.S. Dist. LEXIS 200030 (S.D.N.Y. Nov. 6, 2023, No. 23-CV-7659) (where Plaintiff's case was dismissed for lack of subject matter jurisdiction because his claims challenged policy choices and value determinations constitutionally committed for resolution to Congress).

Lastly, in order to adequately defend against Plaintiffs' products liability claims, Lockheed Martin will have to question the military decisions behind the testing of the SPY-ID(V) radar—decisions regarding the location, timing, type of missile(s), which Navy ships were involved, the Navy personnel involved, etc. These decisions would also relate back to when the United States made choices concerning the design of the various systems operated with the SPY-ID(V) radar. These questions are relevant to whether the SPY-ID(V) radar was the proximate cause of TWA 800's crash. Ultimately, it would be impossible for the Court to decide the issues in this case without making an initial policy determination of a kind clearly for non-judicial discretion (the third *Baker* factor). And the Court could not independently resolve these issues while simultaneously extending the Executive and Congress the respect due to a coordinate branch of government (the fourth *Baker* factor). The political question that Plaintiffs would force this Court to examine is inextricable and make this case nonjusticiable and subject to dismissal.

## **CONCLUSION**

In light of the foregoing, Lockheed Martin requests that the Court grant this Motion to Dismiss Plaintiffs' Second Amended Complaint under both Rule 12b(6) and 12(b)(1) with

28

**JA280**

prejudice. Lockheed Martin further requests that the Court grant any other and further relief that the Court deems just and proper.

Dated this 1st day of April, 2025.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

William J. Katt (PHV)
william.katt@wilsonelser.com
John P. Loringer (PHV)
john.loringer@wilsonelser.com
David A. Frank II (PHV)
david.frank@wilsonelser.com
555 East Wells Street, Suite 1730
Milwaukee, WI 53202
414-276-8816

John P. Kelly
john.p.kelly@wilsonelser.com
150 E 42nd Street
New York, NY 10017
212-915-5848

Kathryn A. Grace (PHV)
kathryn.grace@wilsonelser.com
8444 Westpark Drive, Suite 510
McLean, VA 22102
703-852-7869

*Attorneys for Lockheed Martin Corporation*

29

## CERTIFICATE OF SERVICE

I, William J. Katt, hereby certify that the foregoing document was filed through the ECF system, the document will be sent electronically to the registered participants, and paper copies will be served via first class mail on those indicated as non-registered participants.

_____

William J. Katt

30

# JA282

## Declaration in Support of Motion to Dismiss (April round), dated April 1, 2025 [JA282-JA284]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

RONALD KRICK, et al.,

                          Plaintiffs,

                v.

RAYTHEON COMPANY, et al.;

      Defendants.

Civil Action No.
1:23-cv-8093-JAM

(Donnelly, D.J.)
(Marutollo, M.J)

--------------------------------------------------------x

### DECLARATION OF ROBERT KELLY

    I, Robert Kelly, declare pursuant to 28 U.S.C. § 1746, under penalty of perjury that the following is true and correct:

1.  I am over the age of 18 and a resident of the District of Columbia.

2.  I am a Senior Trial Counsel for the United States Department of Justice, Civil Division, Torts Branch. I have responsibility for the defense of the United States in this action. I submit this declaration in support of the United States of America's Motion to Dismiss, and to place before the Court true and correct copies of various documents that support that Motion.

3.  Attached as Exhibit 1 is a true and correct copy of the Minute entry granting plaintiff's motion for attorneys' fees in *Lahr v. Nat'l Transp. Safety Bd.*, No. CV 03-8023 AHM (RZx) (C.D. Cal. Mar. 19, 2007).

4.  Attached as Exhibit 2 is a true and correct copy of Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment in *Stalcup v. CIA*, No. 1:11-cv-11250 (D. Mass. Jun. 12, 2013).

5.  Attached as Exhibit 3 is a true and correct copy of the Transfer Order in the multi-district litigation No. 1161, *In re: Air Crash off Long Island, N.Y., on July 17, 1996* (J.P.M.L. Feb. 19, 1997).

