**Case# 96-P-1072-01 File Date 08/11/2025 09:56 AM**

Case 1:23-cv-08093-AMD-JAM    Document 215-2    Filed 12/15/25    Page 1 of 1 PageID #: 1679

**IN THE PROBATE COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| **IN RE: ESTATE OF** | ) | |
| **O LAMAR  ALLEN** | ) | **ESTATE NO. 96-P-1072-01** |
| **DECEASED** | ) | |

## ORDER

On August 8, 2025, Sheldon Friedman ("Petitioner") filed his *Petition for Discharge to Appoint Successor Executor* ("Petition"). The Petitioner seeks the "discharge" of the Petition he filed in "June or July". The Court's record notes that the only item on file from the Petitioner is his *Expedited Motion to Appoint Successor Executor* filed on June 24, 2025, as amended on July 24, 2025. The Court construes the *Petition for Discharge to Appoint Successor Executor* as a Motion to Dismiss the Petitioner's *Expedited Motion to Appoint Successor Executor* pursuant to O.C.G.A. § 9-11-41. Upon review of the Petition, the entire record, and the relevant law

**IT IS ORDERED** pursuant to O.C.G.A. § 9-11-41 that the *Petition for Discharge to Appoint Successor Executor* is GRANTED and the *Expedited Motion to Appoint Successor Executor* is DISMISSED; and

**IT IS FURTHER ORDERED** that the deputy clerk shall serve copies of this Order to all parties their respective counsel, if any, by first class mail.

SO ORDERED this 11th day of August, 2025.

KRISTIN  POLAND, PROBATE JUDGE

CONFIDENTIAL

### RELEASE OF ALL CLAIMS ARISING OUT OF THE LOSS OF TWA FLIGHT 800, A BOEING 747-131 AIRCRAFT, REGISTRATION NO. N93119

Releasors:    Charles Henry Gray, IV and Chadwick Graham Gray, Individually, and as Personal Representatives of Charles Henry Gray, III (hereinafter referred to as "Decedent") and Co-Administrators of Decedent's Estate; (hereinafter collectively referred to as "Releasors")

Releasees:    THE BOEING COMPANY and its affiliated entities (including The Boeing Commercial Airplane Group), TRANS WORLD AIRLINES, INC. (TWA), CRANE CO., HYDRO-AIRE, INC., LEAR ROMEC DIVISION, and their subsidiary companies, contractors, subcontractors, vendors and suppliers, past, present and future, and each of them, as well as their directors, officers, employees, agents, attorneys, insurers, co-insurers, reinsurers, and assigns, past, present and future (including UNITED STATES AVIATION UNDERWRITERS, INC. as Managers and on behalf of the Member Companies of THE UNITED STATES AIRCRAFT INSURANCE GROUP, and on behalf of the co-insurers of the liability of TWA), and all other persons and entities not specifically identified who are or may be liable to Releasors in whole or in part for any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800 (hereinafter collectively referred to as "Releasees")

1.    On or about July 17, 1996, Decedent died in the loss of TWA Flight 800, a Boeing 747-131, Registration No. N93119, off the coast of Long Island, New York (hereinafter referred to as "the Event").

2.    Releasors hereby represent and warrant that the respective relationships listed beneath the undersigneds' signatures are true, that they are the sole heirs at law of Decedent, and there is no Executor, Executrix, Administrator, Administratrix, or other Personal Representative of the Will or of the Estate of Decedent other than the undersigned, who Releasors represent and warrant is authorized without further court approval to execute this release on behalf of Decedent's Estate and all heirs thereto.

3.    For and in consideration of payment of the sum of ██████ ██ ███████████████████████ in the form of three checks or drafts (███████ payable to "O'Dwyer & Bernstien, in trust for Charles Henry Gray, IV

RELEASE OF ALL CLAIMS
[01038-3137/SL013160.298/24]                    -1-

BOE0104

CONFIDENTIAL

and Chadwick Graham Gray"; ███████ payable to "Steven R. Pounian, Plaintiffs' Liaison Counsel" for fees and ██████ payable to "Steven R. Pounian, Plaintiffs' Liaison Counsel" for expenses), which sum shall be deemed to have been paid upon the delivery of such checks or drafts to Releasors and Plaintiffs' Liaison Counsel, respectively, receipt of which is hereby acknowledged, Releasors release and forever discharge any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, warranties, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against Releasees the Releasors ever had, now have or hereafter can, shall or may have, for, upon, by reason of, arising out of, or in any way related to the Event, including but not limited to: injury to or death of Decedent (whether assertable by Decedent's heirs, beneficiaries, dependents, or personal representative, or by anyone else, and whether characterized as claims for wrongful death, survival, survivorship, personal injuries, or otherwise); loss of or damage to Decedent's baggage or other property; and amounts paid by or on behalf of Decedent for transportation. This Release expressly extends to and includes, but is not limited to, any and all causes of action based on any wrongful death act, survival statute, or common law. This Release also expressly extends to and includes, but is not limited to, each and every claim or cause of action that could have been asserted for all past and future economic damages, noneconomic damages and awards recoverable or potentially recoverable from any person, including, but not limited to, attorneys' fees, litigation costs, medical expenses, funeral expenses, disfigurement, pain and suffering, grief or emotional distress, and loss of consortium, support, pecuniary benefits, income, companionship, assistance, services, training, education or society.

4.      The payment set forth above is the entire and only consideration for this Release. Releasors acknowledge the adequacy of this payment as consideration in full for this Release. Releasors acknowledge that they shall be responsible for the payment of their own costs and expenses, including their own attorneys' fees.

5.      Releasors intend this Release to constitute a full release and discharge of any and all claims that they may have arising out of the injury to and death of Decedent. Releasors state that they intend to release fully all individuals, entities or corporations, whether specifically named or not, that might be liable for damages arising out of the injury to or death of Decedent. Releasors agree that they will not, directly or indirectly, make or cause to be made any further action against any person (including any individual, corporation or other entity) for losses, damages or injuries arising out of the injury to or death of Decedent.

CONFIDENTIAL

6.      This Release is intended to, and Releasors represent and warrant that it will, dispose of all liability of Releasees to Releasors and all heirs and dependents of Decedent not otherwise identified, and their successors and assigns, that might now or in the future assert a claim, demand, action or bring suit arising out of injury to or the death of Decedent.  Releasors represent and warrant that no portion of any claim arising from injury to or death of decedent has been assigned or transferred to any other person or entity in any manner, including by way of subrogation or operation of law, and that there are no liens attaching to the settlement monies, including liens or other rights that have arisen as of the date of the execution of this Agreement in favor of any government agency, employer, or insurer for any benefits, assistance, or monies paid to or on behalf of Releasors, Decedent, or any other beneficiary.  In the event that any claim, demand, action or suit should be made or instituted against any Releasee by any heir, dependent, or wrongful death beneficiary of Decedent, or by any lien holder, insurer, subrogee, or any other entity (except as provided in Paragraph 13 below), Releasors agree to indemnify and hold harmless Releasees against any claim, demand, action or suit and to pay and satisfy any judgment resulting from or settlement of any such claim, demand, action or suit.

