# 26-1225-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

RONALD KRICK, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF OLIVER KRICK, MARGARETA KRICK, CHRISTOPHER KRICK, DOUGLAS KEVORKIAN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF RALPH KEVORKIAN, CHRISTINE GROGAN, EILEEN ZAHARIOUDAKIS, INDIVIDUALLY AND BEHALF OF THE ESTATE OF DONALD GOUGH, MICHAEL DETERESA, CHARLES HENRY GRAY IV, CHADWICK GRAHAM GRAY, CRAIG GAETKE, WANDA KEMP, INDIVIDUALLY AND ON BEHALF OF THE ESTATES OF O. LAMAR ALLEN AND ASHTON ALLEN,

*Plaintiffs-Appellants,*

LISA MICHELSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF YONATAN ROJANY, ERIC ROJANY, JODELLE GEARON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DANIEL GAETKE, TODD GAETKE,

*Plaintiffs,*

*(Caption Continued on the Reverse)*

*On Appeal from the United States District Court for the Eastern District of New York*

# BRIEF FOR DEFENDANT-APPELLEE LOCKHEED MARTIN CORPORATION

*Of Counsel:*

Judy C. Selmeci
Kathryn A. Grace
John P. Kelly
Julia Audibert

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
*Attorneys for Defendant-Appellee Lockheed Martin Corporation*
150 East 42nd Street
New York, New York 10017
212-490-3000

PHP (212) 719-0990
appeals@phpny.com

*v.*

RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION,
LOCKHEED MARTIN CORPORATION, UNITED STATES MISSILE DEFENSE AGENCY,
UNITED STATES DEPARTMENT OF DEFENSE, UNITED STATES NAVY,
UNITED STATES OF AMERICA,

*Defendants-Appellees,*

DOES 1 through 20,

*Defendant.*

## Corporate Disclosure

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, appellee Lockheed Martin Corporation discloses that:

(a) Lockheed Martin has no corporate parent company; and

(b) ten percent or more of Lockheed Martin's stock is owned by State Street Corporation.

## Table of Contents

**Page**

Corporate Disclosure....................................................................................i

Table of authorities ....................................................................................iv

Jurisdictional Statement ..............................................................................1

Statement of the Facts ..................................................................................2

(a) The Parties ....................................................................................2

(b) The Crash of TWA Flight 800 .....................................................3

(c) The 1996 Lawsuit ........................................................................4

(d) The Settlement and Release of the 1996 Lawsuit .......................6

(e) Dr. Stalcup's FOIA Litigation......................................................8

(f) The Current Lawsuit.....................................................................8

(g) The Motion to Dismiss ...............................................................10

(h) The Dismissal Order on Appeal ..................................................10

(i) The Order Relieving Counsel.......................................................11

Standard of Review ....................................................................................11

Argument.....................................................................................................12

Point I

The Plaintiffs Lack Standing......................................................................12

--- The Closed Estates Cannot Sue .......................................................12

--- The Open Estate Claims are Also Defective ....................................14

--- The Individuals Lack Standing .......................................................16

i. Negligence and Product Liability Claims ....................................17

ii. Wrongful Death ..........................................................................18

iii. Derivative Claims Cannot Stand Without a Viable Main Claim ..............................................................................20

--- Rule 17 is not a Tool for Delaying the Inevitable ................................20

Point II

The Would-be Plaintiffs' Claims are Devoid of Merit .....................................23

--- The Releases Bar the Claims ...............................................................23

--- The "Missile Theory" has Always Been Known .................................24

--- The Releases Were Signed Knowingly and Voluntarily .....................26

--- The Conspiracy Theory is Incompatible with Reliance .......................30

--- The Statute of Limitations has Run ....................................................33

Point III

The Withdrawal is not a Contested Issue and It does not Impact the Rightful Dismissal..............................................................................35

Conclusion ........................................................................................................37

Certificate of Compliance ...............................................................................38

## Table of Authorities

**Page(s)**

**Cases**

*1420 Concourse Corp. v. Cruz*,
175 A.D.2d 747 (1st Dep't 1991) ....................25

*Ambroise v. United Parcel Serv. of Am., Inc.*,
143 A.D.3d 929 (2d Dep't 2016)....................19

*Brandon v. Columbian Mut. Life Ins. Co.*,
264 A.D.2d 436 (2d Dep't 1999)....................13, 14

*Caraballo v. City of New York*,
24-2051-cv, 2025 U.S. App. LEXIS 12041 (2d Cir. 2025)....................28, 29, 30

*Cascardo v. Dratel*,
171 A.D.3d 561 (1st Dep't 2019) ....................31

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
790 F.3d 411 (2d Cir. 2015) ....................20

*DeLuca v. Gallo*,
287 A.D.2d 222 (2d Dep't 2001)....................18

*DiVittorio v. Equidyne Extractive Indus.*,
822 F.2d 1242 (2d Cir. 1987) ....................31

*Ellul v. Congregation of Christian Bros.*,
774 F.3d 791 (2d Cir. 2014) ....................34

*Farrington v. Poole*,
No. 24-2718, __ F.3d __,
2026 U.S. App. LEXIS 23584 (2d Cir., Aug. 6, 2026) ....................5

*Fund Liquidation Holdings LLC v. Bank of America Corp.*,
991 F.3d 370 (2d Cir. 2021) ....................21, 22

*Garmon v. County of Rockland*,
No. 10 Civ. 7724, 2013 U.S. Dist. LEXIS 19486
(S.D.N.Y. Feb. 11, 2013)....................13, 14

*Gelboim v. Bank of America Corp.*,
823 F.3d 759 (2d Cir. 2016) ....................................................................12

*Griffin v. Garratt-Callahan Co.*,
74 F.3d 36 (2d Cir. 1995) ........................................................................20

*Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props.*,
435 F.3d 136 (2d Cir. 2006) ...........................................................17, 19

*Guest v. Hansen*,
603 F.3d 15 (2d Cir. 2010) .............................................................17, 18

*Hartke v. Bonhams & Butterfields Auctioneers Corp.*,
22-CV-3571 (PGG), 2024 U.S. Dist. LEXIS 11483 (S.D.N.Y. Jan. 23, 2024), *aff'd sub nom.*, 24-258, 2024 U.S. App. LEXIS 25026 (2d Cir. Oct. 3, 2024) ........................................12

*Hartke v. Hartke*,
2024 U.S. App. LEXIS 25026 (2d Cir. 2024) ..................................................21

*Hernandez v. New York City Health & Hosps. Corp.*,
78 N.Y.2d 687 (1991) ..................................................................................19

*Hill v. Kelly*,
180 A.D.2d 935 (3d Dep't 1992)....................................................................25

*Joachim v. United States*,
22-cv-5719 (DLI)(RML), 2023 U.S. Dist. LEXIS 173129 (E.D.N.Y. Sep. 27, 2023) ................................19

*Jordan v. Jordan*,
120 A.D.3d 632 (2d Dep't 2014)....................................................................19

