# No. 26-1225

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

---

RONALD KRICK, Individually and on Behalf of the Estate of Oliver Krick, MARGARETA KRICK, CHRISTOPHER KRICK, DOUGLAS KEVORKIAN, Individually and on Behalf of the Estate of Ralph Kevorkian, CHRISTINE GROGAN, EILEEN ZAHARIOUDAKIS, Individually and Behalf of the Estate of Donald Gough, MICHAEL DETERESA, CHARLES HENRY GRAY IV, CHADWICK GRAHAM GRAY, CRAIG GAETKE, WANDA KEMP, Individually and on Behalf of the Estates of O. Lamar Allen and Ashton Allen,

*Plaintiffs-Appellants,*

LISA MICHELSON, Individually and on Behalf of the Estate of Yonatan Rojany, ERIC ROJANY, JODELLE GEARON, Individually and on Behalf of the Estate of Daniel Gaetke, TODD GAETKE,

*Plaintiffs,*

*v.*

RAYTHEON COMPANY, RAYTHEON TECHNOLOGIES CORPORATION, LOCKHEED MARTIN CORPORATION, UNITED STATES MISSILE DEFENSE AGENCY, UNITED STATES DEPARTMENT OF DEFENSE, UNITED STATES NAVY, UNITED STATES OF AMERICA,

*Defendants-Appellees,*

DOES 1 THROUGH 20,

*Defendant.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
No. 1:23-cv-08093-AMD-JAM

---

## BRIEF FOR DEFENDANT-APPELLEE RAYTHEON COMPANY

**FITZPATRICK, HUNT & PAGANO, LLP**
**Ralph V. Pagano, Esq.**
12 East 49th Street, 34th Floor
New York, New York 10017
T: (212) 937-4000
*Attorney for Defendant-Appellee Raytheon Company*

## CORPORATE DISCLOSURE STATEMENT

Raytheon Company is a wholly owned subsidiary of RTX Corporation. RTX Corporation has no parent company and no publicly traded company owns 10% or more of RTX Corporation's stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ........................................................................ v

STATEMENT OF JURISDICTION .................................................................. 1

STATEMENT OF ISSUES PRESENTED ........................................................ 2

STATEMENT OF THE CASE ...................................................................... 3

A. THE CRASH AND THE PRIOR WRONGFUL-DEATH LITIGATION ..... 3

B. THE PRESENT ACTION AND CLAIMS ALLEGED ................................. 5

C. RAYTHEON'S RULE 12(B)(6) MOTION TO DISMISS AND THE COURT'S RULING ................................................................................... 6

D. WITHDRAWAL OF FORMER COUNSEL AND SUBSEQUENT REPRESENTATION ......................................................... 8

SUMMARY OF THE ARGUMENT .......................................................... 9

ARGUMENT ............................................................................................. 11

I. THE DISTRICT COURT CORRECTLY ENFORCED THE RELEASES ACCORDING TO THEIR UNAMBIGUOUS TERMS, AND PLAINTIFFS CANNOT AVOID THEM BASED ON ALLEGED FRAUD ........................................................ 11

a. THE DISTRICT COURT PROPERLY DETERMINED THE SCOPE AND INTENT OF THE UNAMBIGUOUS RELEASES FROM THE FOUR CORNERS OF THE DOCUMENTS ................. 12

b. PLAINTIFFS MISAPPLY THE CASES THEY SAY REQUIRED THE DISTRICT COURT TO EVALUATE THE PARTIES' INTENT THROUGH EXTRINSIC EVIDENCE ............................... 13

c. THE DISTRICT COURT PROPERLY INTERPRETED THE RELEASES TO ENCOMPASS RAYTHEON AND TO BAR THE CLAIMS PLEADED ....................................................16

d. PLAINTIFFS ALLEGE NO FRAUD SEPARATE FROM THE SUBJECT OF THE RELEASES ..............................................19

e. PLAINTIFFS CANNOT ESTABLISH FRAUDULENT INDUCEMENT..........................................................................................23

f. PLAINTIFFS ABANDON ANY CALIFORNIA-LAW CHALLENGE TO THE KEVORKIAN RELEASE ...........................28

II. THE JUDGMENT SHOULD ALTERNATIVELY BE AFFIRMED BECAUSE PLAINTIFFS' CLAIMS ARE TIME-BARRED..................28

a. THE CLAIMS ARE SUBJECT TO A THREE-YEAR LIMITATIONS PERIOD....................................................................29

b. THE DISCOVERY RULE DID NOT POSTPONE ACCRUAL UNTIL PLAINTIFFS ALLEGEDLY OBTAINED ADDITIONAL EVIDENCE IN 2021..................................................31

c. THE GOVERNMENT'S ALLEGED CONCEALMENT DOES NOT TOLL THE LIMITATIONS PERIOD AGAINST RAYTHEON ......................................................................33

III. RULE 17 PROVIDES NO BASIS FOR REVERSAL ............................35

IV. THE WITHDRAWAL ORDER PROVIDES NO BASIS TO DISTURB THE JUDGMENT ...........................................................36

a. THE ORDER WAS NOT "FUNCTIONALLY EQUIVALENT" TO A DISMISSAL AND THUS A CLEAR ERROR STANDARD OF REVIEW WAS APPROPRIATE ...........................36

b. THE RECORD SATISFIED LOCAL CIVIL RULE 1.4 ....................38

c. PLAINTIFFS SUFFERED NO PREJUDICE, AND THEIR REMAINING ARGUMENTS PROVIDE NO BASIS FOR REVERSAL ....................39

CONCLUSION ....................40

CERTIFICATE OF COMPLIANCE ....................42

CERTIFICATE OF SERVICE ....................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.Q.C. ex rel. Castillo v. United States*,
656 F.3d 135 (2d Cir. 2011) .................... 31-32

*Barrett v. United States*,
622 F. Supp. 574 (S.D.N.Y. 1985) .................... 27

*Bingham v. Zolt*,
683 F. Supp. 965 (S.D.N.Y. 1988) .................... 33

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
757 F.2d 523 (2d Cir. 1985) .................... 20-21

*BP Prods. N. Am. Inc. v. Blue Hills Fuels, LLC*,
No. 20-CV-9659, 2022 U.S. Dist. LEXIS 196766
(S.D.N.Y. Oct. 28, 2022) .................... 15

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*,
17 N.Y.3d 269 (2011) .................... 19-20, 21-22, 23

*Collins v. Harrison-Bode*,
303 F.3d 429 (2d Cir. 2002) .................... 12

*County of Suffolk v. Long Island Lighting Co.*,
728 F.2d 52 (2d Cir. 1984) .................... 26-27

*Crane v. WP Strategic Holdings, LLC*,
2026 NY Slip Op 04806 (3d Dep't July 30, 2026) .................... 22

*Dafnos v. Hayes*,
264 A.D.2d 305 (1st Dep't 1999) .................... 15

*Danann Realty Corp. v. Harris*,
5 N.Y.2d 317 (1959) .................... 23

*Dolan Bros. Shellfish v. Boissoneault*,
2007 U.S. Dist. LEXIS 22999 (D. Conn. Mar. 29, 2007) .............................29

*Drax v. Reno*,
338 F.3d 98 (2d Cir. 2003) ..........................................................................28

*Executive Jet Aviation, Inc. v. City of Cleveland*,
409 U.S. 249 (1972)....................................................................................30

*Franklin v. New York City*,
2017 U.S. Dist. LEXIS 20233 (S.D.N.Y. Feb. 10, 2017) .............................31

*Gayle v. Jerusalem Ave, Inc.*,
2026 NY Slip Op 03947 (2d Dep't June 24, 2026)............................... 16, 17

*Golden Pac. Bancorp v. FDIC*,
273 F.3d 509 (2d Cir. 2001) ........................................................................13

*Gonzalez v. Wright*,
665 F. Supp. 2d 334 (S.D.N.Y. 2009) ..........................................................31

*Grumman Allied Indus. v. Rohr Indus.*,
748 F.2d 729 (2d Cir. 1984) ........................................................................24

*Hoffmann v. Horn*,
157 A.D.3d 871 (2d Dep't 2018)..................................................................16

*Humphreys v. N.Y.C. Health & Hosps. Corp.*,
No. 16-CV-9707 (VSB), 2023 U.S. Dist. LEXIS 5222
(S.D.N.Y. Jan. 11, 2023) .............................................................................37