6.  Attached as Exhibit 4 is a true and correct copy of the Combined MDL Docket Entry in *In re: Air Crash TWA et al.*, No. 96-cv-7986 (S.D.N.Y. filed Oct. 24, 1996), excerpted.

7.  Attached as Exhibit 5 is a true and correct copy of the Order Settling Final Account and for Final Distribution of Estate of Donald E. Gough, *In re: Estates of Donald E. Gough*, No. CV96-05099 (2d Judicial Dist. Ct. for the State of Nevada in and for the County of Washoe, Aug. 26, 1999).

8.  Attached as Exhibit 6 is a true and correct copy of probate excerpts for the Estate of Oliver Krick. *In re: Oliver Krick, Deceased*, No. CV196-513P (Cir. Ct. of St. Charles County, Missouri., Probate Division filed Oct. 1, 1996).

9.  Attached as Exhibit 7 is a true and correct copy of probate excerpts for the Estate of Ralph G. Kevorkian. *In re: Estate of Ralph G. Kevorkian*, No. A184515 (Superior Ct. of Cal., Orange County, filed Sept. 25, 1996).

10. Attached as Exhibit 8 is a true and correct copy of probate excerpts for the estates of O. Lamar Allen and Ashton Allen. *In re: O. Lamar Allen, Deceased*, No. 96/1072/01 (Ga., Probate Ct. of Cobb County filed Aug. 7, 1996).

11. Attached as Exhibit 9 is a true and correct copy of the combined releases of all claims out of the loss of TWA Flight 800.

12. Attached as Exhibit 10 is a true and correct copy of the cover letter enclosing the FTCA administrative claims on behalf of the TWA 800 families (received October 4, 2021).

2

13. Attached as Exhibit 11 is a true and correct copy of the declaration of Hal H. Dronberger, executed March 13, 2025.

14. Attached as Exhibit 12 is a true and correct copy of the motion hearing transcript excerpt for the August 30, 2023 hearing in this case before Judge Angel Kelley.

15. Attached as Exhibit 13 is a true and correct copy of the opinion in *Rademacher v. United States*, No. 3:19-cv-00157 (N.D. Miss. Mar. 19, 2020).

Dated: Washington, D.C.
     April 1, 2025

ROBERT KELLY
Digitally signed by ROBERT KELLY
Date: 2025.04.01 12:38:37 -04'00'

ROBERT KELLY
Senior Trial Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
Robert.Kelly@usdoj.gov

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
RONALD KRICK, et al.,

                                                                    C.A. No.: 1:23-cv-08093-AMD-JAM

                                        Plaintiffs,

        - against -                                                 Donnelly, D.J.
                                                                    Marutollo, M.J.

RAYTHEON COMPANY, et al.,

                                        Defendants.
----------------------------------------------------------------X

### DECLARATION OF RALPH V. PAGANO, ESQ. IN SUPPORT OF DEFENDANT RAYTHEON COMPANY'S MOTION TO DISMISS

I, RALPH V. PAGANO, ESQ., an attorney duly licensed to practice law before the United States District Court for the Eastern District of New York, hereby declares under penalty of perjury that the foregoing is true and correct:

1.      I am a member of the firm of Fitzpatrick, Hunt & Pagano, LLP and counsel for Defendant Raytheon Company ("Raytheon").

2.      I submit this Declaration and the exhibits attached hereto in support of Raytheon's Motion to Dismiss and accompanying Memorandum of Law.

3.      Attached hereto as **Exhibit "A"** is a true and correct copy of the docket for *In re: Air Crash TWA*, No. 1:96cv7986, MDL No. 1161 (October 24, 1996) ("MDL Litigation"). Highlighted therein are docket entries reflecting the Stipulation and Orders of Dismissal for the estates of each of the decedents that are the subject of the above-captioned matter. Specifically, Docket Entries 261 (Kevorkian), 290 (Gaetke), 315 (Gough), 345 (Krick), 418 (Aston L. Allen), 420 (O. Lamar Allen), 421 (O. Lamar Allen #21), 470 (Dismissal of all Defendants).