7.      Releasors hereby assign, transfer, and set over by way of subrogation to Releasees, their successors and assigns, all of Releasors rights, title, and interests in and to any and all actions, causes of action, claims, demands, and remedies that Releasors have or may have against any and all third parties who may be liable for the Event to the extent of the amounts paid to Releasors pursuant to this Release plus Releasees' costs and expenses (including but not limited to attorneys' fees) incurred in the resolution of the claims herein and in obtaining any recovery against third parties.  Releasors hereby empower the subrogated Releasees to sue, compromise, or settle in the place of the Releasors, and in the name of the latter or in the Releasees' own names in accordance with applicable law, in order for Releasees to recover for said loss against any and all such third parties.  Releasors represent and warrant that they have not granted any release or discharge other than this Release, nor waived any right, action, cause of action, claim, demand, or remedy that they have or may have against any third party relating to or arising out of the Event.

8.      Releasors enter into this Release contemplating the possibility that facts may be subsequently discovered that could support claims as yet unasserted against Releasees for compensatory, consequential and/or punitive damages.  Releasors realize that losses, injuries or damages not now known may be subsequently discovered and that their known losses, injuries or damages may prove to be greater than presently believed.  Releasors assume all risk, chance or hazard that their losses, injuries or damages may be or become permanent, progressive, greater or more extensive than is now known, anticipated or expected.  Releasors intend to discharge

BOE0106

CONFIDENTIAL

Releasees from all liability for all losses, injuries or damages arising out of the injury to or death of Decedent, both those now known and those that may be subsequently discovered. This Release shall not be subject to any claim of mistake of fact or law by Releasors. Releasors also fully understand and acknowledge that facts concerning their claims may be found hereafter to be other than or different from the facts they now believe to be true. Releasors expressly accept and assume the risk of any such possible differences in facts and agree that this Release shall remain in full effect notwithstanding any such difference in facts. Releasors waive any rights or benefits conferred by any statute or common law decision with respect to unknown or unsuspected claims, including, but not limited to, Section 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

9.    In entering into this Release, Releasors do not rely on any statement or representation made by any Releasee or by any attorney, agent or other person representing any Releasee concerning:

    a.    The nature, extent or duration of Releasors' losses, injuries or damages; or

    b.    The cause or causes for the Event; or

    c.    The legal liability of any Releasee for the losses, injuries or damages to Releasors; or

    d.    Any federal or state income tax liability, estate tax liability or inheritance tax liability to Releasors.

10.    Releasors and Releasees agree that the terms of this Release shall be confidential and shall not be disclosed to third persons. Releasors promise and agree that they will not directly or indirectly publicize, discuss, publish or disclose to any person the terms of this Release, the negotiations leading to this Release, or the amount of the consideration. Nothing herein shall prevent any party from disclosing such information as is required by court order or applicable law.

11.    Each party shall, upon request of any other party, execute and deliver such additional documents as may be necessary or convenient for the purposes of evidencing or perfecting any rights or interests arising under this Release, including

BOE0107

CONFIDENTIAL

but not limited to a Waiver and Consent executed by Decedent's father, Charles Henry Gray, Jr., a copy of which Releasors will provide to Releasees as a condition of settlement.

12.    This Release may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Separate signature pages are provided in anticipation that Releasors may separately execute this agreement.

13.    It is the express intent and understanding of Releasors and Releasees that any and all rights of indemnity, contribution or other derivative claims that any Releasee may have against any other Releasee or other person, corporation or entity, whether known or unknown, shall be preserved by the execution of this Release.

14.    Nothing in this Release shall be construed as an admission of liability or fault of any Releasee or of the validity or propriety of any claims that may be asserted arising out of the Event. It is understood and agreed that this Release is made as part of the compromise and settlement of a disputed claim. No action taken by Releasees, either previously or in connection with this compromise and settlement, shall be deemed or construed to be an admission of the truth or falsity of any matter pertaining to any claim, demand or cause of action arising out of the Event, or an acknowledgment by Releasees of any fault or liability whatsoever to Releasors or any other person or entity. Releasors acknowledge that Releasees expressly continue to deny and disclaim liability and responsibility for the Event and intend merely to avoid litigation.

15.    This Release contains the entire agreement and understanding of the parties. This Release may not be changed orally. The terms of this Release are contractual in nature and not mere recitals.

16.    This Release is to be construed and governed under the laws of the State of New York. Releasors and Releasees consent to jurisdiction and venue in the appropriate federal district court within, or state court of, that state with respect to any dispute, controversy or cause of action arising out of this Release.

17.    Releasors acknowledge and declare that they have received a copy of this Release, that they have carefully read and fully understand its provisions, and that they are signing it voluntarily and of their own free will.

18.    RELEASORS EXPRESSLY CONFIRM THAT THEY HAVE CONSULTED WITH THEIR ATTORNEYS CONCERNING THIS RELEASE AND

CONFIDENTIAL

HAVE BEEN FULLY ADVISED WITH RESPECT TO THEIR RIGHTS AND OBLIGATIONS HEREUNDER.

# JA458

CONFIDENTIAL

Dated _____

_____
**Charles Henry Gray, IV**
Decedent's Son, Co-Personal Representative,
and Co-Administrator of Decedent's Estate

SUBSCRIBED AND SWORN to before me this _____ day of
_____, 2001.

_____
(Signature of Notary)

_____
(Print or Stamp Name of Notary)
NOTARY PUBLIC in and for the State of
_____, residing at _____
My Commission Expires:_____

Dated 11-30-01

**Chadwick Graham Gray**
Decedent's Son, Co-Personal Representative,
and Co-Administrator of Decedent's Estate

SUBSCRIBED AND SWORN to before me this _30_ day of
_November_, 2001.