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ........................................................................35

*Klein v. Metro. Child Servs., Inc.*,
100 A.D.3d 708 (2d Dep't 2012)....................................................................20

*LeMay v. H.W. Keeney, Inc.*,
124 A.D.2d 1026 (4th Dep't 1986) ................................................................29

*MacNeil v. Berryhill*,
869 F.3d 109 (2d Cir. 2017) ........................................................................18

*Mangini v. McClurg*,
24 N.Y.2d 556 (1969) ..........................................................................27, 28

*Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*,
__ F.3d __, 2025 WL 2232879 (2d Cir. Aug. 6, 2025) ......................................12

*Mulero v. City of Bridgeport Bd. of Educ*.,
448 Fed. Appx. 129 (2d Cir. 2011)..................................................................12

*Palladino v. Metropolitan Life Ins. Co.*,
188 A.D.2d 708 (3d Dep't 1992)......................................................................13

*Raphael v. Booth Memorial Hospital*,
67 A.D.2d 702 (1979) ........................................................................................25

*Reyn's Pasta Bella, LLC v. Visa USA, Inc*.,
442 F.3d 741 (9th Cir. 2006) ..............................................................................5

*Rubin v. Sabharwal*,
171 A.D.3d 580 (1st Dep't 2019) .....................................................................32

*Shalam v. KPMG LLP*,
89 A.D.3d 155 (1st Dep't 2011) .......................................................................31

*Shelley v. South Shore Healthcare*,
123 A.D.3d 797 (2d Dep't 2014)........................................................................17

*United States Life Ins. Co. in the City of NY v. Horowitz*,
192 A.D.3d 613 (1st Dep't 2021) .............................................................30, 32

*Vanderbilt Group, LLC v. Dormitory Auth. of the State of NY*,
51 A.D.3d 506 (1st Dep't 2008) ........................................................................32

*VKK Corp. v. NFL*,
244 F.3d 114 (2d Cir. 2001) ..............................................................................24

*Wichers v. Wichers*,
170 A.D.2d 797 (3d Dep't 1991).................................................................25, 29

*Wright v. Eastman Kodak Co.*,
04-CV-6332L (DGL), 445 F.Supp.2d 314 (W.D.N.Y. 2006) ......................25, 26

**Statutes**

28 U.S.C. § 1331 ....................................................................................2

28 U.S.C. § 1332 ....................................................................................2

28 U.S.C. § 1346(b) ................................................................................2

28 U.S.C. § 2671 *et seq* ..........................................................................2

EPTL § 4-1.1 ........................................................................................18

EPTL § 4-1.1(a) ....................................................................................18

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...............................................12

FRAP 4 ...............................................................................................2, 6

Rule 12(b) ...............................................................................................1

Rule 12(b)(1) .........................................................................................10

Rule 12(b)(6) .........................................................................................10

Rule 17 .....................................................................................20, 21, 23

Rule 17(a)(3) ....................................................................................11, 20

**Preliminary Statement**

This appellee brief is respectfully submitted on behalf of Lockheed Martin Corporation, who respectfully requests that this court affirm the March 2, 2026 order of the District Court (Donnelly, A., U.S.D.J.) and the resulting March 3, 2026 judgment, that dismissed the case on the defendants' Rule 12(b) motions.

There are a myriad of fatal defects in the appellants' case. The appellants are a few of the remaining believers of the long debunked conspiracy theory that the cause of the 1996 crash of TWA 800 was an errant US missile. Many of them still have no authority to speak for any passenger's estate and certainly all appellants lacked standing and the requisite letters testamentary at the commencement of the litigation. Some speak in contravention of distributees' wishes. Some are suing for their own damages, without any cause of action to which a derivative claim could attach. None present or could ever present a sustainable case as the claims are barred by broad releases and the statute of limitations.

Each of the estates and distributees for whom the would-be plaintiffs wish to speak has executed binding releases that bar the current suit. There are no grounds to vacate these releases since they were signed knowingly, more than two decades ago, by counseled plaintiffs.

The current would-be plaintiffs must not be heard on and certainly must not be followed into undoing these settlements in pursuit of untimely claims.

## Jurisdictional Statement

The would-be plaintiffs' claims are brought, inter alia, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. They claimed jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 28 U.S.C. § 1346(b).

The appeal is properly before this court as it results from the District Court's dismissal of the complaint (SPA. 1-25) and the subsequent entry of judgment. (SPA. 26). FRAP 4.

## Statement of the Facts

*(a) The Parties*

Nine would-be plaintiffs remain in this action. [1] Four of the remaining would-be plaintiffs purport to sue individually and as personal representatives of five of the decedents' estates; the remaining five would-be plaintiffs have asserted claims only in their individual capacities. (S.A. 1-5; JA. 98).

Per the complaint, the plaintiffs who claim to represent passengers' estates in addition to having individual claims, are:

Ronald Krick, on behalf of the estate of his son, Oliver Krick. (JA. 101, ¶ 15);

---

[1] Four plaintiffs voluntarily dismissed. They are: Jodelle Gearon, Todd Gaetke, Eric Rojany and Lisa Michelson. (SPA. 6; PACER 1:23-CV-08093, doc. nos. 137, 138, 139, 148).

Douglas Kevorkian, on behalf of the estate of his father, Ralph G. Kevorkian. (JA. 101, ¶ 18);

Wanda Kemp, on behalf of the estates of her brother O. Lamar Allen and his son, Ashton Allen. (JA. 102, ¶ 24); and

Eileen Zaharioudakis on behalf of the estate of her brother, Donald E. Gough. (JA. 102, ¶ 26).

The remaining plaintiffs bring individual claims only. They are, according to the complaint:

Margareta Krick, Oliver Krick's mother (JA. ¶ 16);

Christopher Krick, Oliver Krick's brother (JA. ¶ 17);

Craig Gaetke, Daniel Gaetke's brother (JA. ¶ 23);

Christine Grogan, O. Lamar Allen's daughter (JA. ¶ 25); and

Michael Deteresa, Donald E. Gough's nephew (JA. ¶ 27).

The defendants are Lockheed Martin, Raytheon Company (now referred to as RTX), and the United States, who are all generally alleged to have been involved with the testing of missiles that, according to these would-be plaintiffs, ultimately caused the crash. (JA. 100 ¶¶ 8-9).

*(b) The Crash of TWA Flight 800*

TWA Flight 800 crashed just after takeoff from JFK Airport, on July 17, 1996. (JA. 99, ¶ 2). All 230 passengers and crew perished. (JA. 99, ¶ 2).

As the would-be plaintiffs recount, on the night of the crash, "numerous eyewitnesses described seeing a streak of light arcing from the surface of the ocean toward TWA 800 and then seeing an explosion and an object break apart and fall into the ocean." (JA. 104 ¶ 35). These descriptions gave rise to the well-known conspiracy theory that TWA 800 was shot down by a missile. (JA. 105-106, ¶¶ 41-48).