*In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*,
635 F.2d 67 (2d Cir. 1980) ..........................................................................39

*In re Air Crash at Belle Harbor*,
2006 U.S. Dist. LEXIS 27387 (S.D.N.Y. May 9, 2006).............................. 30

*In re Air Crash Off Long Island, N.Y., on July 17, 1996*,
209 F.3d 200 (2d Cir. 2000) ................................................................ 29, 30

*In re D'ancona*,
2023 U.S. Dist. LEXIS 16490 (E.D.N.Y. Jan. 30, 2023)....29

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008)....14

*Irving Trust Co. v. Deutsch*,
73 F.2d 121 (2d Cir. 1934)....21

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
513 U.S. 527 (1995)....29

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005)....28

*Koch v. Christie's Int'l PLC*,
699 F.3d 141 (2d Cir. 2012)....33

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998)....32

*Krick v. Raytheon Co.*,
695 F. Supp. 3d 202 (D. Mass. 2023)....34

*Laurent v. PricewaterhouseCoopers LLP*,
794 F.3d 272 (2d Cir. 2015)....28

*Levy v. BASF Metals Ltd.*,
917 F.3d 106 (2d Cir. 2019)....31

*Lodhi v. Stewart's Shops Corp.*,
52 A.D.3d 1084 (3d Dep't 2008)....26

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y.3d 173 (2011)....25

*Mangini v. McClurg*,
24 N.Y.2d 556 (1969).... 13-14

*Manufacturers Hanover Trust Co. v. Yanakas*,
7 F.3d 310 (2d Cir. 1993) .......... 24

*Mergler v. Crystal Props. Assocs., Ltd.*,
179 A.D.2d 177 (1st Dep't 1992) .......... 18

*Moore v. Cohen*,
548 F. Supp. 3d 330 (S.D.N.Y. 2021) .......... 23

*National Union Fire Ins. Co. v. Califinvest*,
1992 U.S. Dist. LEXIS 1956 (S.D.N.Y. Feb. 13, 1992) .......... 33

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Worley*,
257 A.D.2d 228 (1st Dep't 1999) .......... 26

*Nielsen v. Rabin*,
746 F.3d 58 (2d Cir. 2014) .......... 13

*Parker v. Four Seasons Hotels, Ltd.*,
845 F.3d 807 (7th Cir. 2017) .......... 39

*Pigott v. Sanibel Dev., LLC*,
No. 07-0083-WS-C, 2008 U.S. Dist. LEXIS 55806
(S.D. Ala. July 23, 2008) .......... 37

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
68 F.3d 1478 (2d Cir. 1995) .......... 25

*Ripple Analytics Inc. v. People Center, Inc*,
153 F.4th 263 (2d Cir. 2025) .......... 35

*Rotella v. Wood*,
528 U.S. 549 (2000) .......... 31

*Smith v. City of N.Y.*,
2025 NY Slip Op 07081 (N.Y. Dec. 18, 2025) .......... 14

*Strickland v. Moritz*,
149 F.4th 378 (4th Cir. 2025) .......... 39

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
752 F.3d 239 (2d Cir. 2014) ....................29

*Town of Goodland v. Kessler Tank Co.*,
No. 4:13-CV-82, 2016 U.S. Dist. LEXIS 81731
(N.D. Ind. June 23, 2016) ....................37-38

*Tromp v. City of N.Y.*,
465 F. App'x 50 (2d Cir. 2012) ....................12

*VeroBlue Farms USA Inc. v. Canaccord Genuity LLC*,
No. 21-2465-cv, 2022 U.S. App. LEXIS 16344
(2d Cir. June 14, 2022) ....................26

*Wang v. Paterson*,
No. 07-CV-2032, 2008 WL 5272736 (S.D.N.Y. Dec.18, 2008)....................12

*Wells v. Shearson Lehman/American Express*,
72 N.Y.2d 11 (1988)....................17

*Williams v. Beemiller, Inc.*,
527 F.3d 259 (2d Cir. 2008) ....................37

*W.W.W. Assocs., Inc. v. Giancontieri*,
77 N.Y.2d 157 (1990)....................12

*Zirvi v. Flatley*,
433 F. Supp. 3d 448 (S.D.N.Y. 2020) ....................33

**Statutes**

28 U.S.C. § 636(b)(1)(A)....................37

28 U.S.C. § 2111 ....................39

46 U.S.C. § 30106....................29, 30

Fed. R. Civ. P. 9(b) ....................33, 34

Fed. R. Civ. P. 12(b)(6)....................6, 13

Fed. R. Civ. P. 17 .......................................................................... 10, 35, 40

Fed. R. Civ. P. 17(a)(3) ..................................................................... 2, 7, 35, 36

Fed. R. Civ. P. 61 .......................................................................... 39

Fed. R. Civ. P. 72(a) ......................................................................... 9, 36, 38

E.D.N.Y. Local Civil Rule 1.4 ............................................................. 9, 38

**Other Authorities**

Restatement (Second) of Contracts § 154(a) (Am. Law Inst. 1981) ..................... 15

## STATEMENT OF JURISDICTION

Raytheon is satisfied with Appellants' jurisdictional statement.

## STATEMENT OF ISSUES PRESENTED

1. Whether the District Court properly enforced the TWA Flight 800 Releases where the unambiguous terms extend to the entities named as Defendants in this litigation, bar the claims brought in Plaintiffs' Complaint, and foreclose Plaintiffs' fraudulent inducement theory.

2. Whether the judgment may alternatively be affirmed because Plaintiffs filed this action decades after expiration of the three-year maritime statute of limitations and neither the discovery rule nor fraudulent concealment doctrine can apply to render their claims against Appellee Raytheon as timely.

3. Whether Federal Rule of Civil Procedure 17(a)(3) provides Plaintiffs any basis for reversal where the District Court did not reject ratification, joinder, or substitution, and instead assumed any representative defect could be cured, but nonetheless dismissed the claims on the independent and dispositive ground that the Releases bar Plaintiffs' claims.

4. Whether the order permitting Plaintiffs' former counsel to withdraw provides any basis to disturb the judgment where the record established a fundamental attorney-client impasse, replacement counsel appeared months before dispositive-motion practice, and Plaintiffs identify no prejudice that affected the dismissal.

## STATEMENT OF THE CASE

This appeal arises from the dismissal of wrongful-death claims arising from the July 17, 1996, loss of TWA Flight 800. The United States District Court for the Eastern District of New York granted Defendants' motions to dismiss on March 2, 2026. SPA1-SPA26. The District Court found that Plaintiffs lacked standing, assumed that any defect in the authority of the persons purporting to represent the decedents' estates could be cured, and ultimately held that prior Releases barred the claims regardless of the standing issue. SPA10-SPA13, SPA17-SPA25. The District Court did not reach Raytheon's fully briefed argument on why Plaintiffs' claims are barred by the applicable statute of limitations and neither the discovery rule nor fraudulent concealment doctrine could operate to render their claims timely. SPA25 n.18.

### A. The Crash and the Prior Wrongful-Death Litigation

TWA Flight 800 crashed into the Atlantic Ocean off Long Island on July 17, 1996, killing all 230 persons aboard. JA99 ¶ 2; SPA2. The NTSB investigated and concluded that the probable cause was an explosion of flammable vapors in the aircraft's center wing fuel tank. JA107 ¶ 50; SPA2-SPA3. Litigation arising from the accident was consolidated in the Southern District of New York. MDL Dkt., Ex. A to Pagano Decl., ECF 187-1. The estates and beneficiaries at issue here, represented by sophisticated counsel, pursued wrongful death litigation against

Boeing, TWA, Hydro-Aire, and others. *See In re: Air Crash TWA*, No. 1:96-cv-7986, MDL No. 1161 (Oct. 24, 1996); JA205. Those claims were settled and dismissed with prejudice in the 2000-2001 timeframe. JA290-JA387; SPA13-SPA14.

The settlements included written Releases. JA315-JA387. The Releases[1] define "Releasees" to include the named settling entities as well as "all other persons and entities not specifically identified who are or may be liable" for known or unknown losses arising out of or related to the loss of TWA Flight 800. JA316. Paragraph 3 of the Releases then releases all actions, causes of action, claims, and demands that the releasors ever had, then had, or later might have "arising out of, or in any way related to the Event," specifically including wrongful death, survival, and personal injury claims. JA316-JA317.