_____

[1] This action was brought separately and solely by decedent O. Lamar Allen's daughter, Dr. Christine Grogan, who is a Plaintiff here.

1

4.      Attached hereto as **Exhibit "B"** are true and correct copies of the following:

a.  Stipulation and Order of Dismissal with Prejudice of All Claims Arising from the Death of Donald E. Gough (98-CV-1524), dated December 18, 2000;

b.  Stipulation and Order of Dismissal with Prejudice of All Claims Arising from the Death of Ronald W. Krick (98-CV-7011), dated March 12, 2001;

c.  Stipulation and Order of Dismissal with Prejudice of All Claims Arising from the Death of Ashton Lamar Allen (97-CV-6032), dated November 28, 2001;

d.  Stipulation and Order of Dismissal with Prejudice of All Claims Arising from the first lawsuit relating Death of Otis Lamar Allen (97-CV-6033), dated November 28, 2001;

e.  Stipulation and Order of Dismissal with Prejudice of All Claims Arising from the second lawsuit relating to the Death of Otis Lamar Allen (97-CV-6753), dated November 9, 2001; and

f.  Stipulation and Order of Dismissal with Prejudice of All Defendants from *In re: Air Crash TWA*, No. 1:96cv7986, MDL No. 1161 (October 24, 1996).

5.      On February 7, 2024, The Raytheon Company issued a subpoena, with leave granted by this Court, to The Boeing Company seeking the releases entered into on behalf of the estates of Plaintiffs' decedents (and in some cases, on behalf of the Plaintiffs here) in the above-captioned matter as a result of the MDL Litigation. Exhibits "C" through "I" attached hereto are true and correct copies of the releases received from The Boeing Company in response to The Raytheon Company's subpoena. Specifically:

# JA287

6. Attached hereto as **Exhibit "C"** is a true and correct copy of the release relating to the claims brought on behalf of the estate and/or beneficiaries of Ronald W. Krick (98-CV-7011) in the MDL Litigation;

7. Attached hereto as **Exhibit "D"** is a true and correct copy of the release relating to the claims brought on behalf of the estate and/or beneficiaries of Ashton Lamar Allen (97-CV-6032) in the MDL Litigation

8. Attached hereto as **Exhibit "E"** is a true and correct copy of the release relating to the first set of claims brought on behalf of the estate and/or beneficiaries of Otis Lamar Allen (97-CV-6033) in the MDL Litigation;

9. Attached hereto as **Exhibit "F"** is a true and correct copy of the release relating to the second set of claims brought on behalf of the estate and/or beneficiaries of Ashton Lamar Allen (98-CV-6753) in the MDL Litigation;

10. Attached hereto as **Exhibit "G"** is a true and correct copy of the release relating to the claims brought on behalf of the estate and/or beneficiaries of Daniel J. Gaedtke (98-CV-4099) in the MDL Litigation;

11. Attached hereto as **Exhibit "H"** is a true and correct copy of the release relating to the claims brought on behalf of the estate and/or beneficiaries of Donald E. Gough (98-CV-1524) in the MDL Litigation;

12. Attached hereto as **Exhibit "I"** is a true and correct copy of the release relating to the claims brought on behalf of the estate and/or beneficiaries of Ralph G. Kevorkian (97-CV-9335) in the MDL Litigation.

3

**JA288**

Dated: April 1, 2025

                                        FITZPATRICK, HUNT & PAGANO, LLP

By:                     

                                          Ralph V. Pagano, Esq. (RP7138)
                                        12 East 49th Street, 34th Floor
                                        New York, New York 10017
                                        T: (212) 937-4000
                                        F: (212) 937-4050
                                        ralph.pagano@fitzhunt.com

                                        *Attorneys for Defendant*
                                        *RAYTHEON COMPANY*

**JA289**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on April 1, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the U.S. District Court for the Eastern District of New York, by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants of record in this matter.

Dated: April 1, 2025

By:    */s/ Anca Popa*
_____
Anca Popa

**JA290**

**Exhibit B to Declaration - Stipulations of Dismissal, TWA 800 MDL, dated April 1, 2025 [JA290-JA314]**

# EXHIBIT B