_____
(Signature of Notary)

_Debi Behm_
(Print or Stamp Name of Notary)
NOTARY PUBLIC in and for the State of
_Arizona_, residing at ___Tempe___
My Commission Expires:_____

OFFICIAL SEAL
**DEBI BEHM**
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 26, 2004

RELEASE OF ALL CLAIMS
[01038-3137/SL013160.298/24]

-7-

BOE0110

CONFIDENTIAL

The attorneys representing Releasors indicate their approval of this Release as to form and content and agree to the confidentiality provisions herein:

Dated ___12/3/01___

Brian O'Dwyer

**O'Dwyer & Bernstien, LLP**
Attorneys for Charles Henry Gray, IV and
Chadwick Graham Gray

CONFIDENTIAL

### RELEASE OF ALL CLAIMS ARISING OUT OF THE LOSS OF TWA FLIGHT 800, A BOEING 747-131 AIRCRAFT, REGISTRATION NO. N93119

Releasors:    Charles Henry Gray, IV and Chadwick Graham Gray, Individually, and as Personal Representatives of Charles Henry Gray, III (hereinafter referred to as "Decedent") and Co-Administrators of Decedent's Estate; (hereinafter collectively referred to as "Releasors")

Releasees:    THE BOEING COMPANY and its affiliated entities (including The Boeing Commercial Airplane Group), TRANS WORLD AIRLINES, INC. (TWA), CRANE CO., HYDRO-AIRE, INC., LEAR ROMEC DIVISION, and their subsidiary companies, contractors, subcontractors, vendors and suppliers, past, present and future, and each of them, as well as their directors, officers, employees, agents, attorneys, insurers, co-insurers, reinsurers, and assigns, past, present and future (including UNITED STATES AVIATION UNDERWRITERS, INC. as Managers and on behalf of the Member Companies of THE UNITED STATES AIRCRAFT INSURANCE GROUP, and on behalf of the co-insurers of the liability of TWA), and all other persons and entities not specifically identified who are or may be liable to Releasors in whole or in part for any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800 (hereinafter collectively referred to as "Releasees")

1.    On or about July 17, 1996, Decedent died in the loss of TWA Flight 800, a Boeing 747-131, Registration No. N93119, off the coast of Long Island, New York (hereinafter referred to as "the Event").

2.    Releasors hereby represent and warrant that the respective relationships listed beneath the undersigneds' signatures are true, that they are the sole heirs at law of Decedent, and there is no Executor, Executrix, Administrator, Administratrix, or other Personal Representative of the Will or of the Estate of Decedent other than the undersigned, who Releasors represent and warrant is authorized without further court approval to execute this release on behalf of Decedent's Estate and all heirs thereto.

3.    For and in consideration of payment of the sum of ███ ██████ ███ ██ ████████ ██████████████ ), in the form of three checks or drafts ██████ ayable to "O'Dwyer & Bernstien, in trust for Charles Henry Gray, IV

# JA461

CONFIDENTIAL

and Chadwick Graham Gray"; ▮▮▮▮▮ payable to "Steven R. Pounian, Plaintiffs' Liaison Counsel" for fees and ▮▮▮▮▮ payable to "Steven R. Pounian, Plaintiffs' Liaison Counsel" for expenses), which sum shall be deemed to have been paid upon the delivery of such checks or drafts to Releasors and Plaintiffs' Liaison Counsel, respectively, receipt of which is hereby acknowledged, Releasors release and forever discharge any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, warranties, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against Releasees the Releasors ever had, now have or hereafter can, shall or may have, for, upon, by reason of, arising out of, or in any way related to the Event, including but not limited to: injury to or death of Decedent (whether assertable by Decedent's heirs, beneficiaries, dependents, or personal representative, or by anyone else, and whether characterized as claims for wrongful death, survival, survivorship, personal injuries, or otherwise); loss of or damage to Decedent's baggage or other property; and amounts paid by or on behalf of Decedent for transportation. This Release expressly extends to and includes, but is not limited to, any and all causes of action based on any wrongful death act, survival statute, or common law. This Release also expressly extends to and includes, but is not limited to, each and every claim or cause of action that could have been asserted for all past and future economic damages, noneconomic damages and awards recoverable or potentially recoverable from any person, including, but not limited to, attorneys' fees, litigation costs, medical expenses, funeral expenses, disfigurement, pain and suffering, grief or emotional distress, and loss of consortium, support, pecuniary benefits, income, companionship, assistance, services, training, education or society.

4.      The payment set forth above is the entire and only consideration for this Release. Releasors acknowledge the adequacy of this payment as consideration in full for this Release. Releasors acknowledge that they shall be responsible for the payment of their own costs and expenses, including their own attorneys' fees.

5.      Releasors intend this Release to constitute a full release and discharge of any and all claims that they may have arising out of the injury to and death of Decedent. Releasors state that they intend to release fully all individuals, entities or corporations, whether specifically named or not, that might be liable for damages arising out of the injury to or death of Decedent. Releasors agree that they will not, directly or indirectly, make or cause to be made any further action against any person (including any individual, corporation or other entity) for losses, damages or injuries arising out of the injury to or death of Decedent.

CONFIDENTIAL

6.      This Release is intended to, and Releasors represent and warrant that it will, dispose of all liability of Releasees to Releasors and all heirs and dependents of Decedent not otherwise identified, and their successors and assigns, that might now or in the future assert a claim, demand, action or bring suit arising out of injury to or the death of Decedent.  Releasors represent and warrant that no portion of any claim arising from injury to or death of decedent has been assigned or transferred to any other person or entity in any manner, including by way of subrogation or operation of law, and that there are no liens attaching to the settlement monies, including liens or other rights that have arisen as of the date of the execution of this Agreement in favor of any government agency, employer, or insurer for any benefits, assistance, or monies paid to or on behalf of Releasors, Decedent, or any other beneficiary.  In the event that any claim, demand, action or suit should be made or instituted against any Releasee by any heir, dependent, or wrongful death beneficiary of Decedent, or by any lien holder, insurer, subrogee, or any other entity (except as provided in Paragraph 13 below), Releasors agree to indemnify and hold harmless Releasees against any claim, demand, action or suit and to pay and satisfy any judgment resulting from or settlement of any such claim, demand, action or suit.

7.      Releasors hereby assign, transfer, and set over by way of subrogation to Releasees, their successors and assigns, all of Releasors rights, title, and interests in and to any and all actions, causes of action, claims, demands, and remedies that Releasors have or may have against any and all third parties who may be liable for the Event to the extent of the amounts paid to Releasors pursuant to this Release plus Releasees' costs and expenses (including but not limited to attorneys' fees) incurred in the resolution of the claims herein and in obtaining any recovery against third parties. Releasors hereby empower the subrogated Releasees to sue, compromise, or settle in the place of the Releasors, and in the name of the latter or in the Releasees' own names in accordance with applicable law, in order for Releasees to recover for said loss against any and all such third parties.  Releasors represent and warrant that they have not granted any release or discharge other than this Release, nor waived any right, action, cause of action, claim, demand, or remedy that they have or may have against any third party relating to or arising out of the Event.