As the complaint acknowledges, the National Transportation Safety Board and the Federal Bureau of Investigation investigated the crash and determined that an electrical fire in the plane's fuel tank caused the explosion. (JA. 99 ¶ 3, 104 ¶¶ 38-39).

The CIA held a further press conference to debunk the missile conspiracy theory, presenting an animation and video of the accident with the caption "Not a Missile". (JA. 104-108).

*(c) The 1996 Lawsuit*

Following the crash, various plaintiffs brought wrongful death lawsuits against Boeing, TWA and Hydro-Aire, Inc. (JA. 13). By 1998, 145 cases had been consolidated into one litigation. (JA. 13).

The "missile theory" was raised, discussed and litigated in that original proceeding. (PACER 1:23-CV-08093, doc. no. 180-4 at 72).[2] The plaintiffs in the original action served Requests to Admit that asked, *inter alia*, whether the crash was caused by "an air to air missile", "a surface to air missile", "a shoulder held surface to air missile", an improvised explosive device, "a bomb of any design or construction", or "any other external source, factor, implements or physical phenomena, including, but not limited to a meteorite, space debris or vehicle". (PACER 1:23-CV-08093, doc. no. 180-4 at 57-60).

The original plaintiffs also served interrogatories asking Boeing to identify areas of the wreckage that might show damage from "some foreign object." (PACER 1:23-CV-08093, doc. no. 64). The original plaintiffs deposed several witnesses, including Boeing's defense technician, Jamie Childress, who was specifically "assigned to consider whether a missile could have caused the disaster." (PACER 1:23-CV-08093, doc. no. 180-4 at 63).

At a pretrial conference on December 9, 1999, the Court and parties discussed "the missile and bomb issue" at length. (PACER 1:23-CV-08093, doc. no. 180-4 at 69-83). The plaintiffs' counsel told the court that the missile theory

---

[2] We respectfully request that this court take judicial notice of the readily available and verifiable filings referenced in this brief. *See, e.g.*, *Farrington v. Poole,* No. 24-2718, __ F.3d __, 2026 U.S. App. LEXIS 23584 at *12 (2d Cir., Aug. 6, 2026), citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (stating that the Circuit Court "may take judicial notice of court filings and other matters of public record.")

was likely a "false issue" that "will fade in the near future." (PACER 1:23-CV-08093, doc. no. 180-4 at 75-77). Still, counsel sought a discovery timetable to explore it. (PACER 1:23-CV-08093, doc. no. 180-4 at 75-77).

*(d) The Settlement and Release of the 1996 Lawsuit*

The original suit then settled. Each of the estates invoked by the would-be plaintiffs in the current action (the estates of Oliver Krick, Ralph Kevorkian, Ashton Allen, O. Lamar Allen and Donald Gough) signed broad releases and stipulated to the dismissal of the original action, with prejudice. (JA. 316-323, 325-332, 334-348, 359-366, 380-387). Of note, Zaharioudakis and Deteresa were not signatories to the releases – because they were not the estate administrators. (JA. 359-378). Individual plaintiffs Ronald Krick, Margareta Krick, Christopher Krick, Christine Grogan, Zaharioudakis and Kevorkian were then estate representatives and they signed the releases for the estates. *Id.*

The estates associated with the remaining individual plaintiffs (Craig Gaetke, Wanda Kemp and Michael Deteresa) each signed releases "on behalf of Decedent's Estate and all heirs thereto." (JA. 325, 334, 350, 360).

The releases were each signed by authorized representatives of the estates. (JA. 316-323, 325-332, 334-348, 359-366, 380-387). All of the estates were represented by counsel.

Each of the releases discharged "any and all actions, causes of action, suits . . . arising out of, or in any way related to the [the crash]." (JA. 317). The releases specifically released entities that were not identified by name by "Releasors stat[ing] that they intend to release fully all individuals, entities or corporations, whether specifically named or not, that might be liable for damages arising out of the injury to or death of Decedent." (JA. 317).

The releases also all contained an unknown-claims and facts provision: "Releasors enter into this Release contemplating the possibility that facts may be subsequently discovered". (JA. 318). The releases acknowledged that "facts concerning the[ir] claims may be found hereafter to be other than or different from the facts the[] [releasors] now believe to be true. Releasors expressly accept and assume the risk of any such possible differences in facts and agree that this Release shall remain in full effect notwithstanding." (JA. 319). The releases further provided that the "Releasors intend to discharge Releasees from all liability for all losses, injuries or damages arising out of the injury to or death of Decedent, both those now known and those that may be subsequently discovered." (JA. 318).

The releases also contain an anti-reliance clause: "In entering into this Release, Releasors do not rely on any statement or representation made by any Releasee . . . concerning: . . . b. The cause or causes for the Event; or c. The legal liability of any Releasee." (JA. 319).

Following the settlements, the claims of the relevant estates were dismissed with prejudice by stipulation: (JA. 291-292 [Estate of Donald E. Gough]; JA. 294-296 [Estate of Oliver Krick]; JA. 300-302 [Estate of Ashton Lamar Allen]; JA. 308-310 [Estate of Otis Lamar Allen]).

*(e) Dr. Stalcup's FOIA Litigation*

According to the complaint, in March 2010, Dr. Thomas Stalcup submitted Freedom of Information Act requests to the CIA and the Department of Defense seeking information relating to the TWA 800 investigation and government missile activity. (JA. 99). Dr. Stalcup brought FOIA actions when his requests were denied.

The would-be plaintiffs allege that Stalcup obtained evidence proving the missile theory. (JA. 99 ¶ 4). The plaintiffs now bring this action based entirely upon Dr. Stalcup's alleged findings. (JA. 99-100 ¶¶ 4-8).

*(f) The Current Lawsuit*

On June 28, 2022, thirteen plaintiffs brought this action individually and some on behalf of the estates of decedents of the crash. (JA. 25). The operative pleading is the Second Amended Complaint, filed November 17, 2022, in the District Court of Massachusetts. (JA. 98). Venue was changed to the Eastern District of New York.

The complaint alleges Dr. Stalcup's FOIA litigation uncovered evidence showing that the defendants covered up the true cause of the accident. (JA. 100 ¶ 6). The complaint asserts claims for negligence and wrongful death against all defendants and product liability against Raytheon, Lockheed Martin and the Doe defendants. (JA. 98-134).

It is undisputed that by the time that the current complaint was filed, the relevant estates were either closed or had been inactive:

The estate of Ralph G. Kevorkian had been administrated by Christine Enlow and closed on August 18, 1999. (JA. 378; PACER 1:23-CV-08093, doc. no. 194-2 at 15). Douglas Kevorkian filed a Petition to Reopen Estate on June 23, 2025, after this lawsuit was filed. (PACER 1:23-CV-08093, doc. no. 194-2 at 15).

The estate of Donald E. Gough was administrated by Erik Gough and closed on August 26, 1999. (JA. 359).