The Releases also address the precise risk that Plaintiffs argue are beyond the purview of the Releases. Paragraph 8 states that the Releasors entered into the agreements "contemplating the possibility that facts may be subsequently discovered that could support claims as yet unasserted," accepted the risk that facts concerning their claims might later prove different, and waived protections for "unknown or

[1] As it did in its briefing below, Raytheon refers solely to the Krick release, JA315-JA323, for brevity as they are representative of all other Releases for the provisions cited. The only differences among the release provisions cited are the use of plural v. singular language and gender-specific language.

unsuspected claims." JA318-JA319. Paragraph 9 states that the Releasors did not rely on statements or representations by any Releasee concerning "[t]he cause or causes for the Event" or "[t]he legal liability of any Releasee." JA319. The Releasors also acknowledged that they had carefully read and understood the Releases, signed voluntarily, and consulted counsel about their rights and obligations. JA320 ¶¶17-18. Except for the Kevorkian release, which is governed by California law, the releases are governed by New York law. JA315-JA387. The District Court held that the result is the same under California's materially similar contract principles[2]. SPA18-SPA19.

### B. The Present Action and Claims Alleged

More than two decades later, Plaintiffs filed the present action. The operative Complaint alleges that a United States missile, rather than a fuel-tank explosion, destroyed TWA Flight 800 and the government concealed evidence supporting that theory. JA98-JA116. It alleges specific conduct by the FBI, CIA, NTSB, Navy, and other governmental actors, including the removal of radar tapes, restrictions on witness interviews, and public rejection of the missile theory. JA104-JA115. The Complaint also makes the conclusory allegation that "Defendants, led by the United States government," concealed the missile theory. JA115 ¶99. However, the

[2] Plaintiffs make no argument pursuant to California law on appeal and therefore any such argument is forfeited.

Complaint does not identify any particular Raytheon statement or act of concealment whatsoever.

The actual causes of action are central to the issues in this appeal. Count I pleads negligence and gross negligence, alleging that Raytheon negligently supplied, tested, approved, or oversaw missile and defense-system technology and thereby caused the crash. JA116-JA122. Count II pleads wrongful death and survivorship based on the same missile event. JA122-JA128. Count III alleges failure to warn and manufacturing defects against Raytheon and Lockheed Martin ("Contractor Defendants"). JA128-JA132. There is no independent count of fraud, fraudulent inducement, or evidence concealment. Rather, the governmental "cover-up" allegations serve as a basis to avoid the statute of limitations under the discovery rule and fraudulent concealment doctrine. JA115-JA116 ¶¶94-100. However, given the absence of any fraudulent concealment allegation against Raytheon, the fraudulent-concealment theory fails and cannot extend the statute of limitations as to Raytheon.

### C. Raytheon's Rule 12(b)(6) Motion to Dismiss and the Court's Ruling

Raytheon moved to dismiss under Rule 12(b)(6). JA186-JA243. Raytheon argued that maritime law applies; the estate and individual claims were improperly brought due to a lack of standing; that the releases bar Plaintiffs' claims; that the three-year statute of limitations expired decades ago; and that the Complaint presents

nonjusticiable political questions. JA187-JA189 (TOC). The United States and Lockheed Martin raised overlapping grounds. JA136-JA185, JA244-JA281. Plaintiffs filed a combined opposition and later supplemental briefing that sought limited discovery concerning the Releases. JA388-JA437, JA470-JA490.

The District Court granted Defendants' motions. It first concluded that the individuals purporting to represent and sue on behalf of the decedents' estates were not duly appointed representatives at the time of filing and that the individual beneficiaries lacked standing to sue because only the representatives of the estates would have that authority. SPA8-SPA13. In response to the lack of standing argument, Plaintiffs invoked Rule 17(a)(3), asserting that personal representative appointment efforts were ongoing and they should therefore be able to cure any standing deficiencies. SPA12. The District Court did not address whether Plaintiffs would be able to utilize Rule 17(a)(3). Rather, it stated "[e]ven assuming that the plaintiffs could cure these deficiencies, the complaint would still have to be dismissed, because … the settlement releases from the multi-district litigation bar the plaintiffs' claims in this action." *Id.*

The District Court then analyzed the Releases, first finding that their authenticity was undisputed and that they could be considered at the pleading stage. SPA14-SPA17. It next held that the Releases bound the relevant beneficiaries, applied to the Defendants despite them not being specifically named, and

encompassed the claims alleged. SPA17-SPA20. It further held that the Releases expressly contemplated later-discovered facts and that the causation and liability disclaimer foreclosed Plaintiffs' attempt to avoid the agreements based on the alleged concealment of the crash's "true cause." SPA21-SPA25. Having found the Releases dispositive, the Court did not reach the statute of limitations or political questions doctrine arguments. SPA25 n.18.

Plaintiffs Charles Henry Gray, IV and Chadwick Graham Gray appeared in an earlier Complaint but were omitted from the operative Second Amended Complaint. SPA18 n.13; JA98-JA135. Plaintiffs' counsel at that time announced in open Court that the Grays had dismissed their claims. Defs.' Joint Supp. Br. 5, ECF 215. When Plaintiffs sought to treat them as active litigants in their response to Defendants' Motions to Dismiss, Defendants were given leave to brief the issue. Plaintiffs sought an amendment to add the Grays back into the case, but the District Court did not rule on that issue, finding that the amendment would be futile because the Grays had executed materially identical TWA 800 Releases. SPA18 n.13; JA452-JA467.

### D. Withdrawal of Former Counsel and Subsequent Representation

Plaintiffs' former counsel moved to withdraw on June 14, 2024, after reaching an impasse with Plaintiffs over litigation strategy and lead counsel moved to a firm that could not assume the representation. SPA27-SPA28. Magistrate Judge

Marutollo held conferences to discuss the issue, granted Plaintiffs multiple extensions to obtain replacement counsel, and ultimately found "insurmountable differences" between counsel and his clients in allowing the withdrawal. SPA28-SPA29. Former counsel questioned the viability of continued litigation in light of the prior settlements, while Appellants insisted on proceeding and sought advice from other lawyers who initially declined to appear. SPA29-SPA30.

The District Court affirmed the withdrawal order after Plaintiffs appealed the Magistrate's order. Applying Rule 72(a), it held that withdrawal was a nondispositive pretrial matter, found the Rule 1.4 requirements satisfied, and independently reviewed the record of the breakdown. SPA31-SPA36. It concluded that withdrawal was "reasonable, and indeed the only rational conclusion to be drawn from this record." SPA35. By December 16, 2024, substitute counsel had entered a full appearance for the remaining Plaintiffs. Appellants' Br. 12; JA49 (ECF 165). Defendants' Motions to Dismiss were not filed until April 1, 2025. JA136, JA186, JA244. Plaintiffs thereafter submitted extensive briefing opposing dismissal. JA388-JA442, JA470-JA490.

## SUMMARY OF THE ARGUMENT

First, the District Court's ruling on the Releases should be affirmed. The Releases do far more than employ generic, boilerplate language. The language expresses unmistakable intent to release all potential claims against all potentially

culpable persons, known or unknown. They identify unnamed potentially liable persons as Releasees, expressly contemplates later-discovered facts and unasserted claims, addresses and allocates the risk that the Releasors' factual understanding may prove wrong, and disclaims reliance on representations concerning causation and liability. Plaintiffs' current causes of action seek damages for the same deaths and are therefore within the scope of the Releases. The alleged misrepresentations and post-crash concealment are neither pleaded against Raytheon and do not asserted as an independent injury and does not supply a legally sufficient basis to avoid the Releases.

The judgment should alternatively be affirmed because Plaintiffs' claims are untimely and Raytheon preserved that defense below. Plaintiffs and/or their predecessors retained counsel and pursued wrongful-death litigation arising from the TWA 800 crash starting in the 1990s, during which time the missile theory and the Government's rejection of it were publicly known. Their claims thus accrued at that time, rendering their claims untimely by decades. Plaintiffs claimed the doctrine of fraudulent concealment rendered their claims timely, but the Complaint identifies no Raytheon act of concealment and no reasonable diligence by Plaintiffs during the decades they seek to toll. The doctrine is thus inapplicable.