8.      Releasors enter into this Release contemplating the possibility that facts may be subsequently discovered that could support claims as yet unasserted against Releasees for compensatory, consequential and/or punitive damages.  Releasors realize that losses, injuries or damages not now known may be subsequently discovered and that their known losses, injuries or damages may prove to be greater than presently believed.  Releasors assume all risk, chance or hazard that their losses, injuries or damages may be or become permanent, progressive, greater or more extensive than is now known, anticipated or expected.  Releasors intend to discharge

CONFIDENTIAL

Releasees from all liability for all losses, injuries or damages arising out of the injury to or death of Decedent, both those now known and those that may be subsequently discovered. This Release shall not be subject to any claim of mistake of fact or law by Releasors. Releasors also fully understand and acknowledge that facts concerning their claims may be found hereafter to be other than or different from the facts they now believe to be true. Releasors expressly accept and assume the risk of any such possible differences in facts and agree that this Release shall remain in full effect notwithstanding any such difference in facts. Releasors waive any rights or benefits conferred by any statute or common law decision with respect to unknown or unsuspected claims, including, but not limited to, Section 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

9.    In entering into this Release, Releasors do not rely on any statement or representation made by any Releasee or by any attorney, agent or other person representing any Releasee concerning:

a.    The nature, extent or duration of Releasors' losses, injuries or damages; or

b.    The cause or causes for the Event; or

c.    The legal liability of any Releasee for the losses, injuries or damages to Releasors; or

d.    Any federal or state income tax liability, estate tax liability or inheritance tax liability to Releasors.

10.    Releasors and Releasees agree that the terms of this Release shall be confidential and shall not be disclosed to third persons. Releasors promise and agree that they will not directly or indirectly publicize, discuss, publish or disclose to any person the terms of this Release, the negotiations leading to this Release, or the amount of the consideration. Nothing herein shall prevent any party from disclosing such information as is required by court order or applicable law.

11.    Each party shall, upon request of any other party, execute and deliver such additional documents as may be necessary or convenient for the purposes of evidencing or perfecting any rights or interests arising under this Release, including

CONFIDENTIAL

but not limited to a Waiver and Consent executed by Decedent's father, Charles Henry Gray, Jr., a copy of which Releasors will provide to Releasees as a condition of settlement.

12.    This Release may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Separate signature pages are provided in anticipation that Releasors may separately execute this agreement.

13.    It is the express intent and understanding of Releasors and Releasees that any and all rights of indemnity, contribution or other derivative claims that any Releasee may have against any other Releasee or other person, corporation or entity, whether known or unknown, shall be preserved by the execution of this Release.

14.    Nothing in this Release shall be construed as an admission of liability or fault of any Releasee or of the validity or propriety of any claims that may be asserted arising out of the Event.  It is understood and agreed that this Release is made as part of the compromise and settlement of a disputed claim.  No action taken by Releasees, either previously or in connection with this compromise and settlement, shall be deemed or construed to be an admission of the truth or falsity of any matter pertaining to any claim, demand or cause of action arising out of the Event, or an acknowledgment by Releasees of any fault or liability whatsoever to Releasors or any other person or entity.  Releasors acknowledge that Releasees expressly continue to deny and disclaim liability and responsibility for the Event and intend merely to avoid litigation.

15.    This Release contains the entire agreement and understanding of the parties.  This Release may not be changed orally.  The terms of this Release are contractual in nature and not mere recitals.

16.    This Release is to be construed and governed under the laws of the State of New York.  Releasors and Releasees consent to jurisdiction and venue in the appropriate federal district court within, or state court of, that state with respect to any dispute, controversy or cause of action arising out of this Release.

17.    Releasors acknowledge and declare that they have received a copy of this Release, that they have carefully read and fully understand its provisions, and that they are signing it voluntarily and of their own free will.

18.    RELEASORS EXPRESSLY CONFIRM THAT THEY HAVE CONSULTED WITH THEIR ATTORNEYS CONCERNING THIS RELEASE AND

CONFIDENTIAL

HAVE BEEN FULLY ADVISED WITH RESPECT TO THEIR RIGHTS AND OBLIGATIONS HEREUNDER.

BOE0101

CONFIDENTIAL

Dated _11-30-01_

**Charles Henry Gray, IV**
Decedent's Son, Co-Personal Representative,
and Co-Administrator of Decedent's Estate

SUBSCRIBED AND SWORN to before me this _30th_ day of
_November_, 2001.

_____
(Signature of Notary)

_JO-ANN C. NEWTON_
(Print or Stamp Name of Notary)
NOTARY PUBLIC in and for the State of
_Tennessee_, residing at _Shelby County_
My Commission Expires: _8/19/02_

Dated _____

**Chadwick Graham Gray**
Decedent's Son, Co-Personal Representative,
and Co-Administrator of Decedent's Estate

SUBSCRIBED AND SWORN to before me this _____ day of
_____, 2001.

_____
(Signature of Notary)

_____
(Print or Stamp Name of Notary)
NOTARY PUBLIC in and for the State of
_____, residing at _____
My Commission Expires:_____

RELEASE OF ALL CLAIMS
[01038-3137/SL013160.298/24]

7

BOE0102

# JA467

CONFIDENTIAL

The attorneys representing Releasors indicate their approval of this Release as to form and content and agree to the confidentiality provisions herein:

Dated ___12/3/01___

_____
Brian O'Dwyer
**O'Dwyer & Bernstien, LLP**
Attorneys for Charles Henry Gray, IV and
Chadwick Graham Gray

RELEASE OF ALL CLAIMS
[01038-3137/SL013160.298/24]

8

BOE0103

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

RONALD KRICK, et al.,

      Plaintiffs,

v.                         Case No. 1:23-cv-08093

RAYTHEON COMPANY, et al.,

      Defendants,

### DECLARATION OF MR. HAL H. DRONBERGER

I, Hal H. Dronberger, declare as follows:

1.     I serve as the Director of the Admiralty and Claims Division (Code 15) of the Office of the Judge Advocate General, located at 1322 Patterson Avenue, Suite 3000, Washington Navy Yard, D.C. 20374-5066. In that capacity, I am responsible for overseeing the processing of administrative claims filed against the Department of the Navy under the Federal Tort Claims Act and in Admiralty in accordance with 32 C.F.R. Parts 750 and 752.

2.     I am the custodian of the Department of the Navy's claims and tort litigation records.

3.     Acting in the aforementioned capacity, I have caused a search to be made of the records maintained within the Office of the Judge Advocate General of the Navy; and the Tort Claims Unit, Norfolk, Virginia; to determine whether Charles Henry Gray IV, individually or on behalf of the estate of Charles Henry Gray, III, or Chadwick Graham Gray ever filed an administrative claim against the Department of the Navy, in any capacity, with respect to the matters at issue in the above-captioned case prior to commencement of the litigation.

1

4.    All reasonable searches have failed to reveal that Charles Henry Gray IV, or Chadwick Graham Gray filed such an administrative claim and, to the best of my knowledge and belief, both individuals have not filed an administrative claim with or against the Department of the Navy based on the subject matter of this action.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this *18th* day of *AUGUST*, 2025.