The estate of Oliver Krick, with Ronald Krick and Margareta Krick as co-administrators, closed on or about August 2, 2001. (PACER 1:23-CV-08093, doc. no. 194-2 at 35). The petition to reopen was not filed until June 24, 2025 – nearly three years after this action commenced. (PACER 1:23-CV-08093, doc. no. 194-2 at 35-36).

Only the estates of O. Lamar Allen and Ashton Allen are currently open – and that's by a fluke. Betty Anne Allen, the administrator, had filed a final return

for the estate on June 17, 2002 and requested that the estate be closed. (JA. 446-447; PACER 1:23-CV-08093, doc. no. 194-2 at 2). Surrogates' Court did not close the estate – so it has been sitting there, effectively abandoned and wholly inactive.

It is also undisputed that – aside from Ronald Krick – none of the individual plaintiffs were administrator of any of the estates. (JA. 9-13).

*(g) The Motion to Dismiss*

On April 1, 2025, the defendants filed motions pursuant to Rule 12(b)(1) and 12(b)(6), to dismiss. (JA. 136, 186, 244).

Among their arguments, the defendants pointed out that: (1) the plaintiffs purporting to represent estates lack standing because they are not court-appointed personal representatives, the estates were closed, and the complaint does not adequately plead individual damages; (2) the general releases signed in the 1996 action bar all claims; and (3) the applicable statutes of limitations have run and the doctrine of fraudulent concealment does not toll them. (JA. 136, 186, 244).

*(h) The Dismissal Order on Appeal*

On March 2, 2026, the district court (Donnelly, A., U.S.D.J.) granted each of the defendants' motions to dismiss. (SPA. 1-25). Judgment was entered on March 3, 2026. (SPA. 26).

The District Court held that the plaintiffs lack standing given the undisputed fact that none of the plaintiffs were court-appointed personal representatives and

almost all of the estates were closed by the early 2000s. (SPA. 9-12). As to the would-be plaintiffs asserting claims in their individual-capacity, the District Court held that only administrators may pursue wrongful death and survivorship claims and that the complaint does not allege facts that could support negligence, wrongful death or product liability claims by these individuals. (SPA. 13).

The District Court also held that "[e]ven assuming that the plaintiffs could cure these deficiencies [under Rule 17(a)(3)] the complaint would still have to be dismissed" because the releases from the original action bar the current claims and any amendment would be futile. (SPA. 12). The District Court noted the broad language of the releases. (SPA. 25). The District Court also concluded that the plaintiffs did not make out fraud claims separate from the circumstances under which the parties signed the releases in the original action. (SPA. 25).

The court declined to reach defendants' remaining arguments. (SPA. 1-25). The complaint was dismissed and judgment was entered. (SPA. 25-26).

The plaintiffs appeal. (SPA. 491-492).

*(i) The Order Relieving Counsel*

Separately, the District Court heard and ultimately granted a motion to be relieved as the would-be plaintiffs' counsel. (SPA. 27-36). Lockheed Martin took no position on this motion.

The plaintiffs appealed from this order as well. (SPA. 491-492).

## Standard of Review

The plaintiffs' appeal from the dismissal order is entitled to *de novo* review. *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, __ F.3d __, 24-598, 2025 WL 2232879, at *3 (2d Cir. Aug. 6, 2025) (holding that "[the Second Circuit] review[s] the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo."), citing *Gelboim v. Bank of America Corp.*, 823 F.3d 759, 769 (2d Cir. 2016).

The plaintiffs' appeal from the order granting their counsel's motion to withdraw is subject to a discretionary review. *Mulero v. City of Bridgeport Bd*. of Educ., 448 Fed. Appx. 129, 130 (2d Cir. 2011) (holding that the district court did not abuse its discretion in granting counsel's motion to withdraw where plaintiffs' claims lacked merit).

## Argument

### Point I The Plaintiffs Lack Standing

--- *The Closed Estates Cannot Sue*

The estates of Ralph Kevorkian and Donald Gough are both closed. (PACER 1:23-CV-08093, doc. no. 194-2 at 15; JA. 372). Consequently, neither estate has an administrator currently appointed and no one has the capacity to assert any claims on behalf of the estate or distributees. *Hartke v. Bonhams & Butterfields Auctioneers Corp.*, 22-CV-3571 (PGG), 2024 U.S. Dist. LEXIS 11483

(S.D.N.Y. Jan. 23, 2024) (holding that, under New York law, a would-be plaintiff cannot assert wrongful death claims unless they are "a duly appointed personal representative [of the estate]" or if the would-be plaintiff can plead "extraordinary circumstances" that would warrant permitting the plaintiff to proceed with the claims), *aff'd sub nom.*, 24-258, 2024 U.S. App. LEXIS 25026 (2d Cir. Oct. 3, 2024); *Garmon v. County of Rockland*, No. 10 Civ. 7724, 2013 U.S. Dist. LEXIS 19486, at *6 (S.D.N.Y. Feb. 11, 2013) (holding that "[o]nly a duly appointed personal representative may bring suit on behalf of a decedent in New York"), citing *Palladino v. Metropolitan Life Ins. Co.*, 188 A.D.2d 708, 709 (3d Dep't 1992) and *Brandon v. Columbian Mut. Life Ins. Co.*, 264 A.D.2d 436, 436 (2d Dep't 1999).

Further, the current would-be plaintiffs were never administrators of the closed estates. Instead, Christine Enlow (not would-be plaintiff Douglas Kevorkian) had been appointed administrator of the Kevorkian estate (PACER 1:23-cv-08093 doc. no. 194-2 at 15) before that estate closed, ending the appointment, on August 18, 1999. (PACER 1:23-CV-08093, doc. no. 194-2 at 15). Yet Douglas Kevorkian, who has never received letters of administration, purports to bring suit on the estate's behalf without pleading any extraordinary circumstances that would warrant his standing. (JA. 98).

Similarly, it was William E. Smith who served as the personal representative of the Gough estate. (PACER 1:23-CV-08093, doc. no. 194-2 at 9). The Gough estate closed after final distribution, August 26, 1999. (JA. 367-372). Eileen Zaharioudakis, Donald Gough's sister, has never been appointed administrator - yet she, too, purports to sue on the estate's behalf. (JA. 367-372).

Zaharioudakis and Enlow are thus without any standing to sue on behalf of any estate, and certainly not on behalf of the *closed* estates of Ralph Kevorkian and Donald Gough. *Id.*

--- *The Open Estate Claims are Also Defective*

The remaining estate claims relate to the two Allen decedents and Krick – but these are also defective.

Betty Anne Allen has always been and remains the appointed sole administrator of the estates of her husband, O. Lamar Allen, and her son, Ashton Allen. (PACER 1:23-CV-08093, doc. 194-2 at 2; JA. 331, 340, 446). Wanda Kemp, whom the plaintiffs' complaint identifies as administrator suing on behalf of the Allen estates, is in fact not an administrator of these estates. (JA. 98). Thus, Wanda Kemp does not have standing to bring any claim on behalf of either Allen estate. *Garmon*, 2013 U.S. Dist. LEXIS 19486, at *6.