Rule 17 does not provide a basis for reversal. The District Court did not deny a request for ratification, joinder, or substitution. Instead, it assumed even if the

defects could be cured the claims would nevertheless be barred by the Releases. If the ruling on the Releases is affirmed, changing the identity or authority of an estate representative cannot change the result.

Finally, the withdrawal order supplies no ground for reversal. The order did not dispose of any claims and Plaintiffs employed substitute counsel months before the motions at issue here were filed. While they are apparently unhappy with this course of events, they identify no prejudice as a result of the substitution. Further, the District Court applied the appropriate standard of review in addressing the withdrawal order as the post-withdrawal events demonstrate the withdrawal itself was not dispositive of any claims. Regardless, any error in the standard of review is a harmless one because the District Court independently reviewed the record and concluded that withdrawal was the only rational result.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY ENFORCED THE RELEASES ACCORDING TO THEIR UNAMBIGUOUS TERMS, AND PLAINTIFFS CANNOT AVOID THEM BASED ON ALLEGED FRAUD.

Plaintiffs' challenge to the Releases often conflates two distinct issues and the standards that apply to them. The first issue is what parties and claims the Releases cover. The clear and unambiguous terms are to be determined from the four corners of the Releases without consideration of extrinsic evidence, including what the Releasors subjectively intended or believed. Only after the Releases are interpreted

does a separate issue arise - whether the Releases, though otherwise applicable, may be set aside on grounds such as fraud or mutual mistake, an inquiry for which the Court may consider extrinsic evidence. Plaintiffs merge these issues and muddle the standards applicable to each. When the standards are properly applied, the Releases bar Plaintiffs' claims.

#### a. The District Court Properly Determined the Scope and Intent of the Unambiguous Releases from the Four Corners of the Documents.

Plaintiffs' argument that the District Court erred in failing to consider extrinsic evidence when interpreting the Releases is foreclosed by established New York precedent. *See* Appellants' Br. 14-32. Settlement agreements are contracts and are therefore construed according to general principles of contract law. *Tromp v. City of N.Y.*, 465 F. App'x 50, 51 (2d Cir. 2012) (quoting *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)). "Where the language of [a] release is clear, effect must be given to the intent of the parties **as indicated by the language employed**." *Tromp*, 465 F.App'x at 51 (quoting *Wang v. Paterson,* No. 07-CV-2032, 2008 WL 5272736, at *4 (S.D.N.Y. Dec.18, 2008)) (emphasis added). Extrinsic evidence is only allowed where the writing is ambiguous, with ambiguity being a question of law for the Court. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162-63 (1990). Extrinsic evidence cannot be used to create an ambiguity. *Id.* at 163. Plaintiffs did not argue that the Releases contain ambiguous language below, nor do

they do so now. Their assertion that the District Court should have looked to extrinsic evidence is based on a misinterpretation of the cases they cite.

**b. Plaintiffs Misapply the Cases They Say Required the District Court to Evaluate the Parties' Intent Through Extrinsic Evidence.**

The cases Plaintiffs cite to criticize the District Court for declining to consider evidence outside the four corners of the Releases are inapposite, as they do not support the use of extrinsic evidence to interpret unambiguous release language and create triable issues of fact. Plaintiffs first cite *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509 (2d Cir. 2001) for the proposition that where the intent of a release is genuinely disputed, it presents a triable issue of fact. Appellants' Br. 14. However, *Golden* clearly expressed that this is only where language is ambiguous. *Golden Pac. Bancorp*, 273 F.3d at 517. Plaintiffs then cite *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) to assert that intent cannot be resolved against a pleader on a Rule 12(b)(6) motion. Appellants' Br. 15. *Nielsen* was not a contract case and never spoke on contract interpretation. Rather, the court said this in the context of finding that a *pro se* plaintiff's proposed amendment to his complaint adequately pleaded the mental state element of his deliberate indifference claim. *Nielsen*, 746 F.3d at 62-64. It has no relevance here.

Plaintiffs next rely on *Mangini* to argue that the Court should have looked beyond the Releases and considered a complete factual record, but they misread the case. Appellants' Br. 15-17, 24-26. The portion of *Mangini* relied upon stands for

the limited proposition that in cases where a personal injury plaintiff entered a release and subsequently discovered a physical injury that neither party knew existed when the release was executed, it is possible to avoid an otherwise valid release through the doctrine of "mutual mistake." *Mangini v. McClurg*, 24 N.Y.2d 556, 563-65 (1969). That is an avoidance doctrine, not a contract interpretation principle. Notably, Plaintiffs never alleged "mutual mistake" as a basis for avoiding the Releases and thus forfeited the argument. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008). Regardless, the doctrine cannot apply here.

The New York Court of Appeals recently reaffirmed the limited nature of *Mangini*. In *Smith*, the plaintiff invoked *Mangini*'s reference to "special rules" governing releases when arguing that the Court should look beyond the four corners of the release at issue to determine whether the plaintiff intended to release a separate claim. *Smith v. City of N.Y.*, 2025 NY Slip Op 07081, *1-*2, n.1 (N.Y. Dec. 18, 2025). The Court rejected plaintiff's argument, explaining the only special rules applied in *Mangini* concerned "the release of claims relating to unknown injuries" and *Mangini* actually declined to adopt other rules to limit the generality of release language as "unreliable and unnecessary." *Id.* at n.1. The requisite intent to release the separate claim at issue was "evidenced by the plain text of the document." *Id.* at *2. This explanation forecloses much of Plaintiffs' use of the case.

There is no subsequently discovered injury here. The injuries to Plaintiffs' decedents were known immediately due to the tragic nature of this accident. Plaintiffs allegedly learned of a different cause of the crash that led to the exact same injuries[3]. These are separate and distinct elements.

Moreover, the Releases cannot be subject to a claim of "mutual mistake" because Plaintiffs expressly assumed the risk of mistake. Indeed, "[a] party must bear the risk of mistake…, if 'the risk is allocated to him by agreement of the parties.'" *BP Prods. N. Am. Inc. v. Blue Hills Fuels, LLC*, No. 20-CV-9659, 2022 U.S. Dist. LEXIS 196766, at *10 (S.D.N.Y. Oct. 28, 2022) (quoting *Dafnos v. Hayes*, 264 A.D.2d 305, 307 (1st Dep't 1999) (quoting Restatement (Second) of Contracts § 154(a)). Here, the Releases expressly provide that they "shall not be subject to any claim of mistake of fact or law," acknowledge that the facts underlying the claims may later prove different, expressly assign that risk to Releasors, and provide that the Releases remain effective notwithstanding such differences. JA318-JA319 ¶ 8.

---

[3] Enforcing these Releases serves the strong public policy favoring finality in negotiated settlements by holding parties to the risks they expressly assumed, including that later-discovered facts or causation theories might alter the perceived basis for liability; not to mention that the releasors have already accepted the agreed upon compensation for their loss. Allowing a settling party to revive released claims whenever new evidence emerges would substantially undermine the certainty that makes settlement possible in the first place.

In sum, Plaintiffs cite to no authority supporting their contention that the District Court should have resorted to extrinsic evidence to interpret these unambiguous Releases.

**c. The District Court Properly Interpreted the Releases to Encompass Raytheon and to Bar the Claims Pleaded.**

Plaintiffs criticize the District Court for "infer[ing] intent" based on the language in the Releases and not "asking whether the releasors intended to surrender such claims or executed the releases with knowledge of them" through allowing discovery and referring to extrinsic evidence. Appellants' Br. 15-16. Appellants' criticism is ill-conceived. An unambiguous release "will be fully enforced according to **the plain language of the release**, regardless of one party's claim that he or she intended something else." *Gayle v. Jerusalem Ave, Inc.*, 250 A.D.3d 1027, 1029 (2d Dep't 2026) (quoting *Hoffmann v. Horn*, 157 A.D.3d 871, 873 (2d Dep't 2018)) (emphasis added). Plaintiffs also fault the Court for identifying the requisite intent within the Releases based on "boilerplate breadth" and generalized language, Appellants' Br. 16-17, 24-25, 31-32, but do not support their *ipse dixit* characterization of the language or confront the language of Paragraph 5 in making the argument:

> 5. **Releasors intend** this Release to constitute a full release and discharge of any and all claims that they may have arising out of the injury to and death of Decedent. **Releasors state that they intend** to release fully all individuals, entities or corporations, whether specifically named or not, that might be liable for damages arising out

> of the injury to or death of Decedent. Releasors agree that they will not, directly or indirectly, make or cause to be made any further action against any person (including any individual, corporation or other entity) for losses, damages or injuries arising out of the injury to or death of Decedent.