Hal H. Dronberger

2

**JA470**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RONALD KRICK, et al.,

      Plaintiffs,

v.                                                        **Case No. 1:23-cv-08093 (AMD) (JAM)**

RAYTHEON COMPANY, et al.,

      Defendants.

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' JOINT MEMORANDUM (ECF NO. 215) AND IN
SUPPORT OF PLAINTIFFS' REQUEST FOR LIMITED DISCOVERY**

## I.  PRELIMINARY STATEMENT

Defendants' Joint Memorandum (ECF No. 215) seeks to terminate this litigation on threshold grounds by characterizing a decades-old global settlement release as a categorical bar to the present claims and by asserting jurisdictional defects regarding Federal Tort Claims Act (FTCA) presentment and party status. This approach improperly attempts to resolve complex, fact-intensive disputes on an incomplete record. Defendants ask the Court to interpret releases broadly to cover parties and claims not clearly encompassed by their terms, while simultaneously resisting the discovery necessary to determine the scope and validity of those releases. Furthermore, Defendants assert that certain Plaintiffs, including the Gray Plaintiffs, have forfeited their status as parties or failed to

1

**JA471**

exhaust administrative remedies, despite the absence of a dispositive court order or a complete administrative record.

Federal courts have consistently held that dispositive relief is inappropriate where key factual predicates remain contested and where the moving party relies on documents and evidence not fully before the court. The procedural history of this case, including the findings of the District of Massachusetts prior to transfer, underscores the fact-intensive nature of the issues presented, particularly regarding when Plaintiffs knew or should have known of the factual basis for their claims. *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 219 (D. Mass. 2023). While Plaintiffs acknowledge their burden to establish jurisdiction and standing, a dispute over the content of missing records—records currently withheld by former counsel or buried in agency files—does not constitute a forfeiture of rights. Accordingly, the Court should deny Defendants' requested relief or, in the alternative, grant the limited discovery requested in the Declaration of Stephani Ayers to allow for a resolution of these issues on a complete evidentiary record.

**ARGUMENT**

II. **DEFENDANTS HAVE NOT ESTABLISHED THAT THE DECADES-OLD GLOBAL RELEASE BARS THIS ACTION AS A MATTER OF LAW BECAUSE DISPUTED MATERIAL FACTS REMAIN REGARDING INTENT AND THIRD-PARTY BENEFICIARY STATUS**

Defendants argue that a global settlement and release executed over twenty years ago in separate litigation bars the current claims against the present non-

## JA472

government defendants. However, New York law and federal precedent within the Second Circuit establish that the scope and applicability of a settlement release to non-parties involve factual questions that preclude summary adjudication when genuine disputes exist regarding the parties' intent. For non-signatories to enforce a settlement release, they must establish that they were intended third-party beneficiaries of the agreement. The United States District Court for the Southern District of New York has held that an intent to benefit the third party must be shown, and the language of the contract must clearly evidence an intent to permit enforcement by the third party. *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 401 (S.D.N.Y. 2023). Where a settlement agreement does not clearly evidence such an intent, courts have found that the non-party is not a third-party beneficiary and that claims are not barred. *Id.*

In *Doe 1 v. Deutsche Bank Aktiengesellschaft*, id. the court addressed a situation where a defendant bank sought to rely on a settlement agreement and release to which it was not a signatory. The court emphasized that the mere fact that a release is broad does not automatically confer standing on a third party to enforce it. Instead, the court examined the specific language of the agreement to determine whether the original contracting parties intended to confer a benefit on the non-party. The court found that the language must clearly evidence such an intent, and that any ambiguity should be resolved against the party seeking to

3

## JA473

enforce the release. This high standard protects the rights of the original parties to control the scope of their agreement and prevents non-parties from seizing upon language that was never intended to benefit them.

Similarly, in *Elias v. Gettry Marcus CPA, P.C.*, 2018 WL 3117510 *4 (S.D.N.Y. June 25, 2018), the court confronted a scenario where an accounting firm sought to dismiss claims based on a release in a settlement agreement between the plaintiff and her former husband. The court denied the motion to dismiss, finding that the release clause and the subsequent conduct of the signatories did not evince a clear intention to release the defendants from liability. The court noted that determining whether the defendants were intended third-party beneficiaries required an examination of the parties' intent, which presented factual questions that could not be resolved on a motion to dismiss. This case highlights the importance of context and conduct in interpreting settlement releases, particularly when the party seeking to enforce the release was not involved in the original negotiations.

The Appellate Division of the New York Supreme Court has also weighed in on this issue, holding that even when settlement agreements use defined terms for groups of parties, courts must examine whether the language in the release makes clear that each individual party released each other individual party. *Long v. O'Neill*, 126 A.D.3d 404, 407-408 (N.Y. App. Div. 2015). In *Long*, the court found

4

that a general release did bar claims against a specific individual where the language of the release appeared to contemplate that release. T

Material issues of fact regarding the meaning and validity of the release preclude dismissal at this stage. The Southern District of New York has explicitly stated that factual issues about the meaning of a settlement agreement release preclude summary judgment on that issue. *Berman v. Parco*, 986 F. Supp. 195 (S.D.N.Y. 1997). In *Berman*, the court found that conflicting interpretations of a settlement agreement can create a genuine issue of material fact that required a trial.

Furthermore, disputes regarding the validity of a release, such as whether it was authorized or fraudulently signed, present triable issues of fact. *Choi v. Hoyt De Leon Corp.*, 2023 WL 5671993 *5 (E.D.N.Y. Sept. 1, 2023). In *Choi*, the court denied summary judgment where there was evidence suggesting that the plaintiff's attorney may have signed the release without authorization. The court held that this created a factual dispute that had to be resolved by a jury. This case is relevant here, where Plaintiffs have raised concerns about the circumstances under which the prior releases were executed and whether they were fully informed of their rights at the time.

In this case, the significant temporal distance between the original settlement and the current litigation creates further factual complexities regarding the parties'

original intent. Courts have recognized that the passage of time and changed circumstances may affect the interpretation of settlement terms, particularly when the current defendants were not involved in the original negotiations. The fact that the release was executed over twenty years ago, in a different legal and factual context, militates against a summary determination of its applicability to the present claims. The Defendants' attempt to apply this decades-old release to bar claims based on newly discovered evidence of government concealment ignores the fundamental requirement that a release must be knowing and voluntary.

Given these authorities, Defendants have not carried their burden to show that the prior release bars this action as a matter of law. At a minimum, limited discovery is required to obtain the complete executed releases and to determine the precise definition of released parties and the intent of the signatories. Without such discovery, the Court would be ruling on the scope of a release based on incomplete information and speculation about the parties' intent. This would be contrary to the well-established principles of contract interpretation and third-party beneficiary law in New York and the Second Circuit.