Betty Anne Allen filed a final return on June 17, 2002 and requested closure of the estate on June 18, 2002. (PACER 1:23-CV-08093, doc. no. 194-2 at 2). The request to close was not ruled upon.

Meanwhile, on June 23, 2025, Sheldon E. Friedman – who is not named in the underlying action but was "in contact" with Wanda Kemp – petitioned to be appointed successor executor solely to join this pending litigation. Astonishingly, he made the request for his appointment without Betty Anne Allen's consent. (PACER 1:23-CV-08093, doc. no. 194-2 at 3-6).

In fact, the Allen family has since "vehemently" objected to Friedman's appointment and to this litigation because: (1) all releases bar any future claims; (2) the estate beneficiaries would bear responsibility for any costs including appellee's counsel's attorney's fees entered by the Court in favor of the defendants; and (3) Friedman was contacted by Wanda Kemp, who has "actively harassed and caused severe emotional and financial harm to [the Allen] family" and that both Kemp and Friedman act solely out of "greed." (JA. 446-447).

The declaration further states that none of the O. Lamar Allen estate beneficiaries is a plaintiff in this action, that they do not consent to the estate being represented in this litigation, and that Wanda Kemp fraudulently represents herself as a representative and beneficiary of the O. Lamar Allen and Ashton Allen estates. (JA. 446-447). The declaration further requests that the estate be closed to "protect

the beneficiaries" from the "greed" and "harassment" of Friedman and Kemp. (JA. 447). This is not a caption error the plaintiffs can cure: the persons with lawful authority affirmatively oppose this litigation. Parties acting out of "pure greed" cannot then be permitted to disturb the family and the estate based on a conspiracy theory. (JA. 447).

The status of the Krick estate likewise does not save the action. Ronald W. Krick and Margareta Krick, Oliver's parents, were appointed as representatives to the Krick estate, on or about July 14, 1998. (PACER 1:23-CV-08093, doc. no. 194-2 at 35). The estate closed on or about August 2, 2001. (PACER 1:23-CV-08093, doc. no. 194-2 at 35). The petition to reopen was not filed until June 24, 2025 – nearly three years after this action commenced. (PACER 1:23-CV-08093, doc. no. 194-2 at 35-36). Regardless, the Krick family released all claims, as discussed further below.

--- *The Individuals Lack Standing*

The remaining five plaintiffs sued solely in their individual capacities. They asserted claims for negligence, product liability, wrongful death and survivorship. (JA. 98). As these plaintiffs are not administrators of any estate, nor beneficiaries for purposes of wrongful death claims, they have no standing to bring such claims.

i. Negligence and Product Liability Claims

Claims for personal injuries sustained by a decedent belong to the decedent's estate and must be prosecuted by a duly appointed representative. *Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010). "A personal representative who has received letters of administration of a decedent's estate is the only party who is authorized to commence a survival action to recover damages for personal injuries sustained by the decedent." *Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props*., 435 F.3d 136, 140 (2d Cir. 2006) (holding that the plaintiffs "may not maintain their claim for negligence, which is nothing more than a survival action, given that they are not personal representatives and do not have the putative powers possessed by those carrying letters testamentary to prosecute such action"); *Shelley v. South Shore Healthcare*, 123 A.D.3d 797, 797 (2d Dep't 2014) (holding that a personal representative "who has received letters of administration. . . is the only party" that may commence a "survival action to recover damages for personal injuries sustained by the decedent.")

Because none of the five individual would-be plaintiffs have letters appointing them administrators, none may prosecute the decedents' negligence or product-liability claims.

Nor can these would-be individual plaintiffs bring claims for negligence or product liability in their own right; the complaint does not plead any personal

injuries independent of the decedents' deaths sufficient to sustain negligence or product-liability causes of action.

ii. Wrongful Death

Wrongful-death recovery belongs to the estate's beneficiaries as defined in EPTL § 4-1.1. The would-be individual plaintiffs are not on the list of potential beneficiaries, however. *Guest*, 603 F.3d at 21.

Christopher Krick is not a distributee of Oliver Krick because Christopher is Oliver's brother and Oliver's parents, Ronald and Margareta Krick, survived him. (PACER 1:23-CV-08093, doc. no. 194-2 at 35); *MacNeil v. Berryhill*, 869 F.3d 109, 112 (2d Cir. 2017) ("in the case of a decedent who is survived by one or both parents, no spouse and no issue, the whole goes to the surviving parent or parents. EPTL § 4-1.1(a)"); *DeLuca v. Gallo*, 287 A.D.2d 222, 225-226 (2d Dep't 2001) (where a decedent dies intestate with surviving parents and no spouse or issue, property passes to the parents "regardless of the existence of siblings").

Craig Gaetke is similarly not a distributee because he is Daniel Gaetke's brother and their father, David Lee Gaetke, is alive. (JA. 354-355). Michael Deteresa is even more remote: He is Donald Gough's nephew. Meanwhile, the Gough release identifies Erik E. Gough as Donald Gough's son and sole survivor. (JA. 364).

Not being distributees under New York's EPTL or estate representatives and having no individual claim that is sustainable, these plaintiffs must be dismissed. *Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props*., 435 F.3d 136, 140 (2d Cir. 2006) (holding that in New York, a wrongful death action must be prosecuted by the estate's personal representative), *Hernandez v. New York City Health & Hosps. Corp*., 78 N.Y.2d 687, 691 (1991); *Joachim v. United States*, 22-cv-5719 (DLI)(RML), 2023 U.S. Dist. LEXIS 173129, *7 (E.D.N.Y. Sep. 27, 2023) ("wrongful death and survival actions may be brought only by the decedent's personal representative, defined as the 'person who has received letters to administer the estate of a decedent'"), citing *Jordan v. Jordan*, 120 A.D.3d 632, 632 (2d Dep't 2014); *Ambroise v. United Parcel Serv. of Am., Inc.*, 143 A.D.3d 929, 932 (2d Dep't 2016) (holding that a wrongful-death action must be brought by the appointed personal representative on behalf of all distributees, and therefore the decedent's children lacked standing to assert individual causes of action even though they were distributees). Thus, even if Margareta Krick (Oliver Krick's mother) or Christine Grogan (O. Lamar Allen's daughter) could claim distributee status, they still could not maintain wrongful-death or survival claims in their own names.

iii. Derivative Claims Cannot Stand Without a Viable Main Claim

Apart from the question of who can sue for the estate, as a distributee or otherwise, the individual claims are fatally, procedurally defective. This is because the only conceivable individual claim that these family members could bring sounds in causes of action that are by definition derivative of the main claim. The viability of these claims falls with the underlying claims. They cannot stand alone. Yet such stand-alone, individual claims are precisely what the would-be plaintiffs have alleged. *Griffin v. Garratt-Callahan Co*., 74 F.3d 36, 37 (2d Cir. 1995) (holding that "since none of [the main] claims survive" the derivative claims "must also be dismissed"); *Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708, 711 (2d Dep't 2012) ("[a] derivative cause of action cannot survive the dismissal of the main claims for damages").