JA317 (emphasis added). Paragraph 5 could hardly express the requisite intent more clearly, but for the sake of completeness, Raytheon provides the following further analysis.

As to whether Raytheon is an entity encompassed within the Releases, the New York Court of Appeals found that a release need not identify every discharged tortfeasor by name where its terms expressly encompass unnamed potentially liable parties. *Wells v. Shearson Lehman/American Express*, 72 N.Y.2d 11, 21-23 (1988). For example, the Second Department recently enforced a release in favor of unnamed defendants where it extended to "all other persons, firms or corporations liable or who might be claimed to be liable" for the same accident. *Gayle*, 250 A.D.3d at 1029. The *Gayle* plaintiff's subjective intention to release only the settling driver and related parties could not overcome the objective manifestation of intent supplied by the release's unambiguous language. *Id.* at 1028-29. The language of the Releases here is as explicit, if not more so, and leaves no doubt that Raytheon was released.

The "Releasees" definition includes "all other persons and entities not specifically identified who are or may be liable to Releasors in whole or in part for

any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800." JA316. Paragraph 5's language above removes any doubt, expressly stating that the Releasors "**intend** to release fully all individuals, entities or corporations, whether specifically named or not, that might be liable for damages arising out of the injury to or death of Decedent." JA317 (emphasis added). Raytheon falls squarely within that description because the Complaint alleges that Raytheon is liable for damages resulting from the destruction of TWA Flight 800 and the resulting deaths.

As to whether the instant claims are encompassed in the Release, it is of no matter that Plaintiffs may not have been aware of all claims being released because "it is not a prerequisite to the enforceability of a release that the releasor be subjectively aware of the precise claim he or she is releasing." *Mergler v. Crystal Props. Assocs., Ltd.*, 179 A.D.2d 177, 180 (1st Dep't 1992). Paragraph 5 states that Releasors "intend" the Releases to discharge any and all claims they may have arising from the death of the decedent. JA317. Paragraph 3 releases "any and all actions, causes of action … claims, and demands whatsoever" that the Releasors ever had or thereafter can, shall or may have against Releasees "arising out of, or in any way related to the Event," expressly including injury to or death of the decedent and claims characterized as wrongful death, survival, survivorship, personal injury,

"or otherwise." JA316-JA317. These words *precisely* describe the claims pleaded here.

Plaintiffs' Complaint alleges negligence and gross negligence, wrongful death and survivorship against all Defendants, and failure-to-warn and manufacturing defect claims against Raytheon. Every one of those claims seeks recovery for the same "Event" identified in the Releases - the loss of TWA Flight 800 - and for the same resulting injuries and deaths. JA316 ¶1. Nothing in the Releases limits their scope to claims premised upon a particular theory of how the aircraft was lost or to persons whose alleged role was known at the time of execution.

Plaintiffs' allegation that they later discovered a different cause of the crash therefore does not alter the interpretation of the Releases. A new theory as to **why** TWA Flight 800 was lost does not transform the loss of Flight 800 into a different "Event," the decedents' deaths into different injuries, or negligence and product-liability claims seeking damages for those deaths into claims outside the scope of the Releases. The parties chose unambiguous language expressing intent to release all potentially liable persons and all claims arising out of or related to that Event, and the District Court correctly enforced that language as agreed by Releasors.

**d. Plaintiffs Allege No Fraud Separate from the Subject of the Releases**

Plaintiffs' avoidance theory fails because, when properly characterized, the alleged governmental "Coverup" is clearly encompassed within the Releases and not

"a separate fraud from the subject of the release." *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011). Plaintiffs cannot avoid the bargain they made by merely alleging that the truth about the very subject of the Releases was concealed. *Id.* at 276-78.

The alleged "Coverup" concerns what caused TWA Flight 800 to crash and who was responsible for the resulting deaths. JA99-JA100 ¶¶ 4-8, JA104-JA115 ¶¶38-54, 83-99. Those are the very matters the Releases resolved. Paragraph 3 releases all claims "arising out of, or in any way related to the Event," Paragraph 8 expressly assumes the risk that later-discovered facts may support previously unasserted claims and may prove different from what the Releasors then believed, and Paragraph 9 specifically disclaims any representations concerning "[t]he cause or causes for the Event" and "[t]he legal liability of any Releasee." JA317-JA319. Plaintiffs' theory therefore does not concern some collateral transaction or independent wrong - it asserts that later-discovered facts reveal a different cause of, and different responsibility for, **the same TWA Flight 800 deaths the Releases settled**. The District Court correctly treated that as fraud within the released subjects. SPA21-SPA25.

*Bellefonte* confirms the distinction in Raytheon's favor. There, the releasors argued that undisclosed information rendered their settlements fraudulently induced, but the Court enforced the settlements because they alleged "no new

misrepresentations in connection with the negotiation and execution of the settlement agreements," only the same nondisclosure concerning the subject of the dispute they had settled. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 526-28 (2d Cir. 1985). The Court rejected the premise that settlement of a disputed claim requires the alleged wrongdoer first to disclose the full extent of the alleged wrongdoing. *Id.* Plaintiffs allege the same thing here: concealment concerning causation and responsibility for TWA Flight 800, which was the exact thing settled, rather than a fraud collateral to the subject of the Releases.

Plaintiffs' reliance on *Irving Trust* further illustrates the key distinction. There, the unasserted claim concerned a different stock transaction that had never been the subject of any claim or settlement, and the releasee was a fiduciary obligated to make "full and frank disclosure." *Irving Trust Co. v. Deutsch*, 73 F.2d 121, 126 (2d Cir. 1934). Here, by contrast, there is no separate transaction and no fiduciary relationship. The alleged concealment concerns the cause and legal responsibility for the very accident being settled.

Plaintiffs' "informational gap" distinction from *Centro* does not change the analysis either. Appellants' Br. 18-19. Importantly, *Centro* addressed the release's scope "[a]s a preliminary matter" and held that the broad release encompassed unknown fraud claims when executed. *Centro*, 17 N.Y.3d at 277. Only afterwards did it separately consider whether the plaintiffs could establish fraudulent

inducement, including whether their awareness that information had been withheld defeated justifiable reliance. *Id.* at 277-79. Plaintiffs improperly construe *Centro*'s reliance analysis and the releasors' knowledge of the information gap at issue as a rule allowing releasors to submit extrinsic evidence of what they did or did not know or contemplate at the time of the transaction to interpret the scope of a release. That is not what *Centro* holds. *See also Crane v. WP Strategic Holdings, LLC*, 2026 NY Slip Op 04806, *3 (3d Dep't July 30, 2026) ("[A] general release executed even without knowledge of a specific fraud effectively bars a claim or defense based on that fraud.").

In any event, the Releasors did knowingly settle around an informational gap. Paragraphs 8 and 9 of the Releases acknowledge that causation and liability facts might later prove different and allocate that risk to the Releasors. JA318-JA319. Further, Paragraph 14 states that the Releases are not admissions of liability or fault, that no actions taken by Releasees shall be construed as an admission of truth or falsity of any matter relating to the claim, and that Releasees deny and disclaim liability. JA320. The Releases thus repeatedly acknowledge the very information gap Plaintiffs now rely upon.

Put simply, unknown is not the same as separate. Plaintiffs allege that later-discovered facts changed what they believe about the cause of TWA Flight 800 and who was responsible, but those matters fall squarely within the subject the Releases.

#### e. Plaintiffs Cannot Establish Fraudulent Inducement

Once Raytheon established application of the signed Releases, the burden shifted to Plaintiffs to show a legally sufficient ground for avoiding them based on fraud. *See Centro*, 17 N.Y.3d at 276. Plaintiffs failed to meet their burden for three reasons: 1) the Releases specifically disclaim the reliance Plaintiffs allege, 2) Plaintiffs identify no duty to disclose, and 3) the alleged deception is attributed to actors who did not procure the Releases.