## III. DEFENDANTS' ARGUMENT FOR DISMISSAL BASED ON FTCA PRESENTMENT FAILS BECAUSE THE ABSENCE OF A LOCATED CLAIM FORM IS NOT DISPOSITIVE AND PLAINTIFFS ARE ENTITLED TO PROVE EXHAUSTION THROUGH OTHER EVIDENCE

Defendants contend that certain Plaintiffs, including the Gray Plaintiffs, failed to satisfy the administrative presentment requirements of the Federal Tort

Claims Act (FTCA), 28 U.S.C. § 2675, and are therefore jurisdictionally barred. While the burden is on the plaintiff to plead and prove compliance with the FTCA's exhaustion requirements, courts in the Second Circuit have not required plaintiffs to produce original administrative claim forms to prove exhaustion if other evidence demonstrates that a proper claim was presented. *Estate of George v. Veteran's Admin. Med. Ctr.*, 821 F. Supp. 2d 573 (W.D.N.Y. 2011). In *Estate of George*, the court acknowledged that the plaintiff bears the burden of proof but also recognized that this burden can be met through various forms of evidence. The court did not require the production of the original claim form as a prerequisite to jurisdiction, but rather looked to the totality of the evidence to determine whether the agency had been given adequate notice of the claim.

The critical inquiry is whether the claimant presented the claim to the appropriate federal agency and whether the agency received sufficient information to investigate the claim and estimate its worth. *Hardie v. United States*, 501 F. Supp. 3d 152 (E.D.N.Y. 2020). In *Hardie*, the court emphasized that the purpose of the presentment requirement is to facilitate settlement and avoid unnecessary litigation. The court found that a notice of claim can be sufficient if it provides the agency with enough information to conduct an investigation and determine whether to settle the claim. This functional approach to exhaustion focuses on the substance of the notice rather than its form.

# JA477

The regulations under the FTCA specify that a claim must be in writing and state a sum certain, but aside from these conditions, the claim need not be presented in any particular format. *Sea Gate Beach Club Corp. v. United States*, 190 F. Supp. 3d 310, 314 (E.D.N.Y. 2016).

Consequently, the mere fact that an agency cannot locate a Standard Form 95 (SF-95) in its records is not dispositive of whether a claim was actually filed. As the Ayers Declaration attests, Plaintiffs contend that administrative claims may have been submitted by former counsel, Bailey & Glasser, who have refused to transfer their files. In such circumstances, evidence obtained from former counsel, such as cover letters, agency correspondence, or proof of mailing, can satisfy the exhaustion requirement. *Matthias v. United States*, 475 F. Supp. 3d 125, 135 (E.D.N.Y. 2020). Plaintiff had satisfied the presentment requirement by submitting evidence that her attorney had mailed a claim to the agency. Furthermore, the Second Circuit's decision in *Barrett v. United States*, 689 F.2d 324, 327-28 (2d Cir. 1982), provides strong support for Plaintiffs' position. In *Barrett*, the court noted that the government's active concealment of facts regarding can affect issues on the sufficiency and timeliness of an FTCA claim.

The Court should not dismiss these claims based on an incomplete record created by the refusal of former counsel to cooperate and the potential gaps in agency recordkeeping. Plaintiffs are entitled to the opportunity to obtain the

8

**JA478**

necessary proof of exhaustion through limited discovery. This includes subpoenas to prior counsel for proof of submission and discovery into the agency's claim logs and receipt records. Without such discovery, the Court would be adjudicating a jurisdictional fact based on an assertion of "no record located," which is insufficient to overcome a plaintiff's good faith assertion of compliance, particularly when the files that would prove compliance are being withheld.

IV. **OMISSION OF PARTIES FROM AN AMENDED COMPLAINT MAY IF INTENDED CONSTITUTE A VOLUNTARY DISMISSAL WITHOUT PREJUDICE AND WOULD NOT OPERATE AS AN ADJUDICATION ON THE MERITS BARRING FUTURE PARTICIPATION**

Defendants argue that because certain individuals, the Grays, were omitted from the Second Amended Complaint, they have been dismissed from the action with prejudice and are barred from reasserting their status as parties. This argument does not reflect universal federal procedural law. While it is true that an amended complaint supersedes the original and that parties intentionally and voluntarily dropped from an amended complaint may not remain in the case. Such an omission is generally construed as a voluntary dismissal without prejudice.

Courts construe an amended complaint that removes a plaintiff as containing a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i). *Roche v. Aetna, Inc.*, 167 F. Supp. 3d 700, 706 (D.N.J. 2016). In *Roche*, the court addressed a situation where a plaintiff filed an amended complaint that dropped certain defendants. The court treated this action as a voluntary

**JA479**

dismissal under Rule 41(a) and held that it was without prejudice. Id. at 714. This interpretation preserves the plaintiff's right to bring the claims again if necessary.

The Second Circuit has affirmed the principle that an amended complaint "ordinarily supersedes the original". *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *International Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir. 1977). However, this does not mean that the omission of a party from the amended complaint is dispositive when circumstances are not ordinary, nor act as an adjudication on the merits.  Consequently, the omission of the Gray Plaintiffs from the amended pleading did not adjudicate the merits of their claims or create a res judicata bar.

Absent a court order explicitly dismissing the Gray Plaintiffs with prejudice, their status is not conclusively adjudicated by their mere omission from the amended complaint. Therefore, any defect in their current party status is curable under Federal Rules of Civil Procedure 15, 17, and 21, and does not warrant the permanent extinguishment of their rights as Defendants suggest. The proper course of action is to allow Plaintiffs to seek leave to amend the complaint to re-add the omitted parties, provided that the amendment would not be futile or cause undue prejudice to the Defendants. Given the early stage of this litigation and the fact that discovery has not yet commenced, there is no reason to deny such an amendment.

## V.  LIMITED DISCOVERY IS NECESSARY TO RESOLVE FACTUAL DISPUTES REGARDING STANDING, RELEASE SCOPE, AND ADMINISTRATIVE EXHAUSTION

Defendants' arguments for dismissal rely heavily on factual assertions that are disputed and supported by an incomplete record. Specifically, the issues of whether the global release covers the present defendants, whether the Gray Plaintiffs satisfied the FTCA presentment requirement, and whether Christine Grogan possesses the requisite standing all turn on documents and information currently outside of Plaintiffs' control. As detailed in the Declaration of Stephani Ayers, Plaintiffs' former counsel has not transferred the litigation file, which assuming competent representation likely contains the proofs of mailing and administrative claim forms necessary to rebut Defendants' jurisdictional challenges.