--- *Rule 17 is not a Tool for Delaying the Inevitable*

Rule 17(a)(3) prevents dismissal only where there's been mis-identification of the real party-in-interest and the real party-in-interest can ratify, join, or substitute within a reasonable time. That provision was "added later to avoid forfeiture and injustice when an *understandable mistake* has been made in selecting the party in whose name the action should be brought." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 421 (2d Cir. 2015) (emphasis added). But Rule 17 does not require, for example, that a court hold a case open

while unauthorized plaintiffs attempt to obtain appointment as representatives. *Hartke v. Hartke*, 2024 U.S. App. LEXIS 25026, *3 (2d Cir. 2024) (holding that, "[a]lthough Plaintiff spills a great deal of ink arguing that the district court misapplied Rule 17 and New York law in its standing analysis, her arguments are ultimately of no moment, since the district court lacked subject-matter jurisdiction to decide this case for a separate reason.")

*Fund Liquidation Holdings LLC v. Bank of America Corp.*, 991 F.3d 370 (2d Cir. 2021), does not advance the plaintiffs' position. *Fund Liquidation* was a class action by various funds against banks, for manipulating interest rates. A mere year after the complaint was filed, the banks discovered that the complaint had not disclosed that two of the plaintiff funds had been dissolved and assigned to Fund Liquidation. *Id.* at 376. The banks concluded that Fund Liquidation was "pulling the strings behind the scenes" and was "the real plaintiff behind the case." *Id.* at 376-77. In response to this objection, the Second Circuit held that Fund Liquidation could be substituted under Rule 17 because Article III standing is satisfied "so long as a party with standing to prosecute the specific claim in question exists at the time the pleading is filed," and that real party then ratify, join, or is substituted "within a reasonable time." *Id.* at 386.

*Fund Liquidation* has no facts in common with the facts here. Here, nearly all estates closed by the early 2000s. Nor did plaintiffs identify an already-existing

real party in interest with authority at the time of filing: Oliver Krick's estate reopened only on July 15, 2025 – after this action began – while the remaining estate plaintiffs merely sought future reopenings or appointments. (PACER 1:23-CV-08093, doc. no. 194-2). Further, seeking this relief decades into the plaintiffs' belief in the missile theory and four years after commencement of this action and only in response to defendants' motion to dismiss, cannot constitute "reasonable time" where the substitution in *Fund Liquidation* occurred within one year.

Nor can plaintiffs satisfy *Fund Liquidation*'s requirement that the real party in interest be willing to join and have standing to sue from the inception of the case. Even if the closed estates were revived and new administrators named, those appointments could only *follow* the litigation. This is insufficient under *Fund Liquidation*. *Fund Liquidation Holdings LLC.*, 991 F.3d at 386.

That said, it is not clear at all that the estates can even get that far: the Allen beneficiaries, for example, expressly and specifically refuse to authorize litigation in the estate's name and will not hear of appointment of Wanda Kemp as estate administrator. (JA. 446-449). Allowing substitution now would prejudice Lockheed Martin by requiring it to relitigate claims that authorized representatives released.

The standing defects are therefore not technical pleading errors. Because plaintiffs lack standing to prosecute both the estate claims and the individual

claims, and because Rule 17 does not authorize the belated substitution plaintiffs seek, the dismissal for lack of standing is wholly appropriate and any changes to the pleadings would ultimately be futile.

**Point II The Would-be Plaintiffs' Claims are Devoid of Merit**

--- *The Releases Bar the Claims*

The parties agree on this much: on their face, the releases bar the would-be plaintiffs' claims. Indeed this is so since they unambiguously release liability for "all suits" "in any way related [to the crash]" as well as "all" people and companies that "might be liable" and since they specifically state that due consideration was given to the possibility that new facts may come to light and that the releasors did not rely on the releasees' statements in signing the release. (A. 317-319). That is, the releases predict (and are supposed to prevent) exactly what is happening now; a new lawsuit premised on theories that have already been released.

The information uncovered by Dr. Stalcup has emboldened these would-be plaintiffs (and their new counsel) so much that they have outright ignored fatal deficiencies in their standing (along with objecting families!) only to barrel on to challenge the enforceability of the releases. Their efforts to vacate the release are meritless and self-defeating, however. So even if this court were to entertain their arguments, it must reject them and conclude that there are no grounds whatsoever for disturbing these long-settled claims.

--- *The "Missile Theory" has Always Been Known*

The plaintiffs in the original suit were well aware of the "missile theory." (PACER 1:23-CV-08093, doc. no. 180-4 at 57-60). In fact, everyone was aware of it. That theory emerged instantaneously and well before any scientifically backed, proper investigation of the crash could be conducted. So prevalent was the theory that the CIA felt it necessary to specifically address and debunk it – as the would-be plaintiffs' complaint readily acknowledges. (JA. 98-134).

Thus, no one, not the original plaintiffs nor the current would-be plaintiffs, have presented information or theories that was not already in the public discourse decades ago. Instead and in effect, what the would-be plaintiffs appear to believe they have learned about is potential evidence that could have (in their view) strengthened the original case.

So, leaving standing issues aside, what lies underneath the thin veil of an excuse of "new evidence" is actually just a group of would-be plaintiffs who assess their chances of success on the underlying case differently than the original plaintiffs did at the time that they liquidated those chances by contracting for their settlement amounts. This is simply not grounds for vacating a settlement. *VKK Corp. v. NFL*, 244 F.3d 114, 124 (2d Cir. 2001) (holding that where the releasor "had sufficient knowledge of the conspiracy as a whole at the time he executed the Release to permit [the releasor] to renounce the Release promptly" but where the

releasor delayed and ultimately claimed that a newspaper article having additional information is what prompted him to bring suit to vacate, the release would stand).

In deciding these issues, the courts often cut through feigned issues to the core of a party's regret about a settlement. *See, e.g.*, *Hill v. Kelly*, 180 A.D.2d 935, 936 (3d Dep't 1992) (holding that "[i]t is well established that settlement stipulations are favored by the courts and will be strictly enforced unless legitimate grounds for voiding the settlement agreement have been demonstrated" and that "[s]imply having second thoughts about the settlement will not suffice [as grounds to vacate it]") (internal citations omitted); *Wichers v. Wichers*, 170 A.D.2d 797, 798 (3d Dep't 1991) (holding that where "someone who, upon reflection, now thinks he made a bad bargain that he wishes to be relieved of" cannot be heard to vacate a settlement because "[s]uch a situation is insufficient to set aside an otherwise valid agreement"); *1420 Concourse Corp. v. Cruz*, 175 A.D.2d 747, 750 (1st Dep't 1991) (holding that "the mere fact that it subsequently appears that the stipulation/settlement was a bad bargain does not warrant vacatur"); *Raphael v. Booth Memorial Hospital*, 67 A.D.2d 702, 703 (1979) (holding that "[e]quity will not relieve a party of its obligations under a contract merely because subsequently, with the benefit of hindsight, it appears to have been a bad bargain"); *Wright v. Eastman Kodak Co.*, 04-CV-6332L (DGL), 445 F.Supp.2d 314 (W.D.N.Y. 2006).