First, fraudulent inducement requires a showing of "justifiable reliance" and this element is foreclosed by the Releases themselves, as the District Court rightly found. *Centro*, 17 N.Y.3d at 276. A party that <u>specifically</u> disclaims reliance upon representations concerning the very subject later alleged to have been misrepresented cannot establish justifiable reliance upon those representations. Raytheon Reply Br. 10-13, ECF No. 224 (citing *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-23 (1959); *Moore v. Cohen*, 548 F. Supp. 3d 330, 343-44 (S.D.N.Y. 2021)). Paragraph 9 provides that, "[i]n entering into this Release," the Releasors "do not rely on any statement or representation" by a Releasee or its representative concerning, specifically, "[t]he cause or causes for the Event" or "[t]he legal liability of any Releasee." JA319. This is not an incidental, boilerplate disclaimer as Plaintiffs now claim. Plaintiffs' theory is that they entered the settlements because they relied upon the Government's allegedly false explanation of **the cause of the**

**Event** and thereby failed to appreciate the potential **legal liability of other Releasees**. These are two subjects Paragraph 9 explicitly identifies by name. *See Grumman Allied Indus. v. Rohr Indus.*, 748 F.2d 729, 735 (2d Cir. 1984) (rejecting a requirement of "a precise identity between the misrepresentation and the particular disclaimer"). It is unclear what specificity Plaintiffs believe is lacking.

Plaintiffs' reliance on the rule that a "general merger clause is ineffective" to defeat a fraud claim, Appellants' Br. 27, attacks something the District Court did not rely upon. Paragraph 15 contains the general merger provision which was not considered by the District Court in its Opinion. JA320. To the contrary, Paragraph 9 is a separate, specific disclaimer provision upon which the District Court relied. SPA24. Indeed, Plaintiffs quote *Manufacturers Hanover Trust Co. v. Yanakas* for the proposition that "[t]he touchstone is specificity," 7 F.3d 310, 316 (2d Cir. 1993), but appear to effectively concede the requisite specificity's presence by describing Paragraph 9 as "subject-specific." Appellants' Br. 27. That distinction is dispositive. The rule concerning generalized merger clauses has no application to this dispute.

Plaintiffs also argue that the District Court failed to determine whether the alleged "physical removal, withholding, and concealment of evidence" constitutes a "statement or representation" within Paragraph 9. Appellants' Br. 27-28. Plaintiffs did not make that argument below and is therefore not for review here, but the argument fails in any event. First, the Complaint alleges that the FBI and CIA

publicly rejected the missile theory, that the NTSB announced the fuel-tank explanation, and that this became the accepted explanation on which "Plaintiffs relied." JA107-JA108 ¶50. Plaintiffs cannot have relied upon the "physical removal, withholding, and concealment of evidence" when executing the Releases because **they did not know about it**.

Further, nondisclosure or concealment is fraudulent only where the defendant had a duty to disclose. *See Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483-84 (2d Cir. 1995); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011) (dismissing complaint for failing to allege facts giving rise to fiduciary duty). Plaintiffs identify no fiduciary relationship[4] or other basis imposing upon Raytheon a duty to disclose information to the Releasors for purposes of their settlements with Boeing, TWA, and the other settling defendants. Raytheon could not have induced execution of these Releases by failing to make disclosures because it did not participate in the negotiation of the Releases and therefore neither provided nor withheld information to Releasors. As a non-participant, it had no duty to disclose information.

Indeed, neither Plaintiffs' alleged reliance on the Government's causation narrative nor the alleged concealment can establish fraudulent inducement because

[4] Plaintiffs vaguely reference fiduciary relationships in their brief without outright asserting that one exists between them and any Defendant in this matter. No such fiduciary relationship exists.

the actors alleged to have supplied those alleged misrepresentations were not parties to the Releases. Under New York law, "[t]he person making the representations must be, or [be] acting on behalf of, the other party to the contract," and "[f]raud by a third party is not effective to vitiate contractual obligations." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Worley*, 257 A.D.2d 228, 233 (1st Dep't 1999); *see also Lodhi v. Stewart's Shops Corp.*, 52 A.D.3d 1084, 1085 (3d Dep't 2008) (fraud sufficient to invalidate a release must be attributable to a party to the release and plaintiff remained bound where no fraud by defendant relative to the release was alleged); *VeroBlue Farms USA Inc. v. Canaccord Genuity LLC*, No. 21-2465-cv, 2022 U.S. App. LEXIS 16344, at *5 (2d Cir. June 14, 2022) (summary order) (founders' alleged fraud could not invalidate release where the counterparty "was not directly involved" in that fraud). Plaintiffs attribute the allegedly false causation narrative and concealment to governmental actors, not Boeing, TWA, or another party that negotiated the Releases. JA99 ¶¶ 3-5; JA104-JA108 ¶¶ 38-54. And, Plaintiffs acknowledged below that "the current defendants were not involved in the original negotiations." JA475.

To be clear, Raytheon was not a "party" to the Releases. Under New York law, a third-party beneficiary is a nonparty to the contract. *See County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984) ("It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the

intended beneficiary of the contract….”). Thus, the alleged deception cannot invalidate the Releases.

The above also distinguishes Plaintiffs' use of *Barrett v. United States*, 622 F. Supp. 574, 584 (S.D.N.Y. 1985). Appellants' Br. 21. In *Barrett*, the federal government was actively coordinating with the New York attorney defending the action, sought federal funding to facilitate the settlement, and directed the concealment of its involvement during the litigation. 622 F. Supp. 574, 578-80, 584-85 (S.D.N.Y. 1985). In other words, it was intertwined in the negotiation itself and the very purpose of its actions was to induce settlement. Here, Plaintiffs allege no governmental conduct meant to specifically induce Plaintiffs to settle with Boeing, no government involvement in the negotiations generally, and no Boeing involvement. In fact, Plaintiffs advance no credible reason why Boeing, if it knew its aircraft was destroyed by a missile, would have induced Releasors to accept a significant payment in settlement of claims for which Boeing knew it was not responsible[5].

[5] *Barrett* is further distinguishable because the release contained none of the protections present here, such as an express allocation of the risk that subsequently discovered facts might differ from those then known, an express disclaimer of reliance on representations concerning the causes of the accident or the liability of any Releasee, and an acknowledgment that the settlement compromised disputed claims while the Releasees continued to deny liability. *See* JA318–JA320.

#### f. Plaintiffs Abandon Any California-law Challenge to the Kevorkian Release.

The District Court held that the Kevorkian release is governed by California law and applied California contract principles to it. SPA18-SPA19. Appellants' brief does not mention California law, does not cite a California authority, nor identify any error as to California law. Arguments omitted from an appellant's opening brief are ordinarily abandoned even if they were litigated below or later appear in reply. *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). The judgment should therefore be affirmed as to the Kevorkian claims on that independent basis.

## II. THE JUDGMENT SHOULD ALTERNATIVELY BE AFFIRMED BECAUSE PLAINTIFFS' CLAIMS ARE TIME-BARRED.

This Court "may affirm on any ground the record supports, and [is] not limited to the reasons expressed by the district court." *Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272, 273 n.1 (2d Cir. 2015). An appellee may defend a judgment on a ground overlooked below without cross-appealing where it seeks only to sustain the dismissal rather than enlarge its rights. *Drax v. Reno*, 338 F.3d 98, 105-06 (2d Cir. 2003). Raytheon fully articulated its statute of limitations defense below, Plaintiffs responded to it, and the District Court declined to reach it only because the Releases independently required dismissal. JA224-JA232; SPA25 n.18; Raytheon Reply Br. 7-10, ECF No. 224. The issue is therefore properly before this Court.

### a. The Claims Are Subject to a Three-Year Limitations Period

Raytheon argued below that Plaintiffs' claims fall within admiralty jurisdiction and are governed by substantive maritime law, including the three-year limitations period in 46 U.S.C. § 30106. JA207-JA210; Raytheon Reply Br. 6-7, ECF No. 224. Admiralty jurisdiction requires both a maritime location and a connection to traditional maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 248 (2d Cir. 2014). Both requirements are satisfied based on the Complaint's allegations.

The locality requirement is easily satisfied. Plaintiffs allege that TWA Flight 800 exploded over and crashed into the Atlantic Ocean off Long Island. JA99 ¶¶ 2, 8; JA207-JA209. This Court already recognized that the crash occurred approximately eight nautical miles offshore, within United States territorial waters. *In re Air Crash Off Long Island, N.Y., on July 17, 1996*, 209 F.3d 200, 201-02 (2d Cir. 2000). Plaintiffs argued that the "land-based elements" of their claim require discovery before admiralty jurisdiction could attach, but the location of the tort is defined by the location where *the alleged negligence took effect*. *See In re D'ancona*, 2023 U.S. Dist. LEXIS 16490, at *7 (E.D.N.Y. Jan. 30, 2023); *see also Dolan Bros. Shellfish v. Boissoneault*, 2007 U.S. Dist. LEXIS 22999, at *2 (D. Conn. Mar. 29, 2007) (same); Raytheon Reply Br. 6-7, ECF No. 224. The element is thus met.