Defendants' challenge to the standing of Plaintiff Christine Grogan rests on a factual assertion that she lacks the requisite relationship to the decedent to maintain her claims. This argument, however, ignores the existence of dispositive evidence that is currently sequestered within the files of Plaintiffs' former counsel. As set forth in the Declaration of Stephani Ayers, Ms. Grogan has represented that, during the course of her representation by Bailey & Glasser, she underwent DNA testing specifically to confirm her biological relationship to the decedent, O. Lamar Allen, and to corroborate her status as a proper plaintiff. This testing was

11

**JA481**

conducted in the context of addressing family and probate issues implicated by the litigation.

Ms. Grogan, a layperson, relied on her prior counsel to evaluate this evidence and to determine her standing to sue before filing the complaint. The fact that prior counsel proceeded to file and litigate her claims suggests that the results of that inquiry were sufficient to satisfy their obligations under Federal Rule of Civil Procedure 11. However, because prior counsel have refused to transfer their litigation files to successor counsel, the documentary proof of this testing and the resulting legal determination remains outside of Ms. Grogan's possession.

Under these circumstances, immediate dismissal is inappropriate. The proper course is to permit limited discovery tailored to resolve these threshold issues. This request aligns with the recognition by the District of Massachusetts that the factual questions in this case, such as the timing of accrual and the extent of concealment, are fact-intensive and often require discovery. Krick, 695 F. Supp. 3d at 219. Plaintiffs request targeted discovery into: (1) the complete executed set of releases from the prior multidistrict litigation; (2) agency claim files and logs regarding FTCA presentment; (3) subpoenas to prior counsel for proof of administrative claim submission; and (4) authority and capacity documentation for the Plaintiffs.

Denying this request would effectively penalize Plaintiffs for the conduct of their former counsel and the government's recordkeeping practices. The Federal

12

Rules of Civil Procedure favor decisions on the merits, and granting limited discovery will ensure that the Court's dispositive rulings are based on a complete and accurate factual record rather than on procedural technicalities and missing files.

## VI.  CONCLUSION

The instant litigation does not arise in a vacuum; it stems directly from the resolution of a mass tort involving a catastrophic loss of life. Federal courts have long recognized that mass tort litigations, by their sheer scale and the aggregation of numerous individual claims, create a unique procedural environment that demands a heightened judicial role in ensuring fairness. Even where a case is not formally certified as a class action under Federal Rule of Civil Procedure 23, the aggregation of claims in a mass disaster context frequently constitutes a "quasi-class action," triggering the Court's inherent ethical and supervisory authority to protect the interests of the plaintiffs. *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 477, 492 (S.D.N.Y. 2014).

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' request for dismissal as set forth in their Joint Memorandum. In the alternative, Plaintiffs request that the Court grant the limited discovery detailed in the Declaration of Stephani Ayers and set a supplemental briefing schedule to allow for the resolution of these issues on a full and fair record.

**JA483**

Dated: January 14, 2026

Respectfully submitted,

*/s/ Thad M. Guyer*

_____

Thad M. Guyer (pro hac vice)
Stephani L. Ayers (pro hac vice)
T.M. Guyer and Ayers & Friends, PC
116 Mistletoe Street
Medford, OR 97501

thad@guyerayers.com
(202) 417-3910
Counsel for Plaintiffs

14

# JA484

**Declaration in Support of Request for Limited Discovery, dated January 13, 2026 [JA484-JA490]**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**RONALD KRICK**, et al.,
Plaintiffs,

v.                                          Case No. 23-CV-8093 (AMD) (JAM)

**RAYTHEON COMPANY**, et al.,
Defendants.

_____

### DECLARATION OF STEPHANI AYERS IN SUPPORT OF PLAINTIFFS' REQUEST FOR LIMITED DISCOVERY FROM PRIOR COUNSEL RE: GROGAN/KEMP/ALLEN ESTATE AND THE GRAY PLAINTIFFS (AND LIMITED WAIVER)

I, Stephani Ayers, declare as follows:

1.      I am an attorney for all Plaintiffs remaining in the matter. I submit this declaration based on my personal knowledge, my review of docket materials in this action, documents and communications provided to me and/or my office, and communications with Plaintiffs and/or their representatives. If called as a witness, I could and would testify competently to the matters stated herein.

2.      I am associated with T. M. Guyer and Ayers & Friends, PC. My involvement in this matter began in earnest in December 2024 in connection with Plaintiffs' efforts to address the withdrawal of prior counsel Bailey & Glasser LLP ("B&G") and attorney Todd A. Walburg, and in connection with Defendants' late asserted dismissal arguments that attack, among others, Plaintiff Christine Grogan and Plaintiffs Charles Henry Gray IV and Chadwick Graham Gray (the "Gray Plaintiffs").

1

3.     Defendants' current dismissal arguments, especially as framed in their Joint Supplemental Brief (ECF No. 215), turn in material part on B&G counsel-controlled facts concerning (i) pleading decisions and party status, (ii) what B&G did or did not do regarding administrative exhaustion, and (iii) what B&G did or did not preserve in its file. These are matters outside ordinary layperson knowledge and outside the knowledge of present counsel.

## A. Efforts to obtain cooperation from B&G and Mr. Walburg; refusal to engage

4.     From the outset of my involvement, I and/or attorney Thad M. Guyer attempted to obtain B&G's and Mr. Walburg's cooperation in addressing these issues in a practical way that would minimize prejudice to Plaintiffs—beginning with conferring with them during the period when they were seeking leave to withdraw.

5.     Specifically, during the conferral process surrounding B&G's withdrawal request, we urged B&G and Mr. Walburg not to withdraw until the pending Motion(s) to Dismiss were resolved, because standing/capacity and administrative exhaustion were foreseeable and case-dispositive issues that would require information and documentation primarily within B&G's possession and knowledge.

6.     B&G and Mr. Walburg were not cooperative in a way to protect the affected Plaintiffs from foreseeable prejudice. They would not discuss the merits of their withdrawal efforts.

7.     According to plaintiffs, B&G and Mr. Walburg declined to engage with the affected clients on these specific merits-based issues in a manner that would allow clients to understand what had been done, what had not been done, what proof existed, and what steps might be needed to cure or address procedural vulnerabilities.

2

**JA486**

### B. Failure to transfer files to Guyer & Ayers or Clients; counsel-controlled evidence remains unavailable

8.      Neither B&G nor Mr. Walburg have ever transferred their files to Guyer & Ayers. To my knowledge, despite my requests and efforts to obtain the full files, or even just relevant portions of the file necessary to address standing/exhaustion and pleading-history issues, our firm has not received the B&G litigation file materials needed to litigate these threshold disputes. Similarly the clients have requested copies but have not been provided their case files.  It is a significant ethical and due process/fair procedures issue.  Upon withdrawal, a law firm is obligated to transfer all files to new counsel.  Thus far they have refused.