In *Wright v. Eastman Kodak Co.*, the plaintiffs settled their case and were paid the settlement funds. Then they moved to vacate their settlements, arguing that they were pressured, did not understand the terms and relevant information was withheld from them. 445 F.Supp.2d at 317-318. Judge Larimer was not impressed, observing that "[t]he only real problem here, apparently, is that plaintiffs now believe that they should have held out for more." *Id.* But adding that "[t]hat is not a legitimate basis to set aside an otherwise valid release." *Id.* This court should conclude the same and for about the same reason: the would-be plaintiffs apparently disagree with the decision to settle the original suit. That could be because they believe that they made a bad call themselves (as previously appointed administrators) or because they believe that those whose call it was had erred. Either way, in reality, the plaintiffs are merely second guessing the decision to settle and are attempting to use the newly obtained FOIA materials as cover for the timing of their request to set aside the release. They, like the plaintiffs in *Wright* lack any legitimate bases for setting the releases aside.

--- *The Releases Were Signed Knowingly and Voluntarily*

It is undisputed that the then-properly appointed estate administrators executed releases for each of the estates and all eligible beneficiaries whose claims they were charged under the EPTL with litigating. Though the would-be plaintiffs apparently wish to challenge whether the releases were executed "knowingly" even

they do not go so far as to challenge their voluntariness. As to the desire to test whether the releases were made "knowingly", the would-be plaintiffs' reliance on *Mangini v. McClurg*, 24 N.Y.2d 556 (1969) is misplaced.

*Mangini* was a case of alleged "mutual mistake" and it involved the scope of injuries, not the defendants' conduct. 24 N.Y.2d 556. Specifically, after a child was injured in an accident, it apparently went unnoticed for some time that among the injuries she sustained was an injury to her hip. *Id.* at 560-562. Meanwhile, the case was settled with a release signed for all injuries, known and unknown. *Id.* at 561. Upon discovering the hip injury, the plaintiffs moved to vacate the release. In opposing the motion, the defendants submitted an affidavit stating that the settlement was reached in good faith – but not denying the linchpin of the plaintiffs' motion to reopen the case, to wit, that the neither party was aware of the hip injury at the time of the settlement. *Id.* 565. After much consideration, the Court of Appeals held not that the release would be vacated but rather that a trial on the issue would have to be held. *Id.* at 569. The Court also held that, in view of its determination on the question of mutual mistake, it need not entertain the plaintiffs' attempt at establishing fraud – but still noted that the plaintiffs had made no showing whatsoever in that regard. *Id.*

Ultimately, *Mangini* offers little insight for the analysis necessary here. Certainly, there is no claim of "mutual mistake" to be had here. Such an argument

would be inconsistent with the would-be plaintiffs' position that the defendants in the original litigation knew and withheld information. Instead, the would-be plaintiffs argue that there was fraud in the making of the settlement – an issue on which *Mangini* offers no analysis.

Notably too, while back in 1969, when *Mangini* was decided, the New York Court of Appeals had reason to note some "divergence" among the precedent cases, there are far fewer outlier cases now (thanks in some part to *Mangini* itself) on the rules of construction that govern releases. With respect to the question of whether a release was "knowingly" made, for example, certainly the standards have changed in 50 years. Cases from more recent past focus on the distinction between counseled and pro se litigants – though those distinctions, too, are not always in the plaintiffs' favor.

For example, in *Caraballo v. City of New York*, 24-2051-cv, 2025 U.S. App. LEXIS 12041 (2d Cir. 2025) a pro se plaintiff's release was not vacated despite its broad language and despite the fact that the plaintiff sought relief from the release to be able to continue litigating an already ongoing case in a different venue. In holding that the release would bar the other suit, this court observed that the unambiguous language of the release was dispositive. This was true even though the plaintiff was pro se and, as this court observed "he might not have actually understood [the release] to cover his [unrelated] federal claims." 2025 U.S. App.

LEXIS 12041, at *6. Still, this court went on, "New York law proscribes such considerations." *Id.*, citing *LeMay v. H.W. Keeney, Inc.*, 124 A.D.2d 1026 (4th Dep't 1986) (holding that "[w]here … the language of a release is clear, effect will be given to the intention of the parties as indicated by the language employed and the fact that one of the parties may have intended something else is irrelevant"); *see also, Wichers*, 170 A.D.2d at 798 (holding that "[a]s for the fact that defendant was unrepresented by counsel when the stipulation was executed, plaintiff's counsel urged defendant to seek his own counsel at that time" so the stipulation would not be vacated on this account).

Of course here, though the would-be plaintiffs argue that the original plaintiffs were not terribly sophisticated, they were not without counsel. Certainly, they would have been counseled or, at a minimum, counsel's advice would have been available to them on such provisions as the "no reliance" language, the release of all potentially liable actors, the possibility of later-discovered facts and the true scope of a release for "all claims." Despite having been subscribers to the missile theory at the time, the original plaintiffs' choice was to settle the case with the representation of skilled counsel. The current would-be plaintiffs have no different or newer theory (even if they believe themselves to have additional evidence of the previous one). Everyone has and has had counsel… there is no reason to inquire further about the parties' state of mind. Instead, this court must

hold these would-be plaintiffs to the settlement terms, as it did last year in *Caraballo*.

--- *The Conspiracy Theory is Incompatible with Reliance*

The original plaintiffs believed the "missile theory" and signed a release in which they proclaimed that they did not rely on anything the government told them in settling the case. (JA. 319). The current, would-be plaintiffs seek to revive the missile theory while arguing that the original plaintiffs were fraudulently induced into executing such a release. But "justifiable reliance" is a necessary element of such a fraud claim. *United States Life Ins. Co. in the City of NY v. Horowitz*, 192 A.D.3d 613, 614 (1st Dep't 2021) (holding that "[t]he elements of a claim for fraudulent inducement are a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, *justifiable reliance* of the other party on the misrepresentation or material omission, and injury") (internal citation omitted, emphasis added).

Given the elements of a fraud claim, the would-be plaintiffs are left to arguing that in settling the original lawsuit, the original plaintiffs *relied* on the very entities they *believed* had conspired to hide the true cause of the crash. Make that make sense.

This deficiency is even more glaring as to Lockheed Martin, which was not a party to the original litigation and therefore could not have made any misrepresentation on which the original plaintiffs relied in choosing to settle. Nor does the complaint cure this gap as it is devoid of any allegation that Lockheed Martin itself engaged in any act of fraud or concealment. *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1249 (2d Cir. 1987) (holding that where "there is no allegation linking any of [a group of defendants] in any specific way to any fraudulent misrepresentation or omission" the complaint must be dismissed as against those defendants that are not alleged to have made the misrepresentations.)