The maritime connection requirement is also satisfied. TWA Flight 800 was a commercial transatlantic flight from New York to Paris. *In re Air Crash Off Long Island*, 209 F.3d at 201. "Federal courts have concluded nearly unanimously that transoceanic or island voyages, but for air travel, would have been conducted by sea [and] have a significant relationship to maritime activity." *In re Air Crash at Belle Harbor*, 2006 U.S. Dist. LEXIS 27387, at *27-*28 (S.D.N.Y. May 9, 2006); *see also Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 271-72 (1972). This satisfies the first part of the maritime connection requirement.

The second part of the maritime connection requirement is met because the destruction of a commercial aircraft over navigable waters presents the requisite potential disruption to maritime commerce from falling wreckage, navigation hazards, and recovery operations. *See In re Air Crash at Belle Harbor*, 2006 U.S. Dist. LEXIS 27387, at *31-*32 (finding large piece of aircraft sinking in navigable waters satisfied test as aircraft sinking in water could create hazard for commercial vessel navigation). Moreover, transoceanic flights are commercial activities by their very nature, so their destruction clearly disrupts maritime commerce. Admiralty jurisdiction thus attaches.

With admiralty jurisdiction comes application of the Uniform Statute of Limitations for Maritime Torts ("USLMT"), which provides a three-year limitations period from when the cause of action arose. 46 U.S.C. § 30106; JA224-JA225. The

crash occurred in 1996 and this action was not commenced until 2022. Indeed, Plaintiffs acknowledge that, absent some doctrine postponing accrual or tolling the limitations period, their claims expired long ago. JA115-JA116 ¶¶ 94-100. Neither the discovery rule nor fraudulent concealment doctrine they rely upon bridges that decades-long gap. *See* JA225-JA232; Raytheon Reply Br. 7-10, ECF No. 224.

**b. The Discovery Rule Did Not Postpone Accrual Until Plaintiffs Allegedly Obtained Additional Evidence in 2021.**

The federal discovery rule relied upon by Plaintiffs does not permit a plaintiff to postpone accrual until they have the precise evidence necessary to prove a specific theory and identify every responsible defendant. Rather, "it is 'discovery of the injury, not discovery of the other elements of a claim,' that 'starts the clock.'" *Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108 (2d Cir. 2019) (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)); *see also Franklin v. New York City*, 2017 U.S. Dist. LEXIS 20233, at *9 (S.D.N.Y. Feb. 10, 2017) ("[D]elay in discovering the cause of the injury does not prevent the claim from accruing.") (quoting *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 348-49 (S.D.N.Y. 2009) (quoting *Rotella*, 528 U.S. at 555). Once a plaintiff knows enough concerning the injury and its potential cause "to protect himself by seeking legal advice," the limitations period accrues, leaving counsel to investigate "whether, against whom, and in what forum" suit should be brought. *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140-43 (2d Cir. 2011)

(quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)); Raytheon Reply Br. 7-9, ECF No. 224. This standard was satisfied decades before 2021.

At the latest, Plaintiffs' claims accrued when the decedents' representatives retained counsel and commenced wrongful death litigation arising from this very crash. MDL Dkt., Ex. A to Pagano Decl., ECF 187-1; JA154-JA157; JA291-JA296, JA303-JA313; Raytheon Reply Br. 7-9, ECF No. 224. Those representatives did not merely possess sufficient information to seek legal advice, they retained lawyers, alleged defendants were legally liable for the deaths, pursued the litigation and discovery, and ultimately received payment in exchange for a full release in settlement of their claims. *See Id.* Moreover, Plaintiffs' own Complaint establishes that the possibility of a missile or projectile was publicly known during the original investigation. Eyewitnesses reportedly observed a streak or projectile, the Government publicly rejected the missile theory, and the FBI presented a nationally televised explanation addressing those reports. JA104-JA108 ¶¶ 38-54; *see also* JA230-JA232. That is far more notice than *A.Q.C.* and related authority requires. As such, if the discovery rule applies at all, it only delayed accrual, at best, until Plaintiffs filed their original lawsuits. Plaintiffs' claims are thus untimely by decades. JA225-JA228; Raytheon Reply Br. 7-9, ECF No. 224.

#### c. The Government's Alleged Concealment Does Not Toll the Limitations Period Against Raytheon.

Plaintiffs' fraudulent concealment allegations do not save their untimely claims. To invoke this form of equitable tolling, Plaintiffs must show that Raytheon wrongfully concealed material facts of its wrongdoing, that the concealment prevented timely discovery during the limitations period, and that Plaintiffs exercised due diligence in pursuing discovery throughout the period they seek to toll. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012). Because the theory sounds in fraud, the concealment itself must also be pleaded with Rule 9(b) particularity. *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 462 (S.D.N.Y. 2020). Critically, "[a]llegations that <u>other</u> defendants acted to deceive plaintiffs from filing suit do not plead fraudulent concealment against all defendants" because "[t]he doctrine…tolls the statute of limitations only as to those defendants who committed the concealment." *National Union Fire Ins. Co. v. Califinvest*, 1992 U.S. Dist. LEXIS 1956, *26 (S.D.N.Y. Feb. 13, 1992) (emphasis in original) (quoting *Bingham v. Zolt*, 683 F. Supp. 965, 975 (S.D.N.Y. 1988)); *see* JA229-JA230.

The Complaint's particularized concealment allegations concern conduct by the FBI, CIA, NTSB, Navy, and other governmental actors. JA104-JA115. As to Raytheon, Plaintiffs allege only collectively that "Defendants" participated in a government-led "cover-up." JA100 ¶ 6; JA115 ¶ 99. They identify no Raytheon speaker, statement, act, date, or other conduct that concealed their claim. Raytheon

made this argument in both its opening and reply briefs below. JA229-JA230; Raytheon Reply Br. 9-10, ECF No. 224. Even Judge Kelley observed prior to transfer (when evaluating the same Complaint) that Plaintiffs had "failed to plead with any particularity, fraudulent concealment allegations against Contractor Defendants." *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 217 (D. Mass. 2023) (referring to Raytheon and Lockheed). This is fatal to Plaintiffs' invocation of a fraudulent concealment claim and the required Rule 9(b) particularity.

Plaintiffs independently fail the diligence requirement. Their Complaint says that they learned of their key evidence in April 2021, but it does not identify what investigations these claimants or their representatives undertook during the preceding decades; when they undertook them; whom they contacted; what information they sought; or how any alleged Raytheon conduct prevented those inquiries. JA113-JA116; JA230-JA231. That omission is especially consequential because the same Complaint alleges that eyewitness evidence of a projectile and the Government's rejection of the missile theory were matters of public controversy from the outset. JA104-JA108; JA230-JA231. Plaintiffs cannot simultaneously plead facts placing the missile theory squarely in public view and obtain decades of equitable tolling without alleging what reasonable steps they took to investigate it.

Accordingly, Plaintiffs' claims expired decades before this action was filed. *See* JA224-JA232; Raytheon Reply Br. 6-10, ECF No. 224.

## III. RULE 17 PROVIDES NO BASIS FOR REVERSAL

Plaintiffs contend that the District Court violated Rule 17(a)(3) by failing to afford them a reasonable opportunity to ratify, join, or substitute the proper representatives of Plaintiffs' decedents' estates. Appellants' Br. 39-44. However, it never denied that relief. Plaintiffs invoked Rule 17 in their July 2025 opposition and represented that certain estates had been reopened or were in the process of being reopened but never articulated more than a general request for a cure or even addressed all the Plaintiffs. JA408-JA410; SPA12 n.11. Then, after noting Plaintiffs' contention that the representative deficiencies were "readily curable under FRCP 17(a)(3)," the Court **expressly assumed that Appellants could cure them** and held that even so, "the complaint would still have to be dismissed" because the Releases independently barred the claims. SPA12. Plaintiffs even acknowledge that the Court "did not decide" whether to grant or deny any of the requested relief. Appellants' Br. 41. There is thus no adverse Rule 17 ruling to reverse. *See Ripple Analytics Inc. v. People Center, Inc.*, 153 F.4th 263, 267, 269-71 (2d Cir. 2025) (reviewing district court's actual decision to dismiss under Rule 17 after the real party in interest failed to ratify the action).