9.      This absence of file transfer is particularly prejudicial to Plaintiffs because, if administrative claims were prepared/submitted or if party-removal decisions were made with client authorization, the relevant evidence would ordinarily include items such as: drafts and final versions of SF-95s (or equivalent), transmittal letters, proof of mailing (e.g., certified mail receipts/tracking), internal correspondence, attorney notes, client-instruction documentation, and communications relating to decisions to include or omit parties from amended pleadings.

10.      Plaintiff Christine Grogan has represented to me that, in the course of her discussions with other surviving family members regarding her relationship to the decedent, she took a DNA test relating to paternity (i.e., to confirm biological relationship). I am informed and believe that this was done to corroborate her asserted status as a biological child as part of ongoing efforts to address family/probate-related issues implicated by Defendants' standing challenges. She does not recall the extent of her discussions or questions on this from B&G and Mr. Walburg, but she has assumed they made the determinations on her standing to sue.

11.      Ms. Grogan is a layperson. She has reported to me that she relied on prior counsel for guidance about how her standing/capacity posture intersected with the pleadings and with

estate-related steps, and that these issues became more difficult to address once B&G withdrew without meaningfully engaging on the merits and without transferring the client files as ethically required. Ms. Kemp similarly relied on the advice and counsel of the B&G attorneys. Both attempted to hire outside counsel to assist them but that cannot change thatthe relevant files for these purposes reside with B&G.

### C. The Gray Plaintiffs' party status: no authorization to drop; no judgment with prejudice; Court order lists them as parties

12. The Gray Plaintiffs have represented to me that they are adamant that they never authorized B&G or Mr. Walburg to drop them from this suit, never signed a stipulation dismissing their claims, and never knowingly agreed to any litigation step that would have the legal effect of dismissing them.

13. Based on my review of the docket, no judgment has been entered dismissing the Gray Plaintiffs with prejudice that would bar them from continuing as parties. Defendants contend that omission from an amended pleading effectuated a dismissal; however, I have not located any separate judgment or order entered by the Court dismissing the Gray Plaintiffs with prejudice.

14. Moreover, Judge Donnelly's Memorandum Decision and Order dated November 20, 2024 (ECF No. 159), which overruled Plaintiffs' objections to the withdrawal order, lists the Gray Plaintiffs in the caption as Plaintiffs (including "CHARLES HENRY GRAY, IV; and CHADWICK GRAHAM GRAY") after Defendants' cited status conference. This underscores that, at minimum, the Court's own identification of the party roster in that order included the Gray Plaintiffs.

15. Defendants also rely on statements attributed to prior counsel in open court regarding the Gray Plaintiffs' status in August 2024. B&G did not have any authority to claim

4

the Grays had dismissed their claims. To the extent Defendants contend that prior counsel stated the Gray Plaintiffs "voluntarily dismissed" their claims, the Gray Plaintiffs dispute that they authorized any such "voluntary dismissal," and prior counsel's basis for making any such representation (if made) is itself a counsel-controlled fact that requires testimony and file proof.

16.    I am unaware of any provision under federal civil procedure that absent a judgment of dismissal with prejudice would bar the Gray Plaintiffs from continuing in this litigation.

### D. Administrative exhaustion: counsel-controlled proof, and why limited discovery is necessary

17.    Defendants have relied on an agency custodian declaration (including Navy records-search evidence) asserting that a search did not locate an administrative claim for the Gray Plaintiffs. I do not dispute that such a declaration is evidence. However, if an administrative claim was prepared and submitted (including by mail) or if there were attempts to submit or cure, the best evidence typically would be counsel-held items, copies, logs, mailing receipts, cover letters, emails, or internal notes. That the Navy cannot find the administrative claims is not dispositive of whether they were indeed sent such a claim and it is not dispositive of any estoppel that might apply given the filing of this actions years ago.

18.    The Gray Plaintiffs report that they were not the persons who would have prepared, mailed, or tracked FTCA administrative submissions and that they relied on counsel for that. If proof exists, it would and should exist in B&G's file and/or within B&G/Walburg's knowledge. The US government's defense counsel Kelly reached out to the involved B&G attorneys on August 15, 2025, to confirm the Government's claimed version of events which the Government now attempts to hold out as confirmed facts. B&G never confirmed this version of events. The Government claimed that he spoke with Plaintiffs' counsel Todd Walburg on

**JA489**

October 5, 2022 and at that time he claims Mr. Walburg indicated that he would look into determining if a FTCA claim notice was filed, and if not, would dismiss these plaintiffs.   Kelly then claims the omission of the Gray Plaintiffs from the caption and body of the Second Amended Complaint filed on November 17, 2022 was the way and proof the Grays were thus dismissed from the matter.

19.    I was cc'ed on the August 15, 2025 email, but I never saw any response from any B& G attorney whatsoever. However, I have seen emails to the Grays from the Bailey and Glasser law firm in 2023 the clients provided me offering both case updates and legal advice. The May 2023 emails even tell the Grays the deadline for proceeding with additional legal actions.  This completely rejects the Government's representation as to the Grays having been removed from the case in 2022

20.    Given B&G's and Mr. Walburg's low level of cooperation during withdrawal conferral, their refusal to discuss merits and specifics, and their failure to transfer their files to my firm or to any of the Plaintiffs, Plaintiffs are not in a position to fully defend against Defendants' motion-to-dismiss arguments as to the Allen estate that implicates Ms. Grogan and Ms. Kemp and the Gray Plaintiffs without targeted discovery from prior counsel.

### E. Request for Depositions of Withdrawn Attorneys:

21.    Accordingly, Plaintiffs seek limited discovery from Todd A. Walburg (via a standard Rule 30 deposition), and Bailey & Glasser LLP (via a Rule 30(b)(6) deposition), strictly limited to topics that bear on (i) the Gray Plaintiffs' administrative exhaustion and proof-of-submission, (ii) the decision-making and client authorization (if any) regarding the Gray Plaintiffs' party status/pleading omission and any claimed dismissal, and (iii) Kemp- Grogan-related standing/capacity factual predicates insofar as they were used or relied upon in this

6

federal action.  Because Plaintiffs and clients have been unable to obtain their case files, Plaintiffs similarly request they be allowed to issue targeted subpoenas for the relevant but withheld files.

22.    Upon approval of this limited discovery, the affected Plaintiffs are prepared to provide a limited waiver of attorney-client privilege and work-product protection strictly confined to these narrow topics, so that the dismissal issues can be resolved on a reliable factual record rather than on an incomplete, one-sided record that Plaintiffs cannot fairly rebut without access to counsel-controlled facts and files.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: January 13, 2026 in the State of Florida.

/s/ *Stephani Ayers*

_____

7