Given the internal inconsistency in the would-be plaintiffs' theories, this court must find, even if it were willing to hear any of them as proper parties to this case, that they have not and cannot establish reliance. In the absence of such a showing, their argument to vacate on the ground of fraud must be rejected as a matter of law. *Shalam v. KPMG LLP*, 89 A.D.3d 155, 157 (1st Dep't 2011) (holding that "[t]o be entitled to proceed with his fraud claim …, plaintiff must prove not only that [defendant] made misrepresentations or omissions of fact for the purpose of inducing him to act in reliance on them, but also that his reliance was justifiable" and where "[b]ased on plaintiff's own statements and admissions, [the court] find[s] as a matter of law that he cannot prove justifiable reliance on any claimed assurances" the fraud claim cannot stand); *Cascardo v. Dratel*, 171

A.D.3d 561, 561-562 (1st Dep't 2019) (holding that "[the] [p]laintiff's fraud claim should have been dismissed because the complaint did not sufficiently plead justifiable reliance upon defendant's claim" where "the complaint specifically asserts that plaintiff knew [the true facts]" since "[t]his admission negates an element of the fraud claim, that plaintiff justifiably relied on the defendant's alleged misrepresentation."); *United States Life Ins. Co. in the City of NY v. Horowitz*, 192 A.D.3d 613, 614 (1st Dep't 2021) (holding that "[the] [p]laintiff's reliance on a videotaped statement was not reasonable as a matter of law since plaintiff was aware of the inconsistencies in the statements made in the video for months prior to entering into the settlement and failed to further investigate."); *Vanderbilt Group, LLC v. Dormitory Auth. of the State of NY*, 51 A.D.3d 506, 507 (1st Dep't 2008) (holding that "[i]f defendant was aware of and investigated plaintiff's false representations and chose nevertheless to execute the contract, it waived its defense of fraud and its contractual right to terminate the contract on the basis of the misrepresentations."); *Rubin v. Sabharwal*, 171 A.D.3d 580, 580 (1st Dep't 2019) (holding that "[the] [p]laintiff's claims for fraudulent inducement, fraud and conspiracy to commit fraud were properly dismissed" where "[the] [p]laintiff failed to assert sufficient facts to establish reasonable reliance and that she exercised due diligence to determine the [true facts]" since "[the] [p]laintiff cannot assert reasonable reliance where she had the means to discover the true

nature of the transaction by the exercise of ordinary intelligence, and failed to make use of those means.”)

Notably, the would-be plaintiffs’ own characterization of Dr. Stalcup’s efforts to obtain the information on which they now rely belies any claim that those efforts could not have been undertaken by others. Certainly, the estates in the original litigation could have obtained materials in discovery – yet they chose to settle the cases in the discovery phase. The estates, through their then-appointed representatives, having voluntarily chosen to settle rather than litigate the case, the would-be plaintiffs cannot now be heard to claim that the information could not have been obtained in litigation.

--- *The Statute of Limitations has Run*

Dovetailing the significance of the (lack of) justifiable reliance element for purposes of the fraud analysis is the statute of limitations issue that also turns on these facts. Obviously, the statute of limitations for any claim arising from the crash has long run. And just as obviously, the would-be plaintiffs cannot claim any entitlement to equitable tolling on the grounds that, say, they could not uncover the truth in time to sue about it. “Under federal common law, a statute of limitations may be tolled due to the defendant’s fraudulent concealment if” inter alia “the concealment prevented plaintiff’s discovery of the nature of the claim within the limitations period” and if “plaintiff exercised due diligence in pursuing the

discovery of the claim during the period plaintiff seeks to have tolled." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014). But where, as here, "plaintiffs possessed the necessary information to bring a … claim well before the [statute of limitations expired]" it must be concluded as a matter of law that "[d]efendants' concealment … did not prevent them from discovering their cause of action." *Id.*

Quite aside from the fact that their own theory of the case negates the possibility of justifiable reliance, the would-be plaintiffs cannot overcome this basic fact: it is known definitively that they could have timely commenced suit here because… they did. The estates sued within the statute of limitations and settled their cases.

Those of the would-be plaintiffs who were not then administrators of an estate were strangers to the case then as they are now – but they were evidently well aware of the missile theory and could have brought suit then (only to encounter the same standing issues they have now). And those of the would-be plaintiffs who were administrators then – they are their own proof that the case could be timely commenced.

We note here that while the would-be plaintiffs confessed (App. Br. at fn. 1) that they were unable to include in their briefs arguments regarding the statute of limitations without violating the word-count rules of this court, this was not sound

strategy. To start, they could have petitioned this court for permission to submit an oversize brief. Having chosen to not do so and to not edit enough to include all arguments, the would-be plaintiffs should not now be heard to make their arguments – for the first time on reply – with respect to the statute of limitations. *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) (holding that "arguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief") (internal citations omitted).

**Point III The Withdrawal is not a Contested Issue and It does not Impact the Rightful Dismissal**

Lockheed Martin took no position on prior counsel's application to withdraw and takes no position now on replacement counsel's appeal on that issue except to the extent that the would-be plaintiffs present the withdrawal issue as somehow intertwined with the dismissal order. The two issues are distinct, with the withdrawal of counsel having no bearing on dismissal. They are, in fact, two separate orders as well.

It is categorically false to state, though the would-be plaintiffs do, that motion practice had already begun when counsel withdrew. (App. br. at 35). While the parties had discussed with the court topics that the anticipated motions to dismiss would cover, such discussion was by no means binding on any party. Moreover, such pre-motion discussion did not obligate the would-be plaintiffs to

prepare any opposition nor address any issue at that time. The June 24, 2024 conference was just that – a conference – and not the beginning of motion practice.

Second and in any event, counsel orderly and fully withdrew before the motions to dismiss were made and, what's more, the would-be plaintiffs secured new counsel in time to represent them in opposition to the motions. There has thus been no disruption to the case as a consequence of the change in counsel.

In reality, the prejudice about which the would-be plaintiffs complain in this regard is merely the increasingly evident reality of the indefensibility of their position. Ultimately, this court can and should dispose of the withdrawal issue swiftly and affirm the dismissal.

## Conclusion

For the foregoing reasons, it is respectfully requested that the trial court's dismissal order be affirmed.

Dated: New York, New York
August 31, 2026

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By:______________________________
Judy C. Selmeci
Attorneys for defendant-appellee
Lockheed Martin Corporation
150 East 42nd Street
New York, New York 10017-5639
Our File: 14372.00158

Of Counsel:
Kathryn A. Grace
John P. Kelly
Julia Audibert

## Certificate of Compliance with Frap 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,087 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Dated: New York, New York
August 31, 2026

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By:________________________________
Judy C. Selmeci
Attorneys for defendant-appellee
Lockheed Martin Corporation
150 East 42nd Street
New York, New York 10017-5639
Our File: 14372.00158