The one caveat to the above is with respect to the Plaintiffs who brought wrongful death and survival claims in their individual capacities. Dismissal of those claims should stand independently of the Rule 17 issue. Raytheon argued below -

and Plaintiffs did not meaningfully dispute - that under either New York or maritime law, those claims may be prosecuted only by a duly authorized personal representative of the decedents' estates, not by beneficiaries in their individual capacities. JA165-JA166; JA202; SPA9-SPA10; United States Reply Br. 17-18, ECF No. 222. Rule 17(a)(3) cannot transform an individual beneficiary into a real party in interest or create an individual cause of action where the law recognizes none. The representative capacity defect is a separate issue.

## IV. THE WITHDRAWAL ORDER PROVIDES NO BASIS TO DISTURB THE JUDGMENT

### a. The Order Was Not "Functionally Equivalent" to a Dismissal and Thus a Clear Error Standard of Review Was Appropriate

Plaintiffs argue that Magistrate Judge Marutollo's order granting prior Plaintiffs' counsel's withdrawal was "functionally equivalent" to dismissal because he warned that, if withdrawal were granted and replacement counsel were not obtained, Plaintiffs' claims "may inherently be extinguished." Appellants' Br. 33-35; SPA34. But that warning described a possible future consequence contingent on Plaintiffs' failure to obtain replacement counsel that did not occur. The order itself dismissed no claim, resolved no defense, and barred no Plaintiff from continuing the action. The District Court therefore properly reviewed it under Rule 72(a)'s clear error standard.

*Williams v. Beemiller, Inc.* recognizes that 28 USC § 636(b)(1)(A)'s list of dispositive matters entrusted to a United States Magistrate Judge is not exhaustive and directs courts to consider "the practical effect of the challenged action on the instant litigation." 527 F.3d 259, 265-66 (2d Cir. 2008). But that inquiry focuses on what the challenged ruling itself accomplished, not every consequence that might follow later. *See Pigott v. Sanibel Dev., LLC*, No. 07-0083-WS-C, 2008 U.S. Dist. LEXIS 55806, *13-*14 (S.D. Ala. July 23, 2008) (finding dispositive character of order turns on the "specific matter decided," not its "ultimate repercussions" and a nondispositive ruling does not "mutate into" a dispositive one merely because it later affects the outcome of a claim or defense); *Humphreys v. N.Y.C. Health & Hosps. Corp.*, No. 16-CV-9707, 2023 U.S. Dist. LEXIS 5222, at *5-*7 (S.D.N.Y. Jan. 11, 2023) (looking to the effect of the discovery sanction actually imposed to determine if dispositive, "not whether [what was requested] had the potential to be dispositive").

*Town of Goodland v. Kessler Tank Co.* is instructive. There, the plaintiff argued that a magistrate's refusal to extend an expert disclosure deadline was dispositive because it would "inevitably lead to dismissal." No. 4:13-CV-82, 2016 U.S. Dist. LEXIS 81731, at *2-*4 (N.D. Ind. June 23, 2016). The court rejected that argument because the magistrate had neither dismissed a claim nor barred the plaintiff from continuing the case. The ruling remained "itself non-dispositive, even

if a natural result of it is summary judgment" or dismissal. *Id.* at *4. Here, the connection is far weaker. Substitute counsel entered a full appearance on December 16, 2024, JA49, the District Court did not set the dispositive motion briefing schedule until December 27, JA49-50, and Defendants did not move to dismiss until April 1, 2025. JA136, JA186, JA244. Plaintiffs' counsel then fully and competently litigated the motions. The ultimate dismissal is far attenuated from the direct effect of the Magistrate's order and review under Rule 72(a) was proper.

**b. The Record Satisfied Local Civil Rule 1.4**

Raytheon agrees that Local Civil Rule 1.4 requires consideration of both the reasons for withdrawal and the posture of the case. Appellants' Br. 35. The record supplied both. Prior counsel and Plaintiffs had reached a fundamental impasse on litigation strategy, centered on whether the litigation should continue in light of the Releases discussed above. SPA29-SPA30. Magistrate Marutollo held two conferences concerning withdrawal, knew that Defendants intended to rely on the releases, granted Plaintiffs multiple extensions to obtain replacement counsel, and found that neither discovery nor dispositive motion practice had begun. SPA28-SPA30; SPA34 n.8. Plaintiffs' contention that the Court did not weigh the posture of the case is belied by the record.

### c. Plaintiffs Suffered No Prejudice, and Their Remaining Arguments Provide No Basis for Reversal

Even assuming error, the withdrawal provides no basis to disturb the judgment because it did not affect Plaintiffs' substantial rights. 28 U.S.C. § 2111; Fed. R. Civ. P. 61; *Strickland v. Moritz*, 149 F.4th 378, 406-07 (4th Cir. 2025) (holding that the District Court erred in permitting counsel to withdraw but declining reversal because the error did not prejudice the plaintiff); *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 816 (7th Cir. 2017) (plaintiff "suffered no prejudice" from withdrawal where sufficient time remained to obtain replacement counsel). Plaintiffs bear the burden of showing otherwise, and they have not. *In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*, 635 F.2d 67, 70–71 (2d Cir. 1980).

Substitute counsel appeared for all Plaintiffs months before dispositive motions were due and they fully and competently litigated those motions. Plaintiffs might not have had their first choice of counsel, but they identify no actual actions or inactions of substitute counsel that impaired their ability to prosecute their claims in the face of iron-clad Releases and a long-expired statute of limitations. Their speculation about what prospective lawyers might think of former counsel's withdrawal or who might represent them following a hypothetical remand has nothing to do with prejudice resulting in the judgment under review. Their remaining

objections likewise identify no error affecting that judgment and warrant no further discussion.

In sum, the Magistrate's withdrawal ruling was well-grounded in the record and law, the District Court found no clear error after a thorough review, and even if *de novo* review were required, Judge Donnelly's independent analysis supplied more than sufficient grounds to affirm the same result.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment dismissing the claims against Appellee Raytheon. The Court should affirm the District Court's release ruling or, alternatively, affirm on Appellee Raytheon's preserved statute-of-limitations ground. The District Court did not deprive Appellants of their claimed right under Rule 17 to cure their lack of standing issues, because the lack of standing was not a basis for dismissal of Appellants' claims. The District Court held that, regardless of the standing issue, the Complaint would nonetheless be dismissed because of the unambiguous terms of the Releases. The withdrawal order provides no basis to disturb the judgment.

For the foregoing reasons, Appellee Raytheon respectfully requests that the Court affirm the judgment of the District Court, either on the District Court's release ruling or, alternatively, on Raytheon's preserved statute of limitations ground, and

grant such other and further relief as this Court deems just and proper.

Dated: August 31, 2026

Respectfully submitted,

Ralph V. Pagano, Esq.
FITZPATRICK, HUNT &
PAGANO, LLP
12 East 49th Street, 34th Floor
New York, New York 10017
T: (212) 937-4000
ralph.pagano@fitzhunt.com
Attorney for Defendant-
Appellee Raytheon Company

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation applicable to a principal brief because it contains 9,026 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), and does not exceed 14,000 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it was prepared in a proportionally spaced typeface using 14-point Times New Roman.

Dated: August 31, 2026

Ralph V. Pagano, Esq.
FITZPATRICK, HUNT &
PAGANO, LLP
12 East 49th Street, 34th Floor
New York, New York 10017
T: (212) 937-4000
ralph.pagano@fitzhunt.com
Attorney for Defendant-
Appellee Raytheon Company

## CERTIFICATE OF SERVICE

I certify that on August 31, 2026 I electronically filed the foregoing Brief for Defendant-Appellee Raytheon Company with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. All participants in the case who are registered CM/ECF users will be served by that system.

Ralph V. Pagano, Esq.
FITZPATRICK, HUNT &
PAGANO, LLP
12 East 49th Street, 34th Floor
New York, New York 10017
T: (212) 937-4000
ralph.pagano@fitzhunt.com
Attorney for Defendant-
Appellee Raytheon Company